**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION**

| | |
|---|---|
| ABIGAIL RATCHFORD, ANA CHERI MORELAND, SARA UNDERWOOD, ARIANNY CELESTE LOPEZ, CAMILA DAVALOS, MARIANA DAVALOS, CARMEN ELECTRA, CIELO JEAN "CJ" GIBSON, CHANTEL ZALES, CLAUDIA SAMPEDRO, CORA SKINNER, IRINA VORONINA, EVA PEPAJ, IMOGEN THOMAS, JESSICA HINTON a/k/a JESSA HINTON, JESSICA BURCIAGA, MARTA KRUPA, JOANNA KRUPA, INA SCHNITZER a/k/a JORDAN CARVER, KATARINA VAN DERHAM, LAURIE YOUNG, LINA POSADA, LUCY PINDER, MALU "MASHA" LUND, MEGAN VOGT a/k/a MEGAN DANIELS, MERCEDES TERRELL, RACHEL KOREN a/k/a RACHEL BERNSTEIN, ROSIE JONES, URSULA MAYES, VIVIAN KINDLE, | Case No. _____ |
| Plaintiffs, | **COMPLAINT** |
| vs. | **(Jury Trial Demanded)** |
| AEG VENTURES, LLC d/b/a ATLANTIS GENTLEMEN'S CLUB, | |
| Defendant. | |

COME NOW Plaintiffs, ABIGAIL RATCHFORD, ANA CHERI MORELAND, SARA UNDERWOOD, ARIANNY CELESTE LOPEZ, CAMILA DAVALOS, MARIANA DAVALOS, CARMEN ELECTRA, CIELO JEAN "CJ" GIBSON, CHANTEL ZALES, CLAUDIA SAMPEDRO, CORA SKINNER, IRINA VORONINA, EVA PEPAJ, IMOGEN THOMAS, JESSICA HINTON a/k/a JESSA HINTON, JESSICA BURCIAGA, MARTA

1

KRUPA, JOANNA KRUPA, INA SCHNITZER a/k/a JORDAN CARVER, KATARINA VAN DERHAM, LAURIE YOUNG, LINA POSADA, LUCY PINDER, MALU "MASHA" LUND, MEGAN VOGT a/k/a MEGAN DANIELS, MERCEDES TERRELL, RACHEL KOREN a/k/a RACHEL BERNSTEIN, ROSIE JONES, URSULA MAYES, VIVIAN KINDLE (collectively, "Plaintiffs" or "Models"), by and through undersigned counsel, and for Complaint against Defendant AEG VENTURES, LLC doing business as ATLANTIS GENTLEMEN'S CLUB, ( "Defendant" or "Atlantis") respectfully allege as follows:

## BACKGROUND

1.      The following is an action for damages and injunctive relief relating to Defendant'ss misappropriation and unauthorized publication of the image and likeness of Plaintiff Models, who are professional models, in order to promote its strip club, Atlantis Gentleman's Club ("Atlantis" or, the "Defendant").

2.      As detailed below, Defendant unauthorized use of Plaintiff Models' images, photos, and likenesses (collectively, "Image") constitutes, at minimum: a) violation of section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1)(A) and (B), which prohibits false or misleading use of a person's image for purposes of advertising; b) violation of the Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10 *et seq. Right to Publicity* and False Light, which protects a person's right to privacy and publicity; c) defamation, and; d) supplants various common law torts.

3.      Defendant has pirated the images, likeness, and/or identity of each Plaintiff Model for purely self-serving commercial purposes − to advertise, promote, and market Defendant's own business interests on websites and social media accounts owned, operated, hosted, or controlled by Defendant.

4.    Defendant is an unapologetic, chronic, and habitual infringer.

5.    Defendant never sought consent or authority to use any of the Plaintiffs' images for any purpose.

6.    No Plaintiff ever agreed, nor would any Plaintiff have agreed, to Defendant's use of her image, likeness, and/or identity.

7.    Had each Plaintiff been afforded the opportunity to consider whether to consent and release rights as to the use of any image, each Plaintiff would have promptly and unequivocally declined.

8.    Defendant conduct is therefore misleading and deceptive by falsely and fraudulently representing that each Plaintiff Model depicted in the misappropriated images is somehow affiliated with Defendant; has contracted to perform at and/or participate in events at Atlantis; has been hired to promote, advertise, market or endorse its events and other activities offered at Atlantis; and/or that each Plaintiff depicted in the promotional materials and social media and/or Internet posts has attended or will attend each event and has participated in or intends to participate in the activities advertised.

9.    Defendant conduct is also injurious to each Plaintiff Model.

10.    Defendant circumvented the typical arms-length negotiation process entirely and intentionally pirated the images. In doing so, Defendant has utterly deprived each Plaintiff the right and ability to say "no."

11.    Defendant has prevented each Plaintiff from engaging in arms-length negotiations regarding the terms and conditions of use of their images, including the term of any release, remuneration per image or use, or the ability to decline the business opportunity entirely.  In short, Defendant deprived each Plaintiff the ability to protect her image, brand, and reputation.

3

12. In the end, Defendant gained an economic windfall by using the images of professional and successful models for Defendant own commercial purposes, luring and enticing patrons worldwide to view the images and visit Atlantis, without having to compensate the models for such usage. Plaintiffs, however, sustained injury to their images, brands, and marketability by shear affiliation with Atlantis, astrip club operated by Defendant.

13. Having operated a business in the strip club industry, Defendant is well aware of the standard negotiation process over terms of use, conditions of release, licensing issues, and other contractual incidences related to use and exploitation of images for Defendant's commercial benefit.

14. Much more than merely a misuse in connection with an innocuous brand or event, Defendant embarrassed Plaintiffs by associating their images with Atlantis.

15. In addition to the actual, punitive, and exemplary damages set forth below, Plaintiff Models likewise seek an Order from this Court permanently enjoining Defendant from using the images, likeness, and/or identity of each Plaintiff Model to promote Atlantis, via any medium.

## JURISDICTION AND VENUE

16. This Court has original federal question jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 as Plaintiffs have each individually stated claims under the Lanham Act, 28 U.S.C. § 1125(a)(1)(A)(B). This Court has supplemental jurisdiction over the Illinois state law claims alleged herein pursuant to 28 U.S.C. § 1367.

17. The Court has personal jurisdiction over Defendant based on its contact with the State of Illinois, including but not limited to Defendant registration to conduct business in Illinois, its physical location and principal place of business in Illinois, and upon information and

4

belief, committed, facilitated, assisted, encouraged or conspired to commit the actions giving rise to the harm and damages alleged herein in the State of Illinois.

18.     According to publicly available records, Defendant AEG Ventures, LLC is a Limited Liability Company organized and existing pursuant to the laws of the State of Delaware doing business as a strip club under the name Atlantis Gentlemen's Club in Chicago, Illinois.

19.     Venue is proper in the United States District Court for the Northern District of Illinois because Cook County is the principal place of business for Defendant. Venue is also proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claims occurred in the Northern District of Illinois.

20.     All parties have minimum contacts with Cook County, a significant portion of the alleged causes of action arose and accrued in Cook County, Illinois, and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Cook County.

<strong><u>PARTIES</u></strong>

**A.**     **<u>Plaintiffs</u>**

21.     Given the multitude of violations harming the Plaintiff models, in the interest of judicial economy, Plaintiffs, through counsel, respectfully consolidate all actionable violations presently known into this single collective action (with distinct claims per each model) on behalf of the following models.

22.     Plaintiff ABIGAIL RATCHFORD ("Ratchford") is, and at all times relevant to this action was, a professional model and a resident of Los Angeles, California.

5

23.     Plaintiff ANA CHERI MORELAND ("Moreleand") is, and at all times relevant to this action was, a professional model and a resident of Westminster, California.

24.     Plaintiff SARA UNDERWOOD ("Underwood") is, and at all times relevant to this action was, a professional model and a resident of Scappoose, Oregon.

25.     Plaintiff ARIANNY CELESTE LOPEZ ("Lopez") is, and at all times relevant to this action was, a professional model and a resident of West Hollywood, California.

26.     Plaintiff CAMILA DAVALOS ("C.Davalos") is, and at all times relevant to this action was, a professional model and a resident of Medellin, Colombia.

27.     Plaintiff MARIANA DAVALOS ("M.Davalos") is, and at all times relevant to this action was, a professional model and a resident of Medellin, Colombia.

28.     Plaintiff CARMEN ELECTRA ("Electra") is, and at all times relevant to this action was, a professional model and a resident of Los Angeles, California.

29.     Plaintiff CIELO JEAN "CJ GIBSON ("Gibson") is, and at all times relevant to this action was, a professional model and a resident of Tampa, Florida.

30.     Plaintiff CHANTEL ZALES ("Zales") is, and at all times relevant to this action was, a professional model and a resident of Santa Ana, California.

31.     Plaintiff CLAUDIA SAMPEDRO ("Sampedro") is, and at all times relevant to this action was, a professional model and a resident of Coral Gables, Florida.

32.     Plaintiff CORA SKINNER ("Skinner") is, and at all times relevant to this action was, a professional model and a resident of Santa Monica, California.

33.     Plaintiff IRINA VORONINA ("Voronina") is, and at all times relevant to this action was, a professional model and a resident of Los Angeles, California.

34.     Plaintiff EVA PEPAJ ("Pepaj") is, and at all times relevant to this action was, a professional model and a resident of North Hollywood, California.

35.     Plaintiff IMOGEN THOMAS ("Thomas") is, and at all times relevant to this action was, a professional model and a resident of London, England, United Kingdom.

36.     Plaintiff JESSICA HINTON A/K/A JESSA HINTON ("Hinton") is, and at all times relevant to this action was, a professional model and a resident of Sherman Oaks, California.

37.     Plaintiff JESSICA BURCIAGA ("Burciaga") is, and at all times relevant to this action was, a professional model and a resident of Whittier, California.

38.     Plaintiff MARTA KRUPA ("M.Krupa") is, and at all times relevant to this action was, a professional model and a resident of Nazareth, Pennsylvania.

39.     Plaintiff JOANNA KRUPA ("J.Krupa") is, and at all times relevant to this action was, a professional model and a resident of Miami Beach, Florida.

40.     Plaintiff INA SCHNITZER A/K/A JORDAN CARVER ("Schnitzer") is, and at all times relevant to this action was, a professional model and a resident of Las Vegas, Nevada.

41.     Plaintiff KATARINA VAN DERHAM ("Derham") is, and at all times relevant to this action was, a professional model and a resident of North Hollywood, California.

42.     Plaintiff LAURIE YOUNG ("Young") is, and at all times relevant to this action was, a professional model and a resident of Huntington Beach, California.

43.     Plaintiff LINA POSADA ("Posada") is, and at all times relevant to this action was, a professional model and a resident of Santa Clarita, California.

44.     Plaintiff LUCY PINDER ("Pinder") is, and at all times relevant to this action was, a professional model and a resident of Winchester, England, United Kingdom.

45.     Plaintiff MALU "MASHA" LUND ("Lund") is, and at all times relevant to this action was, a professional model and a resident of New York, New York.

46.     Plaintiff MEGAN VOGT A/K/A MEGAN DANIELS ("Vogt") is, and at all times relevant to this action was, a professional model and a resident of San Jose, California.

47.     Plaintiff MERCEDES TERRELL ("Terrell") is, and at all times relevant to this action was, a professional model and a resident of Las Vegas, Nevada.

48.     Plaintiff RACHEL KOREN ("Koren") is, and at all times relevant to this action was, a professional model and a resident of Los Angeles, California.

49.     Plaintiff ROSIE JONES ("Jones") is, and at all times relevant to this action was, a professional model and a resident of London, England, United Kingdom.

50.     Plaintiff URSALA MAYES ("Mayes") is, and at all times relevant to this action was, a professional model and a resident of Costa Mesa, California.

51.     Plaintiff VIVIAN KINDLE ("Kindle") is, and at all times relevant to this action was, a professional model and a resident of West Hollywood, California.

**B.      Defendant**

52.     According to publicly available records, defendant AEG Ventures, LLC d/b/a Atlantis Gentlemen's Club, is a Limited Liability Company organized under the laws of the State of Delaware, and owns and operates a strip club under the name Atlantis Gentleman's Club located at 1897 E Lincoln Hwy, Chicago Heights, Illinois 60411.

53.     Atlantis holds, and at all times relevant has held, itself out as an operator of a strip club that engages in the business of entertaining its patrons with alcohol, fully nude dancing, and full friction.

54.     Atlantis jointly owns and/or operates http://pinterest.com/AtlantisChicago and www.atlantischicago.com, as well as other social media accounts and websites, such as

https://www.facebook.com/AltantisClub/, through which they advertise their business, events, and parties. For many of these events, images of one or more of the models were used to market and promote the events.

55. Upon information and belief, Atlantis coordinated their promotional, Internet, and social media activities through active and dynamic use of their Facebook account and websites.

## FACTUAL ALLEGATIONS

**A.** **Standard and Customary Business Practices in the Modeling Industry Require Arms-Length Negotiations over the Terms and Conditions of Usage and Remuneration for any Modeling Images**

56. As set forth immediately below, Plaintiff Models were extremely well-known professional models who earned a livelihood modeling and selling images to companies, magazines, and individuals for the purpose of advertising, endorsing, or promoting products and services.

57. Plaintiff Models' careers in the modeling industry placed a high degree of value on good will and reputation, which was critical in order to maximize earning potential, book modeling contracts, and establish individual brands. In furtherance of establishing, and maintaining their brands, Plaintiff Models were necessarily selective concerning the companies, and brands, for which they chose to model.

58. Being vigilant and proactive about protecting one's reputation is therefore of paramount importance.

59. Plaintiff Models are professional models who earn a living by promoting their image and likeness to select clients, commercial brands, media and entertainment outlets, as well as relying on reputation and brand for modeling, acting, hosting, and other opportunities.

60.     Plaintiff Models careers in the modeling, acting, and/or private enterprise has value stemming from the goodwill and reputation each has built, all of which is critical to establishing an individual brand, being selected for modeling contracts, and maximizing earnings.

61.     Each Plaintiff Model has worked to establish herself as reliable, reputable, and professional.

62.     Each Plaintiff Model must necessarily be vigilant in protecting her "brand" from harm, taint, or other diminution.  In furtherance of establishing, and maintaining her brands, each Plaintiff Model was necessarily selective concerning the companies and brands for which she chose to model.

63.     Any improper or unauthorized use of an image, likeness, or identity could substantially injure the career and career opportunities of each Plaintiff Model.

64.     In the modeling industry, models such as the Plaintiffs typically do not have a single employer, but rather work on an independent contractor basis for different agents or entities.  Each Plaintiff Model is a responsible professional in the ordinary course.  Each Plaintiff Model seeks to control the use and dissemination of her image and, thus, actively participates in vetting and selecting modeling, acting, brand spokesperson, or hosting engagements.

65.     A model's vetting and selection of a professional engagement involves a multi-tiered assessment, requiring the model to:

a.      determine whether the individual or entity seeking a license and release of a model's image, likeness, or identity is reputable, has reputable products or services, and, through affiliation, would enhance or harm a model's stature or reputation;

b.      use this reputational information in negotiating compensation which typically turns on the work a model is hired to do, the time involved, travel, and how her image is going to be used (among other variables);

c.      protect her reputation and livelihood by carefully and expressly defining the terms and conditions of use; and

66.      reduce and memorialize the negotiated deal into an integrated, written agreement which defines the parties' relationship. Endorsing, promoting, advertising, or marketing the "wrong" product, service, or corporate venture, or working in or being affiliated with a disreputable industry can severely impact a model's career by limiting or foreclosing future modeling or brand endorsement opportunities. Conversely, association with high-end companies, products, or magazines can enhance and amplify a model's earning potential and career opportunities by making a model more sought after and desirable.

67.      For these reasons, *even if* a model chose to jeopardize her career for a compromising engagement – such as appearing in an advertisement for a strip club – the fee she would charge would necessarily far exceed the fee typically charged for more mainstream and reputable work.

**B.      Defendant Has Misappropriated Each Plaintiff's Image, Likeness and/or Identity Without Authority, for Self-Serving Commercial Gain and Without Offering or Paying Compensation to any Plaintiff**

68.      AEG Ventures, LLC operates a Chicago-based strip Club under the name Atlantis Gentlemen's Club, where it engages in the business of selling alcohol and food in an atmosphere were nude and/or semi-nude women entertain the business' clientele.

69.      Atlantis does this for its own commercial and financial benefit.

70.     As set forth below, each Plaintiff Model's image, likeness, and/or identity has been misappropriated by or at the direction of Defendant.  Defendant's conduct creates the false and misleading appearance and impression that each Plaintiff either works for Defendant, has appeared and participated, or will appear and participate in activities or events at Atlantis, and/or has agreed and consented to advertise, promote, market, or endorse Atlantis or Atlantis's events or activities.

71.     Plaintiff Models have personal and proprietary interest in their right to privacy and publicity arising out of their persona and likeness contained within their images. Plaintiff Models' interest is separate and apart from any copyright claim that may or may not exist to the photographs that encompass Plaintiff Models' images. Plaintiff Models' persona, in the form of their likeness, is not copyrightable and their rights of publicity are independent of any copyright. *See e.g. Downing v. Abercrombie Fitch*, 265 F. 3d 994, 1005 (9th Cir. 2001).

72.     To the extent any copyright (or some other "right" for that matter) may exist for photograph depicting Plaintiff Models' images, Plaintiff Models allege that Defendant has totally and completely destroyed any such copyright by morphing, editing, or otherwise altering the original photographs.

73.     The manner in which Defendant used Plaintiff Models' images suggests to the public that Plaintiff Models are promoting or otherwise endorsing Defendant's establishment with the goal of increasing Atlantis's visibility, driving clientele to attend the advertised events, and to otherwise increase revenue and drive profits.

74.      Atlantis has used, advertised, created, printed, and distributed the image of Plaintiff, as further described and identified above, to create the false impression with potential clientele that Plaintiff Models either worked at or endorsed Atlantis.

75.     Atlantis used Plaintiff Models' image, and created the false impression that they worked at or endorsed Atlantis in order to receive certain benefits, including but not limited to: monetary payments; increased promotional opportunities, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

76.     As Atlantis was at all times aware, at no point have Plaintiff Models ever been affiliated with or employed by Atlantis, and at no point have Plaintiff Models ever endorsed Atlantis.

77.     All of Atlantis' activities, including its misappropriation of Plaintiff Models' images, and publication of them, were done without the knowledge or consent of Plaintiff Models, and Atlantis did not compensate Plaintiff Models for its use of their images.

78.     As such, Plaintiff Models have never received any benefit for Atlantis' use of their images.

79.     Defendant used Plaintiff Models' images without their consent, and without providing remuneration, in order to permanently deprive the Plaintiff Models of their right to determine the use their images.

80.     Upon information and belief, Defendant has taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiff Models.

*Plaintiff Abigail Ratchford*

81.     Ratchford is, and at all times relevant to this action was, a professional model and actress. Ratchford, is an American model and aspiring actress known for taking the Internet by storm in 2013. Ratchford's deft use of social media, combined with the use of provocative pictures helped land her on numerous men's websites, a six-page print spread in a popular

Australian men's magazine, and also led to her being selected to audition for parts in *Maxim*, a feature film, and television shows found on ABC and E! Networks. She has over 7.9 million followers on Instagram, 4.2 million followers of Facebook, and over 521,750 followers on Twitter.[1]

82.     In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Ratchford negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

83.     Ratchford's image, likeness, and/or identity are depicted in at least two photographs, enclosed as **Exhibit A** to the Complaint, which has been used at least two times to create the false perception that Ratchford has consented or agreed to promote, advertise, market, and/or endorse Atlantis.  Specifically, on October 15, 2016, Ratchford's image was posted to Atlantis's Facebook page with intent to invite the viewing public to visit Atlantis in the hopes of meeting Ratchford.  The caption next to the Image of Ratchford clothed in superhero attire provided, "Who's your superhero?  We are OPEN late night every weekend until the crack of dawn with the Hottest Girls in the MIX.    OPEN until 6am weekends! www.atlantischicago.com."

84.     An additional image of Ratchford was also used to advertise Atlantis on January 26, 2017.  The images were used without the consent of Ratchford and altered to intentionally give the impression that Ratchford is a spokesperson for Atlantis, working at Atlantis, and/or endorses Atlantis.

85.     Ratchford's image, likeness, and/or identity in **Exhibit A** are being used as advertising, on social media, as a coupon, for branding purposes, and for extra uses.

---

[1]     In the world of modeling, the number of online "followers" or "likes" is a strong factor in determining the earning capacity of a model.

86. Ratchford has never been hired by Defendant or contracted with Defendant to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

87. Defendant never sought permission or authority to use Ratchford's image, likeness or identity to advertise, promote, market or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

88. Ratchford never gave permission, or assigned, licensed, or otherwise consented to Defendant using her image, likeness, or identity to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

89. Defendant neither offered nor paid any remuneration to Ratchford for the unauthorized use of her image, likeness, or identity.

90. Defendant'ss use of Ratchford's image, likeness, and/or identity in connection with Atlantis's event impugns Ratchford's character, embarrasses her, and suggests – falsely – her support for and participation in a strip club lifestyle.

91. Defendant's improper use of Ratchford's image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Ratchford's image in their market activities and business.  In doing so, Defendant has further damaged Ratchford.

### *Plaintiff Ana Cheri Moreland*

92. Moreland is, and at all times relevant to this action was, a model and a business owner.  Moreland is a published model who has worked with companies such as Monster Energy, K&N Filters, Moskova Underware, and Ultimate Arm-wrestling League. Moreland's success and notoriety in the industry eventually led her to become a brand ambassador for Shredz, and featured as a *Maxim* Instagram Girl of the Week. Moreland also became *Playboy's*

Playmate of the Month in October 2015. Moreland has 10.4 million followers on Instagram, 207,000 followers on Twitter, and over 5.4 million followers on Facebook.

93.     In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Moreland negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

94.     Moreland's image, likeness, and/or identity are depicted in at least one photograph, enclosed as **Exhibit B** to the Complaint, which has been used at least two times to create the false perception that Moreland has consented or agreed to promote, advertise, market, and/or endorse Atlantis. Specifically, on March 10, 2017, Moreland's image was uploaded to Atlantis's Facebook page with intent to promote and market the Atlantis strip club. The caption next to the image of Moreland advertised, "It's that time of year 'THAT GUY' you know so well, is tying the knot or joining the single scene…We have all you need for the 'Night Out' you must have it at ATLANTIS!!! Allow us to fit your budget…at our 'Party Headquarters' for THAT GUY." The use of this image falsely implied that Moreland represents Atlantis and that she authorized Atlantis to use her image for promotional and marketing purposes. The image was used without the consent of Moreland and was manipulated to intentionally give the impression that Moreland is a spokesperson for Atlantis, working at Atlantis, and/or that she endorses Atlantis.

95.     Moreland's image, likeness, and/or identity in **Exhibit B** is being used as advertising, on social media, as a coupon, and for branding purposes.

96.     Moreland has never been hired by Defendant or contracted with Defendant to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

97.     Defendant never sought permission or authority to use Moreland's image, likeness or identity to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

98.     Moreland never gave permission, assigned, licensed, or otherwise consented to Defendant using her image, likeness or identity to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

99.     Defendant neither offered nor paid any remuneration to Moreland for the unauthorized use of her image, likeness, or identity.

100.    Defendant'ss use of Moreland's image, likeness, and/or identity in connection with Atlantis's event impugns Moreland's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendant'ss establishment.

101.    Defendant'ss improper use of Moreland's image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Moreland's image in their market activities and business. In doing so, Defendant has further damaged Moreland.

### Plaintiff Sara Underwood

102.    Underwood is, and at all times relevant to this action was, a model, actress, and spokesmodel.  Underwood earned the prestigious title of *Playboy* "Playmate of the Year" in 2007.  Underwood has been featured in many *Playboy* videos, and has appeared as herself in films *The House Bunny* (2008) and *Miss March* (2009), and episodes of reality TV series such as *Kendra* (2009), *The Girls Next Door* (2005) and *Bridget's Sexiest Beaches* (2009).  Underwood has also worked on television as continuity announcer for the Blackbelt TV cable network and co-hosted five episodes of G4's "*Attack of the Show*" (2003).  Her suitability, looks, hosting

skills, and abilities make her a much sought after commodity for a limitless range of product endorsements and as a presenter, host, and actor. Underwood has a following on Instagram of 8.3 million followers, 599,500 Twitter followers, as well as over 4.9 million likes on Facebook.

103.    In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Underwood negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

104.    Underwood's image, likeness, and/or identity are depicted in at least four photographs, enclosed as **Exhibit C** to the Complaint, which has been used at least six times to create the false perception that Underwood has consented or agreed to promote, advertise, market, and/or endorse Atlantis. Specifically, on December 6, 2016, Underwood's image was uploaded to Atlantis's Facebook page with intent to promote and market the Atlantis strip club. The caption next to the image of Underwood advertised, "It's 'ATL' 2-for…Dance Special happening right now with an Atlantis FEATURE Product. Great Keepsake to remember your Night Out at Atlantis Gentlemen's Club & Italian Steakhouse. So Grab a Cutie & Follow her Booty!!! View US: http://pinterest.com/AtlantisChicago." The use of this image falsely implied that Underwood represents Atlantis and that she authorized Atlantis to use her image for promotional and marketing purposes. The image was used without the consent of Underwood and was manipulated to intentionally give the impression that Underwood is a spokesperson for Atlantis, working at Atlantis, and/or endorses Atlantis.

105.    Underwood's image, likeness and/or identity in **Exhibit C** is being used as advertising, on social media, and for branding purposes.

106.    Underwood has never been hired by Defendant or contracted with Defendant to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

18

107.    Defendant never sought permission or authority to use Underwood's image, likeness, or identity to advertise, promote, market, or endorse Defendant, businesses, Atlantis, or any Atlantis event.

108.    Underwood never gave permission, assigned, licensed, or otherwise consented to Defendant using her image, likeness, or identity to advertise, promote, market or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

109.    Defendant neither offered nor paid any remuneration to Underwood for the unauthorized use of her image, likeness, or identity.

110.    Defendant'ss use of Underwood's image, likeness, and/or identity in connection with Atlantis's event impugns Underwood's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendant'ss establishment.

111.    Defendant'ss improper use of the image described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Underwood's image in their market activities and business.   In doing so, Defendant has further damaged Underwood.

### *Plaintiff Arianny Celeste Lopez*

112.    Lopez is, and at all times relevant to this action was, an American model, business woman, and celebrity.  Lopez is recognized as one of the most consistent and most popular personalities of the UFC where she has worked as an Octagon Girl since 2006.  Lopez is the Co-Host of the popular Velocity TV show, *Overhaulin*.  She is adored around the world for her exotic beauty and great relationship with her fans. Lopez booked her first modeling job when she was just four months old. Growing up as a very athletic and hardworking young woman, she excelled in cheer, dance and gymnastics before attending the University of Nevada Las Vegas

(UNLV) to purse a degree in Fitness Management and Nutrition. Fluent in Spanish, Lopez has quickly become one of the most sought after talents in the modeling world and has appeared on the covers of some of the world's most foremost magazines including, *Playboy, Maxim US, FHM, Maxim Korea, Maxim Philippines, FHM Australia,* and *UFC Magazine*. In addition to modeling, Lopez has hosted television shows, appeared in short films, and recorded some original music. Lopez is in an elite class of Social Media influencers with over 3 million Instagram followers, over 500,000 Twitter followers, and 6.1 million fans on Facebook combined with her own personal website.

113. In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Lopez negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

114. Lopez's image, likeness, and/or identity are depicted in at least one photograph, enclosed as **Exhibit D** to the Complaint, which has been used at least two times to create the false perception that Lopez has consented or agreed to promote, advertise, market, and/or endorse Atlantis. Specifically, on October 2, 2016, Lopez's image was uploaded to Atlantis's Facebook page with intent to promote and market Atlantis strip club. The caption next to the image of Lopez advertised, "Sinful Sundays at the "ATL" is Funday…See you tonite, club opens 7pm & keeps the party going til 4am with many Sexy Ladies in the MIX at ATLANTIS!!!" The use of this image falsely implied that Lopez represents Atlantis strip club and that she authorized Atlantis to use her image for promotional and marketing purposes. The image was used without the consent of Lopez and was manipulated to intentionally give the impression that Lopez is a spokesperson for Atlantis, working at Atlantis, and/or that she endorses Atlantis.

115.    Lopez's image, likeness, and/or identity in **Exhibit D** are being used as advertising on social media.

116.    Lopez has never been hired by Defendant or contracted with Defendant to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

117.    Defendant never sought permission or authority to use Lopez's image, likeness or identity to advertise, promote, market or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

118.    Lopez never gave permission, assigned, licensed, or otherwise consented to Defendant using her image, likeness, or identity to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

119.    Defendant neither offered nor paid any remuneration to Lopez for the unauthorized use of her image, likeness, or identity.

120.    Defendant'ss use of Lopez's image, likeness, and/or identity in connection with Atlantis's event impugns Lopez's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendant's establishment.

121.    Defendant'ss improper use of the image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Lopez's image in their market activities and business. In doing so, Defendant has further damaged Lopez.

### *Plaintiff Camila Davalos*

122.    C.Davalos is, and at all times relevant to this action was, an international model and actress.  C.Davalos established her career in Colombia as one of the most famous and successful models by the age of 18.  At age 22, C.Davalos became the face of the world famous *Besame* lingerie line and was in high demand in the United States. Since then, C.Davalos has

earned a reputation as a Latin Super Model, appearing in hundreds of magazine editorials, catalogues, runway shows, and covers. Some of her clients include *Maxim Magazine, Imagen Magazine, Besame, SOHO TV, Rumbas de la Ciudad, La Granja Tolima, Kiss Catalogue, Deluxe Jeans, Revista Soho, SCRIBE, Coed People, La Gemela mas Dulce, Para Hombre, Spiritual Jeans, and Satori.*

123. In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, C.Davalos negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

124. C.Davalos' image, likeness, and/or identity are depicted in at least three photographs, enclosed as **Exhibit E** to the Complaint, which has been used at least four times to create the false perception that C.Davalos has consented or agreed to promote, advertise, market, and/or endorse Atlantis. Specifically, on January 31, 2016, C.Davalos' image was uploaded to Atlantis's Facebook page with intent to promote and market Atlantis strip club. The caption next to C.Davalos' image advertised, "( . )( . ) BOOB & (_!_) BUTT, which do you prefer?  Atlantis Gentlemen's Club has a Sexy Variety of HOTTIES in the MIX…"  The image was used without the consent of C.Davalos and was manipulated to intentionally give the impression that C.Davalos is a spokesperson for Atlantis, working at Atlantis, and/or that she endorses Atlantis.

125. C.Davalos' image, likeness, and/or identity in **Exhibit E** are being used as advertising, on social media, as a coupon, and for branding purposes.

126. Davalos has never been hired by Defendant or contracted with Defendant to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

127.    Defendant never sought permission or authority to use C.Davalos' image, likeness, or identity to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

128.    C.Davalos' never gave permission, assigned, licensed, or otherwise consented to Defendant using her image, likeness, or identity to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

129.    Defendant neither offered nor paid any remuneration to C.Davalos' for the unauthorized use of her image, likeness, or identity.

130.    Defendant'ss use of C.Davalos' image, likeness, and/or identity in connection with Atlantis's event impugns C.Davalos' character, embarrasses her, and suggests – falsely – her support and endorsement of Defendant'ss establishment.

131.    Defendant'ss improper use of the image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate C.Davalos' image in their market activities and business. In doing so, Defendant has further damaged C.Davalos.

### Plaintiff Mariana Davalos

132.    M.Davalos is, and at all times relevant to this action was, an international model.  M.Davalos was born in the US, but grew up in Colombia.  M.Davalos has a twin sister Camila and together they started a modeling career at age 10. By the time M.Davalos was 18 her career was already established in Colombia as one of the most famous and successful models in all of Latin America. M.Davalos was the face of Nacar cosmetics and has appeared in *Maxim* magazine, *Imagen* magazine, *Besame, SOHO TV, Rumbas de la Ciudad, La Granja Tolima, Kiss Catalogue, Deluxe Jeans, Revista Soho, SCRIBE, Coed People, La Gemela mas Dulce, Para Hombre, Spiritual Jeans* and *Satori*. M.Davalos is constantly listed in "The top sexiest people in

the World" lists and whether solo or teamed up with her twin sister, she is constantly in demand. M.Davalos' worldwide identity has continued to grow and her earning capabilities have increased dramatically with over 300,000 Instagram followers and over a 250,000 Facebook fans.

133.     In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, M.Davalos negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

134.     M.Davalos's image, likeness, and/or identity are depicted in at least three photographs, enclosed as **Exhibit F** to the Complaint, which has been used at least four times to create the false perception that M.Davalos has consented or agreed to promote, advertise, market, and/or endorse Atlantis. Specifically, on October 3, 2013, M.Davalos's image was uploaded to Atlantis's Facebook page with intent to promote and market Atlantis strip club. The caption next to the image of M.Davalos, along with the image of her twin sister C.Davalos, advertised "Two is always better than one…2-4 Dance Specials (throughout the night), with Atlantis Feature Product, great keepsake…View Us:  http://pinterest.com/AtlantisChicago." The use of this image falsely implied that M.Davalos represents Atlantis strip club and that she authorized Atlantis to use her image for promotional and marketing purposes. The image was used without the consent of M.Davalos and was manipulated to intentionally give the impression that M.Davalos is a spokesperson for Atlantis, working at Atlantis, and/or that she endorses Atlantis.

135.     M.Davalos's image, likeness, and/or identity in **Exhibit F** are being used as advertising, on social media, and for branding purposes.

136.     M.Davalos has never been hired by Defendant or contracted with Defendant to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

137.    Defendant never sought permission or authority to use M.Davalos's image, likeness, or identity to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

138.    M.Davalos never gave permission, assigned, licensed, or otherwise consented to Defendant using her image, likeness, or identity to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

139.    Defendant neither offered nor paid any remuneration to M.Davalos for the unauthorized use of her image, likeness, or identity.

140.    Defendant'ss use of M.Davalos's image, likeness, and/or identity in connection with Atlantis's event impugns M.Davalos's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendant'ss establishment.

141.    Defendant'ss improper use of the image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate M.Davalos's image in their market activities and business. In doing so, Defendant has further damaged M.Davalos.

### Plaintiff Carmen Electra

142.    Electra is, and at all times relevant to this action was, an actress, recording artist, and entrepreneur. With an impressive body of work that encompasses dance, television, film, comedy, and theatre, Electra has quickly emerged as one of Hollywood's most versatile personalities. Growing up, Electra attended Cincinnati's School for Creative and Performing Arts.  After graduating high school in 1991, Electra moved to the Los Angeles and partnered with Prince, who would go on to produce her self-titled album on his Paisley Park record label. Electra ultimately ventured into acting with regular roles on *Baywatch* and MTV's *Singled Out.* Electra has since made the move to the big screen with starring roles in blockbuster hits

including *Scary Movie*, *Dirty Love*, *Cheaper by the Dozen 2*, and *Meet the Spartans*. Electra won the role as the face of MAX Factor, filling the same role as Marilyn Monroe and Jaclyn Smith, which she held for two years. In 2006, Electra became a published author with the release of her book, "How to be Sexy." She also formed a dance troupe, The Bombshells, who perform nationwide, and she recently released the fitness DVD series, *Carmen Electra's Aerobic Striptease*. In 2009, Electra appeared live on stage in MGM Grand Vegas' Crazy Horse Burlesque Show to sold-out audiences during the summer and fall of the year. In 2010, Electra starred in the film, *Oy Vey, My Son is Gay*. Most recently, Electra starred in the film *2-Headed Shark Attack*, alongside Charlie O'Connell, served as a guest judge on *Britain's Got Talent*, and made recurring guest appearances on CW's hit show, *90210*. In 2012, Electra released her return-to-music single, "I Like It Loud," featuring Grammy-nominated producer Bill Hamel. The single hit the #25 spot on Billboard's Dance Club Play Chart and led to appearances on *The Wendy Williams Show*, Cyndi Lauper's *Home for The Holidays* charity event, the notorious White Part in Palm Springs, and most recently, Life Ball in Vienna.

143.   In June of 2014, Electra released 'Werq', which was followed by the release of a music video, and recently released a new single, "Around The World" She has 3.1 million Facebook followers, 691,000 Instagram followers, and 394,000 Twitter followers.

144.   In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Electra negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

145.   Electra's image, likeness, and/or identity are depicted in at least one photograph, enclosed as **Exhibit G** to the Complaint, which has been used at least one time to create the false perception that Electra has consented or agreed to promote, advertise, market, and/or endorse

Atlantis. Specifically, on January 22, 2013, Electra's image was uploaded to Atlantis's Facebook page with intent to promote and market Atlantis strip club. The caption next to the image of Electra advertised, "Atlantis Gentlemen's Club." The use of this image falsely implied that Electra represents Atlantis strip club and that she authorized Atlantis to use her image for promotional and marketing purposes. The image was used without the consent of Electra and was manipulated to intentionally give the impression that Electra is a spokesperson for Atlantis, working at Atlantis, and/or that she endorses Atlantis.

146.    Electra's image, likeness, and/or identity in **Exhibit G** are being used as advertising, on social media, and for branding purposes.

147.    Electra has never been hired by Defendant or contracted with Defendant to advertise, promote, market, or endorse Defendant's businesses, Atlantis, or any Atlantis event.

148.    Defendant never sought permission or authority to use Electra's image, likeness, or identity to advertise, promote, market or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

149.    Electra never gave permission, assigned, licensed, or otherwise consented to Defendant using her image, likeness, or identity to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

150.    Defendant neither offered nor paid any remuneration to Electra for the unauthorized use of her image, likeness, or identity.

151.    Defendant'ss use of Electra's image, likeness, and/or identity in connection with Atlantis impugns Electra's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendant'ss establishment.

152.     Defendant'ss improper use of her image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Electra's image in their market activities and business. In doing so, Defendant has further damaged Electra.

### Plaintiff Cielo Jean "CJ" Gibson

153.     Gibson is, and at all times relevant to this action was, an accomplished model who enjoys great success in her industry. Gibson has over 59,000 Instagram followers and has appeared in *FHM* magazine. Her career was started when she became the *Import Tuner* model search winner.  Gibson has a tremendous motor sport following as a *Falken Drift Team* model, a *Short Block Technologies Inc.* model, and a *Momo sport* model.  Gibson is also a Top Rank Boxing model.

154.     In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Gibson negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

155.     Gibson' image, likeness, and/or identity are depicted in at least two photographs, enclosed as **Exhibit H** to the Complaint, which has been used at least one time to create the false perception that Gibson has consented or agreed to promote, advertise, market, and/or endorse Atlantis.  Specifically, on August 12, 2016, Gibson' image was uploaded to Atlantis's Facebook page with intent to promote and market Atlantis. The caption next to the image of Gibson in sports attire advertised "ATL wants to give A-ROD a big thanks for many years of some great baseball…Join us for all your sporting venues with our Sexy Ladies in the Mix…"  The use of this image falsely implied that Gibson represents Atlantis strip club and that she authorized Atlantis to use her image for promotional and marketing purposes. The image was used without the consent of Gibson and was manipulated to intentionally give the impression that Gibson is a

spokesperson for Atlantis, working at Atlantis, and/or that she endorses Atlantis.

156.    Gibson's image, likeness, and/or identity in **Exhibit H** are being used as advertising and on social media.

157.    Gibson has never been hired by Defendant or contracted with Defendant to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

158.    Defendant never sought permission or authority to use Gibson' image, likeness, or identity to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

159.    Gibson never gave permission, assigned, licensed, or otherwise consented to Defendant using her image, likeness, or identity to advertise, promote, market or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

160.    Defendant neither offered nor paid any remuneration to Gibson for the unauthorized use of her image, likeness, or identity.

161.    Defendant'ss use of Gibson's image, likeness, and/or identity in connection with Atlantis' impugns Gibson's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendant'ss establishment.

162.    Defendant'ss improper use of Gibson's image described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Gibson's image in their marketing activities and business. In doing so, Defendant has further damaged Gibson.

### *Plaintiff Chantel Zales*

163.    Zales is, and at all times relevant to this action was, an American

model, actress, and social media phenom.  Zales started modeling right out of high school and is

29

based in Los Angeles, California. Zales has been featured in *Maxim* magazine, *FHM* magazine in the USA, Thailand, Norway, and the Philippines, *Lowrider* magazine, *Koncept* magazine, *Kassanova* magazine, Show, Glam Jam, Hush Hush, Kaboom!, GuySpeed.com, and Venus Zine. Zales has also featured in catalogs and campaigns such as, Gila River Casino, Lone Butte Burger, Verona Chophouse, American Bandstand Express, Apple, Sassimi Spa, Rachelle's Salon, and for The American Heart Association. Zale has also appeared in over ten films including *Piranha 3D* and *Young Americans*, and has a number of TV commercial appearances to her credit including Pepsi, Bad Boy Fight Night, APS Electric and Acura of Tempe. Zales is the Brand Ambassador for Shredz fitness clothing. Zale has over 4.5 million Instagram followers and a further 1 million followers on her personal Facebook and fan page.

164. In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Zales negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

165. Zales' image, likeness, and/or identity are depicted in at least three photographs, enclosed as **Exhibit I** to the Amended Complaint, which have each been used at least one time to create the false perception that Zales has consented or agreed to promote, advertise, market, and/or endorse Atlantis. Specifically, on May 21, 2016, Zales' image was uploaded to Atlantis's Facebook page with intent to promote and market Atlantis. The caption next to the image of Zales advertised, "Workout Saturday…Need to get my stretches in for an ACTIVE late night…gotta keep going until 6am. ATLANTIS is the official "After-The After-Party" with over 60 Sexy "ATL" Goddesses in the Mix?" The use of this image falsely implied that Zales represents Atlantis strip club and that she authorized Atlantis to use her image for promotional and marketing purposes. The image was used without the consent of Zales and was manipulated

to intentionally give the impression that Zales is a spokesperson for Atlantis, working at Atlantis, and/or that she endorses Atlantis.

166.    Zales' image, likeness, and/or identity in **Exhibit I** are being used as advertising and on social media.

167.    Zales has never been hired by Defendant or contracted with Defendant to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

168.    Defendant never sought permission or authority to use Zales' image, likeness, or identity to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

169.    Zales never gave permission, assigned, licensed, or otherwise consented to Defendant using her image, likeness, or identity to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

170.    Defendant neither offered nor paid any remuneration to Zales for the unauthorized use of her image, likeness, or identity.

171.    Defendant'ss use of Zales' image, likeness, and/or identity in connection with Atlantis's impugns Zales' character, embarrasses her, and suggests – falsely – her support and endorsement of Defendant'ss establishment.

172.    Defendant's improper use of Zales' image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Zales' image in their marketing activities and business. In doing so, Defendant has further damaged Zales.

### *Plaintiff Claudia Sampedro*

173.    Sampedro is, and at all times relevant to this action was,  a

Cuban-born model, mother, and spokeswoman.  Sampedro moved to Miami when she was 6

31

years old and, at 16, was discovered by Elite models. Sampedro has appeared in many catalogues, magazine editorials, and has a number of cover credits for magazines such as *Nine 5 Four, Shock, Face to Face* and *Mixed*. Sampedro is a sponsored model for Nutri Sups Nutrition and is also a spokesmodel and contracted model for Bare Ava. Sampedro is in a Social Media Influencers top class with close to 1 million Instagram followers and a combined 500,000 fans on Facebook and Twitter.

174. In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Sampedro negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

175. Sampedro's image, likeness, and/or identity are depicted in at least one photograph, enclosed as **Exhibit J** to this Complaint, which has been used at least one time to create the false perception that Sampedro has consented or agreed to promote, advertise, market, and/or endorse Atlantis. Specifically, on April 13, 2016, Sampedro' image was uploaded to Atlantis's Facebook page with intent to promote and market Atlantis strip club. The caption next to the image of Sampedro advertised, "Let's Play tonite with our 2-4 Dance Specials throughout the night featuring an Atlantis Product…" The use of this image falsely implied that Sampedro represents Atlantis strip club and that she authorized Atlantis to use her image for promotional and marketing purposes. The image was used without the consent of Sampedro and was manipulated to intentionally give the impression that Sampedro is a spokesperson for Atlantis, working at Atlantis, and/or that she endorses Atlantis.

176. Sampedro's image, likeness, and/or identity in **Exhibit J** are being used as advertising and on social media.

177. Sampedro has never been hired by Defendant or contracted with Defendant to

advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

178.    Defendant never sought permission or authority to use Sampedro's image, likeness, or identity to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

179.    Sampedro never gave permission, assigned, licensed, or otherwise consented to Defendant using her image, likeness, or identity to advertise, promote, market or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

180.    Defendant neither offered nor paid any remuneration to Sampedro for the unauthorized use of her image, likeness, or identity.

181.    Defendant'ss use of Sampedro's image, likeness, and/or identity in connection with Atlantis's impugns Sampedro's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendant'ss establishment.

182.    Defendant'ss improper use of Sampedro's image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Sampedro's image in their market activities and business. In doing so, Defendant has further damaged Sampedro.

### *Plaintiff Cora Skinner*

183.    Skinner is, and at all times relevant to this action was, a model and actress. Her TV show appearances include The Tonight Show with Jay Leno, Rules of Engagement, QVC, Shark, Las Vegas "White Christmas", and CSI Miami. She has modeled for Skechers, Nordstrom, Fredrick's of Hollywood, Tecate, Skyy Vodka, and Muscle & Fitness. She has also appeared in music videos, such as Def Leppard's "Nine Lives".

184. In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Skinner negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

185. Skinner's image, likeness, and/or identity are depicted in at least two photographs, enclosed as **Exhibit K** to the Complaint, which has been used at least two times to create the false perception that Skinner has consented or agreed to promote, advertise, market, and/or endorse Atlantis. Specifically, on February 22, 2017, Skinner's image was uploaded to Atlantis's Facebook page with intent to promote and market Atlantis strip club. The caption next to the image of Skinner advertised "Join the party 7 nights a week @ Atlantis Gentlemen's Club…#Hot #Girls, #Hot #Food, and Cold #Drinks!" The use of this image falsely implied that Skinner represents Atlantis strip club and that she authorized Atlantis to use her image for promotional and marketing purposes. The image was used without the consent of Skinner and was manipulated to intentionally give the impression that Skinner is a spokesperson for Atlantis working at Atlantis, and/or that she endorses Atlantis.

186. Skinner's image, likeness, and/or identity in **Exhibit K** are being used as advertising, on social media, and for branding purposes.

187. Skinner has never been hired by Defendant or contracted with Defendant to advertise, promote, market, or endorse Defendant's businesses, Atlantis, or any Atlantis event.

188. Defendant never sought permission or authority to use Skinner's image, likeness, or identity to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

189.    Skinner never gave permission, assigned, licensed, or otherwise consented to Defendant using her image, likeness, or identity to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

190.    Defendant neither offered nor paid any remuneration to Skinner for the unauthorized use of her image, likeness, or identity.

191.    Defendant'ss use of Skinner's image, likeness' and/or identity in connection with Atlantis impugns Skinner's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendant'ss establishment.

192.    Defendant'ss improper use of Skinner's image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Skinner's image in their market activities and business. In doing so, Defendant has further damaged Skinner.

### Plaintiff Irina Voronina

193.    Voronina is, and at all times relevant to this action was, an international model and actress.  Vornina has modeled for Playboy Studio, eventually becoming Playboy's Miss January, 2001.She is currently a model Wilhelmina L.A., where she has worked with world-famous photographers such as Teri Richardson, Mathew Rolston, Antoine Verglas, and David LaChapelle. Voronina has represented international brands including SKYY Vodka, Miller Lite, Michelob Ultra, Bacardi, and Sisley & Detour. She has millions of visual impressions around the globe via covers and pages of worldwide magazines, such as *FHM*, *Maxim*, *Playboy* (in 20 countries), *Max* (Italy), *Ocean*, *Shape*, *944*, *Knock-out*, *Q* (United Kingdom), *People* (Australia), and most recently *Kandy*, *Rukus*, *Vape* and *Browz*. In addition to being a model, Voronina has appeared on television and the big screen. She has over 3.7 million Facebook followers, 680,000 Instagram followers, 120,000 Twitter followers, and over 700,000

YouTube views.

194.    In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Voronina negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

195.    Voronina's image, likeness, and/or identity are depicted in at least two photographs, enclosed as **Exhibit L** to the Complaint, which have each been used at least two times to create the false perception that Voronina has consented or agreed to promote, advertise, market and/or endorse Atlantis.  Specifically, on February 14, 2016, Voronina's image was uploaded to Atlantis's Facebook page with intent to promote and market the strip club.  The image was used to advertise, "No work Monday…Celebrate President's Day at Atlantis Gentlemen's Club with many sexy ladies…Doors OPEN 3pm," and "FREE Valet." The image was used without the consent of Voronina and was manipulated to intentionally give the impression that Voronina is a spokesperson for Atlantis, working at Atlantis, and/or that she endorses Atlantis.

196.    Voronina's image, likeness, and/or identity in **Exhibit L** are being used as advertising, on social media, as a coupon, and for branding purposes.

197.    Voronina has never been hired by Defendant or contracted with Defendant to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

198.    Defendant never sought permission or authority to use Voronina's image, likeness, or identity to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

199.    Voronina never gave permission, assigned, licensed or otherwise consented to Defendant using her image, likeness, or identity to advertise, promote, market, or endorse Defendant's businesses, Atlantis, or any Atlantis event.

200.    Defendant neither offered nor paid any remuneration to Voronina for the unauthorized use of her image, likeness, or identity.

201.    Defendant'ss use of Voronina's image, likeness, and/or identity in connection with Atlantis's event impugns Voronina's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendant'ss establishment.

202.    Defendant'ss improper use of Voronina's image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Voronina's image in their market activities and business. In doing so, Defendant has further damaged Voronina.

### *Plaintiff Eva Pepaj*

203.    Pepaj is, and at all times relevant to this action was, a successful model and actress. She is known for her roles in the movies *The Hand Off*, *Interior*, *Leather Bar*, and *The Romp*.  Pepaj was also a feature in a national Diet Coke TV commercial.  Pepaj's work includes modeling for runways, high fashion, print, and film.

204.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Pepaj negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

205.    Pepaj's image, likeness, and/or identity are depicted in at least one photograph, enclosed as **Exhibit M** to the Complaint, which has been used at least one time to create the false perception that Pepaj has consented or agreed to promote, advertise, market and/or endorse

Atlantis. Specifically, on March 11, 2017, Pepaj's image was uploaded to Atlantis's Facebook page with intent to promote and market Atlantis strip club. The caption next to the image of Pepaj advertised "Pre 'Naughty St. Patty's Party" at Atlantis Gentlemen's Club where Everyone is IRISH for the day!  Come GET LUCKY with our Lovely Ladies…"  The use of this image falsely implied that Pepaj represents Atlantis strip club and that she authorized Atlantis to use her image for promotional and marketing purposes. The image was used without the consent of Pepaj and was manipulated to intentionally give the impression that Pepaj is a spokesperson for Atlantis, working at Atlantis, and/or that she endorses Atlantis.

206.    Pepaj's image, likeness, and/or identity in **Exhibit M** are being used as advertising and on social media.

207.    Pepaj has never been hired by Defendant or contracted with Defendant to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

208.    Defendant never sought permission or authority to use Pepaj's image, likeness, or identity to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

209.    Pepaj never gave permission, assigned, licensed, or otherwise consented to Defendant using her image, likeness, or identity to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

210.    Defendant neither offered nor paid any remuneration to Pepaj for the unauthorized use of her image, likeness, or identity.

211.    Defendant'ss use of Pepaj's image, likeness, and/or identity in connection with Atlantis's impugns Pepaj's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendant'ss establishment.

212. Defendant'ss improper use of Pepaj's image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Pepaj's image in their marketing activities and business. In doing so, Defendant hasfurther damaged Pepaj.

### Plaintiff Imogen Thomas

213. Thomas is, and at all times relevant to this action was, a glamour model and television personality. Thomas came to prominence in 2003, after winning *Miss Wales* and going on to represent Wales, England, United Kingdom at *Miss World* in China. Thomas achieved further notability when she appeared as a contestant on reality television programs such as *Big Brother*, *Big Brother's Little Brother*, and *Big Brother's Big Mouth*. Thomas has 200,000 followers on Instagram, 265,000 Facebook followers, and over 300,000 Twitter followers.

214. In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Thomas negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

215. Thomas' image, likeness, and/or identity are depicted in at least one photograph, enclosed as **Exhibit N** to the Complaint, which has been used at least one time to create the false perception that Thomas has consented or agreed to promote, advertise, market, and/or endorse Atlantis. Specifically, on March 8, 2016, Thomas' image was uploaded to Atlantis's Facebook page with intent to promote and market Atlantis strip club. The caption next to the image of Thomas advertised "Atlantis Gentlemen's Club." The use of this image falsely implied that Thomas represents Atlantis strip club and that she authorized Atlantis to use her image for promotional and marketing purposes. The image was used without the consent of Thomas and was manipulated to intentionally give the impression that Thomas is a spokesperson for Atlantis, working at Atlantis, and/or that she endorses Atlantis.

216. Thomas' image, likeness, and/or identity in **Exhibit N** are being used as advertising and on social media.

217. Thomas has never been hired by Defendant or contracted with Defendant to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

218. Defendant never sought permission or authority to use Thomas' image, likeness, or identity to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

219. Thomas never gave permission, or assigned, licensed, or otherwise consented to Defendant using her image, likeness, or identity to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

220. Defendant neither offered nor paid any remuneration to Thomas for the unauthorized use of her image, likeness, or identity.

221. Defendant'ss use of Thomas' image, likeness, and/or identity in connection with Atlantis's impugns Thomas' character, embarrasses her, and suggests – falsely – her support and endorsement of Defendant'ss establishment.

222. Defendant'ss' improper use of Thomas' image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Thomas' image in their market activities and business. In doing so, Defendant hasfurther damaged Thomas.

### *Plaintiff Jessica Hinton a/k/a Jessa Hinton*

223. Hinton is, and at all times relevant to this action was, a model, actress, and host. Hinton was first introduced to the entertainment industry at age 14 when she was discovered by a talent manager at a wedding. She immediately booked three national TV commercials and made guest appearances on *Baywatch* and *7th Heaven* by the age of 16. At the age of 18, she began

working runway shows and doing print campaigns. In 2010, she became the face of the Palms Hotel & Casino's 2010 ad campaign. Hinton then expanded to TV personality roles, serving as host of *Victory Poker* and as an interview personality for *Top Rank Boxing* interviewing the likes of Manny Pacquiao and Shane Mosley. In 2011, Hinton was selected as the *Playboy* Playmate of the Month for July 2011, becoming one of the most popular Playmates of that year. She then became the centerpiece of an advertisement campaign for Milwaukee's Best Beer in conjunction with Playboy Enterprises.

224. In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Hinton negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

225. Hinton's image, likeness, and/or identity are depicted in at least two photographs, enclosed as **Exhibit O** to the Complaint, which has been used at least two times to create the false perception that Hinton has consented or agreed to promote, advertise, market, and/or endorse Atlantis. Specifically, on October 17, 2016, Hinton's image was uploaded to Atlantis's Facebook page with intent to promote and market Atlantis strip club. The caption next to the image of Hinton advertised "Word-Mode Monday, don't let the JOBSITE stress you out…make it a happy place. Knowing Every Monday the place to visit AFTER work is just a little detour away with Great Food, Cold Drinks & a Variety of Sexy Ladies to fulfill those inner desires only at Atlantis…" The use of this image falsely implied that Hinton represents Atlantis strip club and that she authorized Atlantis to use her image for promotional and marketing purposes. The image was used without the consent of Hinton and was manipulated to intentionally give the impression that Hinton is a spokesperson for Atlantis, a stripper working at Atlantis, and/or that she endorses Atlantis.

226. Hinton's image, likeness, and/or identity in **Exhibit O** are being used as advertising, on social media, and for branding purposes.

227. Hinton has never been hired by Defendant or contracted with Defendant to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

228. Defendant never sought permission or authority to use Hinton's image, likeness, or identity to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

229. Hinton never gave permission, or assigned, licensed, or otherwise consented to Defendant using her image, likeness, or identity to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

230. Defendant neither offered nor paid any remuneration to Hinton for the unauthorized use of her image, likeness, or identity.

231. Defendant'ss use of Hinton's image, likeness, and/or identity in connection with Atlantis impugns Hinton's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendant's establishment.

232. Defendant'ss improper use of Hinton's image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Hinton's image in their market activities and business. In doing so, Defendant has further damaged Hinton.

### *Plaintiff Jessica Burciaga*

233. Burciaga is, and at all times relevant to this action was, a model and a business owner. Burciaga has appeared in various magazines including *Playboy, Maxim, Import Tuner, Modified Mag, Performance Auto & Sound, Show Latina, and Lowrider Magazine*. In addition, Burciaga was named the "Playmate of the Month" in the February, 2009 issue of *Playboy,* and

has appeared as herself in several episodes of the reality TV series, *The Girls Next Door*. Recently, Burciaga has been focusing on various business ventures including a women's online clothing boutique, www.SailorandSaint.com. She also launched a business venture selling a brand of hair extensions on Bellami Hair Extensions. Burciaga's social media reach has hit 1.6 million followers on Instagram, over 271,000 Facebook likes, and 203,000 followers on Twitter

234. In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Burciaga negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

235. Burciaga's image, likeness, and/or identity are depicted in at least one photograph, enclosed as **Exhibit P** to the Complaint, which has been used at least one time to create the false perception that Burciaga has consented or agreed to promote, advertise, market and/or endorse Atlantis. Specifically, on May 15, 2016, Burciaga's image was uploaded to Atlantis's Facebook page with intent to promote and market Atlantis strip club. The caption next to the image of Burciaga advertised "Sinful Sunday's at the ATL is Funday…See you tonite, club opens 8pm & keeps the party going til 4pm with many Sexy Ladies in the Mix…" The use of this image falsely implied that Burciaga represents Atlantis strip club and that she authorized Atlantis to use her image for promotional and marketing purposes. The image was used without the consent of Burciaga and was manipulated to intentionally give the impression that Burciaga is a spokesperson for Atlantis, working at Atlantis, and/or that she endorses Atlantis.

236. Burciaga's image, likeness, and/or identity in **Exhibit P** are being used as advertising, on social media, and for branding purposes.

237. Burciaga has never been hired by Defendant or contracted with Defendant to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

238.    Defendant never sought permission or authority to use Burciaga's image, likeness, or identity to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

239.    Burciaga never gave permission, assigned, licensed, or otherwise consented to Defendant using her image, likeness, or identity to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

240.    Defendant neither offered nor paid any remuneration to Burciaga for the unauthorized use of her image, likeness, or identity.

241.    Defendant'ss use of Burciaga's image, likeness, and/or identity in connection with Atlantis impugns Hinton's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendant's establishment.

242.    Defendant'ss improper use of Burciaga's image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Burciaga's image in their market activities and business. In doing so, Defendant has further damaged Burciaga.

### *Plaintiff Marta Krupa*

243.    M.Krupa is, and at all times relevant to this action was, a glamour model and actress.  M.Krupa was a contestant on "Dancing with the Stars" in Poland and was a TV host on *FHM* South Africa Calendar.  She has appeared in cover magazines worldwide such as *944, FHM, LA Direct, Naluda*, and *Bay Harbor San Fran*.  M.Krupa also acts and sign, releasing a single on iTunes called "Limbo". She has appeared on 13 episodes of The Real Housewives of Miami and she just finished a movie that is soon to be released, called "You Can't Have It."

244.    In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, M.Krupa negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

245.    M.Krupa's image, likeness, and/or identity are depicted in at least one photograph, enclosed as **Exhibit Q** to the Complaint, which has been used at least one time to create the false perception that M.Krupa has consented or agreed to promote, advertise, market, and/or endorse Atlantis. Specifically, on February 29, 2016, M.Krupa's image was uploaded to Atlantis's Facebook page with intent to promote and market Atlantis strip club. The caption next to the image of M.Krupa advertised "Let's Play tonite with our 2-4 Dance Specials throughout the night featuring…"  The use of this image falsely implied that M.Krupa represents Atlantis strip club and that she authorized Atlantis to use her image for promotional and marketing purposes. The image was used without the consent of M.Krupa and was manipulated to intentionally give the impression that M.Krupa is a spokesperson for Atlantis, working at Atlantis, and/or that she endorses Atlantis.

246.    M.Krupa's image, likeness, and/or identity in **Exhibit Q** are being used as advertising, on social media, and for branding purposes.

247.    M.Krupa has never been hired by Defendant or contracted with Defendant to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

248.    Defendant never sought permission or authority to use M.Krupa's image, likeness, or identity to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

249. M.Krupa never gave permission, or assigned, licensed or otherwise consented to Defendant using her image, likeness or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis event.

250. Defendant neither offered nor paid any remuneration to M.Krupa for the unauthorized use of her image, likeness, or identity.

251. Defendant'ss use of M.Krupa's image, likeness, and/or identity in connection with Atlantis impugns M.Krupa's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendant'ss establishment.

252. Defendant'ss improper use of M.Krupa's image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate M.Krupa's image in their market activities and business. In doing so, Defendant have further damaged M.Krupa.

### Plaintiff Joanna Krupa

253. J.Krupa is, and at all times relevant to this action was, a model, actress, and dancer. She has appeared on magazine covers including *Personal, Steppin' Out, Envy, Shape, FHM, Stuff, Inside Sport, Teeze*, and *Maxim*. J.Krupa was named the "Sexiest Swimsuit Model in the World" and *Maxim* ranked her #55 in its "2011 Hot 100". In 2004-2005, she was voted German Maxim's Model of the year. J.Krupa also models for ads with PETA and has appeared twice on the *Playboy* magazine cover. In addition, J.Krupa has appeared in the action film "Max Havoc: Curse of the Dragon," as well as the television show "Superstars" in June of 2009 and on Season 9 of "Dancing with the Stars." She is currently the head judge of Poland's "Next Top Model," and was previously a cast member for the reality television show "The Real Housewives of Miami."

254.    In all instances of commercial marketing and promotion of her image,

Likeness, or identity by third parties, J.Krupa negotiated and expressly granted authority for such

use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

255.    J.Krupa's image, likeness, and/or identity are depicted in at least one

photograph, enclosed as **Exhibit R** to the Amended Complaint, which has been used at least one

time to create the false perception that J.Krupa has consented or agreed to promote, advertise,

market, and/or endorse Atlantis.  Specifically, on February 29, 2016, J.Krupa's image was

uploaded to Atlantis's Facebook page with intent to promote and market Atlantis strip club.  The

caption next to the image of J.Krupa advertised "Let's Play tonite with our 2-4 Dance Specials

throughout the night featuring…"  The use of this image falsely implied that J.Krupa represents

Atlantis strip club and that she authorized Atlantis to use her image for promotional and

marketing purposes. The image was used without the consent of J.Krupa and was manipulated to

intentionally give the impression that J.Krupa is a spokesperson for Atlantis, working at Atlantis,

and/or that she endorses Atlantis.

256.    J.Krupa' image, likeness, and/or identity in **Exhibit R** are being used as

advertising and on social media.

257.    J.Krupa has never been hired by Defendant or contracted with Defendant

to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis

event.

258.    Defendant never sought permission or authority to use J.Krupa's image,

likeness, or identity to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis,

or any Atlantis event.

259.    J.Krupa never gave permission, assigned, licensed, or otherwise

consented to Defendant using her image, likeness, or identity to advertise, promote, market or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

260.    Defendant neither offered nor paid any remuneration to J.Krupa for the unauthorized use of her image, likeness, or identity.

261.    Defendant'ss use of J.Krupa's image, likeness, and/or identity in connection with Atlantis's impugns J.Krupa's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendant'ss establishment.

262.    Defendant'ss improper use of J.Krupa's image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate J.Krupa' image in their market activities and business. In doing so, Defendant has further damaged J.Krupa.

### *Plaintiff Ina Schnitzer a/k/a Jordan Carver*

263.    Schnitzer is, and at all times relevant to this action was, a German glamour model and actress based in the United States.  Schnitzer was a commercial spokeswoman for online German consumer electronics giant Redcoon. She appeared on the cover of *Britain's Zoo* magazine six times and won a contest for the racing sport seat production company COBRA, laterbecaming their spokes model, a position she held till recently.  She later won second place on the Top 100 Internet Model Newcomer of the Year list after being nominated by Break Media.  She has 2.1 million followers on Instagram, nearly 200,000 followers on Twitter, and over 5.6 million followers on Facebook.

264.    In all instances of commercial marketing and promotion of her image, Likeness, or identity by third parties, Schnitzer negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

265.     Schnitzer's image, likeness, and/or identity are depicted in at least two photographs, enclosed as **Exhibit S** to the Complaint, which have been used at least three time to create the false perception that Schnitzer has consented or agreed to promote, advertise, market and/or endorse Atlantis. Specifically, on September 6, 2015, Schnitzer's image was uploaded to Atlantis's Facebook page with intent to promote and market Atlantis strip club. The caption next to the image of Schnitzer advertised "NO work tomorrow…join us for the Labor day party-doors open at 3pm on Monday with many sexy ladies in the mix!"  The use of this image falsely implied that Schnitzer represents Atlantis strip club and that she authorized Atlantis to use her image for promotional and marketing purposes. The image was used without the consent of Schnitzer and was manipulated to intentionally give the impression that Schnitzer is a spokesperson for Atlantis, working at Atlantis, and/or that she endorses Atlantis.

266.     Schnitzer's image, likeness, and/or identity in **Exhibit S** are being used as advertising, on social media, and for branding purposes.

267.     Schnitzer has never been hired by Defendant or contracted with Defendant to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

268.     Defendant never sought permission or authority to use Schnitzer's image, Likeness, or identity to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

269.     Schnitzer never gave permission, assigned, licensed, or otherwise consented to Defendant using her image, likeness or identity to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

270.     Defendant neither offered nor paid any remuneration to Schnitzer for the

unauthorized use of her image, likeness, or identity.

271.    Defendant'ss use of Schnitzer's image, likeness, and/or identity in connection with Atlantis impugns Schnitzer's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendant'ss establishment.

272.    Defendant'ss improper use of Schnitzer's image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Schnitzer's image in their market activities and business. In doing so, Defendant has further damaged Schnitzer.

### *Plaintiff Katarina Van Derham*

273.    Derham is, and at all times relevant to this action was, a successful model, actress, philanthropist, and entrepreneur. As a model, Derham has appeared on over 60 magazine covers and 600 media outlets including the Time Square jumbotron, CNN, FOX, and NBC.  She has appeared in 17 national and international print and television commercials and has been voted one of the 100 sexiest women in the world by magazines on 3 different continents.  As an actress, she appeared opposite Bob Saget in the television show Entourage and plays one of the lead roles in the upcoming movie, "Unbelievable" alongside Nichelle Nichols, Rim Russ, and Gilbert Gottfried. Currently, Derham is working on the movie, "Vendetta Vette." She is also a founder, CEO, and Editor-in-Chief of classic, glamour lifestyle magazine, *VIVA GLAM*. She regularly serves as a judge for model contests and beauty pageants around the globe. She has over 98,000 Instagram followers, over 17,800 Twitter followers, and over 12,000 Facebook followers.

274.    In all instances of commercial marketing and promotion of her image, Likeness, or identity by third parties, Derham negotiated and expressly granted authority for such

use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

275.    Derham's image, likeness and/or identity are depicted in at least three photographs, enclosed as **Exhibit T** to the Complaint, which have each been used at least one time to create the false perception that Derham has consented or agreed to promote, advertise, market, and/or endorse Atlantis.  Specifically, on April 8, 2015, Derham's image was uploaded to Atlantis's Facebook page with intent to promote and market Atlantis strip club. The caption next to the image of Derham advertised "Vegas Style Venue with Fantastic FINE Dining. Amazing SEXY Staff with the Best Looking BEAUTIFUL Entertainment in the Midwest."  The use of this image falsely implied that Derham represents Atlantis strip club and that she authorized Atlantis to use her image for promotional and marketing purposes. The image was used without the consent of Derham and was manipulated to intentionally give the impression that Derham is a spokesperson for Atlantis, a stripper working at Atlantis, and/or that she endorses Atlantis.

276.    Derham's image, likeness, and/or identity in **Exhibit T** are being used as advertising and on social media.

277.    Derham has never been hired by Defendant or contracted with Defendant to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

278.    Defendant never sought permission or authority to use Derham's image, likeness, or identity to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

279.    Derham never gave permission, assigned, licensed, or otherwise consented to Defendant using her image, likeness, or identity to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

280.     Defendant neither offered nor paid any remuneration to Derham for the unauthorized use of her image, likeness, or identity.

281.     Defendant'ss use of Derham's image, likeness, and/or identity in connection with Atlantis's impugns Derham's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendant'ss establishment.

282.     Defendant'ss improper use of Derham's image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Derham' image in their market activities and business. In doing so, Defendant has further damaged Derham.

### Plaintiff Laurie Young

283.     Young is, and at all times relevant to this action was, a successful model and actress.  Young's modeling and acting career includes photo shoots, parts on major a TV series, and magazine shoots.   Young models for Shirley's of Hollywood, is an ambassador and cheerleader for the NHRA drag racing series, is the 2015 *Kandy Magazine* model of the year, and has done a number of television commercials, including for Adam and Eve products.

284.     In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Young negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

285.     Young's image, likeness, and/or identity are depicted in at least one photograph, enclosed as **Exhibit U** to the Complaint, which has been used at least two times to create the false perception that Young has consented or agreed to promote, advertise, market, and/or endorse Atlantis. Specifically, on March 8, 2017, Young's image was uploaded to Atlantis's Facebook page with intent to promote and market Atlantis strip club. The caption next to the image of Young advertised "Shake those Shamrocks…Join us at Atlantis for our "Naughty St.

Patty's Party" next Friday the 17th...GET LUCKY with our Lovely Leprechauns on your Lap."
The use of this image falsely implied that Young represents Atlantis strip club and that she
authorized Atlantis to use her image for promotional and marketing purposes. The image was
used without the consent of Young and was manipulated to intentionally give the impression that
Young is a spokesperson for Atlantis, working at Atlantis, and/or that she endorses Atlantis.

286.    Young's image, likeness and/or identity in **Exhibit U** are being used as
advertising, on social media, and for branding purposes.

287.    Young has never been hired by Defendant or contracted with Defendant to
advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

288.    Defendant never sought permission or authority to use Young's image, likeness,
or identity to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any
Atlantis event.

289.    Young never gave permission, assigned, licensed, or otherwise consented to
Defendant using her image, likeness, or identity to advertise, promote, market, or endorse
Defendant'ss businesses, Atlantis, or any Atlantis event.

290.    Defendant neither offered nor paid any remuneration to Young for the
unauthorized use of her image, likeness, or identity.

291.    Defendant'ss use of Young's image, likeness, and/or identity in connection with
Atlantis impugns Young's character, embarrasses her, and suggests – falsely – her support and
endorsement of Defendant'ss establishment.

292.    Defendant'ss improper use of Young's  image permitted, encouraged, or
facilitated other persons, firms, and entities to further utilize and misappropriate Young's image
in their market activities and business. In doing so, Defendant has further damaged Young.

*Plaintiff Lina Posada*

293.    Posada is, and at all times relevant to this action was, a fashion model and designer.    A native of Barranquilla, Colombia, Posada best known as a model for the *Besame* and *Espiral* lingerie collections.    Posada has also modeled *for* Paradizia *Swimwear, Babalú Swimwear, Irgus Swimwear, Ujeans*, as well as many others. She has over 500,000 YouTube views, over 5,600 Twitter followers, 6,630 Facebook followers, and over 91,200 Instagram followers.

294.    In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Posada negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

295.    Posada's image, likeness, and/or identity are depicted in at least one photograph, enclosed as **Exhibit V** to the Complaint, which has been used at least one time to create the false perception that Posada has consented or agreed to promote, advertise, market, and/or endorse Atlantis. Specifically, on April 23, 2016, Posada's image was uploaded to Atlantis's Facebook page with intent to promote and market Atlantis strip club.    The caption next to the image of Posada advertised "Atlantis Gentlemen's Club."    The use of this image falsely implied that Posada represents Atlantis strip club and that she authorized Atlantis to use her image for promotional and marketing purposes. The image was used without the consent of Posada and was manipulated to intentionally give the impression that Posada is a spokesperson for Atlantis, working at Atlantis, and/or that she endorses Atlantis.

296.    Posada's image, likeness, and/or identity in **Exhibit V** are being used as advertising and on social media.

297.    Posada has never been hired by Defendant or contracted with Defendant to

advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

298.    Defendant never sought permission or authority to use Posada's image, likeness, or identity to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

299.    Posada never gave permission, assigned, licensed, or otherwise consented to Defendant using her image, likeness, or identity to advertise, promote, market or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

300.    Defendant neither offered nor paid any remuneration to Posada for the unauthorized use of her image, likeness, or identity.

301.    Defendant'ss use of Posada's image, likeness, and/or identity in connection with Atlantis's impugns Posada' character, embarrasses her, and suggests – falsely – her support and endorsement of Defendant'ss establishment.

302.    Defendant'ss improper use of Posada's image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Posada' image in their market activities and business. In doing so, Defendant has further damaged Posada.

### *Plaintiff Lucy Pinder*

303.    Pinder is, and at all times relevant to this action was, a glamour model, actress, host, and a businesswoman. Pinder has been featured in publications such as *FHM and the Daily Star* andwas one of *FHM's* "100 Sexiest Women in the World" in 2005 through2007. Pinder was a guest columnist in *Nuts*, entitled "The Truth About Women" and appeared on the final edition of *Nuts* magazine cover. Pinder has collaborated with major brands such as Unilever (Lynx) and Camelot (National Lottery), and on large national and international advertising campaigns. Pinder has an established and developing acting career with many television

appearances and film credits, such as *I'm Famous and Frightened*, *Soccer AM, Weakest Link, Nuts Tv* (host), *MTV's TMF* (presenter), *Hotel Babylon,* and *Team and Bo!* Pinder was also a contestant on *Celebrity Big Brother*. Pinder had starring roles in films such as *The Seventeenth Kind, Age of Kill,* and *Warrior Savitri*. Pinder has also worked with *Help for Heroes* appearing in the *Hots Shots* fund raising calendar and supported Male Cancer Awareness Campaign taking part in their MCAC London Strut awareness initiative. She also visited the troops in Afghanistan in 2007. Pinder's active calendar enhances her status as social media influencer with almost 1.5 million Instagram followers and 500,000 Twitter followers.

304.    In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Pinder negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

305.    Pinder's image, likeness, and/or identity are depicted in at least two photographs, enclosed as **Exhibit W** to the Complaint, which have each been used at least one time to create the false perception that Pinder has consented or agreed to promote, advertise, market and/or endorse Atlantis. Specifically, on April 6, 2016, Pinder's image was uploaded to Atlantis's Facebook page with intent to promote and market Atlantis strip club. The caption next to the image of Pinder advertised "Come for the Music, Stay for the Dances with our 30 'Sexy' Ladies waiting for you in the MIX at ATL." The use of this image falsely implied that Pinder represents Atlantis strip club and that she authorized Atlantis to use her image for promotional and marketing purposes. The image was used without the consent of Pinder and was manipulated to intentionally give the impression that Pinder is a spokesperson for Atlantis, working at Atlantis, and/or that she endorses Atlantis.

306. Pinder's image, likeness, and/or identity in **Exhibit W** are being used as advertising, on social media, and for branding purposes.

307. Pinder has never been hired by Defendant or contracted with Defendant to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

308. Defendant never sought permission or authority to use Pinder's image, likeness, or identity to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

309. Pinder never gave permission, assigned, licensed, or otherwise consented to Defendant using her image, likeness, or identity to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

310. Defendant neither offered nor paid any remuneration to Pinder for the unauthorized use of her image, likeness or identity.

311. Defendant'ss use of Pinder's image, likeness, and/or identity in connection with Atlantis impugns Pinder's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendant'ss establishment.

312. Defendant's improper use of Pinder's image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Pinder's image in their market activities and business. In doing so, Defendant has further damaged Pinder.

### Plaintiff Malu "Masha" Lund

313. Lund is, and at all times relevant to this action was, an international model, actress, and designer. Lund is a model for Rockstar Energy Drinks, appearing on billboards in 20 cities throughout the United States, and has appeared the covers of *FHM*, *Maxim*, and *People Magazine*. Lund was also named one of the "Sexiest Women in the World" by *FHM*. Lund has

acted in several feature films, including *The Pick of Destiny* and *Epic Movie*, and has starred in music videos for Eminem and Lady Gaga, among others. Lund has served as a spokes model for several brands including Dreamgirl Lingerie Clothing Company for eight years, starred in a popular Danish reality show, is currently working on her own pet clothing line, and is an interior decorator, blogger, and endorser for several beauty companies.

314.    In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Lund negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

315.    Lund's image, likeness, and/or identity are depicted in at least two photographs, enclosed as **Exhibit X** to the Complaint, which have each been used at least one time to create the false perception that Lund has consented or agreed to promote, advertise, market, and/or endorse Atlantis. Specifically, on April 19, 2016, Lund's image was uploaded to Atlantis's Facebook page with intent to promote and market Atlantis strip club. The caption next to the image of Lund advertised "WEDDING season is here at Atlantis Gentlemen's Club and we can't wait to make "that guy's" most special day ever…before he gets MARRIED!..."Have your next BACHELOR party with us…"  The use of this image falsely implied that Lund represents Atlantis strip club and that she authorized Atlantis to use her image for promotional and marketing purposes. The image was used without the consent of Lund and was manipulated to intentionally give the impression that Lund is a spokesperson for Atlantis, working at Atlantis, and/or that she endorses Atlantis.

316.    Lund's image, likeness, and/or identity in **Exhibit X** are being used as advertising and on social media.

317.    Lund has never been hired by Defendant or contracted with Defendant to

advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

318.    Defendant never sought permission or authority to use Lund's image, likeness, or identity to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

319.    Lund never gave permission, assigned, licensed, or otherwise consented to Defendant using her image, likeness, or identity to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

320.    Defendant neither offered nor paid any remuneration to Lund for the unauthorized use of her image, likeness, or identity.

321.    Defendant'ss use of Lund's image, likeness, and/or identity in connection with Atlantis's impugns Lund's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendant'ss establishment.

322.    Defendant'ss improper use of Lund's image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Lund' image in their market activities and business. In doing so, Defendant has further damaged Lund.

### *Plaintiff Megan Vogt a/k/a Megan Vogt Daniels*

323.    Vogt is, and at all times relevant to this action was, an international model and DJ. As a model, Vogt has been featured in ad campaigns with Snoop Dog, Famous Stars and Straps, Radii Shoes, and Gears of War. She has also graced the covers of many magazines including *American Curves Magazine, Heavy Metal magazine, Ink Junkie Magazine, Outlaw Biker Magazine, Tattoo Magazine, Obscene Magazine, Strobe Magazine, Tattoos for Men, Lowrider Magazine, Rebel Ink Magazine, Street King Magazine, Tattoo Feuerwerk, Maxim's Best of the Web, Muscle Mag, Inked Magazine, and Alt Girls Magazine..* As a DJ, Vogt has toured through

the United States and internationally including Hong Kong, Macau, Istanbul, Mumbai, Saint Martin, Saint Croix, Edmonton, Montreal, Quebec City, Shanghai, Shenzhen, Calgary, Las Vegas, Chicago, Los Angeles, Hollywood, Detroit, San Francisco, San Jose, San Diego, Milwaukee, Myrtle Beach, Salt Lake City, and Oklahoma City . Vogt has headlined major festivals such as the Illuminate festival in Mumbai, India and Bump Music Festival in Stockton, California. Vogt regularly plays at prestigious US venues including Avalon in Hollywood, Vanity in Las Vegas, Blok in Hollywood, Sutra in Newport Beach, Artisan in Las Vegas, and Vertigo in Chicago.

324.    In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Vogt negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

325.    Vogt's image, likeness and/or identity are depicted in at least four photographs, enclosed as **Exhibit Y** to the Complaint, which have each been used at least one time to create the false perception that Vogt has consented or agreed to promote, advertise, market and/or endorse Atlantis. Specifically, on April 15, 2016, Vogt's image was uploaded to Atlantis's Facebook page with intent to promote and market Atlantis strip club. The caption next to the image of Vogt advertised "TGIF-Typical Friday, Playing POOL this weekend? It doesn't get better than at ATLANTIS with over 60 beautify women to FULFILL your Fantasy…"  The use of this image falsely implied that Vogt represents Atlantis strip club and that she authorized Atlantis to use her image for promotional and marketing purposes. The image was used without the consent of Vogt and was manipulated to intentionally give the impression that Vogt is a spokesperson for Atlantis, working at Atlantis, and/or that she endorses Atlantis.

326.    Vogt's image, likeness, and/or identity in **Exhibit Y** are being used as advertising, on social media, and for branding purposes.

327.    Vogt has never been hired by Defendant or contracted with Defendant to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

328.    Defendant never sought permission or authority to use Vogt's image, likeness, or identity to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

329.    Vogt never gave permission, assigned, licensed, or otherwise consented to Defendant using her image, likeness, or identity to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

330.    Defendant neither offered nor paid any remuneration to Vogt for the unauthorized use of her image, likeness, or identity.

331.    Defendant'ss use of Vogt's image, likeness, and/or identity in connection with Atlantis impugns Vogt's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendant'ss establishment.

332.    Defendant'ss improper use of Vogt's image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Vogt's image in their market activities and business. In doing so, Defendant has further damaged Vogt.

### *Plaintiff Mercedes Terrell*

333.    Terrell is, and at all times relevant to this action was, an American model and spokesmodel.  Terrell works with Monster Energy Supercross and has appeared at The Superbike Races special events and Moto GP Championship races.  Terrell is best known, and has a huge social media following, as one of the main Ring Girls for Bellator MMA fighting.

Terrell has been featured in a number of magazines and appeared on the cover of *Wheels and Heels* magazine, *Dub Magazine, Beer magazine, Girls Lowrider*, and many more.

334.    In all instances of commercial marketing and promotion of her image, Likeness, or identity by third parties, Terrell negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

335.    Terrell's image, likeness, and/or identity are depicted in at least one photograph, enclosed as **Exhibit Z** to the Complaint, which has been used at least one time to create the false perception that Terrell has consented or agreed to promote, advertise, market, and/or endorse Atlantis. Specifically, on January 28, 2017, Terrell's image was uploaded to Atlantis's Facebook page with intent to promote and market Atlantis strip club. The caption next to the image of Terrell advertised "Good morning…What's for breakfast?...There is nothing like Atlantis on Saturday night.  No reason to be lonely, let the lovely ladies of Atlantis explore your deepest desires…"  The use of this image falsely implied that Terrell represents Atlantis strip club and that she authorized Atlantis to use her image for promotional and marketing purposes. The image was used without the consent of Terrell and was manipulated to intentionally give the impression that Terrell is a spokesperson for Atlantis, working at Atlantis, and/or that she endorses Atlantis.

336.    Terrell's image, likeness, and/or identity in **Exhibit Z** are being used as advertising and on social media.

337.    Terrell has never been hired by Defendant or contracted with Defendant to advertise, promote, market or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

338.    Defendant never sought permission or authority to use Terrell's image, likeness, or identity to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

Case: 1:17-cv-07368 Document #: 1 Filed: 10/12/17 Page 63 of 389 PageID #:63


339.     Terrell never gave permission, assigned, licensed, or otherwise consented to Defendant using her image, likeness, or identity to advertise, promote, market or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

340.     Defendant neither offered nor paid any remuneration to Terrell for the unauthorized use of her image, likeness, or identity.

341.     Defendant'ss use of Terrell's image, likeness, and/or identity in connection with Atlantis's impugns Terrell's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendant'ss establishment.

342.     Defendant'ss improper use of Terrell's image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Terrell' image in their market activities and business. In doing so, Defendant has further damaged Terrell.

### Plaintiff Rachel Koren a/k/a Rachel Koren Bernstein

343.     Koren is, and at all times relevant to this action was, an international model. She has walked runways for fashion shows in Miami's Mercedes Benz Fashion Week, filmed for travel TV show "Bikini Destinations," shot for major campaigns in Los Angeles, California, and is the face of many brands. Koren appeared in a campaign for MIDORI with Kim Kardashian and in the movie "Date Night" starring Steve Carell and Tina Fey. She has also made television appearances and been published in major campaigns for companies and magazines including Nike, Reebok, Affliction Clothing, Volcom, Body Glove, Sinful, American Customs, Alo, *Modern Salon Magazine*, No Fear, Axe Body Spray, Paul Mitchell, *Vibra Magazine*, *Launch Pad Magazine*, *Cut & Dry Magazine*, *Hairdo Magazine*, Sunset Tan, Divine Boutique, *Esquire Magazine*, *Vogue Magazine*, True Religion, Jessica Simpson Swimwear, Ed Hardy, Christian Audigier, Smet, *Rebel X Magazine*, SNI Swimwear, Tommy Bahama, Roma, J Valentine,

Sunsets Inc, B Swim, Love Culture, *Maxim*, *Viva Glam Magazine*, Fantasy Lingerie, Elegant Moments, So Cal Swimwear, No Fear, *Swim Magazine*, American Honey, and Have Faith Swimwear. She currently owns her own company, Cashmere Hair Extensions, which appeared on the show "Shark Tank" in 2013.

344. In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Koren negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

345. Koren's image, likeness, and/or identity are depicted in at least one photograph, enclosed as **Exhibit AA** to the Complaint, which has been used at least one time to create the false perception that Koren has consented or agreed to promote, advertise, market, and/or endorse Atlantis. Specifically, on January 18, 2015, Koren's image was uploaded to Atlantis's Facebook page with intent to promote and market Atlantis strip club. The caption next to the image of Koren advertised "SEXY SUPERBOWL at ATLANTIS Sunday –Feb. 1st Club OPEN at 5pm…" The use of this image falsely implied that Koren represents Atlantis strip club and that she authorized Atlantis to use her image for promotional and marketing purposes. The image was used without the consent of Koren and was manipulated to intentionally give the impression that Koren is a spokesperson for Atlantis, working at Atlantis, and/or that she endorses Atlantis.

346. Koren's image, likeness, and/or identity in **Exhibit AA** are being used as advertising, on social media, and for branding purposes.

347. Koren has never been hired by Defendant or contracted with Defendant to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

348.    Defendant never sought permission or authority to use Koren's image, likeness, or identity to advertise, promote, market, or endorse Defendant's businesses, Atlantis, or any Atlantis event.

349.    Koren never gave permission, assigned, licensed, or otherwise consented to Defendant using her image, likeness, or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis, or any Atlantis event.

350.    Defendant neither offered nor paid any remuneration to Koren for the unauthorized use of her image, likeness, or identity.

351.    Defendant'ss use of Koren's image, likeness, and/or identity in connection with Atlantis impugns Koren's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendant'ss establishment.

352.    Defendant's improper use of Koren's image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Koren's image in their market activities and business. In doing so, Defendant hasfurther damaged Koren.

### *Plaintiff Rosie Jones*

353.    Jones is, and at all times relevant to this action was, a model and actress.  Jones started modeling at the age of 17 and has been a Page 3 girl for The Sun newspaper and modeled for *FHM* and *Front*.  Jones has appeared in numerous music videos and is a well-known philanthropist, having raised money for organizations such as Help for Heroes by ascending Mount Toubkal in Morocco.  Jones' social media profile is growing rapidly along with a professional personal website that was built by her fans.

354.    In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Jones negotiated and expressly granted authority for such use pursuant

to agreed-upon terms and conditions and for agreed-upon compensation.

355.     Jones' image, likeness, and/or identity are depicted in at least four photographs, enclosed as **Exhibit BB** to the Amended Complaint, which have each been used at least one time to create the false perception that Jones has consented or agreed to promote, advertise, market and/or endorse Atlantis. Specifically, on May 15, 2016, Jones' image was uploaded to Atlantis's Facebook page with intent to promote and market Atlantis strip club. The caption next to the image of Jones advertised "Partying til the #Wee Hours of the morning…Atlantis has Plenty of #EyeCandy…The official only 'After-the After-Party' in the Chicago South Suburbs XOXO." The use of this image falsely implied that Jones represents Atlantis strip club and that she authorized Atlantis to use her image for promotional and marketing purposes. The image was used without the consent of Jones and was manipulated to intentionally give the impression that Jones is a spokesperson for Atlantis, working at Atlantis, and/or that she endorses Atlantis.

356.     Jones' image, likeness, and/or identity in **Exhibit BB** are being used as advertising and on social media.

357.     Jones has never been hired by Defendant or contracted with Defendant to advertise, promote, market or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

358.     Defendant never sought permission or authority to use Jones' image, likeness, or identity to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

359.     Jones never gave permission, assigned, licensed, or otherwise consented to Defendant using her image, likeness, or identity to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis' or any Atlantis event.

360.     Defendant neither offered nor paid any remuneration to Jones for the

unauthorized use of her image, likeness, or identity.

361.    Defendant'ss use of Jones' image, likeness, and/or identity in connection with Atlantis's impugns Jones' character, embarrasses her, and suggests – falsely – her support and endorsement of Defendant'ss establishment.

362.    Defendant'ss improper use of Jones' image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Jones' image in their market activities and business. In doing so, Defendant has further damaged Jones.

### Plaintiff Ursula Mayes

363.    Mayes is, and at all times relevant to this action was, a successful model and actress.   Mayes modeling career began when her photos won first place in a contest leading to spread in *Maxim* magazine.  She is well known as a suitcase model from the hit game show "Deal or No Deal," and has appeared on "Minute To Win It," "The Tonight Show," and "The Jay Leno Show."   She has also been featured in campaigns for Coronet Diamonds, Volkswagen, Subaru, Bacardi, *Vogue, Elle, In Style, Cosmopolitan*, and *Marie Claire*.  Mayes is a cover model and a star of the game "Juiced 2: Hot Import Nights," a modeling contract under CESD Talent Agency in Los Angeles, California, and assigned with Brand Model & Talent Agency.

364.    In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Mayes negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

365.    Mayes' image, likeness, and/or identity are depicted in at least one photograph, enclosed as **Exhibit CC** to the Complaint, which has been used at least one time to create the false perception that Mayes has consented or agreed to promote, advertise, market and/or endorse Atlantis. Specifically, on March 29, 2017, Mayes' image was uploaded to Atlantis's

Facebook page with intent to promote and market Atlantis strip club. The caption next to the image of Mayes advertised "ATLANTIS offer's #FullExposure Entertainment, #FullContact Intimate Dances…Open: 365 days…We never close…"  The use of this image falsely implied that Mayes represents Atlantis strip club and that she authorized Atlantis to use her image for promotional and marketing purposes. The image was used without the consent of Mayes and was manipulated to intentionally give the impression that Mayes is a spokesperson for Atlantis, working at Atlantis, and/or that she endorses Atlantis.

366.    Mayes' image, likeness, and/or identity in **Exhibit CC** are being used as advertising, on social media, and for branding purposes.

367.    Mayes has never been hired by Defendant or contracted with Defendant to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

368.    Defendant never sought permission or authority to use Mayes' image, likeness, or identity to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

369.    Mayes never gave permission, assigned, licensed, or otherwise consented to Defendant using her image, likeness, or identity to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

370.    Defendant neither offered nor paid any remuneration to Mayes for the unauthorized use of her image, likeness, or identity.

371.    Defendant'ss use of Mayes' image, likeness, and/or identity in connection with Atlantis impugns Mayes's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendant'ss establishment.

372.    Defendant'ss improper use of Mayes' image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Mayes's image in their market activities and business. In doing so, Defendant have further damaged Mayes.

*Plaintiff Vivian Kindle*

373.    Kindle is, and at all times relevant to this action was, a model and actress.  Kindle started modeling at the age of sixteen and has been published in several magazines including *Maxim, FHM, American Curves, Push, Esquire, GQ, and World Physique*. As an actress, she has appeared in the film "School Dance," appeared on MTV2 as an official WildNOut girl for season 5-7 of the show, and had a recurring role on the CBS soap opera "The Bold & Beautiful."

374.    In all instances of commercial marketing and promotion of her image, Likeness, or identity by third parties, Kindle negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

375.    Kindle's image, likeness, and/or identity are depicted in at least two photographs, enclosed as **Exhibit DD** to the Complaint, which have been used at least four times to create the false perception that Kindle has consented or agreed to promote, advertise, market, and/or endorse Atlantis. Specifically, on February 16, 2016, Kindle's image was uploaded to Atlantis's Facebook page with intent to promote and market Atlantis strip club. The caption next to the image of Kindle advertised "PILLOW TALK, It's not Bedtime yet…Atlantis is open til 4am…Come get a nightcap for sweet dreams from your SEXY Atlantis Entertainer of choice – TONITE!"  The use of this image falsely implied that Kindle represents Atlantis strip club and that she authorized Atlantis to use her image for promotional and marketing purposes. The image was used without the consent of Kindle and was manipulated to intentionally give the impression that Kindle is a spokesperson for Atlantis, working at Atlantis, and/or that she endorses Atlantis.

376. Kindle's image, likeness, and/or identity in **Exhibit DD** are being used as advertising and on social media.

377. Kindle has never been hired by Defendant or contracted with Defendant to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

378. Defendant never sought permission or authority to use Kindle's image, likeness, or identity to advertise, promote, market or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

379. Kindle never gave permission, assigned, licensed, or otherwise consented to Defendant using her image, likeness, or identity to advertise, promote, market, or endorse Defendant'ss businesses, Atlantis, or any Atlantis event.

380. Defendant neither offered nor paid any remuneration to Kindle for the unauthorized use of her image, likeness, or identity.

381. Defendant'ss use of Kindle's image, likeness, and/or identity in connection with Atlantis's impugns Kindle's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendant'ss establishment.

382. Defendant'ss improper use of Kindle's image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Kindle's image in their market activities and business. In doing so, Defendant has further damaged Kindle.

## CAUSES OF ACTION

*Plaintiff Jaime Ratchford's Causes of Action*
*against Defendant AEG Ventures, LLC d/b/a Atlantis Gentlemen's Club*

### RATCHFORD COUNT I
(**Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising**)

383.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Ratchford from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .".  15 U.S.C. §1125(a)(1)(B).

384.    Defendant used Ratchford's image, likeness and/or identity as described herein without authority in order to create the perception that Ratchford worked at or was otherwise affiliated with Atlantis, endorsed Defendant'ss businesses and activities, and/or consented to or authorized Defendant to use her image in order to advertise, promote, and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities.

385.    Defendant's use of Ratchford's image, likeness and/or identity to advertise, promote and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities as described in this Complaint was false and misleading.

386.    Defendant's unauthorized use of Ratchford's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Ratchford worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or

Atlantis's events and activities and/or that Ratchford would participate in or appear at the specific events promoted in the advertisements.

387.    Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Atlantis, as to the general quality of attendees and participants of Atlantis and in their events, as well as specifically whether Ratchford worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities.

388.    Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Ratchford worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events and activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities.

389.    Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Atlantis, visit Atlantis, and participate in events at Atlantis and had a material effect and impact on the decision of members and prospective members and participants to join Atlantis, visit Atlantis and take part in the events at Atlantis.

390.    Defendant's advertisements, promotions and marketing of Atlantis and events at Atlantis occur in and are targeted to interstate commerce. Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally use the World Wide Web,

social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Atlantis events.

391.    Defendant's unauthorized use of Ratchford's image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Atlantis and their activities and attracting clientele to Atlantis.

392.    Defendant knew or should have known that their unauthorized use of Ratchford's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

393.    Defendant's unauthorized use of Ratchford's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

394.    Defendant's wrongful conduct as described herein was willful.

395.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

396.    Defendant had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Ratchford of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Ratchford.

397.    The method and manner in which Defendant used the image of Ratchford further evinces that Defendant were aware of or consciously disregarded the fact that Ratchford did not consent to Defendant's use of the image to advertise Defendant's businesses.

398.    Defendant has caused irreparable harm to Ratchford, her reputation and brand by attributing to Ratchford the strip club lifestyle and activities at Atlantis.

399.     Defendant unauthorized use of Ratchford's image, likeness and/or identity directly and proximately caused and continue to cause damage to Ratchford in an amount to be determined at trial.

WHEREFORE, Ratchford respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

<u>RATCHFORD COUNT II</u>
(**Violation of §43 of the Lanham Act, 15 U.S.C. § 1125(a)** *et seq.:* **False Endorsement**)

400.     Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Ratchford from the conduct described herein.

401.     Defendant used Ratchford's image, *inter alia,* in order to create the false impression with the public that Ratchford either worked at Defendant's strip club, or endorsed Defendant's sexually-oriented businesses.

402.     This was done to promote and attract clientele to Atlantis, and thereby generate revenue for Defendant.

403.     Thus, this was done in furtherance of Defendant's commercial benefit.

404.     Ratchford is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Ratchford's images in magazines and online.

405.     Both Ratchford and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

406.    As such, an unauthorized use of Ratchford's image to promote a strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Ratchford.

407.    Defendant's use of Ratchford's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Ratchford's fans and present and prospective clients into believing that Atlantis's advertisements are endorsed by Ratchford, or sponsored, approved or associated with Ratchford.

408.    Despite the fact that Defendant were at all times aware that Ratchford neither worked at, nor endorsed their strip club, nevertheless, they used Ratchford's image in order to mislead potential customers as to Ratchford's employment at and/or affiliation with Atlantis.

409.    Defendant knew that their use of Ratchford's image would cause consumer confusion as to Ratchford's sponsorship and/or employment at Atlantis.

410.    Upon information and belief, Defendant's use of Ratchford's image did in fact cause consumer confusion as to Ratchford's employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

411.    As a direct and proximate result of Defendant's actions, Ratchford has no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisements depicting Ratchford's image, likeness and/or identity, or how Ratchford's image, likeness and/or identity is being depicted by Defendant.

412.    Further, any failure, neglect or default by Defendant will reflect adversely on Ratchford as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Ratchford to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her

personal modeling services to legitimate mainstream media, all to the irreparable harm of Ratchford.

413.    Due to Atlantis's unauthorized use of Ratchford's image, Ratchford has been damaged in an amount to be determined at trial.

**WHEREFORE**, Ratchford respectfully requests that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

### RATCHFORD COUNT III
(**Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10** *et seq. Right to Publicity*)

414.    Ratchford hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

415.    Ratchford has a right of publicity under IRPA, **765 ILCS 1075/10** *et seq. Right to Publicity*.

416.    Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Ratchford without express written or oral consent to such use.

417.    As set forth herein, Defendant has violated Ratchford's right to publicity by invading Plaintiff's privacy, misappropriating her likeness, and publishing on Atlantis social media outlets, the Image of Plaintiff which made it appear as though Plaintiff was employed at Atlantis, or endorsed the strip club.

418.    At all relevant times, Defendant published, printed, displayed and/or publicly used Ratchford's image, likeness or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing Atlantis and/or Atlantis's events and activities.

419.    The Atlantis social media outlets were designed to attract business to Atlantis and generate revenue for Defendant.

420.    Upon information and belief, Defendant'ss use of Plaintiff's Image did in fact attract clientele and generate business for Atlantis.

421.    Defendant took these actions without Ratchford's permission, consent or authority, be it written or otherwise. In fact, Defendant never sought permission nor authority to use Ratchford's image, likeness or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activities.

422.    Ratchford never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activity.

423.     Defendant was at all relevant times aware that they never received any Plaintiff's permission or consent to use their Image on any website or social media account, or on any other medium, in order to promote Atlantis.

424.    At no point did Defendant ever compensate Plaintiff for its use of her Images.

425.    No applicable privilege or authorization exists for Defendant'ss use of Plaintiff's Image.

426.    Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Ratchford's image, likeness or identity

without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

427.    Defendant had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Ratchford of a property interest during the entire time period in which the unauthorized use took place.

428.    At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Ratchford's rights.

429.    Alternatively, Defendant acted negligently towards Ratchford in using and disseminating, without authority, her image, likeness or identity on Atlantis's social media outlets in order to promote, advertise and market Atlantis and Atlantis's events and activities.

430.    Defendant caused irreparable harm to Ratchford, her reputation and brand by attributing to Ratchford the strip club lifestyle and activities at Atlantis.

431.    Defendant has also damaged Ratchford as a direct and proximate result of their unauthorized use of Ratchford's image, likeness and/or identity without compensating Ratchford.

432.    Due to Defendant'ss violation of Plaintiff's rights of privacy and publicity under IRPA, Plaintiff has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

433.    In addition, Plaintiff hereby requests an Order permanently enjoining Defendant from violating Plaintiff's right to privacy and publicity.

434.    In addition, Plaintiff hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendant knowing and intentional violation of her statutory rights to privacy and publicity.

**WHEREFORE**, Ratchford respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## RATCHFORD COUNT IV
### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)

435.    Ratchford hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

436.    Defendant published Ratchford's image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Atlantis and Atlantis's events and activities, causing her to be placed in a false light as a stripper or as someone who was affiliated with Atlantis, or endorsed Atlantis strip club before the public as a result of that publication.

437.    Without question, this "false light would be highly offensive to a reasonable person" and, by portraying Plaintiff in a false light Defendant did so with actual malice, with knowledge of or reckless disregard for the falsity of the statements.

438.    Defendant published Plaintiff's Image on the respective Atlantis social media outlets, in order to create the false impression that Plaintiff was either a stripper working at Atlantis, or endorsed Atlantis strip club.

439.    As such, Defendant'ss intent in publishing Plaintiff's Image was to mislead the public and cast her in a false light with respect to her affiliation with Atlantis.

As Defendant was at all times aware, Plaintiff never worked at any Atlantis strip club, never endorsed Atlantis, and never had any affiliation with Atlantis, or any Atlantis events or

activities.

440.  Defendant never sought permission or authority to use Ratchford's image, likeness or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's events or activities.

441.  Ratchford never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis event or activity.

442.  Defendant intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Ratchford's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

443.  Defendant had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Ratchford of a property interest during the entire time period in which the unauthorized use took place.

444.  At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Ratchford's rights.

445.  Alternatively, Defendant acted negligently towards Ratchford in using and disseminating, without authority, her image, likeness or identity on social media outlets in order to promote, advertise and market Atlantis and Atlantis's events and activities.

446.   Defendant has caused irreparable harm to Ratchford, her reputation and brand by attributing to Ratchford the strip club lifestyle and activities at Atlantis.

447.  Defendant has also damaged Ratchford as a direct and proximate result of their unauthorized use of Ratchford's image, likeness or identity without compensating Ratchford.

Defendant's conduct has been despicable and taken in conscious disregard of Ratchford's rights.

**WHEREFORE**, Ratchford respectfully requests that the Court issue a judgment against Defendant for all remedies available under law, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

### RATCHFORD COUNT V
### (Negligence and *Respondeat Superior*)

448.     Plaintiff hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

449.     Upon information and belief, Defendant was negligent in its failure to promulgate policies and procedures concerning the misappropriation of the Image of models that were used on the Atlantis Website and social media accounts.

450.     Said failure was the proximate cause of the harm Plaintiff suffered when her Image was published without her authorization.

451.     In the alternative, and upon information and belief, although Defendant promulgated policies and procedures concerning the misappropriation of images, Defendant nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated.

452.     In addition, Defendant had a duty to refrain from appropriating the Image of those with whom it had not contracted, and had not paid.

453.     Defendant violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

454.     As a result of Defendant'ss negligence, Plaintiff have suffered damages in an

amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

***Plaintiff Jessica Burciaga's Causes of Action
against Defendant AEG Ventures, LLC d/b/a Atlantis Gentlemen's Club***

**BURCIAGA COUNT I**
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)**

455.     Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Burciaga from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .".  15 U.S.C. §1125(a)(1)(B).

456.     Defendant used Burciaga's image, likeness and/or identity as described herein without authority in order to create the perception that Burciaga worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her image in order to advertise, promote, and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities.

457.     Defendant's use of Burciaga's image, likeness and/or identity to advertise, promote and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities as described in this Complaint was false and misleading.

458.     Defendant's unauthorized use of Burciaga's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Burciaga worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's

usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities and/or that Burciaga would participate in or appear at the specific events promoted in the advertisements.

459.    Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Atlantis, as to the general quality of attendees and participants of Atlantis and in their events, as well as specifically whether Burciaga worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities.

460.    Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Burciaga worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events and activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Atlantis, visit Atlantis, and participate in events at Atlantis and had a material effect and impact on the decision of members and prospective members and participants to join Atlantis, visit Atlantis and take part in the events at Atlantis.

461.    Defendant's advertisements, promotions and marketing of Atlantis and events at Atlantis occur in and are targeted to interstate commerce. Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally use the World Wide Web,

social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Atlantis events.

462.    Defendant's unauthorized use of Burciaga's image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Atlantis and their activities and attracting clientele to Atlantis.

463.    Defendant knew or should have known that their unauthorized use of Burciaga's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

464.    Defendant's unauthorized use of Burciaga's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

465.    Defendant's wrongful conduct as described herein was willful.

466.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

467.    Defendant had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Burciaga of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Burciaga.

468.    The method and manner in which Defendant used the image of Burciaga further evinces that Defendant were aware of or consciously disregarded the fact that Burciaga did not consent to Defendant's use of the image to advertise Defendant's businesses.

469.    Defendant had caused irreparable harm to Burciaga, her reputation and brand by attributing to Burciaga the strip club lifestyle and activities at Atlantis.

470.     Defendant's unauthorized use of Burciaga's image, likeness and/or identity directly and proximately caused and continue to cause damage to Burciaga in an amount to be determined at trial.

**WHEREFORE**, Burciaga respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## BURCIAGA COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)

471.     Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Burciaga from the conduct described herein.

472.     Defendant used Burciaga's image in order to create the false impression with the public that Burciaga either worked at Defendant's strip club, or endorsed Defendant's businesses. This was done to promote and attract clientele to Atlantis, and thereby generate revenue for Defendant.

473.     Thus, this was done in furtherance of Defendant's commercial benefit.

474.     Burciaga is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Burciaga's images in magazines and online.

475.     Both Burciaga and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

476.    As such, an unauthorized use of Burciaga's image to promote a strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Burciaga.

477.    Defendant's use of Burciaga's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Burciaga's fans and present and prospective clients into believing that Atlantis's advertisements are endorsed by Burciaga, or sponsored, approved or associated with Burciaga.

478.    Despite the fact that Defendant were at all times aware that Burciaga neither worked at, nor endorsed their strip club, nevertheless, they used Burciaga's image in order to mislead potential customers as to Burciaga's employment at and/or affiliation with Atlantis.

479.    Defendant knew that their use of Burciaga's image would cause consumer confusion as to Burciaga's sponsorship and/or employment at Atlantis.

480.    Upon information and belief, Defendant's use of Burciaga's image did in fact cause consumer confusion as to Burciaga's employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

481.    As a direct and proximate result of Defendant's actions, Burciaga has no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisements depicting Burciaga's image, likeness and/or identity, or how Burciaga's image, likeness and/or identity is being depicted by Defendant.

482.    Further, any failure, neglect or default by Defendant will reflect adversely on Burciaga as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Burciaga to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her

personal modeling services to legitimate mainstream media, all to the irreparable harm of Burciaga.

483.    Due to Atlantis's unauthorized use of Burciaga's image, Burciaga has been damaged in an amount to be determined at trial.

**WHEREFORE**, Burciaga respectfully requests that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

### BURCIAGA COUNT III
**(Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10 *et seq. Right to Publicity*)**

484.    Burciaga hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

485.    Burciaga has a statutory right of publicity under IRPA, **765 ILCS 1075/10**.

486.    As set forth herein, Defendant has violated Burciaga's right to publicity by invading Burciaga's privacy, misappropriating her likeness, and publishing on Atlantis social media outlets the altered Image of Burciaga which made it appear as though Burciaga was employed at Atlantis, or endorsed the strip club.

487.    Despite the clear language of IRPA, Defendant published Burciaga's image, likeness or identity on social media outlets, among others, in order to promote, advertise and market Atlantis and Atlantis's events and activities.

488.    The Atlantis social media outlets were used by Defendant for advertising and trade purposes.

489. The Atlantis social media outlets were designed to attract business to Atlantis and generate revenue for Defendant.

490. Upon information and belief, Defendant use of Burciaga's Image did in fact attract clientele and generate business for Atlantis.

491. At all relevant times and at no point did Defendant ever receive permission or consent, be it written or otherwise, to use Burciaga's Image on the Atlantis social media outlets or anywhere else.

492. Defendant never sought permission or authority to use Burciaga's image, likeness or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's events or activities.

493. Burciaga never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis event or activity.

494. Defendant was at all relevant times aware that they never received any Burciaga's permission or consent to use their Image on any website or social media account, or on any other medium, in order to promote Atlantis.

495. At no point did Defendant ever compensate Burciaga for its use of her Image.

496. No applicable privilege or authorization exists for Defendant'ss use of Burciaga's Image.

497. Due to Defendant'ss violation of Burciaga's rights of privacy and publicity under IRPA, Burciaga has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

498.    In addition, Burciaga hereby requests an Order permanently enjoining Defendant from violating Burciaga's right to privacy and publicity.

499.    In addition, Burciaga hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendant knowing and intentional violation of her statutory rights to privacy and publicity.

500.    Defendant intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Burciaga's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

501.    Defendant had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Burciaga of a property interest during the entire time period in which the unauthorized use took place.

502.    At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Burciaga's rights.

503.    Alternatively, Defendant acted negligently towards Burciaga in using and disseminating, without authority, her image, likeness or identity on social media outlets in order to promote, advertise and market Atlantis and Atlantis's events and activities.

504.    Defendant caused irreparable harm to Burciaga, her reputation and brand by attributing to Burciaga the strip club lifestyle and activities at Atlantis.

505.    Defendant damaged Burciaga as a direct and proximate result of their unauthorized use of Burciaga's image, likeness or identity without compensating Burciaga. Defendant's conduct has been despicable and taken in conscious disregard of Burciaga's rights.

**WHEREFORE**, Burciaga respectfully requests that the Court issue a judgment against Defendant for all remedies available under law, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## BURCIAGA COUNT IV
### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)

506.    Burciaga hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

507.    Defendant published Burciaga's Image on its social media outlets causing her to be placed in a false light as a stripper or as someone who was affiliated with or endorsed Atlantis strip club before the public as a result of that publication.

508.    Without question, this "false light would be highly offensive to a reasonable person" and, by portraying Burciaga in a false light Defendant did so with actual malice, with knowledge of or reckless disregard for the falsity of the statements.

509.    Defendant published Burciaga's Image on the Atlantis social media outlets in order to create the false impression that Burciaga was either a stripper working at Atlantis, or endorsed the strip club.

510.    As such, Defendant'ss intent in publishing Burciaga's Image was to mislead the public and cast her in a false light with respect to her affiliation with Atlantis.

511.    As Defendant was at all times aware, Burciaga never worked at any Atlantis strip club, never endorsed Atlantis, and never had any affiliation with Atlantis.

512.    Defendant'ss publication of Burciaga's Image was done without Burciaga's consent and was misleading in a material respect because it created the impression that Burciaga

was a stripper working at Atlantis, or endorsed Atlantis.

513.    As a result of Defendant'ss unauthorized and misleading publication of Burciaga's Image on the Atlantis billboard, Burciaga's reputation was injured.

514.    As a result of Defendant'ss unauthorized and misleading use of Burciaga's Image, Burciaga has been injured in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damage.

**WHEREFORE**, Burciaga respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## BURCIAGA COUNT V
### (Negligence and *Respondeat Superior*)

515.    Burciaga hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

516.    Upon information and belief, Defendant was negligent in its failure to promulgate policies and procedures concerning the misappropriation of the Image of models that were used on the Atlantis Website and social media accounts.

517.    Said failure was the proximate cause of the harm Burciaga suffered when her Image was published without her authorization.

518.    In the alternative, and upon information and belief, although Defendant promulgated policies and procedures concerning the misappropriation of images, Defendant nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law,

were not violated.

519.    In addition, Defendant had a duty to refrain from appropriating the Image of those with whom it had not contracted, and had not paid.

520.    Defendant violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

521.    As a result of Defendant'ss negligence, Burciaga have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

*Plaintiff Ana Cheri Moreland's Causes of Action*
*against Defendant AEG Ventures, LLC d/b/a Atlantis Gentlemen's Club*

**MORELAND COUNT I**
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)**

522.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Moreland from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .".  15 U.S.C. §1125(a)(1)(B).

523.    Defendant used Moreland's image, likeness and/or identity as described herein without authority in order to create the perception that Moreland worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her image in order to advertise, promote, and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities.

524.    Defendant's use of Moreland's image, likeness and/or identity to advertise, promote and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities as described in this Complaint was false and misleading.

525.    Defendant's unauthorized use of Moreland's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Moreland worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities and/or that Moreland would participate in or appear at the specific events promoted in the advertisements.

526.    Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Atlantis, as to the general quality of attendees and participants of Atlantis and in their events, as well as specifically whether Moreland worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities.

527.    Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Moreland worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events and activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice

consumers and prospective consumers to join Atlantis, visit Atlantis, and participate in events at Atlantis and had a material effect and impact on the decision of members and prospective members and participants to join Atlantis, visit Atlantis and take part in the events at Atlantis.

528.    Defendant's advertisements, promotions and marketing of Atlantis and events at Atlantis occur in and are targeted to interstate commerce. Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Atlantis events.

529.    Defendant's unauthorized use of Moreland's image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Atlantis and their activities and attracting clientele to Atlantis.

530.    Defendant knew or should have known that their unauthorized use of Moreland's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

531.    Defendant's unauthorized use of Moreland's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

532.    Defendant's wrongful conduct as described herein was willful.

533.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

534.    Defendant had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Moreland of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Moreland.

535. The method and manner in which Defendant used the image of Moreland further evinces that Defendant were aware of or consciously disregarded the fact that Moreland did not consent to Defendant's use of the image to advertise Defendant's businesses.

536. Defendant had caused irreparable harm to Moreland, her reputation and brand by attributing to Moreland the strip club lifestyle and activities at Atlantis.

537. Defendant's unauthorized use of Moreland's image, likeness and/or identity directly and proximately caused and continue to cause damage to Moreland in an amount to be determined at trial.

**WHEREFORE**, Moreland respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## MORELAND COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)

538. Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Moreland from the conduct described herein.

539. Defendant used Moreland's image in order to create the false impression with the public that Moreland either worked at Defendant's strip club, or endorsed Defendant's businesses. This was done to promote and attract clientele to Atlantis, and thereby generate revenue for Defendant.

540. Thus, this was done in furtherance of Defendant's commercial benefit.

541. Moreland is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Moreland's images in magazines and online.

542. Both Moreland and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

543. As such, an unauthorized use of Moreland's image to promote a strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Moreland.

544. Defendant's use of Moreland's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Moreland's fans and present and prospective clients into believing that Atlantis's advertisements are endorsed by Moreland, or sponsored, approved or associated with Moreland.

545. Despite the fact that Defendant were at all times aware that Moreland neither worked at, nor endorsed their strip club, nevertheless, they used Moreland's image in order to mislead potential customers as to Moreland's employment at and/or affiliation with Atlantis.

546. Defendant knew that their use of Moreland's image would cause consumer confusion as to Moreland's sponsorship and/or employment at Atlantis.

547. Upon information and belief, Defendant's use of Moreland's image did in fact cause consumer confusion as to Moreland's employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

548. As a direct and proximate result of Defendant's actions, Moreland has no control over the nature and quality of the line of products or services provided by Defendant, the nature

of the advertisements depicting Moreland's image, likeness and/or identity, or how Moreland's image, likeness and/or identity is being depicted by Defendant.

549.     Further, any failure, neglect or default by Defendant will reflect adversely on Moreland as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Moreland to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Moreland.

550.     Due to Atlantis's unauthorized use of Moreland's image, Moreland has been damaged in an amount to be determined at trial.

**WHEREFORE**, Moreland respectfully requests that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## <u>MORELAND COUNT III</u>
(**Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10** *et seq. Right to Publicity*)

551.     Moreland hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

552.     Moreland has a right of publicity under IRPA, 765 ILCS 1075/10 *et seq. Right to Publicity*.

553. Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Moreland without express written or oral consent to such use.

554. As set forth herein, Defendant has violated Moreland's right to publicity by invading Moreland's privacy, misappropriating her likeness, and publishing on Atlantis social media outlets, the altered Image of Moreland which made it appear as though Moreland was employed at Atlantis, or endorsed Atlantis strip club.

555. Despite the clear language of IRPA and at all relevant times, Defendant published, printed, displayed and/or publicly used Moreland's image, likeness or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing Atlantis and/or Atlantis's events and activities.

556. The respective social media outlets were designed to attract business and generate revenue for Atlantis.

557. Upon information and belief, Defendant'ss use of Moreland's image, likeness or identity did in fact attract clientele and generate business for Atlantis.

558. At all relevant times and at no point did Defendant ever receive permission or consent, be it written or otherwise, to use Moreland's Image on the Atlantis social media outlets or anywhere else.

559. Defendant took these actions without Moreland's permission, consent or authority, be it written or otherwise. In fact, Defendant never sought permission nor authority to use Moreland's image, likeness or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activities or for any other use.

560. Moreland never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activity.

561. Defendant was at all relevant times aware that they never received any Moreland's permission or consent to use their Image on any website or social media account, or on any other medium, in order to promote Atlantis.

562. At no point did Defendant ever compensate Moreland for its use of her image, likeness, or identity.

563. No applicable privilege or authorization exists for Defendant'ss use of Moreland's Image.

564. Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Moreland's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

565. Defendant caused irreparable harm to Moreland, her reputation and brand by attributing to Moreland the strip club lifestyle and activities at Atlantis.

566. Defendant has also damaged Moreland as a direct and proximate result of their unauthorized use of Moreland's image, likeness and/or identity without compensating Moreland.

567. Due to Defendant'ss violation of Moreland's rights of privacy and publicity under IRPA, Moreland has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

568.    In addition, Moreland hereby requests an Order permanently enjoining Defendant from violating Moreland's right to privacy and publicity.

569.    In addition, Moreland hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendant knowing and intentional violation of her statutory rights to privacy and publicity.

**WHEREFORE**, Moreland respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

<u>**MORELAND COUNT IV**</u>
(**Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1** *et seq. False Light*)

570.    Moreland hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

609.    Defendant published Moreland's image, likeness or identity on social media outlets, among others, in order to promote, advertise and market Atlantis and Atlantis's events and activities, causing her to be placed in a false light as a stripper or as someone who was affiliated with Atlantis, or endorsed Atlantis strip club before the public as a result of that publication.

610.    Without question, this "false light would be highly offensive to a reasonable person" and, by portraying Moreland in a false light Defendant did so with actual malice, with knowledge of or reckless disregard for the falsity of the statements.

611.    Defendant published Moreland's Image on the Atlantis billboards in order to create the false impression that Moreland was either a stripper working at Atlantis, or endorsed

Atlantis strip club.

612.     As such, Defendant'ss intent in publishing Moreland's Image was to mislead the public and cast her in a false light with respect to her affiliation with Atlantis.

612.    Defendant was at all times aware, Moreland never worked at any Atlantis strip club, never endorsed Atlantis, and never had any affiliation with Atlantis.

613.   Defendant never sought permission or authority to use Moreland's image, likeness or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's events or activities.

614.    Moreland never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis event or activity.

615.   As a result of Defendant'ss unauthorized and misleading publication of Moreland's Image, Defendant has caused irreparable harm to Moreland, her reputation and brand by attributing to Moreland the strip club lifestyle and activities at Atlantis.

616.    Defendant has also damaged Moreland as result of their unauthorized use of Moreland's image, likeness or identity without compensating Moreland.  Defendant's conduct has been despicable and taken in conscious disregard of Moreland's rights.

617.    As a result of Defendant'ss unauthorized and misleading use of Moreland's Image, Moreland has been injured in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**WHEREFORE**, Moreland respectfully requests that the Court issue a judgment against Defendant for all remedies available under law, including but not limited to, both actual loss and

damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## MORELAND COUNT V
### (Negligence and *Respondeat Superior*)

618.     Moreland hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

619.     Upon information and belief, Defendant was negligent in its failure to promulgate policies and procedures concerning the misappropriation of the Image of models that were used on the Atlantis Website and social media accounts.

620.     Said failure was the proximate cause of the harm Moreland suffered when her Image was published without her authorization.

621.     In the alternative, and upon information and belief, although Defendant promulgated policies and procedures concerning the misappropriation of images, Defendant nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated.

622.     In addition, Defendant had a duty to refrain from appropriating the Image of those with whom it had not contracted, and had not paid.

623.     Defendant violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

624.     As a result of Defendant'ss negligence, Moreland have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

*Plaintiff Sara Underwood's Causes of Action
against Defendant AEG Ventures, LLC d/b/a Atlantis Gentlemen's Club*

### UNDERWOOD COUNT I
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)**

625.     Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Underwood from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .".  15 U.S.C. §1125(a)(1)(B).

626.     Defendant used Underwood's image, likeness and/or identity as described herein without authority in order to create the perception that Underwood worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her image in order to advertise, promote, and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities.

627.     Defendant's use of Underwood's image, likeness and/or identity to advertise, promote and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities as described in this Complaint was false and misleading.

628.     Defendant's unauthorized use of Underwood's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Underwood worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities and/or that Underwood would participate in or appear at the specific events promoted in the advertisements.

629.    Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Atlantis, as to the general quality of attendees and participants of Atlantis and in their events, as well as specifically whether Underwood worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities.

630.    Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Underwood worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events and activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Atlantis, visit Atlantis, and participate in events at Atlantis and had a material effect and impact on the decision of members and prospective members and participants to join Atlantis, visit Atlantis and take part in the events at Atlantis.

631.    Defendant's advertisements, promotions and marketing of Atlantis and events at Atlantis occur in and are targeted to interstate commerce. Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Atlantis events.

632. Defendant's unauthorized use of Underwood's image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Atlantis and their activities and attracting clientele to Atlantis.

633. Defendant knew or should have known that their unauthorized use of Underwood's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

634. Defendant's unauthorized use of Underwood's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

635. Defendant's wrongful conduct as described herein was willful.

636. As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

637. Defendant had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Underwood of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Underwood.

638. The method and manner in which Defendant used the image of Underwood further evinces that Defendant were aware of or consciously disregarded the fact that Underwood did not consent to Defendant's use of the image to advertise Defendant's businesses.

639. Defendant had caused irreparable harm to Underwood, her reputation and brand by attributing to Underwood the strip club lifestyle and activities at Atlantis.

640. Defendant's unauthorized use of Underwood's image, likeness and/or identity directly and proximately caused and continue to cause damage to Underwood in an amount to be determined at trial.

**WHEREFORE**, Underwood respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## UNDERWOOD COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)

641.     Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Underwood from the conduct described herein.

642.     Defendant used Underwood's image in order to create the false impression with the public that Underwood either worked at Defendant's strip club, or endorsed Defendant's businesses. This was done to promote and attract clientele to Atlantis, and thereby generate revenue for Defendant.

643.     Thus, this was done in furtherance of Defendant's commercial benefit.

644.     Underwood is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Underwood's images in magazines and online.

645.     Both Underwood and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

646.     As such, an unauthorized use of Underwood's image to promote a strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Underwood.

647. Defendant's use of Underwood's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Underwood's fans and present and prospective clients into believing that Atlantis's advertisements are endorsed by Underwood, or sponsored, approved or associated with Underwood.

648. Despite the fact that Defendant were at all times aware that Underwood neither worked at, nor endorsed their strip club, nevertheless, they used Underwood's image in order to mislead potential customers as to Underwood's employment at and/or affiliation with Atlantis.

649. Defendant knew that their use of Underwood's image would cause consumer confusion as to Underwood's sponsorship and/or employment at Atlantis.

650. Upon information and belief, Defendant's use of Underwood's image did in fact cause consumer confusion as to Underwood's employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

651. As a direct and proximate result of Defendant's actions, Underwood has no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisements depicting Underwood's image, likeness and/or identity, or how Underwood's image, likeness and/or identity is being depicted by Defendant.

652. Further, any failure, neglect or default by Defendant will reflect adversely on Underwood as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Underwood to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Underwood.

653.    Due to Atlantis's unauthorized use of Underwood's image, Underwood has been damaged in an amount to be determined at trial.

**WHEREFORE**, Underwood respectfully requests that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## UNDERWOOD COUNT III
(**Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10** *et seq. Right to Publicity*)

654.    Underwood hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

655.    Underwood has a right of publicity under IRPA, 765 ILCS 1075/10 *et seq. Right to Publicity*.

656.    Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Underwood without express written or oral consent to such use.

657.    As set forth herein, Defendant has violated Underwood's right to publicity by invading Underwood's privacy, misappropriating her likeness, and publishing on Atlantis social media outlets, the altered Image of Underwood which made it appear as though Underwood was employed at Atlantis, or endorsed Atlantis strip club, or any Atlantis events or activities.

658.    Despite the clear language of IRPA and at all relevant times, Defendant published, printed, displayed and/or publicly used Underwood's image, likeness or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising

including, but not limited to, promoting, advertising and marketing Atlantis and/or Atlantis's events and activities.

659.    The respective social media outlets were designed to attract business and generate revenue for Atlantis.

660.    Upon information and belief, Defendant'ss use of Underwood's image, likeness or identity did in fact attract clientele and generate business for Atlantis.

661.    At all relevant times and at no point did Defendant ever receive permission or consent, be it written or otherwise, to use Underwood's image, likeness or identity on the Atlantis social media outlets or for any other use or matter associated with Atlantis.

662.    Defendant took these actions without Underwood's permission, consent or authority, be it written or otherwise. In fact, Defendant never sought permission nor authority to use Underwood's image, likeness or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activities or for any other use.

663.    Underwood never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activity.

664.     Defendant was at all relevant times aware that they never received any Underwood's permission or consent to use their Image on any website or social media account, or on any other medium, in order to promote Atlantis.

665.    At no point did Defendant ever compensate Underwood for its use of her image, likeness, or identity.

666.    No applicable privilege or authorization exists for Defendant'ss use of Underwood's Image.

667.     Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Underwood's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

668.     Defendant caused irreparable harm to Underwood, her reputation and brand by attributing to Underwood the strip club lifestyle and activities at Atlantis.

669.     Defendant has also damaged Underwood as a direct and proximate result of their unauthorized use of Underwood's image, likeness and/or identity without compensating Underwood.

670.     Due to Defendant'ss violation of Underwood's rights of privacy and publicity under IRPA, Underwood has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

671.     In addition, Underwood hereby requests an Order permanently enjoining Defendant from violating Underwood's right to privacy and publicity.

672.     In addition, Underwood hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendant knowing and intentional violation of her statutory rights to privacy and publicity.

**WHEREFORE**, Underwood respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## UNDERWOOD COUNT IV
### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)

673.    Underwood hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

674.    Defendant published Underwood's image, likeness or identity on social media outlets, among others, in order to promote, advertise and market Atlantis and Atlantis's events and activities, causing her to be placed in a false light as a stripper or as someone who was affiliated with Atlantis, or endorsed Atlantis strip club before the public as a result of that publication.

675.    Without question, this "false light would be highly offensive to a reasonable person" and, by portraying Underwood in a false light Defendant did so with actual malice, with knowledge of or reckless disregard for the falsity of the statements.

676.    Defendant published Underwood's image, likeness or identity on Atlantis social media outlets in order to create the false impression that Underwood was either a stripper working at Atlantis, or endorsed Atlantis strip club.

677.    As such, Defendant'ss intent in publishing Underwood's image, likeness or identity was to mislead the public and cast her in a false light with respect to her affiliation with Atlantis.

678.    Defendant was at all times aware, Underwood never worked at any Atlantis strip club, never endorsed Atlantis, and never had any affiliation with Atlantis or any Atlantis's events or activities.

679.    Defendant never sought permission or authority to use Underwood's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis events or activities.

680.    Underwood never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis event or activity.

681.    As a result of Defendant'ss unauthorized and misleading publication of Underwood's Image, Defendant has caused irreparable harm to Underwood, her reputation and brand by attributing to Underwood the strip club lifestyle and activities at Atlantis.

682.    Defendant has also damaged Underwood as result of their unauthorized use of Underwood's image, likeness or identity without compensating Underwood.   Defendant's conduct has been despicable and taken in conscious disregard of Underwood's rights.

683.    As a result of Defendant'ss unauthorized and misleading use of Underwood's image, likeness or identity, Underwood has been injured in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**WHEREFORE**, Underwood respectfully requests that the Court issue a judgment against Defendant for all remedies available under law, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## <u>UNDERWOOD COUNT V</u>
### (Negligence and *Respondeat Superior*)

684.    Underwood hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

685.    Upon information and belief, Defendant was negligent in its failure to promulgate policies and procedures concerning the misappropriation of the Image of models that were used on the Atlantis Website and social media accounts.

686.    Said failure was the proximate cause of the harm Underwood suffered when her Image was published without her authorization.

687.    In the alternative, and upon information and belief, although Defendant promulgated policies and procedures concerning the misappropriation of images, Defendant nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated.

688.    In addition, Defendant had a duty to refrain from appropriating the Image of those with whom it had not contracted, and had not paid.

689.    Defendant violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

690.    As a result of Defendant'ss negligence, Underwood have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

### *Plaintiff Arianny Celeste Lopez's Causes of Action*
### *against Defendant AEG Ventures, LLC d/b/a Atlantis Gentlemen's Club*

### LOPEZ COUNT I
### (**Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising**)

691.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Lopez from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics,

qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

692.    Defendant used Lopez's image, likeness and/or identity as described herein without authority in order to create the perception that Lopez worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her image in order to advertise, promote, and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities.

693.    Defendant's use of Lopez's image, likeness and/or identity to advertise, promote and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities as described in this Complaint was false and misleading.

694.    Defendant's unauthorized use of Lopez's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Lopez worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities and/or that Lopez would participate in or appear at the specific events promoted in the advertisements.

695.    Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Atlantis, as to the general quality of attendees and participants of Atlantis and in their events, as well as specifically whether Lopez worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in

order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities.

696.    Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Lopez worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events and activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Atlantis, visit Atlantis, and participate in events at Atlantis and had a material effect and impact on the decision of members and prospective members and participants to join Atlantis, visit Atlantis and take part in the events at Atlantis.

697.    Defendant's advertisements, promotions and marketing of Atlantis and events at Atlantis occur in and are targeted to interstate commerce. Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Atlantis events.

698.    Defendant's unauthorized use of Lopez's image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Atlantis and their activities and attracting clientele to Atlantis.

699.    Defendant knew or should have known that their unauthorized use of Lopez's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

700.    Defendant's unauthorized use of Lopez's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

701.    Defendant's wrongful conduct as described herein was willful.

702.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

703.    Defendant had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Lopez of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Lopez.

704.    The method and manner in which Defendant used the image of Lopez further evinces that Defendant were aware of or consciously disregarded the fact that Lopez did not consent to Defendant's use of the image to advertise Defendant's businesses.

705.    Defendant had caused irreparable harm to Lopez, her reputation and brand by attributing to Lopez the strip club lifestyle and activities at Atlantis.

706.    Defendant's unauthorized use of Lopez's image, likeness and/or identity directly and proximately caused and continue to cause damage to Lopez in an amount to be determined at trial.

**WHEREFORE**, Lopez respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

**LOPEZ COUNT II**
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)**

707.    Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Lopez from the conduct described herein.

708.    Defendant used Lopez's image in order to create the false impression with the public that Lopez either worked at Defendant's strip club, or endorsed Defendant's businesses. This was done to promote and attract clientele to Atlantis, and thereby generate revenue for Defendant.

709.    Thus, this was done in furtherance of Defendant's commercial benefit.

710.    Lopez is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Lopez's images in magazines and online.

711.    Both Lopez and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

712.    As such, an unauthorized use of Lopez's image to promote a strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Lopez.

713.    Defendant's use of Lopez's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Lopez's fans and present and prospective clients into believing that Atlantis's advertisements are endorsed by Lopez, or sponsored, approved or associated with Lopez.

714.     Despite the fact that Defendant were at all times aware that Lopez neither worked at, nor endorsed their strip club, nevertheless, they used Lopez's image in order to mislead potential customers as to Lopez's employment at and/or affiliation with Atlantis.

715.     Defendant knew that their use of Lopez's image would cause consumer confusion as to Lopez's sponsorship and/or employment at Atlantis.

716.     Upon information and belief, Defendant's use of Lopez's image did in fact cause consumer confusion as to Lopez's employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

717.     As a direct and proximate result of Defendant's actions, Lopez has no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisements depicting Lopez's image, likeness and/or identity, or how Lopez's image, likeness and/or identity is being depicted by Defendant.

718.     Further, any failure, neglect or default by Defendant will reflect adversely on Lopez as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Lopez to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Lopez.

719.     Due to Atlantis's unauthorized use of Lopez's image, Lopez has been damaged in an amount to be determined at trial.

**WHEREFORE**, Lopez respectfully requests that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use,

attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

**LOPEZ COUNT III**
(**Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10** *et seq. Right to Publicity*)

720.    Lopez hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

721.    Lopez has a right of publicity under IRPA, 765 ILCS 1075/10 *et seq. Right to Publicity*.

722.    Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Lopez without express written or oral consent to such use.

723.    As set forth herein, Defendant has violated Lopez's right to publicity by invading Lopez's privacy, misappropriating her likeness, and publishing on Atlantis social media outlets, the altered image, likeness and/or identity of Lopez which made it appear as though Lopez was employed at Atlantis, or endorsed Atlantis strip club, or any Atlantis events or activities.

724.    Despite the clear language of IRPA and at all relevant times, Defendant published, printed, displayed and/or publicly used Lopez's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing Atlantis and/or Atlantis's events and activities.

725.    The respective social media outlets were designed to attract business and generate revenue for Atlantis.

726. Upon information and belief, Defendant'ss use of Lopez's image, likeness and/or identity did in fact attract clientele and generate business for Atlantis.

727. At all relevant times and at no point, did Defendant ever receive permission or consent, be it written or otherwise, to use Lopez's image, likeness and/or identity on the Atlantis social media outlets or for any other use or matter associated with Atlantis.

728. Defendant took these actions without Lopez's permission, consent or authority, be it written or otherwise. In fact, Defendant never sought permission nor authority to use Lopez's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activities or for any other use.

729. Lopez never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activity.

730. Defendant was at all relevant times aware that they never received Lopez's permission or consent to use her Image on any website or social media account, or on any other medium, in order to promote Atlantis.

731. At no point did Defendant ever compensate Lopez for its use of her image, likeness, and/or identity.

732. No applicable privilege or authorization exists for Defendant'ss use of Lopez's Image.

733. Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Lopez's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

734.     Defendant caused irreparable harm to Lopez, her reputation and brand by attributing to Lopez the strip club lifestyle and activities at Atlantis.

735.     Defendant has also damaged Lopez as a direct and proximate result of their unauthorized use of Lopez's image, likeness and/or identity without compensating Lopez.

736.     Due to Defendant'ss violation of Lopez's rights of privacy and publicity under IRPA, Lopez has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

737.     In addition, Lopez hereby requests an Order permanently enjoining Defendant from violating Lopez's right to privacy and publicity.

738.     In addition, Lopez hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendant knowing and intentional violation of her statutory rights to privacy and publicity.

**WHEREFORE**, Lopez respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## <u>LOPEZ COUNT IV</u>
### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)

739.     Lopez hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

740.     Defendant published Lopez's image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Atlantis and Atlantis's events and activities, causing her to be placed in a false light as a stripper or as someone who was

121

affiliated with Atlantis, or endorsed Atlantis strip club before the public as a result of that publication.

741.    Without question, this "false light would be highly offensive to a reasonable person" and, by portraying Lopez in a false light Defendant did so with actual malice, with knowledge of or reckless disregard for the falsity of the statements.

780.    Defendant published Lopez's image, likeness and/or identity on Atlantis social media outlets in order to create the false impression that Lopez was either a stripper working at Atlantis, or endorsed Atlantis strip club.

781.    As such, Defendant'ss intent in publishing Lopez's image, likeness and/or identity was to mislead the public and cast her in a false light with respect to her affiliation with Atlantis.

782.    Defendant was at all times aware, Lopez never worked at any Atlantis strip club, never endorsed Atlantis, and never had any affiliation with Atlantis or any Atlantis events or activities.

783.    Defendant never sought permission or authority to use Lopez's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis events or activities.

784.    Lopez never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis event or activity.

785.    As a result of Defendant'ss unauthorized and misleading publication of Lopez's Image, Defendant has caused irreparable harm to Lopez, her reputation and brand by attributing to Lopez the strip club lifestyle and activities at Atlantis.

786.    Defendant has also damaged Lopez as result of their unauthorized use of

Lopez's image, likeness or identity without compensating Lopez. Defendant's conduct has been despicable and taken in conscious disregard of Lopez's rights.

787.    As a result of Defendant'ss unauthorized and misleading use of Lopez's image, likeness or identity, Lopez has been injured in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**WHEREFORE**, Lopez respectfully requests that the Court issue a judgment against Defendant for all remedies available under law, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

**LOPEZ COUNT V**
**(Negligence and *Respondeat Superior*)**

788.    Lopez hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

789.    Upon information and belief, Defendant was negligent in its failure to promulgate policies and procedures concerning the misappropriation of the Image of models that were used on the Atlantis Website and social media accounts.

790.    Said failure was the proximate cause of the harm Lopez suffered when her Image was published without her authorization.

791.    In the alternative, and upon information and belief, although Defendant promulgated policies and procedures concerning the misappropriation of images, Defendant nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated.

792.    In addition, Defendant had a duty to refrain from appropriating the Image of those with whom it had not contracted, and had not paid.

793.    Defendant violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

794.    As a result of Defendant'ss negligence, Lopez have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

### *Plaintiff Camila Davalos' Causes of Action*
### *against Defendant AEG Ventures, LLC d/b/a Atlantis Gentlemen's Club*

### C. DAVALOS COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)

795.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects C. Davalos from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .".  15 U.S.C. §1125(a)(1)(B).

796.    Defendant used C. Davalos's image, likeness and/or identity as described herein without authority in order to create the perception that C. Davalos worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her image in order to advertise, promote, and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities.

797.    Defendant's use of C. Davalos's image, likeness and/or identity to advertise, promote and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities as described in this Complaint was false and misleading.

798. Defendant's unauthorized use of C. Davalos's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that C. Davalos worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities and/or that C. Davalos would participate in or appear at the specific events promoted in the advertisements.

799. Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Atlantis, as to the general quality of attendees and participants of Atlantis and in their events, as well as specifically whether C. Davalos worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities.

800. Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether C. Davalos worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events and activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Atlantis, visit Atlantis, and participate in events at Atlantis and had a material effect and impact on the decision of members and prospective members and participants to join Atlantis, visit Atlantis and take part in the events at Atlantis.

801.    Defendant's advertisements, promotions and marketing of Atlantis and events at Atlantis occur in and are targeted to interstate commerce. Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Atlantis events.

802.    Defendant's unauthorized use of C. Davalos's image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Atlantis and their activities and attracting clientele to Atlantis.

803.    Defendant knew or should have known that their unauthorized use of C. Davalos's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

804.    Defendant's unauthorized use of C. Davalos's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

805.    Defendant's wrongful conduct as described herein was willful.

806.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

807.    Defendant had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive C. Davalos of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to C. Davalos.

808.     The method and manner in which Defendant used the image of C. Davalos further evinces that Defendant were aware of or consciously disregarded the fact that C. Davalos did not consent to Defendant's use of the image to advertise Defendant's businesses.

809.     Defendant had caused irreparable harm to C. Davalos, her reputation and brand by attributing to C. Davalos the strip club lifestyle and activities at Atlantis.

810.     Defendant's unauthorized use of C. Davalos's image, likeness and/or identity directly and proximately caused and continue to cause damage to C. Davalos in an amount to be determined at trial.

**WHEREFORE**, C. Davalos respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## C. DAVALOS COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)

811.     Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects C. Davalos from the conduct described herein.

812.     Defendant used C. Davalos's image in order to create the false impression with the public that C. Davalos either worked at Defendant's strip club, or endorsed Defendant's businesses. This was done to promote and attract clientele to Atlantis, and thereby generate revenue for Defendant.

813.     Thus, this was done in furtherance of Defendant's commercial benefit.

814.   C. Davalos is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views C. Davalos's images in magazines and online.

815.   Both C. Davalos and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

816.   As such, an unauthorized use of C. Davalos's image to promote a strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to C. Davalos.

817.   Defendant's use of C. Davalos's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived C. Davalos's fans and present and prospective clients into believing that Atlantis's advertisements are endorsed by C. Davalos, or sponsored, approved or associated with C. Davalos.

818.   Despite the fact that Defendant were at all times aware that C. Davalos neither worked at, nor endorsed their strip club, nevertheless, they used C. Davalos's image in order to mislead potential customers as to C. Davalos's employment at and/or affiliation with Atlantis.

819.   Defendant knew that their use of C. Davalos's image would cause consumer confusion as to C. Davalos's sponsorship and/or employment at Atlantis.

820.   Upon information and belief, Defendant's use of C. Davalos's image did in fact cause consumer confusion as to C. Davalos's employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

821.   As a direct and proximate result of Defendant's actions, C. Davalos has no control over the nature and quality of the line of products or services provided by Defendant, the nature

of the advertisements depicting C. Davalos's image, likeness and/or identity, or how C. Davalos's image, likeness and/or identity is being depicted by Defendant.

822.    Further, any failure, neglect or default by Defendant will reflect adversely on C. Davalos as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by C. Davalos to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of C. Davalos.

823.    Due to Atlantis's unauthorized use of C. Davalos's image, C. Davalos has been damaged in an amount to be determined at trial.

**WHEREFORE**, C. Davalos respectfully requests that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## C.DAVALOS COUNT III
(**Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10** *et seq. Right to Publicity*)

824.    C.Davalos hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

825.    C.Davalos has a right of publicity under IRPA, 765 ILCS 1075/10 *et seq. Right to Publicity*.

826. Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of C.Davalos without express written or oral consent to such use.

827. As set forth herein, Defendant has violated C.Davalos's right to publicity by invading C.Davalos's privacy, misappropriating her likeness, and publishing on Atlantis social media outlets, the altered image, likeness and/or identity of C.Davalos which made it appear as though C.Davalos was employed at Atlantis, or endorsed Atlantis strip club, or any Atlantis events or activities.

828. Despite the clear language of IRPA and at all relevant times, Defendant published, printed, displayed and/or publicly used C.Davalos's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing Atlantis and/or Atlantis's events and activities.

829. The respective social media outlets were designed to attract business and generate revenue for Atlantis.

830. Upon information and belief, Defendant'ss use of C.Davalos's image, likeness and/or identity did in fact attract clientele and generate business for Atlantis.

831. At all relevant times and at no point, did Defendant ever receive permission or consent, be it written or otherwise, to use C.Davalos's image, likeness and/or identity on the Atlantis social media outlets or for any other use or matter associated with Atlantis.

832. Defendant took these actions without C.Davalos's permission, consent or authority, be it written or otherwise. In fact, Defendant never sought permission nor authority to

use C.Davalos's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activities or for any other use.

833.    C.Davalos never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activity.

834.    Defendant was at all relevant times aware that they never received C.Davalos' permission or consent to use her Image on any website or social media account, or on any other medium, in order to promote Atlantis.

835.    At no point did Defendant ever compensate C.Davalos for its use of her image, likeness, and/or identity.

836.    No applicable privilege or authorization exists for Defendant'ss use of C.Davalos' Image.

837.    Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used C.Davalos's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

838.    Defendant caused irreparable harm to C.Davalos, her reputation and brand by attributing to C.Davalos the strip club lifestyle and activities at Atlantis.

839.    Defendant has also damaged C.Davalos as a direct and proximate result of their unauthorized use of C.Davalos' image, likeness and/or identity without compensating C.Davalos.

840.    Due to Defendant'ss violation of C.Davalos' rights of privacy and publicity under IRPA, C.Davalos has been damaged in an amount to be determined at trial, but in all events not

less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

841.    In addition, C.Davalos hereby requests an Order permanently enjoining Defendant from violating C.Davalos' right to privacy and publicity.

842.    In addition, C.Davalos hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendant knowing and intentional violation of her statutory rights to privacy and publicity.

**WHEREFORE**, C.Davalos respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## C.DAVALOS COUNT IV
### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)

843.    C.Davalos hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

863.    Defendant published C.Davalos' image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Atlantis and Atlantis's events and activities, causing her to be placed in a false light as a stripper or as someone who was affiliated with Atlantis, or endorsed Atlantis strip club before the public as a result of that publication.

864.    Without question, this "false light would be highly offensive to a reasonable person" and, by portraying C.Davalos in a false light Defendant did so with actual malice, with knowledge of or reckless disregard for the falsity of the statements.

865.   Defendant published C.Davalos's image, likeness and/or identity on Atlantis social media outlets in order to create the false impression that C.Davalos was either a stripper working at Atlantis, or endorsed Atlantis strip club.

868.    As such, Defendant'ss intent in publishing C.Davalos's image, likeness and/or identity was to mislead the public and cast her in a false light with respect to her affiliation with Atlantis.

869.   Defendant was at all times aware, C.Davalos never worked at any Atlantis strip club, never endorsed Atlantis, and never had any affiliation with Atlantis or any Atlantis events or activities.

870.   Defendant never sought permission or authority to use C.Davalos's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis events or activities.

871.   C.Davalos never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis event or activity.

872.    As a result of Defendant'ss unauthorized and misleading publication of C.Davalos' Image, Defendant has caused irreparable harm to C.Davalos, her reputation and brand by attributing to C.Davalos the strip club lifestyle and activities at Atlantis.

873.    Defendant has also damaged C.Davalos as result of their unauthorized use of C.Davalos's image, likeness or identity without compensating C.Davalos.  Defendant's conduct has been despicable and taken in conscious disregard of C.Davalos's rights.

874.    As a result of Defendant'ss unauthorized and misleading use of C.Davalos's image, likeness or identity, C.Davalos has been injured in an amount to be determined at trial,

but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**WHEREFORE**, C.Davalos respectfully requests that the Court issue a judgment against Defendant for all remedies available under law, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

<u>**C.DAVALOS COUNT V**</u>
**(Negligence and *Respondeat Superior*)**

877.    C.Davalos hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

878.    Upon information and belief, Defendant was negligent in its failure to promulgate policies and procedures concerning the misappropriation of the Image of models that were used on the Atlantis Website and social media accounts.

879.    Said failure was the proximate cause of the harm C.Davalos suffered when her Image was published without her authorization.

880.    In the alternative, and upon information and belief, although Defendant promulgated policies and procedures concerning the misappropriation of images, Defendant nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated.

881.    In addition, Defendant had a duty to refrain from appropriating the Image of those with whom it had not contracted, and had not paid.

882.    Defendant violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

883.    As a result of Defendant'ss negligence, C.Davalos have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

*Plaintiff Mariana Davalos's Causes of Action*
*against Defendant AEG Ventures, LLC d/b/a Atlantis Gentlemen's Club*

**M. DAVALOS COUNT I**
(**Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising**)

884.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects M. Davalos from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .".  15 U.S.C. §1125(a)(1)(B).

885.    Defendant used M. Davalos' image, likeness and/or identity as described herein without authority in order to create the perception that M. Davalos worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her image in order to advertise, promote, and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities.

886.    Defendant's use of M. Davalos's image, likeness and/or identity to advertise, promote and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities as described in this Complaint was false and misleading.

887.    Defendant's unauthorized use of M. Davalos's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that M. Davalos worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized

Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities and/or that M. Davalos would participate in or appear at the specific events promoted in the advertisements.

888.    Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Atlantis, as to the general quality of attendees and participants of Atlantis and in their events, as well as specifically whether M.Davalos worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities.

889.    Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether M. Davalos worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events and activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Atlantis, visit Atlantis, and participate in events at Atlantis and had a material effect and impact on the decision of members and prospective members and participants to join Atlantis, visit Atlantis and take part in the events at Atlantis.

890.    Defendant's advertisements, promotions and marketing of Atlantis and events at Atlantis occur in and are targeted to interstate commerce. Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally use the World Wide Web,

social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Atlantis events.

891.    Defendant's unauthorized use of M. Davalos's image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Atlantis and their activities and attracting clientele to Atlantis.

892.    Defendant knew or should have known that their unauthorized use of M. Davalos' image, likeness and/or identity would cause consumer confusion as described in this Complaint.

893.    Defendant's unauthorized use of M.Davalos's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

894.    Defendant's wrongful conduct as described herein was willful.

895.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

896.    Defendant had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive M.Davalos of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to M.Davalos.

897.    The method and manner in which Defendant used the image of M.Davalos further evinces that Defendant were aware of or consciously disregarded the fact that M. Davalos did not consent to Defendant's use of the image to advertise Defendant's businesses.

898.    Defendant had caused irreparable harm to M.Davalos, her reputation and brand by attributing to M.Davalos the strip club lifestyle and activities at Atlantis.

899.     Defendant's unauthorized use of M. Davalos's image, likeness and/or identity directly and proximately caused and continue to cause damage to M. Davalos in an amount to be determined at trial.

**WHEREFORE**, M.Davalos respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

### M. DAVALOS COUNT II
(**Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement**)

900.     Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects M.Davalos from the conduct described herein.

901.     Defendant used M.Davalos's image in order to create the false impression with the public that M.Davalos either worked at Defendant's strip club, or endorsed Defendant's businesses. This was done to promote and attract clientele to Atlantis, and thereby generate revenue for Defendant.

902.     Thus, this was done in furtherance of Defendant's commercial benefit.

903.     M.Davalos is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views M.Davalos's images in magazines and online.

904.     Both M.Davalos and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

905.     As such, an unauthorized use of M.Davalos's image to promote a strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to M.Davalos.

906.     Defendant's use of M.Davalos's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived M. Davalos's fans and present and prospective clients into believing that Atlantis's advertisements are endorsed by M. Davalos, or sponsored, approved or associated with M. Davalos.

907.     Despite the fact that Defendant were at all times aware that M. Davalos neither worked at, nor endorsed their strip club, nevertheless, they used M. Davalos's image in order to mislead potential customers as to M. Davalos's employment at and/or affiliation with Atlantis.

908.     Defendant knew that their use of M.Davalos' image would cause consumer confusion as to M. Davalos' sponsorship and/or employment at Atlantis.

909.     Upon information and belief, Defendant's use of M. Davalos's image did in fact cause consumer confusion as to M. Davalos's employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

910.     As a direct and proximate result of Defendant's actions, M. Davalos has no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisements depicting M. Davalos's image, likeness and/or identity, or how M. Davalos's image, likeness and/or identity is being depicted by Defendant.

911.     Further, any failure, neglect or default by Defendant will reflect adversely on M. Davalos as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by M. Davalos to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her

personal modeling services to legitimate mainstream media, all to the irreparable harm of M. Davalos.

912.     Due to Atlantis's unauthorized use of M. Davalos's image, M. Davalos has been damaged in an amount to be determined at trial.

**WHEREFORE**, M. Davalos respectfully requests that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## M.DAVALOS COUNT III
### (**Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10** *et seq. Right to Publicity*)

913.     M.Davalos hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

914.     M.Davalos has a right of publicity under IRPA, 765 ILCS 1075/10 *et seq. Right to Publicity*.

915.     Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of M.Davalos without express written or oral consent to such use.

916.     As set forth herein, Defendant has violated M.Davalos's right to publicity by invading M.Davalos's privacy, misappropriating her likeness, and publishing on Atlantis social media outlets, the altered image, likeness and/or identity of M.Davalos which made it appear as though M.Davalos was employed at Atlantis, or endorsed Atlantis strip club, or any Atlantis events or activities.

917.    Despite the clear language of IRPA and at all relevant times, Defendant published, printed, displayed and/or publicly used M.Davalos's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing Atlantis and/or Atlantis's events and activities.

918.    The respective social media outlets were designed to attract business and generate revenue for Atlantis.

919.    Upon information and belief, Defendant'ss use of M.Davalos's image, likeness and/or identity did in fact attract clientele and generate business for Atlantis.

920.    At all relevant times and at no point, did Defendant ever receive permission or consent, be it written or otherwise, to use M.Davalos's image, likeness and/or identity on the Atlantis social media outlets or for any other use or matter associated with Atlantis.

921.    Defendant took these actions without M.Davalos's permission, consent or authority, be it written or otherwise. In fact, Defendant never sought permission nor authority to use M.Davalos's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activities or for any other use.

922.    M.Davalos never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activity.

923.    Defendant was at all relevant times aware that they never received M.Davalos's permission or consent to use her Image on any website or social media account, or on any other medium, in order to promote Atlantis.

924. At no point did Defendant ever compensate M.Davalos for its use of her image, likeness, and/or identity.

925. No applicable privilege or authorization exists for Defendant'ss use of M.Davalos's Image.

926. Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used M.Davalos's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

927. Defendant caused irreparable harm to M.Davalos, her reputation and brand by attributing to M.Davalos the strip club lifestyle and activities at Atlantis.

928. Defendant has also damaged M.Davalos as a direct and proximate result of their unauthorized use of M.Davalos's image, likeness and/or identity without compensating M.Davalos.

929. Due to Defendant'ss violation of M.Davalos's rights of privacy and publicity under IRPA, M.Davalos has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

930. In addition, M.Davalos hereby requests an Order permanently enjoining Defendant from violating M.Davalos's right to privacy and publicity.

931. In addition, M.Davalos hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendant knowing and intentional violation of her statutory rights to privacy and publicity.

**WHEREFORE**, M.Davalos respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## M.DAVALOS COUNT IV
### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)

932.    M.Davalos hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

950.    Defendant published M.Davalos's image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Atlantis and Atlantis's events and activities, causing her to be placed in a false light as a stripper or as someone who was affiliated with Atlantis, or endorsed Atlantis strip club before the public as a result of that publication.

951.     Without question, this "false light would be highly offensive to a reasonable person" and, by portraying M.Davalos in a false light Defendant did so with actual malice, with knowledge of or reckless disregard for the falsity of the statements.

952.     Defendant published M.Davalos's image, likeness and/or identity on Atlantis social media outlets in order to create the false impression that M.Davalos was either a stripper working at Atlantis, or endorsed Atlantis strip club.

953.     As such, Defendant'ss intent in publishing M.Davalos's image, likeness and/or identity was to mislead the public and cast her in a false light with respect to her affiliation with Atlantis.

954.    Defendant was at all times aware, M.Davalos never worked at any Atlantis strip

club, never endorsed Atlantis, and never had any affiliation with Atlantis or any Atlantis events or activities.

955. Defendant never sought permission or authority to use M.Davalos's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis events or activities.

956. M.Davalos never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis event or activity.

957. As a result of Defendant'ss unauthorized and misleading publication of M.Davalos's Image, Defendant has caused irreparable harm to M.Davalos, her reputation and brand by attributing to M.Davalos the strip club lifestyle and activities at Atlantis.

958. Defendant has also damaged M.Davalos as result of their unauthorized use of M.Davalos's image, likeness or identity without compensating M.Davalos. Defendant's conduct has been despicable and taken in conscious disregard of M.Davalos's rights.

959. As a result of Defendant'ss unauthorized and misleading use of M.Davalos's image, likeness or identity, M.Davalos has been injured in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**WHEREFORE**, M.Davalos respectfully requests that the Court issue a judgment against Defendant for all remedies available under law, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## M.DAVALOS COUNT V
### (Negligence and *Respondeat Superior*)

960.     M.Davalos hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

961.     Upon information and belief, Defendant was negligent in its failure to promulgate policies and procedures concerning the misappropriation of the Image of models that were used on the Atlantis Website and social media accounts.

962.     Said failure was the proximate cause of the harm M.Davalos suffered when her Image was published without her authorization.

963.     In the alternative, and upon information and belief, although Defendant promulgated policies and procedures concerning the misappropriation of images, Defendant nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated.

964.     In addition, Defendant had a duty to refrain from appropriating the Image of those with whom it had not contracted, and had not paid.

965.     Defendant violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

966.     As a result of Defendant'ss negligence, M.Davalos have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

*Plaintiff Carmen Electra's Causes of Action*
*against Defendant AEG Ventures, LLC d/b/a Atlantis Gentlemen's Club*

## ELECTRA COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)

967.     Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Electra from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .".  15 U.S.C. §1125(a)(1)(B).

968.     Defendant used Electra's image, likeness and/or identity as described herein without authority in order to create the perception that Electra worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her image in order to advertise, promote, and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities.

969.     Defendant's use of Electra's image, likeness and/or identity to advertise, promote and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities as described in this Complaint was false and misleading.

970.     Defendant's unauthorized use of Electra's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Electra worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities and/or that Electra would participate in or appear at the specific events promoted in the advertisements.

971.     Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Atlantis, as to the general quality of attendees and participants of Atlantis and in their events, as well as specifically whether Electra worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities.

972.     Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Electra worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events and activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Atlantis, visit Atlantis, and participate in events at Atlantis and had a material effect and impact on the decision of members and prospective members and participants to join Atlantis, visit Atlantis and take part in the events at Atlantis.

973.     Defendant's advertisements, promotions and marketing of Atlantis and events at Atlantis occur in and are targeted to interstate commerce. Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Atlantis events.

974.    Defendant's unauthorized use of Electra's image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Atlantis and their activities and attracting clientele to Atlantis.

975.    Defendant knew or should have known that their unauthorized use of Electra's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

976.    Defendant's unauthorized use of Electra's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

977.    Defendant's wrongful conduct as described herein was willful.

978.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

979.    Defendant had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Electra of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Electra.

980.    The method and manner in which Defendant used the image of Electra further evinces that Defendant were aware of or consciously disregarded the fact that Electra did not consent to Defendant's use of the image to advertise Defendant's businesses.

981.    Defendant had caused irreparable harm to Electra, her reputation and brand by attributing to Electra the strip club lifestyle and activities at Atlantis.

982.    Defendant's unauthorized use of Electra's image, likeness and/or identity directly and proximately caused and continue to cause damage to Electra in an amount to be determined at trial.

**WHEREFORE**, Electra respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits,

disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## ELECTRA COUNT II
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)**

983.    Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Electra from the conduct described herein.

984.    Defendant used Electra's image in order to create the false impression with the public that Electra either worked at Defendant's strip club, or endorsed Defendant's businesses. This was done to promote and attract clientele to Atlantis, and thereby generate revenue for Defendant.

985.    Thus, this was done in furtherance of Defendant's commercial benefit.

986.    Electra is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Electra's images in magazines and online.

987.    Both Electra and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

988.    As such, an unauthorized use of Electra's image to promote a strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Electra.

989.    Defendant's use of Electra's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived

Electra's fans and present and prospective clients into believing that Atlantis's advertisements are endorsed by Electra, or sponsored, approved or associated with Electra.

990.    Despite the fact that Defendant were at all times aware that Electra neither worked at, nor endorsed their strip club, nevertheless, they used Electra's image in order to mislead potential customers as to Electra's employment at and/or affiliation with Atlantis.

991.    Defendant knew that their use of Electra's image would cause consumer confusion as to Electra's sponsorship and/or employment at Atlantis.

992.    Upon information and belief, Defendant's use of Electra's image did in fact cause consumer confusion as to Electra's employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

993.    As a direct and proximate result of Defendant's actions, Electra has no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisements depicting Electra's image, likeness and/or identity, or how Electra's image, likeness and/or identity is being depicted by Defendant.

994.    Further, any failure, neglect or default by Defendant will reflect adversely on Electra as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Electra to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Electra.

995.    Due to Atlantis's unauthorized use of Electra's image, Electra has been damaged in an amount to be determined at trial.

**WHEREFORE**, Electra respectfully requests that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost

profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## ELECTRA COUNT III
(**Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10** *et seq. Right to Publicity*)

996.    Electra hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

997.    Electra has a right of publicity under IRPA, 765 ILCS 1075/10 *et seq. Right to Publicity*.

998.    Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Electra without express written or oral consent to such use.

999.    As set forth herein, Defendant has violated Electra's right to publicity by invading Electra's privacy, misappropriating her likeness, and publishing on Atlantis social media outlets, the altered image, likeness and/or identity of Electra which made it appear as though Electra was employed at Atlantis, or endorsed Atlantis strip club, or any Atlantis events or activities.

1000.   Despite the clear language of IRPA and at all relevant times, Defendant published, printed, displayed and/or publicly used Electra's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing Atlantis and/or Atlantis's events and activities.

1001.   The respective social media outlets were designed to attract business and generate revenue for Atlantis.

1002.   Upon information and belief, Defendant'ss use of Electra's image, likeness and/or identity did in fact attract clientele and generate business for Atlantis.

1003.   At all relevant times and at no point, did Defendant ever receive permission or consent, be it written or otherwise, to use Electra's image, likeness and/or identity on the Atlantis social media outlets or for any other use or matter associated with Atlantis.

1004.   Defendant took these actions without Electra's permission, consent or authority, be it written or otherwise. In fact, Defendant never sought permission nor authority to use Electra's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activities or for any other use.

1005.   Electra never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activity.

1006.    Defendant was at all relevant times aware that they never received Electra's permission or consent to use her Image on any website or social media account, or on any other medium, in order to promote Atlantis.

1007.   At no point did Defendant ever compensate Electra for its use of her image, likeness, and/or identity.

1008.   No applicable privilege or authorization exists for Defendant'ss use of Electra's Image.

1009.   Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Electra's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1010.  Defendant caused irreparable harm to Electra, her reputation and brand by attributing to Electra the strip club lifestyle and activities at Atlantis.

1011.  Defendant has also damaged Electra as a direct and proximate result of their unauthorized use of Electra's image, likeness and/or identity without compensating Electra.

1012.  Due to Defendant'ss violation of Electra's rights of privacy and publicity under IRPA, Electra has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

1013.  In addition, Electra hereby requests an Order permanently enjoining Defendant from violating Electra's right to privacy and publicity.

1014.  In addition, Electra hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendant knowing and intentional violation of her statutory rights to privacy and publicity.

**WHEREFORE**, Electra respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## ELECTRA COUNT IV
### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)

1015.  Electra hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

1035.   Defendant published Electra's image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Atlantis and Atlantis's events and activities, causing her to be placed in a false light as a stripper or as someone who was

affiliated with Atlantis, or endorsed Atlantis strip club before the public as a result of that publication.

1036.    Without question, this "false light would be highly offensive to a reasonable person" and, by portraying Electra in a false light Defendant did so with actual malice, with knowledge of or reckless disregard for the falsity of the statements.

1037.    Defendant published Electra's image, likeness and/or identity on Atlantis social media outlets in order to create the false impression that Electra was either a stripper working at Atlantis, or endorsed Atlantis strip club.

1038.    As such, Defendant'ss intent in publishing Electra's image, likeness and/or identity was to mislead the public and cast her in a false light with respect to her affiliation with Atlantis.

1039.    Defendant was at all times aware, Electra never worked at any Atlantis strip club, never endorsed Atlantis, and never had any affiliation with Atlantis or any Atlantis events or activities.

1040.    Defendant never sought permission or authority to use Electra's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis events or activities.

1041.    Electra never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis event or activity.

1042.    As a result of Defendant'ss unauthorized and misleading publication of Electra's Image, Defendant has caused irreparable harm to Electra, her reputation and brand by attributing to Electra the strip club lifestyle and activities at Atlantis.

1043.    Defendant has also damaged Electra as result of their unauthorized use of Electra's image, likeness or identity without compensating Electra.  Defendant's conduct has been despicable and taken in conscious disregard of Electra's rights.

1044.   As a result of Defendant'ss unauthorized and misleading use of Electra's image, likeness or identity, Electra has been injured in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**WHEREFORE**, Electra respectfully requests that the Court issue a judgment against Defendant for all remedies available under law, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## ELECTRA COUNT V
### (Negligence and *Respondeat Superior*)

1045.   Electra hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

1046.   Upon information and belief, Defendant was negligent in its failure to promulgate policies and procedures concerning the misappropriation of the Image of models that were used on the Atlantis Website and social media accounts.

1047.   Said failure was the proximate cause of the harm Electra suffered when her Image was published without her authorization.

1048.  In the alternative, and upon information and belief, although Defendant promulgated policies and procedures concerning the misappropriation of images, Defendant nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law,

were not violated.

1049.  In addition, Defendant had a duty to refrain from appropriating the Image of those with whom it had not contracted, and had not paid.

1050.  Defendant violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

1051.  As a result of Defendant'ss negligence, Electra have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

*Plaintiff Cielo Jean 'CJ' Gibson's Causes of Action*
*against Defendant AEG Ventures, LLC d/b/a Atlantis Gentlemen's Club*

## GIBSON COUNT I
(**Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising**)

1052.  Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Gibson from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .".  15 U.S.C. §1125(a)(1)(B).

1053.  Defendant used Gibson's image, likeness and/or identity as described herein without authority in order to create the perception that Gibson worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her image in order to advertise, promote, and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities.

1054.   Defendant's use of Gibson's image, likeness and/or identity to advertise, promote and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities as described in this Complaint was false and misleading.

1055.   Defendant's unauthorized use of Gibson's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Gibson worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities and/or that Gibson would participate in or appear at the specific events promoted in the advertisements.

1056.   Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Atlantis, as to the general quality of attendees and participants of Atlantis and in their events, as well as specifically whether Gibson worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities.

1057.   Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Gibson worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events and activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice

consumers and prospective consumers to join Atlantis, visit Atlantis, and participate in events at Atlantis and had a material effect and impact on the decision of members and prospective members and participants to join Atlantis, visit Atlantis and take part in the events at Atlantis.

1058.   Defendant's advertisements, promotions and marketing of Atlantis and events at Atlantis occur in and are targeted to interstate commerce. Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Atlantis events.

1059.   Defendant's unauthorized use of Gibson's image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Atlantis and their activities and attracting clientele to Atlantis.

1060.   Defendant knew or should have known that their unauthorized use of Gibson's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

1061.   Defendant's unauthorized use of Gibson's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

1062.   Defendant's wrongful conduct as described herein was willful.

1063.   As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

1064.   Defendant had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Gibson of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Gibson.

1065.   The method and manner in which Defendant used the image of Gibson further evinces that Defendant were aware of or consciously disregarded the fact that Gibson did not consent to Defendant's use of the image to advertise Defendant's businesses.

1066.   Defendant had caused irreparable harm to Gibson, her reputation and brand by attributing to Gibson the strip club lifestyle and activities at Atlantis.

1067.   Defendant's unauthorized use of Gibson's image, likeness and/or identity directly and proximately caused and continue to cause damage to Gibson in an amount to be determined at trial.

**WHEREFORE**, Gibson respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## GIBSON COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)

1068.   Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Gibson from the conduct described herein.

1069.   Defendant used Gibson's image in order to create the false impression with the public that Gibson either worked at Defendant's strip club, or endorsed Defendant's businesses. This was done to promote and attract clientele to Atlantis, and thereby generate revenue for Defendant.

1070.   Thus, this was done in furtherance of Defendant's commercial benefit.

1071. Gibson is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Gibson's images in magazines and online.

1072. Both Gibson and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

1073. As such, an unauthorized use of Gibson's image to promote a strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Gibson.

1074. Defendant's use of Gibson's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Gibson's fans and present and prospective clients into believing that Atlantis's advertisements are endorsed by Gibson, or sponsored, approved or associated with Gibson.

1075. Despite the fact that Defendant were at all times aware that Gibson neither worked at, nor endorsed their strip club, nevertheless, they used Gibson's image in order to mislead potential customers as to Gibson's employment at and/or affiliation with Atlantis.

1076. Defendant knew that their use of Gibson's image would cause consumer confusion as to Gibson's sponsorship and/or employment at Atlantis.

1077. Upon information and belief, Defendant's use of Gibson's image did in fact cause consumer confusion as to Gibson's employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

1078. As a direct and proximate result of Defendant's actions, Gibson has no control over the nature and quality of the line of products or services provided by Defendant, the nature

of the advertisements depicting Gibson's image, likeness and/or identity, or how Gibson's image, likeness and/or identity is being depicted by Defendant.

1079.  Further, any failure, neglect or default by Defendant will reflect adversely on Gibson as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Gibson to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Gibson.

1080.  Due to Atlantis's unauthorized use of Gibson's image, Gibson has been damaged in an amount to be determined at trial.

**WHEREFORE**, Gibson respectfully requests that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## <u>GIBSON COUNT III</u>
(**Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10** *et seq. Right to Publicity*)

1081.  Gibson hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

1082.  Gibson has a right of publicity under IRPA, 765 ILCS 1075/10 *et seq. Right to Publicity*.

1083.  Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Gibson without express written or oral consent to such use.

1084.   As set forth herein, Defendant has violated Gibson's right to publicity by invading Gibson's privacy, misappropriating her likeness, and publishing on Atlantis social media outlets, the altered image, likeness and/or identity of Gibson which made it appear as though Gibson was employed at Atlantis, or endorsed Atlantis strip club, or any Atlantis events or activities.

1085.   Despite the clear language of IRPA and at all relevant times, Defendant published, printed, displayed and/or publicly used Gibson's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing Atlantis and/or Atlantis's events and activities.

1086.   The respective social media outlets were designed to attract business and generate revenue for Atlantis.

1087.   Upon information and belief, Defendant'ss use of Gibson's image, likeness and/or identity did in fact attract clientele and generate business for Atlantis.

1088.   At all relevant times and at no point, did Defendant ever receive permission or consent, be it written or otherwise, to use Gibson's image, likeness and/or identity on the Atlantis social media outlets or for any other use or matter associated with Atlantis.

1089.   Defendant took these actions without Gibson's permission, consent or authority, be it written or otherwise. In fact, Defendant never sought permission nor authority to use Gibson's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activities or for any other use.

1090.   Gibson never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activity.

162

1091.   Defendant was at all relevant times aware that they never received Gibson's permission or consent to use her Image on any website or social media account, or on any other medium, in order to promote Atlantis.

1092.   At no point did Defendant ever compensate Gibson for its use of her image, likeness, and/or identity.

1093.   No applicable privilege or authorization exists for Defendant'ss use of Gibson's Image.

1094.   Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Gibson's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1095.   Defendant caused irreparable harm to Gibson, her reputation and brand by attributing to Gibson the strip club lifestyle and activities at Atlantis.

1096.   Defendant has also damaged Gibson as a direct and proximate result of their unauthorized use of Gibson's image, likeness and/or identity without compensating Gibson.

1097.   Due to Defendant'ss violation of Gibson's rights of privacy and publicity under IRPA, Gibson has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

1098.   In addition, Gibson hereby requests an Order permanently enjoining Defendant from violating Gibson's right to privacy and publicity.

1099.   In addition, Gibson hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendant knowing and intentional violation of her statutory rights to privacy and publicity.

**WHEREFORE**, Gibson respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## GIBSON COUNT IV
### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)

1100.  Gibson hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

1120.   Defendant published Gibson's image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Atlantis and Atlantis's events and activities, causing her to be placed in a false light as a stripper or as someone who was affiliated with Atlantis, or endorsed Atlantis strip club before the public as a result of that publication.

1121.   Without question, this "false light would be highly offensive to a reasonable person" and, by portraying Gibson in a false light Defendant did so with actual malice, with knowledge of or reckless disregard for the falsity of the statements.

1122.   Defendant published Gibson's image, likeness and/or identity on Atlantis social media outlets in order to create the false impression that Gibson was either a stripper working at Atlantis, or endorsed Atlantis strip club.

1123.   As such, Defendant'ss intent in publishing Gibson's image, likeness and/or identity was to mislead the public and cast her in a false light with respect to her affiliation with Atlantis.

1124.  Defendant was at all times aware, Gibson never worked at any Atlantis strip club,

never endorsed Atlantis, and never had any affiliation with Atlantis or any Atlantis events or activities.

1125.  Defendant never sought permission or authority to use Gibson's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis events or activities.

1126.  Gibson never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis event or activity.

1127.  As a result of Defendant'ss unauthorized and misleading publication of Gibson's Image, Defendant has caused irreparable harm to Gibson, her reputation and brand by attributing to Gibson the strip club lifestyle and activities at Atlantis.

1128.  Defendant has also damaged Gibson as result of their unauthorized use of Gibson's image, likeness or identity without compensating Gibson.  Defendant's conduct has been despicable and taken in conscious disregard of Gibson's rights.

1129.  As a result of Defendant'ss unauthorized and misleading use of Gibson's image, likeness or identity, Gibson has been injured in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**WHEREFORE**, Gibson respectfully requests that the Court issue a judgment against Defendant for all remedies available under law, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## GIBSON COUNT V
### (Negligence and *Respondeat Superior*)

1130.   Gibson hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

1131.   Upon information and belief, Defendant was negligent in its failure to promulgate policies and procedures concerning the misappropriation of the Image of models that were used on the Atlantis Website and social media accounts.

1132.   Said failure was the proximate cause of the harm Gibson suffered when her Image was published without her authorization.

1133.   In the alternative, and upon information and belief, although Defendant promulgated policies and procedures concerning the misappropriation of images, Defendant nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated.

1134.   In addition, Defendant had a duty to refrain from appropriating the Image of those with whom it had not contracted, and had not paid.

1135.   Defendant violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

1136.   As a result of Defendant'ss negligence, Gibson have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

*Plaintiff Chantel Zales' Causes of Action*
*against Defendant AEG Ventures, LLC d/b/a Atlantis Gentlemen's Club*

## ZALES COUNT I
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)**

1137.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Zales from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .".  15 U.S.C. §1125(a)(1)(B).

1138.   Defendant used Zales' image, likeness and/or identity as described herein without authority in order to create the perception that Zales worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her image in order to advertise, promote, and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities.

1139.   Defendant's use of Zales's image, likeness and/or identity to advertise, promote and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities as described in this Complaint was false and misleading.

1140.   Defendant's unauthorized use of Zales's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Zales worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities and/or that Zales would participate in or appear at the specific events promoted in the advertisements.

1141.   Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Atlantis, as to the general quality of attendees and participants of Atlantis and in their events, as well as specifically whether Zales worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities.

1142.   Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Zales worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events and activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Atlantis, visit Atlantis, and participate in events at Atlantis and had a material effect and impact on the decision of members and prospective members and participants to join Atlantis, visit Atlantis and take part in the events at Atlantis.

1143.   Defendant's advertisements, promotions and marketing of Atlantis and events at Atlantis occur in and are targeted to interstate commerce. Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Atlantis events.

1144.   Defendant's unauthorized use of Zales's image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Atlantis and their activities and attracting clientele to Atlantis.

1145.   Defendant knew or should have known that their unauthorized use of Zales's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

1146.   Defendant's unauthorized use of Zales's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

1147.   Defendant's wrongful conduct as described herein was willful.

1148.   As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

1149.   Defendant had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Zales of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Zales.

1150.   The method and manner in which Defendant used the image of Zales further evinces that Defendant were aware of or consciously disregarded the fact that Zales did not consent to Defendant's use of the image to advertise Defendant's businesses.

1151.   Defendant had caused irreparable harm to Zales, her reputation and brand by attributing to Zales the strip club lifestyle and activities at Atlantis.

1152.   Defendant's unauthorized use of Zales's image, likeness and/or identity directly and proximately caused and continue to cause damage to Zales in an amount to be determined at trial.

   **WHEREFORE**, Zales respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits,

disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## ZALES COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)

1153.   Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Zales from the conduct described herein.

1154.   Defendant used Zales's image in order to create the false impression with the public that Zales either worked at Defendant's strip club, or endorsed Defendant's businesses. This was done to promote and attract clientele to Atlantis, and thereby generate revenue for Defendant.

1155.   Thus, this was done in furtherance of Defendant's commercial benefit.

1156.   Zales is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Zales's images in magazines and online.

1157.   Both Zales and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

1158.   As such, an unauthorized use of Zales's image to promote a strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Zales.

1159.   Defendant's use of Zales's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Zales's fans and present and prospective clients into believing that Atlantis's advertisements are endorsed by Zales, or sponsored, approved or associated with Zales.

1160.   Despite the fact that Defendant were at all times aware that Zales neither worked at, nor endorsed their strip club, nevertheless, they used Zales's image in order to mislead potential customers as to Zales's employment at and/or affiliation with Atlantis.

1161.   Defendant knew that their use of Zales's image would cause consumer confusion as to Zales's sponsorship and/or employment at Atlantis.

1162.   Upon information and belief, Defendant's use of Zales's image did in fact cause consumer confusion as to Zales's employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

1163.   As a direct and proximate result of Defendant's actions, Zales has no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisements depicting Zales's image, likeness and/or identity, or how Zales's image, likeness and/or identity is being depicted by Defendant.

1164.   Further, any failure, neglect or default by Defendant will reflect adversely on Zales as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Zales to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Zales.

1165.   Due to Atlantis's unauthorized use of Zales's image, Zales has been damaged in an amount to be determined at trial.

**WHEREFORE**, Zales respectfully requests that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use,

attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

### ZALES COUNT III
**(Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10 *et seq. Right to Publicity*)**

1166.  Zales hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

1167.  Zales has a right of publicity under IRPA, 765 ILCS 1075/10 *et seq. Right to Publicity*.

1168.  Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Zales without express written or oral consent to such use.

1169.  As set forth herein, Defendant has violated Zales's right to publicity by invading Zales's privacy, misappropriating her likeness, and publishing on Atlantis social media outlets, the altered image, likeness and/or identity of Zales which made it appear as though Zales was employed at Atlantis, or endorsed Atlantis strip club, or any Atlantis events or activities.

1170.  Despite the clear language of IRPA and at all relevant times, Defendant published, printed, displayed and/or publicly used Zales's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing Atlantis and/or Atlantis's events and activities.

1171.  The respective social media outlets were designed to attract business and generate revenue for Atlantis.

172

1172.   Upon information and belief, Defendant'ss use of Zales's image, likeness and/or identity did in fact attract clientele and generate business for Atlantis.

1173.   At all relevant times and at no point, did Defendant ever receive permission or consent, be it written or otherwise, to use Zales's image, likeness and/or identity on the Atlantis social media outlets or for any other use or matter associated with Atlantis.

1174.   Defendant took these actions without Zales's permission, consent or authority, be it written or otherwise. In fact, Defendant never sought permission nor authority to use Zales's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activities or for any other use.

1175.   Zales never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activity.

1176.   Defendant was at all relevant times aware that they never received Zales's permission or consent to use her Image on any website or social media account, or on any other medium, in order to promote Atlantis.

1177.   At no point did Defendant ever compensate Zales for its use of her image, likeness, and/or identity.

1178.   No applicable privilege or authorization exists for Defendant'ss use of Zales' Image.

1179.   Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Zales's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1180. Defendant caused irreparable harm to Zales, her reputation and brand by attributing to Zales the strip club lifestyle and activities at Atlantis.

1181. Defendant has also damaged Zales as a direct and proximate result of their unauthorized use of Zales' image, likeness and/or identity without compensating Zales.

1182. Due to Defendant'ss violation of Zales's rights of privacy and publicity under IRPA, Zales has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

1183. In addition, Zales hereby requests an Order permanently enjoining Defendant from violating Zales' right to privacy and publicity.

1184. In addition, Zales hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendant knowing and intentional violation of her statutory rights to privacy and publicity.

**WHEREFORE**, Zales respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## ZALES COUNT IV
### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)

1185. Zales hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

1186. Defendant published Zales's image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Atlantis and Atlantis's events and activities, causing her to be placed in a false light as a stripper or as someone who was

affiliated with Atlantis, or endorsed Atlantis strip club before the public as a result of that publication.

1187. Without question, this "false light would be highly offensive to a reasonable person" and, by portraying Zales in a false light Defendant did so with actual malice, with knowledge of or reckless disregard for the falsity of the statements.

1188. Defendant published Zales's image, likeness and/or identity on Atlantis social media outlets in order to create the false impression that Zales was either a stripper working at Atlantis, or endorsed Atlantis strip club.

1189. As such, Defendant'ss intent in publishing Zales's image, likeness and/or identity was to mislead the public and cast her in a false light with respect to her affiliation with Atlantis.

1190. Defendant was at all times aware, Zales never worked at any Atlantis strip club, never endorsed Atlantis, and never had any affiliation with Atlantis or any Atlantis events or activities.

1191. Defendant never sought permission or authority to use Zales's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis events or activities.

1192. Zales never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis event or activity.

1193. As a result of Defendant'ss unauthorized and misleading publication of Zales's Image, Defendant has caused irreparable harm to Zales, her reputation and brand by attributing to Zales the strip club lifestyle and activities at Atlantis.

1194.   Defendant has also damaged Zales as result of their unauthorized use of Zales's image, likeness or identity without compensating Zales.   Defendant's conduct has been despicable and taken in conscious disregard of Zales's rights.

1195.   As a result of Defendant'ss unauthorized and misleading use of Zales's image, likeness or identity, Zales has been injured in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**WHEREFORE**, Zales respectfully requests that the Court issue a judgment against Defendant for all remedies available under law, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## <u>ZALES COUNT V</u>
### (Negligence and *Respondeat Superior*)

1196.   Zales hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

1197.   Upon information and belief, Defendant was negligent in its failure to promulgate policies and procedures concerning the misappropriation of the Image of models that were used on the Atlantis Website and social media accounts.

1198.   Said failure was the proximate cause of the harm Zales suffered when her Image was published without her authorization.

1199.   In the alternative, and upon information and belief, although Defendant promulgated policies and procedures concerning the misappropriation of images, Defendant nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law,

were not violated.

1200.  In addition, Defendant had a duty to refrain from appropriating the Image of those with whom it had not contracted, and had not paid.

1201.  Defendant violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

1202.  As a result of Defendant'ss negligence, Zales have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

*Plaintiff Claudia Sampedro's Causes of Action*
*against Defendant AEG Ventures, LLC d/b/a Atlantis Gentlemen's Club*

## SAMPEDRO COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)

1203.  Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Sampedro from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .".  15 U.S.C. §1125(a)(1)(B).

1204.  Defendant used Sampedro's image, likeness and/or identity as described herein without authority in order to create the perception that Sampedro worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her image in order to advertise, promote, and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities.

1205.  Defendant's use of Sampedro's image, likeness and/or identity to advertise, promote and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities as described in this Complaint was false and misleading.

1206.  Defendant's unauthorized use of Sampedro's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Sampedro worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities and/or that Sampedro would participate in or appear at the specific events promoted in the advertisements.

1207.  Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Atlantis, as to the general quality of attendees and participants of Atlantis and in their events, as well as specifically whether Sampedro worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities.

1208.  Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Sampedro worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events and activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice

consumers and prospective consumers to join Atlantis, visit Atlantis, and participate in events at Atlantis and had a material effect and impact on the decision of members and prospective members and participants to join Atlantis, visit Atlantis and take part in the events at Atlantis.

1209.  Defendant's advertisements, promotions and marketing of Atlantis and events at Atlantis occur in and are targeted to interstate commerce. Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Atlantis events.

1210.  Defendant's unauthorized use of Sampedro's image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Atlantis and their activities and attracting clientele to Atlantis.

1211.  Defendant knew or should have known that their unauthorized use of Sampedro's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

1212.  Defendant's unauthorized use of Sampedro's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

1213.  Defendant's wrongful conduct as described herein was willful.

1214.  As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

1215.  Defendant had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Sampedro of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Sampedro.

1216.   The method and manner in which Defendant used the image of Sampedro further evinces that Defendant were aware of or consciously disregarded the fact that Sampedro did not consent to Defendant's use of the image to advertise Defendant's businesses.

1217.   Defendant had caused irreparable harm to Sampedro, her reputation and brand by attributing to Sampedro the strip club lifestyle and activities at Atlantis.

1218.   Defendant's unauthorized use of Sampedro's image, likeness and/or identity directly and proximately caused and continue to cause damage to Sampedro in an amount to be determined at trial.

**WHEREFORE**, Sampedro respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## SAMPEDRO COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)

1219.   Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Sampedro from the conduct described herein.

1220.   Defendant used Sampedro's image in order to create the false impression with the public that Sampedro either worked at Defendant's strip club, or endorsed Defendant's businesses. This was done to promote and attract clientele to Atlantis, and thereby generate revenue for Defendant.

1221.   Thus, this was done in furtherance of Defendant's commercial benefit.

1222.   Sampedro is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Sampedro's images in magazines and online.

1223.   Both Sampedro and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

1224.   As such, an unauthorized use of Sampedro's image to promote a strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Sampedro.

1225.   Defendant's use of Sampedro's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Sampedro's fans and present and prospective clients into believing that Atlantis's advertisements are endorsed by Sampedro, or sponsored, approved or associated with Sampedro.

1226.   Despite the fact that Defendant were at all times aware that Sampedro neither worked at, nor endorsed their strip club, nevertheless, they used Sampedro's image in order to mislead potential customers as to Sampedro's employment at and/or affiliation with Atlantis.

1227.   Defendant knew that their use of Sampedro's image would cause consumer confusion as to Sampedro's sponsorship and/or employment at Atlantis.

1228.   Upon information and belief, Defendant's use of Sampedro's image did in fact cause consumer confusion as to Sampedro's employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

1229.   As a direct and proximate result of Defendant's actions, Sampedro has no control over the nature and quality of the line of products or services provided by Defendant, the nature

of the advertisements depicting Sampedro's image, likeness and/or identity, or how Sampedro's image, likeness and/or identity is being depicted by Defendant.

1230.   Further, any failure, neglect or default by Defendant will reflect adversely on Sampedro as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Sampedro to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Sampedro.

1231.   Due to Atlantis's unauthorized use of Sampedro's image, Sampedro has been damaged in an amount to be determined at trial.

**WHEREFORE**, Sampedro respectfully requests that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

### <u>SAMPEDRO COUNT III</u>
(**Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10** *et seq. Right to Publicity*)

1232.   Sampedro hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

1233.   Sampedro has a right of publicity under IRPA, 765 ILCS 1075/10 *et seq. Right to Publicity*.

1234.   Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Sampedro without express written or oral consent to such use.

1235.   As set forth herein, Defendant has violated Sampedro's right to publicity by invading Sampedro's privacy, misappropriating her likeness, and publishing on Atlantis social media outlets, the altered image, likeness and/or identity of Sampedro which made it appear as though Sampedro was employed at Atlantis, or endorsed Atlantis strip club, or any Atlantis events or activities.

1236.   Despite the clear language of IRPA and at all relevant times, Defendant published, printed, displayed and/or publicly used Sampedro's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing Atlantis and/or Atlantis's events and activities.

1237.   The respective social media outlets were designed to attract business and generate revenue for Atlantis.

1238.   Upon information and belief, Defendant'ss use of Sampedro's image, likeness and/or identity did in fact attract clientele and generate business for Atlantis.

1239.   At all relevant times and at no point, did Defendant ever receive permission or consent, be it written or otherwise, to use Sampedro's image, likeness and/or identity on the Atlantis social media outlets or for any other use or matter associated with Atlantis.

1240.   Defendant took these actions without Sampedro's permission, consent or authority, be it written or otherwise. In fact, Defendant never sought permission nor authority to

use Sampedro's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activities or for any other use.

1241.   Sampedro never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activity.

1242.    Defendant was at all relevant times aware that they never received Sampedro's permission or consent to use her Image on any website or social media account, or on any other medium, in order to promote Atlantis.

1243.   At no point did Defendant ever compensate Sampedro for its use of her image, likeness, and/or identity.

1244.   No applicable privilege or authorization exists for Defendant'ss use of Sampedro's Image.

1245.   Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Sampedro's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1246.   Defendant caused irreparable harm to Sampedro, her reputation and brand by attributing to Sampedro the strip club lifestyle and activities at Atlantis.

1247.   Defendant has also damaged Sampedro as a direct and proximate result of their unauthorized use of Sampedro's image, likeness and/or identity without compensating Sampedro.

1248.   Due to Defendant'ss violation of Sampedro's rights of privacy and publicity under IRPA, Sampedro has been damaged in an amount to be determined at trial, but in all

events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

1249. In addition, Sampedro hereby requests an Order permanently enjoining Defendant from violating Sampedro's right to privacy and publicity.

1250. In addition, Sampedro hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendant knowing and intentional violation of her statutory rights to privacy and publicity.

**WHEREFORE**, Sampedro respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## SAMPEDRO COUNT IV
### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)

1251. Sampedro hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

1252. Defendant published Sampedro's image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Atlantis and Atlantis's events and activities, causing her to be placed in a false light as a stripper or as someone who was affiliated with Atlantis, or endorsed Atlantis strip club before the public as a result of that publication.

1291. Without question, this "false light would be highly offensive to a reasonable person" and, by portraying Sampedro in a false light Defendant did so with actual malice, with knowledge of or reckless disregard for the falsity of the statements.

1292.    Defendant published Sampedro's image, likeness and/or identity on Atlantis social media outlets in order to create the false impression that Sampedro was either a stripper working at Atlantis, or endorsed Atlantis strip club.

1293.    As such, Defendant'ss intent in publishing Sampedro's image, likeness and/or identity was to mislead the public and cast her in a false light with respect to her affiliation with Atlantis.

1294.  Defendant was at all times aware, Sampedro never worked at any Atlantis strip club, never endorsed Atlantis, and never had any affiliation with Atlantis or any Atlantis events or activities.

1295.    Defendant never sought permission or authority to use Sampedro's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis events or activities.

1296.  Sampedro never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis event or activity.

1297.    As a result of Defendant'ss unauthorized and misleading publication of Sampedro's Image, Defendant has caused irreparable harm to Sampedro, her reputation and brand by attributing to Sampedro the strip club lifestyle and activities at Atlantis.

1298.    Defendant has also damaged Sampedro as result of their unauthorized use of Sampedro's image, likeness or identity without compensating Sampedro.  Defendant's conduct has been despicable and taken in conscious disregard of Sampedro's rights.

1299.  As a result of Defendant'ss unauthorized and misleading use of Sampedro's image, likeness or identity, Sampedro has been injured in an amount to be determined at trial, but

in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**WHEREFORE**, Sampedro respectfully requests that the Court issue a judgment against Defendant for all remedies available under law, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

### SAMPEDRO COUNT V
### (Negligence and *Respondeat Superior*)

1300.  Sampedro hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

1301.  Upon information and belief, Defendant was negligent in its failure to promulgate policies and procedures concerning the misappropriation of the Image of models that were used on the Atlantis Website and social media accounts.

1302.  Said failure was the proximate cause of the harm Sampedro suffered when her Image was published without her authorization.

1303.  In the alternative, and upon information and belief, although Defendant promulgated policies and procedures concerning the misappropriation of images, Defendant nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated.

1304.  In addition, Defendant had a duty to refrain from appropriating the Image of those with whom it had not contracted, and had not paid.

1305.  Defendant violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

1306.  As a result of Defendant'ss negligence, Sampedro have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**Plaintiff Cora Skinner's Causes of Action**
**against Defendant AEG Ventures, LLC d/b/a Atlantis Gentlemen's Club**

**SKINNER COUNT I**
(**Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising**)

1307.  Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Skinner from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .".  15 U.S.C. §1125(a)(1)(B).

1308.  Defendant used Skinner's image, likeness and/or identity as described herein without authority in order to create the perception that Skinner worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her image in order to advertise, promote, and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities.

1309.  Defendant's use of Skinner's image, likeness and/or identity to advertise, promote and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities as described in this Complaint was false and misleading.

1310.  Defendant's unauthorized use of Skinner's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Skinner worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's

usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities and/or that Skinner would participate in or appear at the specific events promoted in the advertisements.

1311. Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Atlantis, as to the general quality of attendees and participants of Atlantis and in their events, as well as specifically whether Skinner worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities.

1312. Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Skinner worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events and activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Atlantis, visit Atlantis, and participate in events at Atlantis and had a material effect and impact on the decision of members and prospective members and participants to join Atlantis, visit Atlantis and take part in the events at Atlantis.

1313. Defendant's advertisements, promotions and marketing of Atlantis and events at Atlantis occur in and are targeted to interstate commerce. Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally use the World Wide Web,

social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Atlantis events.

1314.   Defendant's unauthorized use of Skinner's image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Atlantis and their activities and attracting clientele to Atlantis.

1315.   Defendant knew or should have known that their unauthorized use of Skinner's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

1316.   Defendant's unauthorized use of Skinner's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

1317.   Defendant's wrongful conduct as described herein was willful.

1318.   As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

1319.   Defendant had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Skinner of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Skinner.

1320.   The method and manner in which Defendant used the image of Skinner further evinces that Defendant were aware of or consciously disregarded the fact that Skinner did not consent to Defendant's use of the image to advertise Defendant's businesses.

1321.   Defendant had caused irreparable harm to Skinner, her reputation and brand by attributing to Skinner the strip club lifestyle and activities at Atlantis.

1322.   Defendant's unauthorized use of Skinner's image, likeness and/or identity directly and proximately caused and continue to cause damage to Skinner in an amount to be determined at trial.

**WHEREFORE**, Skinner respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

<u>**SKINNER COUNT II**</u>
(**Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement**)

1323.   Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Skinner from the conduct described herein.

1324.   Defendant used Skinner's image in order to create the false impression with the public that Skinner either worked at Defendant's strip club, or endorsed Defendant's businesses. This was done to promote and attract clientele to Atlantis, and thereby generate revenue for Defendant.

1325.   Thus, this was done in furtherance of Defendant's commercial benefit.

1326.   Skinner is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Skinner's images in magazines and online.

1327.   Both Skinner and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

1328.   As such, an unauthorized use of Skinner's image to promote a strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Skinner.

1329. Defendant's use of Skinner's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Skinner's fans and present and prospective clients into believing that Atlantis's advertisements are endorsed by Skinner, or sponsored, approved or associated with Skinner.

1330. Despite the fact that Defendant were at all times aware that Skinner neither worked at, nor endorsed their strip club, nevertheless, they used Skinner's image in order to mislead potential customers as to Skinner's employment at and/or affiliation with Atlantis.

1331. Defendant knew that their use of Skinner's image would cause consumer confusion as to Skinner's sponsorship and/or employment at Atlantis.

1332. Upon information and belief, Defendant's use of Skinner's image did in fact cause consumer confusion as to Skinner's employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

1333. As a direct and proximate result of Defendant's actions, Skinner has no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisements depicting Skinner's image, likeness and/or identity, or how Skinner's image, likeness and/or identity is being depicted by Defendant.

1334. Further, any failure, neglect or default by Defendant will reflect adversely on Skinner as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Skinner to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Skinner.

1335. Due to Atlantis's unauthorized use of Skinner's image, Skinner has been damaged in an amount to be determined at trial.

**WHEREFORE**, Skinner respectfully requests that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

### SKINNER COUNT III
(**Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10 *et seq. Right to Publicity*)

1336.   Skinner hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

1337.   Skinner has a right of publicity under IRPA, 765 ILCS 1075/10 *et seq. Right to Publicity*.

1338.   Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Skinner without express written or oral consent to such use.

1339.   As set forth herein, Defendant has violated Skinner's right to publicity by invading Skinner's privacy, misappropriating her likeness, and publishing on Atlantis social media outlets, the altered image, likeness and/or identity of Skinner which made it appear as though Skinner was employed at Atlantis, or endorsed Atlantis strip club, or any Atlantis events or activities.

1340.   Despite the clear language of IRPA and at all relevant times, Defendant published, printed, displayed and/or publicly used Skinner's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising

including, but not limited to, promoting, advertising and marketing Atlantis and/or Atlantis's events and activities.

1341. The respective social media outlets were designed to attract business and generate revenue for Atlantis.

1342. Upon information and belief, Defendant'ss use of Skinner's image, likeness and/or identity did in fact attract clientele and generate business for Atlantis.

1343. At all relevant times and at no point, did Defendant ever receive permission or consent, be it written or otherwise, to use Skinner's image, likeness and/or identity on the Atlantis social media outlets or for any other use or matter associated with Atlantis.

1344. Defendant took these actions without Skinner's permission, consent or authority, be it written or otherwise. In fact, Defendant never sought permission nor authority to use Skinner's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activities or for any other use.

1345. Skinner never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activity.

1346. Defendant was at all relevant times aware that they never received Skinner's permission or consent to use her Image on any website or social media account, or on any other medium, in order to promote Atlantis.

1347. At no point did Defendant ever compensate Skinner for its use of her image, likeness, and/or identity.

1348. No applicable privilege or authorization exists for Defendant'ss use of Skinner's Image.

1349.   Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Skinner's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1350.   Defendant caused irreparable harm to Skinner, her reputation and brand by attributing to Skinner the strip club lifestyle and activities at Atlantis.

1351.   Defendant has also damaged Skinner as a direct and proximate result of their unauthorized use of Skinner's image, likeness and/or identity without compensating Skinner.

1352.   Due to Defendant'ss violation of Skinner's rights of privacy and publicity under IRPA, Skinner has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

1353.   In addition, Skinner hereby requests an Order permanently enjoining Defendant from violating Skinner's right to privacy and publicity.

1354.   In addition, Skinner hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendant knowing and intentional violation of her statutory rights to privacy and publicity.

**WHEREFORE**, Skinner respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## SKINNER COUNT IV
### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)

1355.   Skinner hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

1356.   Defendant published Skinner's image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Atlantis and Atlantis's events and activities, causing her to be placed in a false light as a stripper or as someone who was affiliated with Atlantis, or endorsed Atlantis strip club before the public as a result of that publication.

1357.    Without question, this "false light would be highly offensive to a reasonable person" and, by portraying Skinner in a false light Defendant did so with actual malice, with knowledge of or reckless disregard for the falsity of the statements.

1377.   Defendant published Skinner's image, likeness and/or identity on Atlantis social media outlets in order to create the false impression that Skinner was either a stripper working at Atlantis, or endorsed Atlantis strip club.

1378.    As such, Defendant'ss intent in publishing Skinner's image, likeness and/or identity was to mislead the public and cast her in a false light with respect to her affiliation with Atlantis.

1379.    Defendant was at all times aware, Skinner never worked at any Atlantis strip club, never endorsed Atlantis, and never had any affiliation with Atlantis or any Atlantis events or activities.

1380.    Defendant never sought permission or authority to use Skinner's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any

Atlantis events or activities.

1381.    Skinner never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis event or activity.

1382.    As a result of Defendant'ss unauthorized and misleading publication of Skinner's Image, Defendant has caused irreparable harm to Skinner, her reputation and brand by attributing to Skinner the strip club lifestyle and activities at Atlantis.

1383.    Defendant has also damaged Skinner as result of their unauthorized use of Skinner's image, likeness or identity without compensating Skinner.  Defendant's conduct has been despicable and taken in conscious disregard of Skinner's rights.

1384.    As a result of Defendant'ss unauthorized and misleading use of Skinner's image, likeness or identity, Skinner has been injured in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**WHEREFORE**, Skinner respectfully requests that the Court issue a judgment against Defendant for all remedies available under law, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## SKINNER COUNT V
### (Negligence and *Respondeat Superior*)

1385.    Skinner hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

1386.    Upon information and belief, Defendant was negligent in its failure to promulgate policies and procedures concerning the misappropriation of the Image of models that were used

on the Atlantis Website and social media accounts.

1387. Said failure was the proximate cause of the harm Skinner suffered when her Image was published without her authorization.

1388. In the alternative, and upon information and belief, although Defendant promulgated policies and procedures concerning the misappropriation of images, Defendant nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated.

1389. In addition, Defendant had a duty to refrain from appropriating the Image of those with whom it had not contracted, and had not paid.

1390. Defendant violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

1391. As a result of Defendant'ss negligence, Skinner have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

### *Plaintiff Irina Voronina's Causes of Action*
### *against Defendant AEG Ventures, LLC d/b/a Atlantis Gentlemen's Club*

### <u>VORONINA COUNT I</u>
### (**Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising**)

1392. Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Voronina from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

1393. Defendant used Voronina's image, likeness and/or identity as described herein without authority in order to create the perception that Voronina worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her image in order to advertise, promote, and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities.

1394. Defendant's use of Voronina's image, likeness and/or identity to advertise, promote and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities as described in this Complaint was false and misleading.

1395. Defendant's unauthorized use of Voronina's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Voronina worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities and/or that Voronina would participate in or appear at the specific events promoted in the advertisements.

1396. Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Atlantis, as to the general quality of attendees and participants of Atlantis and in their events, as well as specifically whether Voronina worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities.

1397.   Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Voronina worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events and activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Atlantis, visit Atlantis, and participate in events at Atlantis and had a material effect and impact on the decision of members and prospective members and participants to join Atlantis, visit Atlantis and take part in the events at Atlantis.

1398.   Defendant's advertisements, promotions and marketing of Atlantis and events at Atlantis occur in and are targeted to interstate commerce. Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Atlantis events.

1399.   Defendant's unauthorized use of Voronina's image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Atlantis and their activities and attracting clientele to Atlantis.

1400.   Defendant knew or should have known that their unauthorized use of Voronina's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

1401.   Defendant's unauthorized use of Voronina's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

1402.   Defendant's wrongful conduct as described herein was willful.

1403.  As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

1404.  Defendant had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Voronina of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Voronina.

1405.  The method and manner in which Defendant used the image of Voronina further evinces that Defendant were aware of or consciously disregarded the fact that Voronina did not consent to Defendant's use of the image to advertise Defendant's businesses.

1406.  Defendant had caused irreparable harm to Voronina, her reputation and brand by attributing to Voronina the strip club lifestyle and activities at Atlantis.

1407.  Defendant's unauthorized use of Voronina's image, likeness and/or identity directly and proximately caused and continue to cause damage to Voronina in an amount to be determined at trial.

**WHEREFORE**, Voronina respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## <u>VORONINA COUNT II</u>
### (**Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement**)

1408.  Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Voronina from the conduct described herein.

1409. Defendant used Voronina's image in order to create the false impression with the public that Voronina either worked at Defendant's strip club, or endorsed Defendant's businesses. This was done to promote and attract clientele to Atlantis, and thereby generate revenue for Defendant.

1410. Thus, this was done in furtherance of Defendant's commercial benefit.

1411. Voronina is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Voronina's images in magazines and online.

1412. Both Voronina and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

1413. As such, an unauthorized use of Voronina's image to promote a strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Voronina.

1414. Defendant's use of Voronina's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Voronina's fans and present and prospective clients into believing that Atlantis's advertisements are endorsed by Voronina, or sponsored, approved or associated with Voronina.

1415. Despite the fact that Defendant were at all times aware that Voronina neither worked at, nor endorsed their strip club, nevertheless, they used Voronina's image in order to mislead potential customers as to Voronina's employment at and/or affiliation with Atlantis.

1416. Defendant knew that their use of Voronina's image would cause consumer confusion as to Voronina's sponsorship and/or employment at Atlantis.

1417.  Upon information and belief, Defendant's use of Voronina's image did in fact cause consumer confusion as to Voronina's employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

1418.  As a direct and proximate result of Defendant's actions, Voronina has no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisements depicting Voronina's image, likeness and/or identity, or how Voronina's image, likeness and/or identity is being depicted by Defendant.

1419.  Further, any failure, neglect or default by Defendant will reflect adversely on Voronina as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Voronina to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Voronina.

1420.  Due to Atlantis's unauthorized use of Voronina's image, Voronina has been damaged in an amount to be determined at trial.

**WHEREFORE**, Voronina respectfully requests that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## VORONINA COUNT III
(**Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10** *et seq. Right to Publicity*)

1421.   Voronina hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

1422.   Voronina has a right of publicity under IRPA, 765 ILCS 1075/10 *et seq. Right to Publicity*.

1423.   Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Voronina without express written or oral consent to such use.

1424.   As set forth herein, Defendant has violated Voronina's right to publicity by invading Voronina's privacy, misappropriating her likeness, and publishing on Atlantis social media outlets, the altered image, likeness and/or identity of Voronina which made it appear as though Voronina was employed at Atlantis, or endorsed Atlantis strip club, or any Atlantis events or activities.

1425.   Despite the clear language of IRPA and at all relevant times, Defendant published, printed, displayed and/or publicly used Voronina's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing Atlantis and/or Atlantis's events and activities.

1426.   The respective social media outlets were designed to attract business and generate revenue for Atlantis.

1427.   Upon information and belief, Defendant'ss use of Voronina's image, likeness and/or identity did in fact attract clientele and generate business for Atlantis.

1428.   At all relevant times and at no point, did Defendant ever receive permission or consent, be it written or otherwise, to use Voronina's image, likeness and/or identity on the Atlantis social media outlets or for any other use or matter associated with Atlantis.

1429.   Defendant took these actions without Voronina's permission, consent or authority, be it written or otherwise. In fact, Defendant never sought permission nor authority to use Voronina's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activities or for any other use.

1430.   Voronina never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activity.

1431.   Defendant was at all relevant times aware that they never received Voronina's permission or consent to use her Image on any website or social media account, or on any other medium, in order to promote Atlantis.

1432.   At no point did Defendant ever compensate Voronina for its use of her image, likeness, and/or identity.

1433.   No applicable privilege or authorization exists for Defendant'ss use of Voronina's Image.

1434.   Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Voronina's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1435.   Defendant caused irreparable harm to Voronina, her reputation and brand by attributing to Voronina the strip club lifestyle and activities at Atlantis.

1436.   Defendant has also damaged Voronina as a direct and proximate result of their unauthorized use of Voronina's image, likeness and/or identity without compensating Voronina.

1437.   Due to Defendant'ss violation of Voronina's rights of privacy and publicity under IRPA, Voronina has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

1438.   In addition, Voronina hereby requests an Order permanently enjoining Defendant from violating Voronina's right to privacy and publicity.

1439.   In addition, Voronina hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendant knowing and intentional violation of her statutory rights to privacy and publicity.

**WHEREFORE**, Voronina respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

<u>**VORONINA COUNT IV**</u>
**(Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)**

1440.   Voronina hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

1441.   Defendant published Voronina's image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Atlantis and Atlantis's events and activities, causing her to be placed in a false light as a stripper or as someone who was

affiliated with Atlantis, or endorsed Atlantis strip club before the public as a result of that publication.

1442. Without question, this "false light would be highly offensive to a reasonable person" and, by portraying Voronina in a false light Defendant did so with actual malice, with knowledge of or reckless disregard for the falsity of the statements.

1443. Defendant published Voronina's image, likeness and/or identity on Atlantis social media outlets in order to create the false impression that Voronina was either a stripper working at Atlantis, or endorsed Atlantis strip club.

1444. As such, Defendant'ss intent in publishing Voronina's image, likeness and/or identity was to mislead the public and cast her in a false light with respect to her affiliation with Atlantis.

1445. Defendant was at all times aware, Voronina never worked at any Atlantis strip club, never endorsed Atlantis, and never had any affiliation with Atlantis or any Atlantis events or activities.

1446. Defendant never sought permission or authority to use Voronina's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis events or activities.

1447. Voronina never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis event or activity.

1448. As a result of Defendant'ss unauthorized and misleading publication of Voronina's Image, Defendant has caused irreparable harm to Voronina, her reputation and brand by attributing to Voronina the strip club lifestyle and activities at Atlantis.

1449.  Defendant has also damaged Voronina as result of their unauthorized use of Voronina's image, likeness or identity without compensating Voronina.  Defendant's conduct has been despicable and taken in conscious disregard of Voronina's rights.

1450.  As a result of Defendant'ss unauthorized and misleading use of Voronina's image, likeness or identity, Voronina has been injured in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**WHEREFORE**, Voronina respectfully requests that the Court issue a judgment against Defendant for all remedies available under law, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## VORONINA COUNT V
### (Negligence and *Respondeat Superior*)

1451.  Voronina hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

1452.  Upon information and belief, Defendant was negligent in its failure to promulgate policies and procedures concerning the misappropriation of the Image of models that were used on the Atlantis Website and social media accounts.

1453.  Said failure was the proximate cause of the harm Voronina suffered when her Image was published without her authorization.

1454.  In the alternative, and upon information and belief, although Defendant promulgated policies and procedures concerning the misappropriation of images, Defendant nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law,

were not violated.

1455.   In addition, Defendant had a duty to refrain from appropriating the Image of those with whom it had not contracted, and had not paid.

1456.   Defendant violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

1457.   As a result of Defendant'ss negligence, Voronina have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

*Plaintiff Eva Pepaj's Causes of Action*
*against Defendant AEG Ventures, LLC d/b/a Atlantis Gentlemen's Club*

<u>PEPAJ COUNT I</u>
(**Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising**)

1458.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Pepaj from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . ." 15 U.S.C. §1125(a)(1)(B).

1459.   Defendant used Pepaj's image, likeness and/or identity as described herein without authority in order to create the perception that Pepaj worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her image in order to advertise, promote, and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities.

1460.   Defendant's use of Pepaj's image, likeness and/or identity to advertise, promote and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities as described in this Complaint was false and misleading.

1461.   Defendant's unauthorized use of Pepaj's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Pepaj worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities and/or that Pepaj would participate in or appear at the specific events promoted in the advertisements.

1462.   Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Atlantis, as to the general quality of attendees and participants of Atlantis and in their events, as well as specifically whether Pepaj worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities.

1463.   Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Pepaj worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events and activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice

consumers and prospective consumers to join Atlantis, visit Atlantis, and participate in events at Atlantis and had a material effect and impact on the decision of members and prospective members and participants to join Atlantis, visit Atlantis and take part in the events at Atlantis.

1464.  Defendant's advertisements, promotions and marketing of Atlantis and events at Atlantis occur in and are targeted to interstate commerce. Specifically, Defendant promoted their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally used the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Atlantis events.

1465.  Defendant's unauthorized use of Pepaj's image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Atlantis and their activities and attracting clientele to Atlantis.

1466.  Defendant knew or should have known that their unauthorized use of Pepaj's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

1467.  Defendant's unauthorized use of Pepaj's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

1468.  Defendant's wrongful conduct as described herein was willful.

1469.  As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

1470.  Defendant had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Pepaj of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Pepaj.

1471. The method and manner in which Defendant used the image of Pepaj further evinces that Defendant were aware of or consciously disregarded the fact that Pepaj did not consent to Defendant's use of the image to advertise Defendant's businesses.

1472. Defendant had caused irreparable harm to Pepaj, her reputation and brand by attributing to Pepaj the strip club lifestyle and activities at Atlantis.

1473. Defendant's unauthorized use of Pepaj's image, likeness and/or identity directly and proximately caused and continue to cause damage to Pepaj in an amount to be determined at trial.

**WHEREFORE**, Pepaj respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## PEPAJ COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)

1474. Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Pepaj from the conduct described herein.

1475. Defendant used Pepaj's image in order to create the false impression with the public that Pepaj either worked at Defendant's strip club, or endorsed Defendant's businesses. This was done to promote and attract clientele to Atlantis, and thereby generate revenue for Defendant.

1476. Thus, this was done in furtherance of Defendant's commercial benefit.

1477.   Pepaj is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Pepaj's images in magazines and online.

1478.   Both Pepaj and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

1479.   As such, an unauthorized use of Pepaj's image to promote a strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Pepaj.

1480.   Defendant's use of Pepaj's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Pepaj's fans and present and prospective clients into believing that Atlantis's advertisements are endorsed by Pepaj, or sponsored, approved or associated with Pepaj.

1481.   Despite the fact that Defendant were at all times aware that Pepaj neither worked at, nor endorsed their strip club, nevertheless, they used Pepaj's image in order to mislead potential customers as to Pepaj's employment at and/or affiliation with Atlantis.

1482.   Defendant knew that their use of Pepaj's image would cause consumer confusion as to Pepaj's sponsorship and/or employment at Atlantis.

1483.   Upon information and belief, Defendant's use of Pepaj's image did in fact cause consumer confusion as to Pepaj's employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

1484.   As a direct and proximate result of Defendant's actions, Pepaj has no control over the nature and quality of the line of products or services provided by Defendant, the nature of the

advertisements depicting Pepaj's image, likeness and/or identity, or how Pepaj's image, likeness and/or identity is being depicted by Defendant.

1485.  Further, any failure, neglect or default by Defendant will reflect adversely on Pepaj as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Pepaj to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Pepaj.

1486.  Due to Atlantis's unauthorized use of Pepaj's image, Pepaj has been damaged in an amount to be determined at trial.

**WHEREFORE**, Pepaj respectfully requests that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## PEPAJ COUNT III
(**Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10** *et seq. Right to Publicity*)

1487.  Pepaj hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

1488.  Pepaj has a right of publicity under IRPA, 765 ILCS 1075/10 *et seq. Right to Publicity*.

1489.  Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Pepaj without express written or oral consent to such use.

1490.  As set forth herein, Defendant has violated Pepaj's right to publicity by invading Pepaj's privacy, misappropriating her likeness, and publishing on Atlantis social media outlets, the altered image, likeness and/or identity of Pepaj which made it appear as though Pepaj was employed at Atlantis, or endorsed Atlantis strip club, or any Atlantis events or activities.

1491.  Despite the clear language of IRPA and at all relevant times, Defendant published, printed, displayed and/or publicly used Pepaj's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing Atlantis and/or Atlantis's events and activities.

1492.  The respective social media outlets were designed to attract business and generate revenue for Atlantis.

1493.  Upon information and belief, Defendant'ss use of Pepaj's image, likeness and/or identity did in fact attract clientele and generate business for Atlantis.

1494.  At all relevant times and at no point, did Defendant ever receive permission or consent, be it written or otherwise, to use Pepaj's image, likeness and/or identity on the Atlantis social media outlets or for any other use or matter associated with Atlantis.

1495.  Defendant took these actions without Pepaj's permission, consent or authority, be it written or otherwise. In fact, Defendant never sought permission nor authority to use Pepaj's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activities or for any other use.

1496.  Pepaj never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activity.

1497.   Defendant was at all relevant times aware that they never received Pepaj's permission or consent to use her Image on any website or social media account, or on any other medium, in order to promote Atlantis.

1498.   At no point did Defendant ever compensate Pepaj for its use of her image, likeness, and/or identity.

1499.   No applicable privilege or authorization exists for Defendant'ss use of Pepaj's Image.

1500.   Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Pepaj's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1501.   Defendant caused irreparable harm to Pepaj, her reputation and brand by attributing to Pepaj the strip club lifestyle and activities at Atlantis.

1502.   Defendant has also damaged Pepaj as a direct and proximate result of their unauthorized use of Pepaj's image, likeness and/or identity without compensating Pepaj.

1503.   Due to Defendant'ss violation of Pepaj's rights of privacy and publicity under IRPA, Pepaj has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

1504.   In addition, Pepaj hereby requests an Order permanently enjoining Defendant from violating Pepaj's right to privacy and publicity.

1505.   In addition, Pepaj hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendant knowing and intentional violation of her statutory rights to privacy and publicity.

**WHEREFORE**, Pepaj respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

<u>**PEPAJ COUNT IV**</u>
**(Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)**

1506.   Pepaj hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

177.    Defendant published Pepaj's image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Atlantis and Atlantis's events and activities, causing her to be placed in a false light as a stripper or as someone who was affiliated with Atlantis, or endorsed Atlantis strip club before the public as a result of that publication.

178.    Without question, this "false light would be highly offensive to a reasonable person" and, by portraying Pepaj in a false light Defendant did so with actual malice, with knowledge of or reckless disregard for the falsity of the statements.

179.    Defendant published Pepaj's image, likeness and/or identity on Atlantis social media outlets in order to create the false impression that Pepaj was either a stripper working at Atlantis, or endorsed Atlantis strip club.

180.    As such, Defendant'ss intent in publishing Pepaj's image, likeness and/or identity was to mislead the public and cast her in a false light with respect to her affiliation with Atlantis.

181.    Defendant was at all times aware, Pepaj never worked at any Atlantis strip club, never endorsed Atlantis, and never had any affiliation with Atlantis or any Atlantis events or

activities.

182.    Defendant never sought permission or authority to use Pepaj's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis events or activities.

183.    Pepaj never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis event or activity.

184.    As a result of Defendant'ss unauthorized and misleading publication of Pepaj's Image, Defendant has caused irreparable harm to Pepaj, her reputation and brand by attributing to Pepaj the strip club lifestyle and activities at Atlantis.

1507.   Defendant has also damaged Pepaj as result of their unauthorized use of Pepaj's image, likeness or identity without compensating Pepaj.   Defendant's conduct has been despicable and taken in conscious disregard of Pepaj's rights.

1508.   As a result of Defendant'ss unauthorized and misleading use of Pepaj's image, likeness or identity, Pepaj has been injured in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**WHEREFORE**, Pepaj respectfully requests that the Court issue a judgment against Defendant for all remedies available under law, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## PEPAJ COUNT V
### (Negligence and *Respondeat Superior*)

1509.   Pepaj hereby repeats and re-alleges each and every allegation set forth in the

preceding paragraphs as if fully set forth herein.

1510.   Upon information and belief, Defendant was negligent in its failure to promulgate policies and procedures concerning the misappropriation of the Image of models that were used on the Atlantis Website and social media accounts.

1511.   Said failure was the proximate cause of the harm Pepaj suffered when her Image was published without her authorization.

1512.   In the alternative, and upon information and belief, although Defendant promulgated policies and procedures concerning the misappropriation of images, Defendant nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated.

1513.   In addition, Defendant had a duty to refrain from appropriating the Image of those with whom it had not contracted, and had not paid.

1514.   Defendant violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

1515.   As a result of Defendant'ss negligence, Pepaj have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

### *Plaintiff Imogen Thomas's Causes of Action*
### *against Defendant AEG Ventures, LLC d/b/a Atlantis Gentlemen's Club*

### THOMAS COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)

1516.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Thomas from the conduct described herein. Specifically, the Lanham Act prohibits a

party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

1517. Defendant used Thomas's image, likeness and/or identity as described herein without authority in order to create the perception that Thomas worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her image in order to advertise, promote, and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities.

1518. Defendant's use of Thomas's image, likeness and/or identity to advertise, promote and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities as described in this Complaint was false and misleading.

1519. Defendant's unauthorized use of Thomas's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Thomas worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities and/or that Thomas would participate in or appear at the specific events promoted in the advertisements.

1520. Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Atlantis, as to the general quality of attendees and participants of Atlantis and in their events, as well as specifically whether Thomas worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her

image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities.

1521.  Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Thomas worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events and activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Atlantis, visit Atlantis, and participate in events at Atlantis and had a material effect and impact on the decision of members and prospective members and participants to join Atlantis, visit Atlantis and take part in the events at Atlantis.

1522.  Defendant's advertisements, promotions and marketing of Atlantis and events at Atlantis occur in and are targeted to interstate commerce. Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Atlantis events.

1523.  Defendant's unauthorized use of Thomas's image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Atlantis and their activities and attracting clientele to Atlantis.

1524.  Defendant knew or should have known that their unauthorized use of Thomas's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

1525.   Defendant's unauthorized use of Thomas's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

1526.   Defendant's wrongful conduct as described herein was willful.

1527.   As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

1528.   Defendant had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Thomas of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Thomas.

1529.   The method and manner in which Defendant used the image of Thomas further evinces that Defendant were aware of or consciously disregarded the fact that Thomas did not consent to Defendant's use of the image to advertise Defendant's businesses.

1530.   Defendant had caused irreparable harm to Thomas, her reputation and brand by attributing to Thomas the strip club lifestyle and activities at Atlantis.

1531.   Defendant's unauthorized use of Thomas's image, likeness and/or identity directly and proximately caused and continue to cause damage to Thomas in an amount to be determined at trial.

**WHEREFORE**, Thomas respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## THOMAS COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)

1532.  Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Thomas from the conduct described herein.

1533.  Defendant used Thomas's image in order to create the false impression with the public that Thomas either worked at Defendant's strip club, or endorsed Defendant's businesses. This was done to promote and attract clientele to Atlantis, and thereby generate revenue for Defendant.

1534.  Thus, this was done in furtherance of Defendant's commercial benefit.

1535.  Thomas is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Thomas's images in magazines and online.

1536.  Both Thomas and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

1537.  As such, an unauthorized use of Thomas's image to promote a strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Thomas.

1538.  Defendant's use of Thomas's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Thomas's fans and present and prospective clients into believing that Atlantis's advertisements are endorsed by Thomas, or sponsored, approved or associated with Thomas.

1539. Despite the fact that Defendant were at all times aware that Thomas neither worked at, nor endorsed their strip club, nevertheless, they used Thomas's image in order to mislead potential customers as to Thomas's employment at and/or affiliation with Atlantis.

1540. Defendant knew that their use of Thomas's image would cause consumer confusion as to Thomas's sponsorship and/or employment at Atlantis.

1541. Upon information and belief, Defendant's use of Thomas's image did in fact cause consumer confusion as to Thomas's employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

1542. As a direct and proximate result of Defendant's actions, Thomas has no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisements depicting Thomas's image, likeness and/or identity, or how Thomas's image, likeness and/or identity is being depicted by Defendant.

1543. Further, any failure, neglect or default by Defendant will reflect adversely on Thomas as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Thomas to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Thomas.

1544. Due to Atlantis's unauthorized use of Thomas's image, Thomas has been damaged in an amount to be determined at trial.

**WHEREFORE**, Thomas respectfully requests that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use,

attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## THOMAS COUNT III
(**Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10** *et seq. Right to Publicity*)

1545.   Thomas hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

1546.   Thomas has a right of publicity under IRPA, 765 ILCS 1075/10 *et seq. Right to Publicity*.

1547.   Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Thomas without express written or oral consent to such use.

1548.   As set forth herein, Defendant has violated Thomas's right to publicity by invading Thomas's privacy, misappropriating her likeness, and publishing on Atlantis social media outlets, the altered image, likeness and/or identity of Thomas which made it appear as though Thomas was employed at Atlantis, or endorsed Atlantis strip club, or any Atlantis events or activities.

1549.   Despite the clear language of IRPA and at all relevant times, Defendant published, printed, displayed and/or publicly used Thomas's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing Atlantis and/or Atlantis's events and activities.

1550.   The respective social media outlets were designed to attract business and generate revenue for Atlantis.

1551.   Upon information and belief, Defendant'ss use of Thomas's image, likeness and/or identity did in fact attract clientele and generate business for Atlantis.

1552.   At all relevant times and at no point, did Defendant ever receive permission or consent, be it written or otherwise, to use Thomas's image, likeness and/or identity on the Atlantis social media outlets or for any other use or matter associated with Atlantis.

1553.   Defendant took these actions without Thomas's permission, consent or authority, be it written or otherwise. In fact, Defendant never sought permission nor authority to use Thomas's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activities or for any other use.

1554.   Thomas never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activity.

1555.    Defendant was at all relevant times aware that they never received Thomas's permission or consent to use her Image on any website or social media account, or on any other medium, in order to promote Atlantis.

1556.   At no point did Defendant ever compensate Thomas for its use of her image, likeness, and/or identity.

1557.   No applicable privilege or authorization exists for Defendant'ss use of Thomas's Image.

1558.   Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Thomas's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1559.  Defendant caused irreparable harm to Thomas, her reputation and brand by attributing to Thomas the strip club lifestyle and activities at Atlantis.

1560.  Defendant has also damaged Thomas as a direct and proximate result of their unauthorized use of Thomas's image, likeness and/or identity without compensating Thomas.

1561.  Due to Defendant'ss violation of Thomas's rights of privacy and publicity under IRPA, Thomas has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

1562.  In addition, Thomas hereby requests an Order permanently enjoining Defendant from violating Thomas's right to privacy and publicity.

1563.  In addition, Thomas hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendant knowing and intentional violation of her statutory rights to privacy and publicity.

**WHEREFORE**, Thomas respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## THOMAS COUNT IV
### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)

1564.  Thomas hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

177.    Defendant published Thomas's image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Atlantis and Atlantis's events and activities, causing her to be placed in a false light as a stripper or as someone who was

affiliated with Atlantis, or endorsed Atlantis strip club before the public as a result of that publication.

178.    Without question, this "false light would be highly offensive to a reasonable person" and, by portraying Thomas in a false light Defendant did so with actual malice, with knowledge of or reckless disregard for the falsity of the statements.

179.    Defendant published Thomas's image, likeness and/or identity on Atlantis social media outlets in order to create the false impression that Thomas was either a stripper working at Atlantis, or endorsed Atlantis strip club.

180.    As such, Defendant'ss intent in publishing Thomas's image, likeness and/or identity was to mislead the public and cast her in a false light with respect to her affiliation with Atlantis.

181.    Defendant was at all times aware, Thomas never worked at any Atlantis strip club, never endorsed Atlantis, and never had any affiliation with Atlantis or any Atlantis events or activities.

182.    Defendant never sought permission or authority to use Thomas's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis events or activities.

183.    Thomas never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis event or activity.

184.    As a result of Defendant'ss unauthorized and misleading publication of Thomas's Image, Defendant has caused irreparable harm to Thomas, her reputation and brand by attributing to Thomas the strip club lifestyle and activities at Atlantis.

1565.   Defendant has also damaged Thomas as result of their unauthorized use of Thomas's image, likeness or identity without compensating Thomas.  Defendant's conduct has been despicable and taken in conscious disregard of Thomas's rights.

1566.   As a result of Defendant'ss unauthorized and misleading use of Thomas's image, likeness or identity, Thomas has been injured in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**WHEREFORE**, Thomas respectfully requests that the Court issue a judgment against Defendant for all remedies available under law, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## THOMAS COUNT V
### (Negligence and *Respondeat Superior*)

1567.   Thomas hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

1568.   Upon information and belief, Defendant was negligent in its failure to promulgate policies and procedures concerning the misappropriation of the Image of models that were used on the Atlantis Website and social media accounts.

1569.   Said failure was the proximate cause of the harm Thomas suffered when her Image was published without her authorization.

1570.   In the alternative, and upon information and belief, although Defendant promulgated policies and procedures concerning the misappropriation of images, Defendant nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law,

were not violated.

1571.   In addition, Defendant had a duty to refrain from appropriating the Image of those with whom it had not contracted, and had not paid.

1572.   Defendant violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

1573.   As a result of Defendant'ss negligence, Thomas have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

### *Plaintiff Jessica Hinton a/k/a Jessa Hinton's Causes of Action against Defendant AEG Ventures, LLC d/b/a Atlantis Gentlemen's Club*

### HINTON COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)

1574.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Hinton from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . ." 15 U.S.C. §1125(a)(1)(B).

1575.   Defendant used Hinton's image, likeness and/or identity as described herein without authority in order to create the perception that Hinton worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her image in order to advertise, promote, and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities.

1576.   Defendant's use of Hinton's image, likeness and/or identity to advertise, promote and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities as described in this Complaint was false and misleading.

1577.   Defendant's unauthorized use of Hinton's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Hinton worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities and/or that Hinton would participate in or appear at the specific events promoted in the advertisements.

1578.   Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Atlantis, as to the general quality of attendees and participants of Atlantis and in their events, as well as specifically whether Hinton worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities.

1579.   Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Hinton worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events and activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice

consumers and prospective consumers to join Atlantis, visit Atlantis, and participate in events at Atlantis and had a material effect and impact on the decision of members and prospective members and participants to join Atlantis, visit Atlantis and take part in the events at Atlantis.

1580.  Defendant's advertisements, promotions and marketing of Atlantis and events at Atlantis occur in and are targeted to interstate commerce. Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Atlantis events.

1581.  Defendant's unauthorized use of Hinton's image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Atlantis and their activities and attracting clientele to Atlantis.

1582.  Defendant knew or should have known that their unauthorized use of Hinton's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

1583.  Defendant's unauthorized use of Hinton's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

1584.  Defendant's wrongful conduct as described herein was willful.

1585.  As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

1586.  Defendant had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Hinton of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Hinton.

1587.   The method and manner in which Defendant used the image of Hinton further evinces that Defendant were aware of or consciously disregarded the fact that Hinton did not consent to Defendant's use of the image to advertise Defendant's businesses.

1588.   Defendant had caused irreparable harm to Hinton, her reputation and brand by attributing to Hinton the strip club lifestyle and activities at Atlantis.

1589.   Defendant's unauthorized use of Hinton's image, likeness and/or identity directly and proximately caused and continue to cause damage to Hinton in an amount to be determined at trial.

**WHEREFORE**, Hinton respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

### HINTON COUNT II
#### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)

1590.   Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Hinton from the conduct described herein.

1591.   Defendant used Hinton's image in order to create the false impression with the public that Hinton either worked at Defendant's strip club, or endorsed Defendant's businesses. This was done to promote and attract clientele to Atlantis, and thereby generate revenue for Defendant.

1592.   Thus, this was done in furtherance of Defendant's commercial benefit.

1593.   Hinton is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Hinton's images in magazines and online.

1594.   Both Hinton and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

1595.   As such, an unauthorized use of Hinton's image to promote a strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Hinton.

1596.   Defendant's use of Hinton's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Hinton's fans and present and prospective clients into believing that Atlantis's advertisements are endorsed by Hinton, or sponsored, approved or associated with Hinton.

1597.   Despite the fact that Defendant were at all times aware that Hinton neither worked at, nor endorsed their strip club, nevertheless, they used Hinton's image in order to mislead potential customers as to Hinton's employment at and/or affiliation with Atlantis.

1598.   Defendant knew that their use of Hinton's image would cause consumer confusion as to Hinton's sponsorship and/or employment at Atlantis.

1599.   Upon information and belief, Defendant's use of Hinton's image did in fact cause consumer confusion as to Hinton's employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

1600.   As a direct and proximate result of Defendant's actions, Hinton has no control over the nature and quality of the line of products or services provided by Defendant, the nature

of the advertisements depicting Hinton's image, likeness and/or identity, or how Hinton's image, likeness and/or identity is being depicted by Defendant.

1601.   Further, any failure, neglect or default by Defendant will reflect adversely on Hinton as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Hinton to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Hinton.

1602.   Due to Atlantis's unauthorized use of Hinton's image, Hinton has been damaged in an amount to be determined at trial.

**WHEREFORE**, Hinton respectfully requests that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## HINTON COUNT III
### (**Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10** *et seq. Right to Publicity*)

1603.   Hinton hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

1604.   Hinton has a right of publicity under IRPA, 765 ILCS 1075/10 *et seq. Right to Publicity*.

1605.   Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Hinton without express written or oral consent to such use.

1606.   As set forth herein, Defendant has violated Hinton's right to publicity by invading Hinton's privacy, misappropriating her likeness, and publishing on Atlantis social media outlets, the altered image, likeness and/or identity of Hinton which made it appear as though Hinton was employed at Atlantis, or endorsed Atlantis strip club, or any Atlantis events or activities.

1607.  Despite the clear language of IRPA and at all relevant times, Defendant published, printed, displayed and/or publicly used Hinton's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing Atlantis and/or Atlantis's events and activities.

1608.   The respective social media outlets were designed to attract business and generate revenue for Atlantis.

1609.   Upon information and belief, Defendant'ss use of Hinton's image, likeness and/or identity did in fact attract clientele and generate business for Atlantis.

1610.   At all relevant times and at no point, did Defendant ever receive permission or consent, be it written or otherwise, to use Hinton's image, likeness and/or identity on the Atlantis social media outlets or for any other use or matter associated with Atlantis.

1611.   Defendant took these actions without Hinton's permission, consent or authority, be it written or otherwise. In fact, Defendant never sought permission nor authority to use Hinton's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activities or for any other use.

1612.   Hinton never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activity.

1613.   Defendant was at all relevant times aware that they never received Hinton's permission or consent to use her Image on any website or social media account, or on any other medium, in order to promote Atlantis.

1614.   At no point did Defendant ever compensate Hinton for its use of her image, likeness, and/or identity.

1615.   No applicable privilege or authorization exists for Defendant'ss use of Hinton's Image.

1616.   Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Hinton's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1617.   Defendant caused irreparable harm to Hinton, her reputation and brand by attributing to Hinton the strip club lifestyle and activities at Atlantis.

1618.   Defendant has also damaged Hinton as a direct and proximate result of their unauthorized use of Hinton's image, likeness and/or identity without compensating Hinton.

1619.   Due to Defendant'ss violation of Hinton's rights of privacy and publicity under IRPA, Hinton has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

1620.   In addition, Hinton hereby requests an Order permanently enjoining Defendant from violating Hinton's right to privacy and publicity.

1621.   In addition, Hinton hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendant knowing and intentional violation of her statutory rights to privacy and publicity.

WHEREFORE, Hinton respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## HINTON COUNT IV
### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)

1622.    Hinton hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

177.    Defendant published Hinton's image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Atlantis and Atlantis's events and activities, causing her to be placed in a false light as a stripper or as someone who was affiliated with Atlantis, or endorsed Atlantis strip club before the public as a result of that publication.

178.    Without question, this "false light would be highly offensive to a reasonable person" and, by portraying Hinton in a false light Defendant did so with actual malice, with knowledge of or reckless disregard for the falsity of the statements.

179.    Defendant published Hinton's image, likeness and/or identity on Atlantis social media outlets in order to create the false impression that Hinton was either a stripper working at Atlantis, or endorsed Atlantis strip club.

180.    As such, Defendant'ss intent in publishing Hinton's image, likeness and/or identity was to mislead the public and cast her in a false light with respect to her affiliation with Atlantis.

181.    Defendant was at all times aware, Hinton never worked at any Atlantis strip club,

never endorsed Atlantis, and never had any affiliation with Atlantis or any Atlantis events or activities.

182.    Defendant never sought permission or authority to use Hinton's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis events or activities.

183.    Hinton never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis event or activity.

184.    As a result of Defendant'ss unauthorized and misleading publication of Hinton's Image, Defendant has caused irreparable harm to Hinton, her reputation and brand by attributing to Hinton the strip club lifestyle and activities at Atlantis.

1623.    Defendant has also damaged Hinton as result of their unauthorized use of Hinton's image, likeness or identity without compensating Hinton.  Defendant's conduct has been despicable and taken in conscious disregard of Hinton's rights.

1624.    As a result of Defendant'ss unauthorized and misleading use of Hinton's image, likeness or identity, Hinton has been injured in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**WHEREFORE**, Hinton respectfully requests that the Court issue a judgment against Defendant for all remedies available under law, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## HINTON COUNT V
## (Negligence and *Respondeat Superior*)

1625.   Hinton hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

1626.   Upon information and belief, Defendant was negligent in its failure to promulgate policies and procedures concerning the misappropriation of the Image of models that were used on the Atlantis Website and social media accounts.

1627.   Said failure was the proximate cause of the harm Hinton suffered when her Image was published without her authorization.

1628.   In the alternative, and upon information and belief, although Defendant promulgated policies and procedures concerning the misappropriation of images, Defendant nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated.

1629.   In addition, Defendant had a duty to refrain from appropriating the Image of those with whom it had not contracted, and had not paid.

1630.   Defendant violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

1631.   As a result of Defendant'ss negligence, Hinton have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

*Plaintiff Marta Krupa's Causes of Action*
*against Defendant AEG Ventures, LLC d/b/a Atlantis Gentlemen's Club*

## M.KRUPA COUNT I
(**Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising**)

1632.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects M.Krupa from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . ." 15 U.S.C. §1125(a)(1)(B).

1633.   Defendant used M.Krupa's image, likeness and/or identity as described herein without authority in order to create the perception that M.Krupa worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her image in order to advertise, promote, and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities.

1634.   Defendant's use of M.Krupa's image, likeness and/or identity to advertise, promote and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities as described in this Complaint was false and misleading.

1635.   Defendant's unauthorized use of M.Krupa's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that M.Krupa worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or

Atlantis's events and activities and/or that M.Krupa would participate in or appear at the specific events promoted in the advertisements.

1636. Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Atlantis, as to the general quality of attendees and participants of Atlantis and in their events, as well as specifically whether M.Krupa worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities.

1637. Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether M.Krupa worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events and activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Atlantis, visit Atlantis, and participate in events at Atlantis and had a material effect and impact on the decision of members and prospective members and participants to join Atlantis, visit Atlantis and take part in the events at Atlantis.

1638. Defendant's advertisements, promotions and marketing of Atlantis and events at Atlantis occur in and are targeted to interstate commerce. Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally use the World Wide Web,

social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Atlantis events.

1639.  Defendant's unauthorized use of M.Krupa's image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Atlantis and their activities and attracting clientele to Atlantis.

1640.  Defendant knew or should have known that their unauthorized use of M.Krupa's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

1641.  Defendant's unauthorized use of M.Krupa's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

1642.  Defendant's wrongful conduct as described herein was willful.

1643.  As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

1644.  Defendant had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive M.Krupa of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to M.Krupa.

1645.  The method and manner in which Defendant used the image of M.Krupa further evinces that Defendant were aware of or consciously disregarded the fact that M.Krupa did not consent to Defendant's use of the image to advertise Defendant's businesses.

1646.  Defendant had caused irreparable harm to M.Krupa, her reputation and brand by attributing to M.Krupa the strip club lifestyle and activities at Atlantis.

1647.   Defendant's unauthorized use of M.Krupa's image, likeness and/or identity directly and proximately caused and continue to cause damage to M.Krupa in an amount to be determined at trial.

**WHEREFORE**, M.Krupa respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## M.KRUPA COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)

1648.   Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects M.Krupa from the conduct described herein.

1649.   Defendant used M.Krupa's image in order to create the false impression with the public that M.Krupa either worked at Defendant's strip club, or endorsed Defendant's businesses. This was done to promote and attract clientele to Atlantis, and thereby generate revenue for Defendant.

1650.   Thus, this was done in furtherance of Defendant's commercial benefit.

1651.   M.Krupa is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views M.Krupa's images in magazines and online.

1652.   Both M.Krupa and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

1653.   As such, an unauthorized use of M.Krupa's image to promote a strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to M.Krupa.

1654.   Defendant's use of M.Krupa's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived M.Krupa's fans and present and prospective clients into believing that Atlantis's advertisements are endorsed by M.Krupa, or sponsored, approved or associated with M.Krupa.

1655.   Despite the fact that Defendant were at all times aware that M.Krupa neither worked at, nor endorsed their strip club, nevertheless, they used M.Krupa's image in order to mislead potential customers as to M.Krupa's employment at and/or affiliation with Atlantis.

1656.   Defendant knew that their use of M.Krupa's image would cause consumer confusion as to M.Krupa's sponsorship and/or employment at Atlantis.

1657.   Upon information and belief, Defendant's use of M.Krupa's image did in fact cause consumer confusion as to M.Krupa's employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

1658.   As a direct and proximate result of Defendant's actions, M.Krupa has no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisements depicting M.Krupa's image, likeness and/or identity, or how M.Krupa's image, likeness and/or identity is being depicted by Defendant.

1659.   Further, any failure, neglect or default by Defendant will reflect adversely on M.Krupa as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by M.Krupa to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her

personal modeling services to legitimate mainstream media, all to the irreparable harm of M.Krupa.

1660. Due to Atlantis's unauthorized use of M.Krupa's image, M.Krupa has been damaged in an amount to be determined at trial.

**WHEREFORE**, M.Krupa respectfully requests that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

### M.KRUPA COUNT III
(**Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10** *et seq. Right to Publicity*)

1661. M.Krupa hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

1662. M.Krupa has a right of publicity under IRPA, 765 ILCS 1075/10 *et seq. Right to Publicity*.

1663. Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of M.Krupa without express written or oral consent to such use.

1664. As set forth herein, Defendant has violated M.Krupa's right to publicity by invading M.Krupa's privacy, misappropriating her likeness, and publishing on Atlantis social media outlets, the altered image, likeness and/or identity of M.Krupa which made it appear as though M.Krupa was employed at Atlantis, or endorsed Atlantis strip club, or any Atlantis events or activities.

1665.  Despite the clear language of IRPA and at all relevant times, Defendant published, printed, displayed and/or publicly used M.Krupa's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing Atlantis and/or Atlantis's events and activities.

1666.  The respective social media outlets were designed to attract business and generate revenue for Atlantis.

1667.  Upon information and belief, Defendant'ss use of M.Krupa's image, likeness and/or identity did in fact attract clientele and generate business for Atlantis.

1668.  At all relevant times and at no point, did Defendant ever receive permission or consent, be it written or otherwise, to use M.Krupa's image, likeness and/or identity on the Atlantis social media outlets or for any other use or matter associated with Atlantis.

1669.  Defendant took these actions without M.Krupa's permission, consent or authority, be it written or otherwise. In fact, Defendant never sought permission nor authority to use M.Krupa's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activities or for any other use.

1670.  M.Krupa never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activity.

1671.  Defendant was at all relevant times aware that they never received M.Krupa's permission or consent to use her Image on any website or social media account, or on any other medium, in order to promote Atlantis.

1672.   At no point did Defendant ever compensate M.Krupa for its use of her image, likeness, and/or identity.

1673.   No applicable privilege or authorization exists for Defendant'ss use of M.Krupa's Image.

1674.   Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used M.Krupa's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1675.   Defendant caused irreparable harm to M.Krupa, her reputation and brand by attributing to M.Krupa the strip club lifestyle and activities at Atlantis.

1676.   Defendant has also damaged M.Krupa as a direct and proximate result of their unauthorized use of M.Krupa's image, likeness and/or identity without compensating M.Krupa.

1677.   Due to Defendant'ss violation of M.Krupa's rights of privacy and publicity under IRPA, M.Krupa has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

1678.   In addition, M.Krupa hereby requests an Order permanently enjoining Defendant from violating M.Krupa's right to privacy and publicity.

1679.   In addition, M.Krupa hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendant knowing and intentional violation of her statutory rights to privacy and publicity.

**WHEREFORE**, M.Krupa respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited

to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## M.KRUPA COUNT IV
### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)

1680.   M.Krupa hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

177.    Defendant published M.Krupa's image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Atlantis and Atlantis's events and activities, causing her to be placed in a false light as a stripper or as someone who was affiliated with Atlantis, or endorsed Atlantis strip club before the public as a result of that publication.

178.     Without question, this "false light would be highly offensive to a reasonable person" and, by portraying M.Krupa in a false light Defendant did so with actual malice, with knowledge of or reckless disregard for the falsity of the statements.

179.    Defendant published M.Krupa's image, likeness and/or identity on Atlantis social media outlets in order to create the false impression that M.Krupa was either a stripper working at Atlantis, or endorsed Atlantis strip club.

180.     As such, Defendant'ss intent in publishing M.Krupa's image, likeness and/or identity was to mislead the public and cast her in a false light with respect to her affiliation with Atlantis.

181.   Defendant was at all times aware, M.Krupa never worked at any Atlantis strip club, never endorsed Atlantis, and never had any affiliation with Atlantis or any Atlantis events or activities.

182.    Defendant never sought permission or authority to use M.Krupa's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis events or activities.

183.    M.Krupa never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis event or activity.

184.    As a result of Defendant'ss unauthorized and misleading publication of M.Krupa's Image, Defendant has caused irreparable harm to M.Krupa, her reputation and brand by attributing to M.Krupa the strip club lifestyle and activities at Atlantis.

1681.    Defendant has also damaged M.Krupa as result of their unauthorized use of M.Krupa's image, likeness or identity without compensating M.Krupa.  Defendant's conduct has been despicable and taken in conscious disregard of M.Krupa's rights.

1682.    As a result of Defendant'ss unauthorized and misleading use of M.Krupa's image, likeness or identity, M.Krupa has been injured in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**WHEREFORE**, M.Krupa respectfully requests that the Court issue a judgment against Defendant for all remedies available under law, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## M.KRUPA COUNT V
### (Negligence and *Respondeat Superior*)

1683.    M.Krupa hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

1684. Upon information and belief, Defendant was negligent in its failure to promulgate policies and procedures concerning the misappropriation of the Image of models that were used on the Atlantis Website and social media accounts.

1685. Said failure was the proximate cause of the harm M.Krupa suffered when her Image was published without her authorization.

1686. In the alternative, and upon information and belief, although Defendant promulgated policies and procedures concerning the misappropriation of images, Defendant nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated.

1687. In addition, Defendant had a duty to refrain from appropriating the Image of those with whom it had not contracted, and had not paid.

1688. Defendant violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

1689. As a result of Defendant'ss negligence, M.Krupa have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

### *Plaintiff Joanna Krupa's Causes of Action against Defendant AEG Ventures, LLC d/b/a Atlantis Gentlemen's Club*

### J.KRUPA COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)

1690. Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects J.Krupa from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature,

characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .".  15 U.S.C. §1125(a)(1)(B).

1691.  Defendant used J.Krupa's image, likeness and/or identity as described herein without authority in order to create the perception that J.Krupa worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her image in order to advertise, promote, and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities.

1692.  Defendant's use of J.Krupa's image, likeness and/or identity to advertise, promote and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities as described in this Complaint was false and misleading.

1693.  Defendant's unauthorized use of J.Krupa's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that J.Krupa worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities and/or that J.Krupa would participate in or appear at the specific events promoted in the advertisements.

1694.  Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Atlantis, as to the general quality of attendees and participants of Atlantis and in their events, as well as specifically whether J.Krupa worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her

image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities.

1695. Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether J.Krupa worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events and activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Atlantis, visit Atlantis, and participate in events at Atlantis and had a material effect and impact on the decision of members and prospective members and participants to join Atlantis, visit Atlantis and take part in the events at Atlantis.

1696. Defendant's advertisements, promotions and marketing of Atlantis and events at Atlantis occur in and are targeted to interstate commerce. Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Atlantis events.

1697. Defendant's unauthorized use of J.Krupa's image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Atlantis and their activities and attracting clientele to Atlantis.

1698. Defendant knew or should have known that their unauthorized use of J.Krupa's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

1699. Defendant's unauthorized use of J.Krupa's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

1700. Defendant's wrongful conduct as described herein was willful.

1701. As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

1702. Defendant had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive J.Krupa of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to J.Krupa.

1703. The method and manner in which Defendant used the image of J.Krupa further evinces that Defendant were aware of or consciously disregarded the fact that J.Krupa did not consent to Defendant's use of the image to advertise Defendant's businesses.

1704. Defendant had caused irreparable harm to J.Krupa, her reputation and brand by attributing to J.Krupa the strip club lifestyle and activities at Atlantis.

1705. Defendant's unauthorized use of J.Krupa's image, likeness and/or identity directly and proximately caused and continue to cause damage to J.Krupa in an amount to be determined at trial.

**WHEREFORE**, J.Krupa respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## J.KRUPA COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)

1706.   Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects J.Krupa from the conduct described herein.

1707.   Defendant used J.Krupa's image in order to create the false impression with the public that J.Krupa either worked at Defendant's strip club, or endorsed Defendant's businesses. This was done to promote and attract clientele to Atlantis, and thereby generate revenue for Defendant.

1708.   Thus, this was done in furtherance of Defendant's commercial benefit.

1709.   J.Krupa is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views J.Krupa's images in magazines and online.

1710.   Both J.Krupa and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

1711.   As such, an unauthorized use of J.Krupa's image to promote a strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to J.Krupa.

1712.   Defendant's use of J.Krupa's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived J.Krupa's fans and present and prospective clients into believing that Atlantis's advertisements are endorsed by J.Krupa, or sponsored, approved or associated with J.Krupa.

1713. Despite the fact that Defendant were at all times aware that J.Krupa neither worked at, nor endorsed their strip club, nevertheless, they used J.Krupa's image in order to mislead potential customers as to J.Krupa's employment at and/or affiliation with Atlantis.

1714. Defendant knew that their use of J.Krupa's image would cause consumer confusion as to J.Krupa's sponsorship and/or employment at Atlantis.

1715. Upon information and belief, Defendant's use of J.Krupa's image did in fact cause consumer confusion as to J.Krupa's employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

1716. As a direct and proximate result of Defendant's actions, J.Krupa has no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisements depicting J.Krupa's image, likeness and/or identity, or how J.Krupa's image, likeness and/or identity is being depicted by Defendant.

1717. Further, any failure, neglect or default by Defendant will reflect adversely on J.Krupa as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by J.Krupa to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of J.Krupa.

1718. Due to Atlantis's unauthorized use of J.Krupa's image, J.Krupa has been damaged in an amount to be determined at trial.

**WHEREFORE**, J.Krupa respectfully requests that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use,

attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

### J.KRUPA COUNT III
(**Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10** *et seq. Right to Publicity*)

1719.   J.Krupa hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

1720.   J.Krupa has a right of publicity under IRPA, 765 ILCS 1075/10 *et seq. Right to Publicity*.

1721.   Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of J.Krupa without express written or oral consent to such use.

1722.   As set forth herein, Defendant has violated J.Krupa's right to publicity by invading J.Krupa's privacy, misappropriating her likeness, and publishing on Atlantis social media outlets, the altered image, likeness and/or identity of J.Krupa which made it appear as though J.Krupa was employed at Atlantis, or endorsed Atlantis strip club, or any Atlantis events or activities.

1723. Despite the clear language of IRPA and at all relevant times, Defendant published, printed, displayed and/or publicly used J.Krupa's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing Atlantis and/or Atlantis's events and activities.

1724.   The respective social media outlets were designed to attract business and generate revenue for Atlantis.

1725.   Upon information and belief, Defendant'ss use of J.Krupa's image, likeness and/or identity did in fact attract clientele and generate business for Atlantis.

1726.   At all relevant times and at no point, did Defendant ever receive permission or consent, be it written or otherwise, to use J.Krupa's image, likeness  and/or identity on the Atlantis social media outlets or for any other use or matter associated with Atlantis.

1727.   Defendant took these actions without J.Krupa's permission, consent or authority, be it written or otherwise. In fact, Defendant never sought permission nor authority to use J.Krupa's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activities or for any other use.

1728.   J.Krupa never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activity.

1729.    Defendant was at all relevant times aware that they never received J.Krupa's permission or consent to use her Image on any website or social media account, or on any other medium, in order to promote Atlantis.

1730.   At no point did Defendant ever compensate J.Krupa for its use of her image, likeness, and/or identity.

1731.   No applicable privilege or authorization exists for Defendant'ss use of J.Krupa's Image.

1732.   Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used J.Krupa's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1733. Defendant caused irreparable harm to J.Krupa, her reputation and brand by attributing to J.Krupa the strip club lifestyle and activities at Atlantis.

1734. Defendant has also damaged J.Krupa as a direct and proximate result of their unauthorized use of J.Krupa's image, likeness and/or identity without compensating J.Krupa.

1735. Due to Defendant'ss violation of J.Krupa's rights of privacy and publicity under IRPA, J.Krupa has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

1736. In addition, J.Krupa hereby requests an Order permanently enjoining Defendant from violating J.Krupa's right to privacy and publicity.

1737. In addition, J.Krupa hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendant knowing and intentional violation of her statutory rights to privacy and publicity.

**WHEREFORE**, J.Krupa respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

### J.KRUPA COUNT IV
### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq.* False Light)

1738. J.Krupa hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

177. Defendant published J.Krupa's image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Atlantis and Atlantis's events and activities, causing her to be placed in a false light as a stripper or as someone who was

affiliated with Atlantis, or endorsed Atlantis strip club before the public as a result of that publication.

178.    Without question, this "false light would be highly offensive to a reasonable person" and, by portraying J.Krupa in a false light Defendant did so with actual malice, with knowledge of or reckless disregard for the falsity of the statements.

179.    Defendant published J.Krupa's image, likeness and/or identity on Atlantis social media outlets in order to create the false impression that J.Krupa was either a stripper working at Atlantis, or endorsed Atlantis strip club.

180.    As such, Defendant'ss intent in publishing J.Krupa's image, likeness and/or identity was to mislead the public and cast her in a false light with respect to her affiliation with Atlantis.

181.    Defendant was at all times aware, J.Krupa never worked at any Atlantis strip club, never endorsed Atlantis, and never had any affiliation with Atlantis or any Atlantis events or activities.

182.    Defendant never sought permission or authority to use J.Krupa's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis events or activities.

183.    J.Krupa never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis event or activity.

184.    As a result of Defendant'ss unauthorized and misleading publication of J.Krupa's Image, Defendant has caused irreparable harm to J.Krupa, her reputation and brand by attributing to J.Krupa the strip club lifestyle and activities at Atlantis.

1739.   Defendant has also damaged J.Krupa as result of their unauthorized use of J.Krupa's image, likeness or identity without compensating J.Krupa.  Defendant's conduct has been despicable and taken in conscious disregard of J.Krupa's rights.

1740.   As a result of Defendant'ss unauthorized and misleading use of J.Krupa's image, likeness or identity, J.Krupa has been injured in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**WHEREFORE**, J.Krupa respectfully requests that the Court issue a judgment against Defendant for all remedies available under law, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## J.KRUPA COUNT V
### (Negligence and *Respondeat Superior*)

1741.   J.Krupa hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

1742.   Upon information and belief, Defendant was negligent in its failure to promulgate policies and procedures concerning the misappropriation of the Image of models that were used on the Atlantis Website and social media accounts.

1743.   Said failure was the proximate cause of the harm J.Krupa suffered when her Image was published without her authorization.

1744.   In the alternative, and upon information and belief, although Defendant promulgated policies and procedures concerning the misappropriation of images, Defendant nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law,

were not violated.

1745.   In addition, Defendant had a duty to refrain from appropriating the Image of those with whom it had not contracted, and had not paid.

1746.   Defendant violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

1747.   As a result of Defendant'ss negligence, J.Krupa have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

### *Plaintiff Ina Schnitzer a/k/a Jordan Carver's Causes of Action against Defendant AEG Ventures, LLC d/b/a Atlantis Gentlemen's Club*

### <u>SCHNITZER COUNT I</u>
### (**Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising**)

1748.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Schnitzer from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .".  15 U.S.C. §1125(a)(1)(B).

1749.   Defendant used Schnitzer's image, likeness and/or identity as described herein without authority in order to create the perception that Schnitzer worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her image in order to advertise, promote, and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities.

1750. Defendant's use of Schnitzer's image, likeness and/or identity to advertise, promote and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities as described in this Complaint was false and misleading.

1751. Defendant's unauthorized use of Schnitzer's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Schnitzer worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities and/or that Schnitzer would participate in or appear at the specific events promoted in the advertisements.

1752. Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Atlantis, as to the general quality of attendees and participants of Atlantis and in their events, as well as specifically whether Schnitzer worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities.

1753. Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Schnitzer worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events and activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice

consumers and prospective consumers to join Atlantis, visit Atlantis, and participate in events at Atlantis and had a material effect and impact on the decision of members and prospective members and participants to join Atlantis, visit Atlantis and take part in the events at Atlantis.

1754.   Defendant's advertisements, promotions and marketing of Atlantis and events at Atlantis occur in and are targeted to interstate commerce. Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Atlantis events.

1755.   Defendant's unauthorized use of Schnitzer's image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Atlantis and their activities and attracting clientele to Atlantis.

1756.   Defendant knew or should have known that their unauthorized use of Schnitzer's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

1757.   Defendant's unauthorized use of Schnitzer's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

1758.   Defendant's wrongful conduct as described herein was willful.

1759.   As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

1760.   Defendant had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Schnitzer of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Schnitzer.

1761.   The method and manner in which Defendant used the image of Schnitzer further evinces that Defendant were aware of or consciously disregarded the fact that Schnitzer did not consent to Defendant's use of the image to advertise Defendant's businesses.

1762.   Defendant had caused irreparable harm to Schnitzer, her reputation and brand by attributing to Schnitzer the strip club lifestyle and activities at Atlantis.

1763.   Defendant's unauthorized use of Schnitzer's image, likeness and/or identity directly and proximately caused and continue to cause damage to Schnitzer in an amount to be determined at trial.

**WHEREFORE**, Schnitzer respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## SCHNITZER COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)

1764.   Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Schnitzer from the conduct described herein.

1765.   Defendant used Schnitzer's image in order to create the false impression with the public that Schnitzer either worked at Defendant's strip club, or endorsed Defendant's businesses. This was done to promote and attract clientele to Atlantis, and thereby generate revenue for Defendant.

1766.   Thus, this was done in furtherance of Defendant's commercial benefit.

1767. Schnitzer is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Schnitzer's images in magazines and online.

1768. Both Schnitzer and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

1769. As such, an unauthorized use of Schnitzer's image to promote a strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Schnitzer.

1770. Defendant's use of Schnitzer's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Schnitzer's fans and present and prospective clients into believing that Atlantis's advertisements are endorsed by Schnitzer, or sponsored, approved or associated with Schnitzer.

1771. Despite the fact that Defendant were at all times aware that Schnitzer neither worked at, nor endorsed their strip club, nevertheless, they used Schnitzer's image in order to mislead potential customers as to Schnitzer's employment at and/or affiliation with Atlantis.

1772. Defendant knew that their use of Schnitzer's image would cause consumer confusion as to Schnitzer's sponsorship and/or employment at Atlantis.

1773. Upon information and belief, Defendant's use of Schnitzer's image did in fact cause consumer confusion as to Schnitzer's employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

1774. As a direct and proximate result of Defendant's actions, Schnitzer has no control over the nature and quality of the line of products or services provided by Defendant, the nature

of the advertisements depicting Schnitzer's image, likeness and/or identity, or how Schnitzer's image, likeness and/or identity is being depicted by Defendant.

1775. Further, any failure, neglect or default by Defendant will reflect adversely on Schnitzer as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Schnitzer to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Schnitzer.

1776. Due to Atlantis's unauthorized use of Schnitzer's image, Schnitzer has been damaged in an amount to be determined at trial.

**WHEREFORE**, Schnitzer respectfully requests that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## SCHNITZER COUNT III
### (**Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10** *et seq. Right to Publicity*)

1777. Schnitzer hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

1778. Schnitzer has a right of publicity under IRPA, 765 ILCS 1075/10 *et seq. Right to Publicity*.

1779.   Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Schnitzer without express written or oral consent to such use.

1780.   As set forth herein, Defendant has violated Schnitzer's right to publicity by invading Schnitzer's privacy, misappropriating her likeness, and publishing on Atlantis social media outlets, the altered image, likeness and/or identity of Schnitzer which made it appear as though Schnitzer was employed at Atlantis, or endorsed Atlantis strip club, or any Atlantis events or activities.

1781.   Despite the clear language of IRPA and at all relevant times, Defendant published, printed, displayed and/or publicly used Schnitzer's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing Atlantis and/or Atlantis's events and activities.

1782.   The respective social media outlets were designed to attract business and generate revenue for Atlantis.

1783.   Upon information and belief, Defendant'ss use of Schnitzer's image, likeness and/or identity did in fact attract clientele and generate business for Atlantis.

1784.   At all relevant times and at no point, did Defendant ever receive permission or consent, be it written or otherwise, to use Schnitzer's image, likeness  and/or identity on the Atlantis social media outlets or for any other use or matter associated with Atlantis.

1785.   Defendant took these actions without Schnitzer's permission, consent or authority, be it written or otherwise. In fact, Defendant never sought permission nor authority to

use Schnitzer's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activities or for any other use.

1786.   Schnitzer never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activity.

1787.   Defendant was at all relevant times aware that they never received Schnitzer's permission or consent to use her Image on any website or social media account, or on any other medium, in order to promote Atlantis.

1788.   At no point did Defendant ever compensate Schnitzer for its use of her image, likeness, and/or identity.

1789.   No applicable privilege or authorization exists for Defendant'ss use of Schnitzer's Image.

1790.   Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Schnitzer's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1791.   Defendant caused irreparable harm to Schnitzer, her reputation and brand by attributing to Schnitzer the strip club lifestyle and activities at Atlantis.

1792.   Defendant has also damaged Schnitzer as a direct and proximate result of their unauthorized use of Schnitzer's image, likeness and/or identity without compensating Schnitzer.

1793.   Due to Defendant'ss violation of Schnitzer's rights of privacy and publicity under IRPA, Schnitzer has been damaged in an amount to be determined at trial, but in all events not

less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

1794.  In addition, Schnitzer hereby requests an Order permanently enjoining Defendant from violating Schnitzer's right to privacy and publicity.

1795.  In addition, Schnitzer hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendant knowing and intentional violation of her statutory rights to privacy and publicity.

**WHEREFORE**, Schnitzer respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## SCHNITZER COUNT IV
### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)

1796.  Schnitzer hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

177.   Defendant published Schnitzer's image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Atlantis and Atlantis's events and activities, causing her to be placed in a false light as a stripper or as someone who was affiliated with Atlantis, or endorsed Atlantis strip club before the public as a result of that publication.

178.   Without question, this "false light would be highly offensive to a reasonable person" and, by portraying Schnitzer in a false light Defendant did so with actual malice, with knowledge of or reckless disregard for the falsity of the statements.

179.    Defendant published Schnitzer's image, likeness and/or identity on Atlantis social media outlets in order to create the false impression that Schnitzer was either a stripper working at Atlantis, or endorsed Atlantis strip club.

180.     As such, Defendant'ss intent in publishing Schnitzer's image, likeness and/or identity was to mislead the public and cast her in a false light with respect to her affiliation with Atlantis.

181.    Defendant was at all times aware, Schnitzer never worked at any Atlantis strip club, never endorsed Atlantis, and never had any affiliation with Atlantis or any Atlantis events or activities.

182.     Defendant never sought permission or authority to use Schnitzer's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis events or activities.

183.    Schnitzer never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis event or activity.

184.     As a result of Defendant'ss unauthorized and misleading publication of Schnitzer's Image, Defendant has caused irreparable harm to Schnitzer, her reputation and brand by attributing to Schnitzer the strip club lifestyle and activities at Atlantis.

1797.   Defendant has also damaged Schnitzer as result of their unauthorized use of Schnitzer's image, likeness or identity without compensating Schnitzer.  Defendant's conduct has been despicable and taken in conscious disregard of Schnitzer's rights.

1798.   As a result of Defendant'ss unauthorized and misleading use of Schnitzer's image, likeness or identity, Schnitzer has been injured in an amount to be determined at trial, but

in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**WHEREFORE**, Schnitzer respectfully requests that the Court issue a judgment against Defendant for all remedies available under law, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

### SCHNITZER COUNT V
### (Negligence and *Respondeat Superior*)

1799.   Schnitzer hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

1800.   Upon information and belief, Defendant was negligent in its failure to promulgate policies and procedures concerning the misappropriation of the Image of models that were used on the Atlantis Website and social media accounts.

1801.   Said failure was the proximate cause of the harm Schnitzer suffered when her Image was published without her authorization.

1802.   In the alternative, and upon information and belief, although Defendant promulgated policies and procedures concerning the misappropriation of images, Defendant nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated.

1803.   In addition, Defendant had a duty to refrain from appropriating the Image of those with whom it had not contracted, and had not paid.

1804.   Defendant violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

1805.   As a result of Defendant'ss negligence, Schnitzer have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

*Plaintiff Katarina Van Derham's Causes of Action*
*against Defendant AEG Ventures, LLC d/b/a Atlantis Gentlemen's Club*

**DERHAM COUNT I**
(**Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising**)

1806.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Derham from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .".  15 U.S.C. §1125(a)(1)(B).

1807.   Defendant used Derham's image, likeness and/or identity as described herein without authority in order to create the perception that Derham worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her image in order to advertise, promote, and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities.

1808.   Defendant's use of Derham's image, likeness and/or identity to advertise, promote and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities as described in this Complaint was false and misleading.

1809.   Defendant's unauthorized use of Derham's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Derham worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's

usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities and/or that Derham would participate in or appear at the specific events promoted in the advertisements.

1810.  Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Atlantis, as to the general quality of attendees and participants of Atlantis and in their events, as well as specifically whether Derham worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities.

1811.  Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Derham worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events and activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Atlantis, visit Atlantis, and participate in events at Atlantis and had a material effect and impact on the decision of members and prospective members and participants to join Atlantis, visit Atlantis and take part in the events at Atlantis.

1812.  Defendant's advertisements, promotions and marketing of Atlantis and events at Atlantis occur in and are targeted to interstate commerce. Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally use the World Wide Web,

social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Atlantis events.

1813. Defendant's unauthorized use of Derham's image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Atlantis and their activities and attracting clientele to Atlantis.

1814. Defendant knew or should have known that their unauthorized use of Derham's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

1815. Defendant's unauthorized use of Derham's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

1816. Defendant's wrongful conduct as described herein was willful.

1817. As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

1818. Defendant had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Derham of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Derham.

1819. The method and manner in which Defendant used the image of Derham further evinces that Defendant were aware of or consciously disregarded the fact that Derham did not consent to Defendant's use of the image to advertise Defendant's businesses.

1820. Defendant had caused irreparable harm to Derham, her reputation and brand by attributing to Derham the strip club lifestyle and activities at Atlantis.

1821. Defendant's unauthorized use of Derham's image, likeness and/or identity directly and proximately caused and continue to cause damage to Derham in an amount to be determined at trial.

**WHEREFORE**, Derham respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## DERHAM COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)

1822.   Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Derham from the conduct described herein.

1823.   Defendant used Derham's image in order to create the false impression with the public that Derham either worked at Defendant's strip club, or endorsed Defendant's businesses. This was done to promote and attract clientele to Atlantis, and thereby generate revenue for Defendant.

1824.   Thus, this was done in furtherance of Defendant's commercial benefit.

1825.   Derham is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Derham's images in magazines and online.

1826.   Both Derham and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

1827.   As such, an unauthorized use of Derham's image to promote a strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Derham.

1828.  Defendant's use of Derham's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Derham's fans and present and prospective clients into believing that Atlantis's advertisements are endorsed by Derham, or sponsored, approved or associated with Derham.

1829.  Despite the fact that Defendant were at all times aware that Derham neither worked at, nor endorsed their strip club, nevertheless, they used Derham's image in order to mislead potential customers as to Derham's employment at and/or affiliation with Atlantis.

1830.  Defendant knew that their use of Derham's image would cause consumer confusion as to Derham's sponsorship and/or employment at Atlantis.

1831.  Upon information and belief, Defendant's use of Derham's image did in fact cause consumer confusion as to Derham's employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

1832.  As a direct and proximate result of Defendant's actions, Derham has no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisements depicting Derham's image, likeness and/or identity, or how Derham's image, likeness and/or identity is being depicted by Defendant.

1833.  Further, any failure, neglect or default by Defendant will reflect adversely on Derham as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Derham to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Derham.

1834.  Due to Atlantis's unauthorized use of Derham's image, Derham has been damaged in an amount to be determined at trial.

**WHEREFORE**, Derham respectfully requests that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

<u>**DERHAM COUNT III**</u>
(**Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10** *et seq. Right to Publicity*)

1835.   Derham hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

1836.   Derham has a right of publicity under IRPA, 765 ILCS 1075/10 *et seq. Right to Publicity*.

1837.   Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Derham without express written or oral consent to such use.

1838.   As set forth herein, Defendant has violated Derham's right to publicity by invading Derham's privacy, misappropriating her likeness, and publishing on Atlantis social media outlets, the altered image, likeness and/or identity of Derham which made it appear as though Derham was employed at Atlantis, or endorsed Atlantis strip club, or any Atlantis events or activities.

1839.   Despite the clear language of IRPA and at all relevant times, Defendant published, printed, displayed and/or publicly used Derham's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising

including, but not limited to, promoting, advertising and marketing Atlantis and/or Atlantis's events and activities.

1840.   The respective social media outlets were designed to attract business and generate revenue for Atlantis.

1841.   Upon information and belief, Defendant'ss use of Derham's image, likeness and/or identity did in fact attract clientele and generate business for Atlantis.

1842.   At all relevant times and at no point, did Defendant ever receive permission or consent, be it written or otherwise, to use Derham's image, likeness and/or identity on the Atlantis social media outlets or for any other use or matter associated with Atlantis.

1843.   Defendant took these actions without Derham's permission, consent or authority, be it written or otherwise. In fact, Defendant never sought permission nor authority to use Derham's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activities or for any other use.

1844.   Derham never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activity.

1845.    Defendant was at all relevant times aware that they never received Derham's permission or consent to use her Image on any website or social media account, or on any other medium, in order to promote Atlantis.

1846.   At no point did Defendant ever compensate Derham for its use of her image, likeness, and/or identity.

1847.   No applicable privilege or authorization exists for Defendant'ss use of Derham's Image.

1848.   Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Derham's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1849.   Defendant caused irreparable harm to Derham, her reputation and brand by attributing to Derham the strip club lifestyle and activities at Atlantis.

1850.   Defendant has also damaged Derham as a direct and proximate result of their unauthorized use of Derham's image, likeness and/or identity without compensating Derham.

1851.   Due to Defendant'ss violation of Derham's rights of privacy and publicity under IRPA, Derham has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

1852.   In addition, Derham hereby requests an Order permanently enjoining Defendant from violating Derham's right to privacy and publicity.

1853.   In addition, Derham hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendant knowing and intentional violation of her statutory rights to privacy and publicity.

**WHEREFORE**, Derham respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

**DERHAM COUNT IV**
**(Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)**

1854.   Derham hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

177.    Defendant published Derham's image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Atlantis and Atlantis's events and activities, causing her to be placed in a false light as a stripper or as someone who was affiliated with Atlantis, or endorsed Atlantis strip club before the public as a result of that publication.

178.     Without question, this "false light would be highly offensive to a reasonable person" and, by portraying Derham in a false light Defendant did so with actual malice, with knowledge of or reckless disregard for the falsity of the statements.

179.    Defendant published Derham's image, likeness and/or identity on Atlantis social media outlets in order to create the false impression that Derham was either a stripper working at Atlantis, or endorsed Atlantis strip club.

180.     As such, Defendant'ss intent in publishing Derham's image, likeness and/or identity was to mislead the public and cast her in a false light with respect to her affiliation with Atlantis.

181.   Defendant was at all times aware, Derham never worked at any Atlantis strip club, never endorsed Atlantis, and never had any affiliation with Atlantis or any Atlantis events or activities.

182.     Defendant never sought permission or authority to use Derham's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any

Atlantis events or activities.

183.    Derham never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis event or activity.

184.    As a result of Defendant'ss unauthorized and misleading publication of Derham's Image, Defendant has caused irreparable harm to Derham, her reputation and brand by attributing to Derham the strip club lifestyle and activities at Atlantis.

1855.    Defendant has also damaged Derham as result of their unauthorized use of Derham's image, likeness or identity without compensating Derham.  Defendant's conduct has been despicable and taken in conscious disregard of Derham's rights.

1856.    As a result of Defendant'ss unauthorized and misleading use of Derham's image, likeness or identity, Derham has been injured in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**WHEREFORE**, Derham respectfully requests that the Court issue a judgment against Defendant for all remedies available under law, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

<u>**DERHAM COUNT V**</u>
**(Negligence and *Respondeat Superior*)**

1857.    Derham hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

1858.    Upon information and belief, Defendant was negligent in its failure to promulgate policies and procedures concerning the misappropriation of the Image of models that were used

on the Atlantis Website and social media accounts.

1859.   Said failure was the proximate cause of the harm Derham suffered when her Image was published without her authorization.

1860.   In the alternative, and upon information and belief, although Defendant promulgated policies and procedures concerning the misappropriation of images, Defendant nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated.

1861.   In addition, Defendant had a duty to refrain from appropriating the Image of those with whom it had not contracted, and had not paid.

1862.   Defendant violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

1863.   As a result of Defendant'ss negligence, Derham have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

*Plaintiff Laurie Young's Causes of Action*
*against Defendant AEG Ventures, LLC d/b/a Atlantis Gentlemen's Club*

## YOUNG COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)

1864.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Young from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .".  15 U.S.C. §1125(a)(1)(B).

1865. Defendant used Young's image, likeness and/or identity as described herein without authority in order to create the perception that Young worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her image in order to advertise, promote, and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities.

1866. Defendant's use of Young's image, likeness and/or identity to advertise, promote and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities as described in this Complaint was false and misleading.

1867. Defendant's unauthorized use of Young's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Young worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities and/or that Young would participate in or appear at the specific events promoted in the advertisements.

1868. Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Atlantis, as to the general quality of attendees and participants of Atlantis and in their events, as well as specifically whether Young worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities.

1869.   Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Young worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events and activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Atlantis, visit Atlantis, and participate in events at Atlantis and had a material effect and impact on the decision of members and prospective members and participants to join Atlantis, visit Atlantis and take part in the events at Atlantis.

1870.   Defendant's advertisements, promotions and marketing of Atlantis and events at Atlantis occur in and are targeted to interstate commerce. Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Atlantis events.

1871.   Defendant's unauthorized use of Young's image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Atlantis and their activities and attracting clientele to Atlantis.

1872.   Defendant knew or should have known that their unauthorized use of Young's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

1873.   Defendant's unauthorized use of Young's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

1874.   Defendant's wrongful conduct as described herein was willful.

1875. As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

1876. Defendant had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Young of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Young.

1877. The method and manner in which Defendant used the image of Young further evinces that Defendant were aware of or consciously disregarded the fact that Young did not consent to Defendant's use of the image to advertise Defendant's businesses.

1878. Defendant had caused irreparable harm to Young, her reputation and brand by attributing to Young the strip club lifestyle and activities at Atlantis.

1879. Defendant's unauthorized use of Young's image, likeness and/or identity directly and proximately caused and continue to cause damage to Young in an amount to be determined at trial.

**WHEREFORE**, Young respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## <u>YOUNG COUNT II</u>
### (**Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement**)

1880. Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Young from the conduct described herein.

1881. Defendant used Young's image in order to create the false impression with the public that Young either worked at Defendant's strip club, or endorsed Defendant's businesses.

This was done to promote and attract clientele to Atlantis, and thereby generate revenue for Defendant.

1882.   Thus, this was done in furtherance of Defendant's commercial benefit.

1883.   Young is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Young's images in magazines and online.

1884.   Both Young and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

1885.   As such, an unauthorized use of Young's image to promote a strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Young.

1886.   Defendant's use of Young's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Young's fans and present and prospective clients into believing that Atlantis's advertisements are endorsed by Young, or sponsored, approved or associated with Young.

1887.   Despite the fact that Defendant were at all times aware that Young neither worked at, nor endorsed their strip club, nevertheless, they used Young's image in order to mislead potential customers as to Young's employment at and/or affiliation with Atlantis.

1888.   Defendant knew that their use of Young's image would cause consumer confusion as to Young's sponsorship and/or employment at Atlantis.

1889.   Upon information and belief, Defendant's use of Young's image did in fact cause consumer confusion as to Young's employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

1890.   As a direct and proximate result of Defendant's actions, Young has no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisements depicting Young's image, likeness and/or identity, or how Young's image, likeness and/or identity is being depicted by Defendant.

1891.   Further, any failure, neglect or default by Defendant will reflect adversely on Young as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Young to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Young.

1892.   Due to Atlantis's unauthorized use of Young's image, Young has been damaged in an amount to be determined at trial.

**WHEREFORE**, Young respectfully requests that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## <u>YOUNG COUNT III</u>
### (**Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10** *et seq. Right to Publicity*)

1893.   Young hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

1894.   Young has a right of publicity under IRPA, 765 ILCS 1075/10 *et seq. Right to Publicity*.

1895.   Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Young without express written or oral consent to such use.

1896.   As set forth herein, Defendant has violated Young's right to publicity by invading Young's privacy, misappropriating her likeness, and publishing on Atlantis social media outlets, the altered image, likeness and/or identity of Young which made it appear as though Young was employed at Atlantis, or endorsed Atlantis strip club, or any Atlantis events or activities.

1897.   Despite the clear language of IRPA and at all relevant times, Defendant published, printed, displayed and/or publicly used Young's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing Atlantis and/or Atlantis's events and activities.

1898.   The respective social media outlets were designed to attract business and generate revenue for Atlantis.

1899.   Upon information and belief, Defendant'ss use of Young's image, likeness and/or identity did in fact attract clientele and generate business for Atlantis.

1900.   At all relevant times and at no point, did Defendant ever receive permission or consent, be it written or otherwise, to use Young's image, likeness and/or identity on the Atlantis social media outlets or for any other use or matter associated with Atlantis.

1901.   Defendant took these actions without Young's permission, consent or authority, be it written or otherwise. In fact, Defendant never sought permission nor authority to use

Young's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activities or for any other use.

1902.   Young never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activity.

1903.    Defendant was at all relevant times aware that they never received Young's permission or consent to use her Image on any website or social media account, or on any other medium, in order to promote Atlantis.

1904.   At no point did Defendant ever compensate Young for its use of her image, likeness, and/or identity.

1905.   No applicable privilege or authorization exists for Defendant'ss use of Young's Image.

1906.   Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Young's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1907.   Defendant caused irreparable harm to Young, her reputation and brand by attributing to Young the strip club lifestyle and activities at Atlantis.

1908.   Defendant has also damaged Young as a direct and proximate result of their unauthorized use of Young's image, likeness and/or identity without compensating Young.

1909.   Due to Defendant'ss violation of Young's rights of privacy and publicity under IRPA, Young has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

1910. In addition, Young hereby requests an Order permanently enjoining Defendant from violating Young's right to privacy and publicity.

1911. In addition, Young hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendant knowing and intentional violation of her statutory rights to privacy and publicity.

**WHEREFORE**, Young respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

<u>**YOUNG COUNT IV**</u>
**(Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)**

1912. Young hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

177. Defendant published Young's image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Atlantis and Atlantis's events and activities, causing her to be placed in a false light as a stripper or as someone who was affiliated with Atlantis, or endorsed Atlantis strip club before the public as a result of that publication.

178. Without question, this "false light would be highly offensive to a reasonable person" and, by portraying Young in a false light Defendant did so with actual malice, with knowledge of or reckless disregard for the falsity of the statements.

179. Defendant published Young's image, likeness and/or identity on Atlantis social media outlets in order to create the false impression that Young was either a stripper working at

Atlantis, or endorsed Atlantis strip club.

180.    As such, Defendant'ss intent in publishing Young's image, likeness and/or identity was to mislead the public and cast her in a false light with respect to her affiliation with Atlantis.

181.    Defendant was at all times aware, Young never worked at any Atlantis strip club, never endorsed Atlantis, and never had any affiliation with Atlantis or any Atlantis events or activities.

182.    Defendant never sought permission or authority to use Young's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis events or activities.

183.    Young never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis event or activity.

184.    As a result of Defendant'ss unauthorized and misleading publication of Young's Image, Defendant has caused irreparable harm to Young, her reputation and brand by attributing to Young the strip club lifestyle and activities at Atlantis.

1913.   Defendant has also damaged Young as result of their unauthorized use of Young's image, likeness or identity without compensating Young.  Defendant's conduct has been despicable and taken in conscious disregard of Young's rights.

1914.   As a result of Defendant'ss unauthorized and misleading use of Young's image, likeness or identity, Young has been injured in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**WHEREFORE**, Young respectfully requests that the Court issue a judgment against Defendant for all remedies available under law, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## <u>YOUNG COUNT V</u>
### (Negligence and *Respondeat Superior*)

1915. Young hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

1916. Upon information and belief, Defendant was negligent in its failure to promulgate policies and procedures concerning the misappropriation of the Image of models that were used on the Atlantis Website and social media accounts.

1917. Said failure was the proximate cause of the harm Young suffered when her Image was published without her authorization.

1918. In the alternative, and upon information and belief, although Defendant promulgated policies and procedures concerning the misappropriation of images, Defendant nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated.

1919. In addition, Defendant had a duty to refrain from appropriating the Image of those with whom it had not contracted, and had not paid.

1920. Defendant violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

1921. As a result of Defendant'ss negligence, Young have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand

dollars ($75,000), exclusive of punitive and exemplary damages.

*Plaintiff Lina Posada's Causes of Action*
*against Defendant AEG Ventures, LLC d/b/a Atlantis Gentlemen's Club*

**POSADA COUNT I**
(**Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising**)

1922.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Posada from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .".  15 U.S.C. §1125(a)(1)(B).

1923.   Defendant used Posada's image, likeness and/or identity as described herein without authority in order to create the perception that Posada worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her image in order to advertise, promote, and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities.

1924.   Defendant's use of Posada's image, likeness and/or identity to advertise, promote and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities as described in this Complaint was false and misleading.

1925.   Defendant's unauthorized use of Posada's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Posada worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or

Atlantis's events and activities and/or that Posada would participate in or appear at the specific events promoted in the advertisements.

1926. Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Atlantis, as to the general quality of attendees and participants of Atlantis and in their events, as well as specifically whether Posada worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities.

1927. Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Posada worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events and activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Atlantis, visit Atlantis, and participate in events at Atlantis and had a material effect and impact on the decision of members and prospective members and participants to join Atlantis, visit Atlantis and take part in the events at Atlantis.

1928. Defendant's advertisements, promotions and marketing of Atlantis and events at Atlantis occur in and are targeted to interstate commerce. Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally use the World Wide Web,

social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Atlantis events.

1929. Defendant's unauthorized use of Posada's image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Atlantis and their activities and attracting clientele to Atlantis.

1930. Defendant knew or should have known that their unauthorized use of Posada's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

1931. Defendant's unauthorized use of Posada's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

1932. Defendant's wrongful conduct as described herein was willful.

1933. As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

1934. Defendant had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Posada of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Posada.

1935. The method and manner in which Defendant used the image of Posada further evinces that Defendant were aware of or consciously disregarded the fact that Posada did not consent to Defendant's use of the image to advertise Defendant's businesses.

1936. Defendant had caused irreparable harm to Posada, her reputation and brand by attributing to Posada the strip club lifestyle and activities at Atlantis.

1937. Defendant's unauthorized use of Posada's image, likeness and/or identity directly and proximately caused and continue to cause damage to Posada in an amount to be determined at trial.

**WHEREFORE**, Posada respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## POSADA COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)

1938.  Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Posada from the conduct described herein.

1939.  Defendant used Posada's image in order to create the false impression with the public that Posada either worked at Defendant's strip club, or endorsed Defendant's businesses. This was done to promote and attract clientele to Atlantis, and thereby generate revenue for Defendant.

1940.  Thus, this was done in furtherance of Defendant's commercial benefit.

1941.  Posada is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Posada's images in magazines and online.

1942.  Both Posada and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

1943.  As such, an unauthorized use of Posada's image to promote a strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Posada.

1944.  Defendant's use of Posada's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Posada's fans and present and prospective clients into believing that Atlantis's advertisements are endorsed by Posada, or sponsored, approved or associated with Posada.

1945.  Despite the fact that Defendant were at all times aware that Posada neither worked at, nor endorsed their strip club, nevertheless, they used Posada's image in order to mislead potential customers as to Posada's employment at and/or affiliation with Atlantis.

1946.  Defendant knew that their use of Posada's image would cause consumer confusion as to Posada's sponsorship and/or employment at Atlantis.

1947.  Upon information and belief, Defendant's use of Posada's image did in fact cause consumer confusion as to Posada's employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

1948.  As a direct and proximate result of Defendant's actions, Posada has no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisements depicting Posada's image, likeness and/or identity, or how Posada's image, likeness and/or identity is being depicted by Defendant.

1949.  Further, any failure, neglect or default by Defendant will reflect adversely on Posada as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Posada to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Posada.

1950.  Due to Atlantis's unauthorized use of Posada's image, Posada has been damaged in an amount to be determined at trial.

**WHEREFORE**, Posada respectfully requests that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

**POSADA COUNT III**

(**Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10** *et seq. Right to Publicity*)

1951.   Posada hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

1952.   Posada has a right of publicity under IRPA, 765 ILCS 1075/10 *et seq. Right to Publicity*.

1953.   Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Posada without express written or oral consent to such use.

1954.   As set forth herein, Defendant has violated Posada's right to publicity by invading Posada's privacy, misappropriating her likeness, and publishing on Atlantis social media outlets, the altered image, likeness and/or identity of Posada which made it appear as though Posada was employed at Atlantis, or endorsed Atlantis strip club, or any Atlantis events or activities.

1955.  Despite the clear language of IRPA and at all relevant times, Defendant published, printed, displayed and/or publicly used Posada's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing Atlantis and/or Atlantis's events and activities.

1956.  The respective social media outlets were designed to attract business and generate revenue for Atlantis.

1957.  Upon information and belief, Defendant'ss use of Posada's image, likeness and/or identity did in fact attract clientele and generate business for Atlantis.

1958.  At all relevant times and at no point, did Defendant ever receive permission or consent, be it written or otherwise, to use Posada's image, likeness  and/or identity on the Atlantis social media outlets or for any other use or matter associated with Atlantis.

1959.  Defendant took these actions without Posada's permission, consent or authority, be it written or otherwise. In fact, Defendant never sought permission nor authority to use Posada's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activities or for any other use.

1960.  Posada never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activity.

1961.   Defendant was at all relevant times aware that they never received Posada's permission or consent to use her Image on any website or social media account, or on any other medium, in order to promote Atlantis.

1962.  At no point did Defendant ever compensate Posada for its use of her image, likeness, and/or identity.

1963.  No applicable privilege or authorization exists for Defendant'ss use of Posada's Image.

1964.  Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Posada's image, likeness or identity

300

without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1965.   Defendant caused irreparable harm to Posada, her reputation and brand by attributing to Posada the strip club lifestyle and activities at Atlantis.

1966.   Defendant has also damaged Posada as a direct and proximate result of their unauthorized use of Posada's image, likeness and/or identity without compensating Posada.

1967.   Due to Defendant'ss violation of Posada's rights of privacy and publicity under IRPA, Posada has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

1968.   In addition, Posada hereby requests an Order permanently enjoining Defendant from violating Posada's right to privacy and publicity.

1969.   In addition, Posada hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendant knowing and intentional violation of her statutory rights to privacy and publicity.

**WHEREFORE**, Posada respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

### POSADA COUNT IV
### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)

1970.   Posada hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

177.    Defendant published Posada's image, likeness and/or identity on social media

outlets, among others, in order to promote, advertise and market Atlantis and Atlantis's events and activities, causing her to be placed in a false light as a stripper or as someone who was affiliated with Atlantis, or endorsed Atlantis strip club before the public as a result of that publication.

178.     Without question, this "false light would be highly offensive to a reasonable person" and, by portraying Posada in a false light Defendant did so with actual malice, with knowledge of or reckless disregard for the falsity of the statements.

179.     Defendant published Posada's image, likeness and/or identity on Atlantis social media outlets in order to create the false impression that Posada was either a stripper working at Atlantis, or endorsed Atlantis strip club.

180.     As such, Defendant'ss intent in publishing Posada's image, likeness and/or identity was to mislead the public and cast her in a false light with respect to her affiliation with Atlantis.

181.     Defendant was at all times aware, Posada never worked at any Atlantis strip club, never endorsed Atlantis, and never had any affiliation with Atlantis or any Atlantis events or activities.

182.     Defendant never sought permission or authority to use Posada's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis events or activities.

183.     Posada never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis event or activity.

184.     As a result of Defendant'ss unauthorized and misleading publication of Posada's

Image, Defendant has caused irreparable harm to Posada, her reputation and brand by attributing to Posada the strip club lifestyle and activities at Atlantis.

1971. Defendant has also damaged Posada as result of their unauthorized use of Posada's image, likeness or identity without compensating Posada. Defendant's conduct has been despicable and taken in conscious disregard of Posada's rights.

1972. As a result of Defendant'ss unauthorized and misleading use of Posada's image, likeness or identity, Posada has been injured in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**WHEREFORE**, Posada respectfully requests that the Court issue a judgment against Defendant for all remedies available under law, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## POSADA COUNT V
### (Negligence and *Respondeat Superior*)

1973. Posada hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

1974. Upon information and belief, Defendant was negligent in its failure to promulgate policies and procedures concerning the misappropriation of the Image of models that were used on the Atlantis Website and social media accounts.

1975. Said failure was the proximate cause of the harm Posada suffered when her Image was published without her authorization.

1976. In the alternative, and upon information and belief, although Defendant promulgated policies and procedures concerning the misappropriation of images, Defendant

nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated.

1977.   In addition, Defendant had a duty to refrain from appropriating the Image of those with whom it had not contracted, and had not paid.

1978.   Defendant violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

1979.   As a result of Defendant'ss negligence, Posada have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

### *Plaintiff Lucy Pinder's Causes of Action*
### *against Defendant AEG Ventures, LLC d/b/a Atlantis Gentlemen's Club*

### PINDER COUNT I
### (**Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising**)

1980.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Pinder from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .".  15 U.S.C. §1125(a)(1)(B).

1981.   Defendant used Pinder's image, likeness and/or identity as described herein without authority in order to create the perception that Pinder worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her image in order to advertise, promote, and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities.

1982.   Defendant's use of Pinder's image, likeness and/or identity to advertise, promote and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities as described in this Complaint was false and misleading.

1983.   Defendant's unauthorized use of Pinder's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Pinder worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities and/or that Pinder would participate in or appear at the specific events promoted in the advertisements.

1984.   Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Atlantis, as to the general quality of attendees and participants of Atlantis and in their events, as well as specifically whether Pinder worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities.

1985.   Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Pinder worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events and activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice

consumers and prospective consumers to join Atlantis, visit Atlantis, and participate in events at Atlantis and had a material effect and impact on the decision of members and prospective members and participants to join Atlantis, visit Atlantis and take part in the events at Atlantis.

1986.   Defendant's advertisements, promotions and marketing of Atlantis and events at Atlantis occur in and are targeted to interstate commerce. Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Atlantis events.

1987.   Defendant's unauthorized use of Pinder's image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Atlantis and their activities and attracting clientele to Atlantis.

1988.   Defendant knew or should have known that their unauthorized use of Pinder's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

1989.   Defendant's unauthorized use of Pinder's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

1990.   Defendant's wrongful conduct as described herein was willful.

1991.   As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

1992.   Defendant had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Pinder of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Pinder.

1993.   The method and manner in which Defendant used the image of Pinder further evinces that Defendant were aware of or consciously disregarded the fact that Pinder did not consent to Defendant's use of the image to advertise Defendant's businesses.

1994.   Defendant had caused irreparable harm to Pinder, her reputation and brand by attributing to Pinder the strip club lifestyle and activities at Atlantis.

1995.   Defendant's unauthorized use of Pinder's image, likeness and/or identity directly and proximately caused and continue to cause damage to Pinder in an amount to be determined at trial.

**WHEREFORE**, Pinder respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## PINDER COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)

1996.   Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Pinder from the conduct described herein.

1997.   Defendant used Pinder's image in order to create the false impression with the public that Pinder either worked at Defendant's strip club, or endorsed Defendant's businesses. This was done to promote and attract clientele to Atlantis, and thereby generate revenue for Defendant.

1998.   Thus, this was done in furtherance of Defendant's commercial benefit.

1999.   Pinder is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Pinder's images in magazines and online.

2000.   Both Pinder and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

2001.   As such, an unauthorized use of Pinder's image to promote a strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Pinder.

2002.   Defendant's use of Pinder's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Pinder's fans and present and prospective clients into believing that Atlantis's advertisements are endorsed by Pinder, or sponsored, approved or associated with Pinder.

2003.   Despite the fact that Defendant were at all times aware that Pinder neither worked at, nor endorsed their strip club, nevertheless, they used Pinder's image in order to mislead potential customers as to Pinder's employment at and/or affiliation with Atlantis.

2004.   Defendant knew that their use of Pinder's image would cause consumer confusion as to Pinder's sponsorship and/or employment at Atlantis.

2005.   Upon information and belief, Defendant's use of Pinder's image did in fact cause consumer confusion as to Pinder's employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

2006.   As a direct and proximate result of Defendant's actions, Pinder has no control over the nature and quality of the line of products or services provided by Defendant, the nature

of the advertisements depicting Pinder's image, likeness and/or identity, or how Pinder's image, likeness and/or identity is being depicted by Defendant.

2007. Further, any failure, neglect or default by Defendant will reflect adversely on Pinder as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Pinder to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Pinder.

2008. Due to Atlantis's unauthorized use of Pinder's image, Pinder has been damaged in an amount to be determined at trial.

**WHEREFORE**, Pinder respectfully requests that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## <u>PINDER COUNT III</u>
(**Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10** *et seq. Right to Publicity*)

2009. Pinder hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

2010. Pinder has a right of publicity under IRPA, 765 ILCS 1075/10 *et seq. Right to Publicity*.

2011. Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Pinder without express written or oral consent to such use.

2012.   As set forth herein, Defendant has violated Pinder's right to publicity by invading Pinder's privacy, misappropriating her likeness, and publishing on Atlantis social media outlets, the altered image, likeness and/or identity of Pinder which made it appear as though Pinder was employed at Atlantis, or endorsed Atlantis strip club, or any Atlantis events or activities.

2013.   Despite the clear language of IRPA and at all relevant times, Defendant published, printed, displayed and/or publicly used Pinder's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing Atlantis and/or Atlantis's events and activities.

2014.   The respective social media outlets were designed to attract business and generate revenue for Atlantis.

2015.   Upon information and belief, Defendant'ss use of Pinder's image, likeness and/or identity did in fact attract clientele and generate business for Atlantis.

2016.   At all relevant times and at no point, did Defendant ever receive permission or consent, be it written or otherwise, to use Pinder's image, likeness  and/or identity on the Atlantis social media outlets or for any other use or matter associated with Atlantis.

2017.   Defendant took these actions without Pinder's permission, consent or authority, be it written or otherwise. In fact, Defendant never sought permission nor authority to use Pinder's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activities or for any other use.

2018.   Pinder never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activity.

2019.  Defendant was at all relevant times aware that they never received Pinder's permission or consent to use her Image on any website or social media account, or on any other medium, in order to promote Atlantis.

2020.  At no point did Defendant ever compensate Pinder for its use of her image, likeness, and/or identity.

2021.  No applicable privilege or authorization exists for Defendant'ss use of Pinder's Image.

2022.  Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Pinder's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

2023.  Defendant caused irreparable harm to Pinder, her reputation and brand by attributing to Pinder the strip club lifestyle and activities at Atlantis.

2024.  Defendant has also damaged Pinder as a direct and proximate result of their unauthorized use of Pinder's image, likeness and/or identity without compensating Pinder.

2025.  Due to Defendant'ss violation of Pinder's rights of privacy and publicity under IRPA, Pinder has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

2026.  In addition, Pinder hereby requests an Order permanently enjoining Defendant from violating Pinder's right to privacy and publicity.

2027.  In addition, Pinder hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendant knowing and intentional violation of her statutory rights to privacy and publicity.

**WHEREFORE**, Pinder respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

### PINDER COUNT IV
### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)

2028.  Pinder hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

177.   Defendant published Pinder's image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Atlantis and Atlantis's events and activities, causing her to be placed in a false light as a stripper or as someone who was affiliated with Atlantis, or endorsed Atlantis strip club before the public as a result of that publication.

178.    Without question, this "false light would be highly offensive to a reasonable person" and, by portraying Pinder in a false light Defendant did so with actual malice, with knowledge of or reckless disregard for the falsity of the statements.

179.   Defendant published Pinder's image, likeness and/or identity on Atlantis social media outlets in order to create the false impression that Pinder was either a stripper working at Atlantis, or endorsed Atlantis strip club.

180.   As such, Defendant'ss intent in publishing Pinder's image, likeness and/or identity was to mislead the public and cast her in a false light with respect to her affiliation with Atlantis.

181.   Defendant was at all times aware, Pinder never worked at any Atlantis strip club, never endorsed Atlantis, and never had any affiliation with Atlantis or any Atlantis events or

activities.

182.    Defendant never sought permission or authority to use Pinder's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis events or activities.

183.    Pinder never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis event or activity.

184.    As a result of Defendant'ss unauthorized and misleading publication of Pinder's Image, Defendant has caused irreparable harm to Pinder, her reputation and brand by attributing to Pinder the strip club lifestyle and activities at Atlantis.

2029.   Defendant has also damaged Pinder as result of their unauthorized use of Pinder's image, likeness or identity without compensating Pinder.   Defendant's conduct has been despicable and taken in conscious disregard of Pinder's rights.

2030.   As a result of Defendant'ss unauthorized and misleading use of Pinder's image, likeness or identity, Pinder has been injured in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**WHEREFORE**, Pinder respectfully requests that the Court issue a judgment against Defendant for all remedies available under law, including but not limited to, both actual loss  and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

<u>**PINDER COUNT V**</u>
**(Negligence and *Respondeat Superior*)**

2031.   Pinder hereby repeats and re-alleges each and every allegation set forth in the

313

preceding paragraphs as if fully set forth herein.

2032.  Upon information and belief, Defendant was negligent in its failure to promulgate policies and procedures concerning the misappropriation of the Image of models that were used on the Atlantis Website and social media accounts.

2033.  Said failure was the proximate cause of the harm Pinder suffered when her Image was published without her authorization.

2034.  In the alternative, and upon information and belief, although Defendant promulgated policies and procedures concerning the misappropriation of images, Defendant nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated.

2035.  In addition, Defendant had a duty to refrain from appropriating the Image of those with whom it had not contracted, and had not paid.

2036.  Defendant violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

2037.  As a result of Defendant'ss negligence, Pinder have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

*Plaintiff Malu "Masha" Lund's Causes of Action*
*against Defendant AEG Ventures, LLC d/b/a Atlantis Gentlemen's Club*

**LUND COUNT I**
(**Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising**)

2038.  Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Lund from the conduct described herein. Specifically, the Lanham Act prohibits a party

314

in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

2039. Defendant used Lund's image, likeness and/or identity as described herein without authority in order to create the perception that Lund worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her image in order to advertise, promote, and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities.

2040. Defendant's use of Lund's image, likeness and/or identity to advertise, promote and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities as described in this Complaint was false and misleading.

2041. Defendant's unauthorized use of Lund's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Lund worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities and/or that Lund would participate in or appear at the specific events promoted in the advertisements.

2042. Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Atlantis, as to the general quality of attendees and participants of Atlantis and in their events, as well as specifically whether Lund worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in

order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities.

2043. Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Lund worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events and activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Atlantis, visit Atlantis, and participate in events at Atlantis and had a material effect and impact on the decision of members and prospective members and participants to join Atlantis, visit Atlantis and take part in the events at Atlantis.

2044. Defendant's advertisements, promotions and marketing of Atlantis and events at Atlantis occur in and are targeted to interstate commerce. Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Atlantis events.

2045. Defendant's unauthorized use of Lund's image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Atlantis and their activities and attracting clientele to Atlantis.

2046. Defendant knew or should have known that their unauthorized use of Lund's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

2047.   Defendant's unauthorized use of Lund's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

2048.   Defendant's wrongful conduct as described herein was willful.

2049.   As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

2050.   Defendant had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Lund of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Lund.

2051.   The method and manner in which Defendant used the image of Lund further evinces that Defendant were aware of or consciously disregarded the fact that Lund did not consent to Defendant's use of the image to advertise Defendant's businesses.

2052.   Defendant had caused irreparable harm to Lund, her reputation and brand by attributing to Lund the strip club lifestyle and activities at Atlantis.

2053.   Defendant's unauthorized use of Lund's image, likeness and/or identity directly and proximately caused and continue to cause damage to Lund in an amount to be determined at trial.

**WHEREFORE**, Lund respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

**LUND COUNT II**
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)**

2054.   Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Lund from the conduct described herein.

2055.   Defendant used Lund's image in order to create the false impression with the public that Lund either worked at Defendant's strip club, or endorsed Defendant's businesses. This was done to promote and attract clientele to Atlantis, and thereby generate revenue for Defendant.

2056.   Thus, this was done in furtherance of Defendant's commercial benefit.

2057.   Lund is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Lund's images in magazines and online.

2058.   Both Lund and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

2059.   As such, an unauthorized use of Lund's image to promote a strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Lund.

2060.   Defendant's use of Lund's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Lund's fans and present and prospective clients into believing that Atlantis's advertisements are endorsed by Lund, or sponsored, approved or associated with Lund.

2061.   Despite the fact that Defendant were at all times aware that Lund neither worked at, nor endorsed their strip club, nevertheless, they used Lund's image in order to mislead potential customers as to Lund's employment at and/or affiliation with Atlantis.

2062.   Defendant knew that their use of Lund's image would cause consumer confusion as to Lund's sponsorship and/or employment at Atlantis.

2063.   Upon information and belief, Defendant's use of Lund's image did in fact cause consumer confusion as to Lund's employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

2064.   As a direct and proximate result of Defendant's actions, Lund has no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisements depicting Lund's image, likeness and/or identity, or how Lund's image, likeness and/or identity is being depicted by Defendant.

2065.   Further, any failure, neglect or default by Defendant will reflect adversely on Lund as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Lund to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Lund.

2066.   Due to Atlantis's unauthorized use of Lund's image, Lund has been damaged in an amount to be determined at trial.

**WHEREFORE**, Lund respectfully requests that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

### LUND COUNT III
(**Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10** *et seq. Right to Publicity*)

319

2067.   Lund hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

2068.   Lund has a right of publicity under IRPA, 765 ILCS 1075/10 *et seq. Right to Publicity*.

2069.   Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Lund without express written or oral consent to such use.

2070.   As set forth herein, Defendant has violated Lund's right to publicity by invading Lund's privacy, misappropriating her likeness, and publishing on Atlantis social media outlets, the altered image, likeness and/or identity of Lund which made it appear as though Lund was employed at Atlantis, or endorsed Atlantis strip club, or any Atlantis events or activities.

2071.   Despite the clear language of IRPA and at all relevant times, Defendant published, printed, displayed and/or publicly used Lund's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing Atlantis and/or Atlantis's events and activities.

2072.   The respective social media outlets were designed to attract business and generate revenue for Atlantis.

2073.   Upon information and belief, Defendant'ss use of Lund's image, likeness and/or identity did in fact attract clientele and generate business for Atlantis.

2074.   At all relevant times and at no point, did Defendant ever receive permission or consent, be it written or otherwise, to use Lund's image, likeness  and/or identity on the Atlantis social media outlets or for any other use or matter associated with Atlantis.

2075.   Defendant took these actions without Lund's permission, consent or authority, be it written or otherwise. In fact, Defendant never sought permission nor authority to use Lund's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activities or for any other use.

2076.   Lund never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activity.

2077.   Defendant was at all relevant times aware that they never received Lund's permission or consent to use her Image on any website or social media account, or on any other medium, in order to promote Atlantis.

2078.   At no point did Defendant ever compensate Lund for its use of her image, likeness, and/or identity.

2079.   No applicable privilege or authorization exists for Defendant'ss use of Lund's Image.

2080.   Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Lund's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

2081.   Defendant caused irreparable harm to Lund, her reputation and brand by attributing to Lund the strip club lifestyle and activities at Atlantis.

2082.   Defendant has also damaged Lund as a direct and proximate result of their unauthorized use of Lund's image, likeness and/or identity without compensating Lund.

2083.   Due to Defendant'ss violation of Lund's rights of privacy and publicity under IRPA, Lund has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

2084.   In addition, Lund hereby requests an Order permanently enjoining Defendant from violating Lund's right to privacy and publicity.

2085.   In addition, Lund hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendant knowing and intentional violation of her statutory rights to privacy and publicity.

**WHEREFORE**, Lund respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## LUND COUNT IV
### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)

2086.   Lund hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

177.     Defendant published Lund's image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Atlantis and Atlantis's events and activities, causing her to be placed in a false light as a stripper or as someone who was affiliated with Atlantis, or endorsed Atlantis strip club before the public as a result of that publication.

178.     Without question, this "false light would be highly offensive to a reasonable person" and, by portraying Lund in a false light Defendant did so with actual malice, with

322

knowledge of or reckless disregard for the falsity of the statements.

179.    Defendant published Lund's image, likeness and/or identity on Atlantis social media outlets in order to create the false impression that Lund was either a stripper working at Atlantis, or endorsed Atlantis strip club.

180.    As such, Defendant'ss intent in publishing Lund's image, likeness and/or identity was to mislead the public and cast her in a false light with respect to her affiliation with Atlantis.

181.    Defendant was at all times aware, Lund never worked at any Atlantis strip club, never endorsed Atlantis, and never had any affiliation with Atlantis or any Atlantis events or activities.

182.    Defendant never sought permission or authority to use Lund's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis events or activities.

183.    Lund never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis event or activity.

184.    As a result of Defendant'ss unauthorized and misleading publication of Lund's Image, Defendant has caused irreparable harm to Lund, her reputation and brand by attributing to Lund the strip club lifestyle and activities at Atlantis.

2087.  Defendant has also damaged Lund as result of their unauthorized use of Lund's image, likeness or identity without compensating Lund.  Defendant's conduct has been despicable and taken in conscious disregard of Lund's rights.

2088.  As a result of Defendant'ss unauthorized and misleading use of Lund's image, likeness or identity, Lund has been injured in an amount to be determined at trial, but in all

events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**WHEREFORE**, Lund respectfully requests that the Court issue a judgment against Defendant for all remedies available under law, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## LUND COUNT V
### (Negligence and *Respondeat Superior*)

2089. Lund hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

2090. Upon information and belief, Defendant was negligent in its failure to promulgate policies and procedures concerning the misappropriation of the Image of models that were used on the Atlantis Website and social media accounts.

2091. Said failure was the proximate cause of the harm Lund suffered when her Image was published without her authorization.

2092. In the alternative, and upon information and belief, although Defendant promulgated policies and procedures concerning the misappropriation of images, Defendant nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated.

2093. In addition, Defendant had a duty to refrain from appropriating the Image of those with whom it had not contracted, and had not paid.

2094. Defendant violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

2095.   As a result of Defendant'ss negligence, Lund have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

### Plaintiff Megan Vogt a/k/a Megan Vogt Daniel's Causes of Action against Defendant AEG Ventures, LLC d/b/a Atlantis Gentlemen's Club

### VOGT COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)

2096.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Vogt from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .".  15 U.S.C. §1125(a)(1)(B).

2097.   Defendant used Vogt's image, likeness and/or identity as described herein without authority in order to create the perception that Vogt worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her image in order to advertise, promote, and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities.

2098.   Defendant's use of Vogt's image, likeness and/or identity to advertise, promote and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities as described in this Complaint was false and misleading.

2099.   Defendant's unauthorized use of Vogt's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Vogt worked at or was otherwise affiliated with Atlantis, endorsed Defendant's

businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities and/or that Vogt would participate in or appear at the specific events promoted in the advertisements.

2100.  Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Atlantis, as to the general quality of attendees and participants of Atlantis and in their events, as well as specifically whether Vogt worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities.

2101.  Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Vogt worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events and activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Atlantis, visit Atlantis, and participate in events at Atlantis and had a material effect and impact on the decision of members and prospective members and participants to join Atlantis, visit Atlantis and take part in the events at Atlantis.

2102.  Defendant's advertisements, promotions and marketing of Atlantis and events at Atlantis occur in and are targeted to interstate commerce. Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from

different states throughout the United States. Defendant principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Atlantis events.

2103.  Defendant's unauthorized use of Vogt's image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Atlantis and their activities and attracting clientele to Atlantis.

2104.  Defendant knew or should have known that their unauthorized use of Vogt's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

2105.  Defendant's unauthorized use of Vogt's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

2106.  Defendant's wrongful conduct as described herein was willful.

2107.  As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

2108.  Defendant had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Vogt of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Vogt.

2109.  The method and manner in which Defendant used the image of Vogt further evinces that Defendant were aware of or consciously disregarded the fact that Vogt did not consent to Defendant's use of the image to advertise Defendant's businesses.

2110.  Defendant had caused irreparable harm to Vogt, her reputation and brand by attributing to Vogt the strip club lifestyle and activities at Atlantis.

2111. Defendant's unauthorized use of Vogt's image, likeness and/or identity directly and proximately caused and continue to cause damage to Vogt in an amount to be determined at trial.

**WHEREFORE**, Vogt respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## VOGT COUNT II
### (*Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement*)

2112. Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Vogt from the conduct described herein.

2113. Defendant used Vogt's image in order to create the false impression with the public that Vogt either worked at Defendant's strip club, or endorsed Defendant's businesses. This was done to promote and attract clientele to Atlantis, and thereby generate revenue for Defendant.

2114. Thus, this was done in furtherance of Defendant's commercial benefit.

2115. Vogt is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Vogt's images in magazines and online.

2116. Both Vogt and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

2117. As such, an unauthorized use of Vogt's image to promote a strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Vogt.

2118. Defendant's use of Vogt's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Vogt's fans and present and prospective clients into believing that Atlantis's advertisements are endorsed by Vogt, or sponsored, approved or associated with Vogt.

2119. Despite the fact that Defendant were at all times aware that Vogt neither worked at, nor endorsed their strip club, nevertheless, they used Vogt's image in order to mislead potential customers as to Vogt's employment at and/or affiliation with Atlantis.

2120. Defendant knew that their use of Vogt's image would cause consumer confusion as to Vogt's sponsorship and/or employment at Atlantis.

2121. Upon information and belief, Defendant's use of Vogt's image did in fact cause consumer confusion as to Vogt's employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

2122. As a direct and proximate result of Defendant's actions, Vogt has no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisements depicting Vogt's image, likeness and/or identity, or how Vogt's image, likeness and/or identity is being depicted by Defendant.

2123. Further, any failure, neglect or default by Defendant will reflect adversely on Vogt as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Vogt to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Vogt.

2124.   Due to Atlantis's unauthorized use of Vogt's image, Vogt has been damaged in an amount to be determined at trial.

**WHEREFORE**, Vogt respectfully requests that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## VOGT COUNT III
### (**Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10** *et seq. Right to Publicity*)

2125.   Vogt hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

2126.   Vogt has a right of publicity under IRPA, 765 ILCS 1075/10 *et seq. Right to Publicity*.

2127.   Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Vogt without express written or oral consent to such use.

2128.   As set forth herein, Defendant has violated Vogt's right to publicity by invading Vogt's privacy, misappropriating her likeness, and publishing on Atlantis social media outlets, the altered image, likeness and/or identity of Vogt which made it appear as though Vogt was employed at Atlantis, or endorsed Atlantis strip club, or any Atlantis events or activities.

2129.   Despite the clear language of IRPA and at all relevant times, Defendant published, printed, displayed and/or publicly used Vogt's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising

including, but not limited to, promoting, advertising and marketing Atlantis and/or Atlantis's events and activities.

2130.   The respective social media outlets were designed to attract business and generate revenue for Atlantis.

2131.   Upon information and belief, Defendant'ss use of Vogt's image, likeness and/or identity did in fact attract clientele and generate business for Atlantis.

2132.   At all relevant times and at no point, did Defendant ever receive permission or consent, be it written or otherwise, to use Vogt's image, likeness  and/or identity on the Atlantis social media outlets or for any other use or matter associated with Atlantis.

2133.   Defendant took these actions without Vogt's permission, consent or authority, be it written or otherwise. In fact, Defendant never sought permission nor authority to use Vogt's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activities or for any other use.

2134.   Vogt never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activity.

2135.    Defendant was at all relevant times aware that they never received Vogt's permission or consent to use her Image on any website or social media account, or on any other medium, in order to promote Atlantis.

2136.   At no point did Defendant ever compensate Vogt for its use of her image, likeness, and/or identity.

2137.   No applicable privilege or authorization exists for Defendant'ss use of Vogt's Image.

2138.  Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Vogt's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

2139.  Defendant caused irreparable harm to Vogt, her reputation and brand by attributing to Vogt the strip club lifestyle and activities at Atlantis.

2140.  Defendant has also damaged Vogt as a direct and proximate result of their unauthorized use of Vogt's image, likeness and/or identity without compensating Vogt.

2141.  Due to Defendant'ss violation of Vogt's rights of privacy and publicity under IRPA, Vogt has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

2142.  In addition, Vogt hereby requests an Order permanently enjoining Defendant from violating Vogt's right to privacy and publicity.

2143.  In addition, Vogt hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendant knowing and intentional violation of her statutory rights to privacy and publicity.

**WHEREFORE**, Vogt respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## VOGT COUNT IV
### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)

2144. Vogt hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

177. Defendant published Vogt's image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Atlantis and Atlantis's events and activities, causing her to be placed in a false light as a stripper or as someone who was affiliated with Atlantis, or endorsed Atlantis strip club before the public as a result of that publication.

178. Without question, this "false light would be highly offensive to a reasonable person" and, by portraying Vogt in a false light Defendant did so with actual malice, with knowledge of or reckless disregard for the falsity of the statements.

179. Defendant published Vogt's image, likeness and/or identity on Atlantis social media outlets in order to create the false impression that Vogt was either a stripper working at Atlantis, or endorsed Atlantis strip club.

180. As such, Defendant'ss intent in publishing Vogt's image, likeness and/or identity was to mislead the public and cast her in a false light with respect to her affiliation with Atlantis.

181. Defendant was at all times aware, Vogt never worked at any Atlantis strip club, never endorsed Atlantis, and never had any affiliation with Atlantis or any Atlantis events or activities.

182. Defendant never sought permission or authority to use Vogt's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis events or activities.

183.    Vogt never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis event or activity.

184.    As a result of Defendant'ss unauthorized and misleading publication of Vogt's Image, Defendant has caused irreparable harm to Vogt, her reputation and brand by attributing to Vogt the strip club lifestyle and activities at Atlantis.

2145.   Defendant has also damaged Vogt as result of their unauthorized use of Vogt's image, likeness or identity without compensating Vogt.   Defendant's conduct has been despicable and taken in conscious disregard of Vogt's rights.

2146.   As a result of Defendant'ss unauthorized and misleading use of Vogt's image, likeness or identity, Vogt has been injured in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**WHEREFORE**, Vogt respectfully requests that the Court issue a judgment against Defendant for all remedies available under law, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful  proceeds, including Defendant's profits and other relief deemed just and proper by this  Court.

## <u>VOGT COUNT V</u>
### (Negligence and *Respondeat Superior*)

2147.   Vogt hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

2148.   Upon information and belief, Defendant was negligent in its failure to promulgate policies and procedures concerning the misappropriation of the Image of models that were used on the Atlantis Website and social media accounts.

2149.   Said failure was the proximate cause of the harm Vogt suffered when her Image was published without her authorization.

2150.   In the alternative, and upon information and belief, although Defendant promulgated policies and procedures concerning the misappropriation of images, Defendant nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated.

2151.   In addition, Defendant had a duty to refrain from appropriating the Image of those with whom it had not contracted, and had not paid.

2152.   Defendant violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

2153.   As a result of Defendant'ss negligence, Vogt have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

***Plaintiff Mercedes Terrell's Causes of Action
against Defendant AEG Ventures, LLC d/b/a Atlantis Gentlemen's Club***

**TERRELL COUNT I**
(**Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising**)

2154.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Terrell from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .".  15 U.S.C. §1125(a)(1)(B).

2155.  Defendant used Terrell's image, likeness and/or identity as described herein without authority in order to create the perception that Terrell worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her image in order to advertise, promote, and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities.

2156.  Defendant's use of Terrell's image, likeness and/or identity to advertise, promote and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities as described in this Complaint was false and misleading.

2157.  Defendant's unauthorized use of Terrell's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Terrell worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities and/or that Terrell would participate in or appear at the specific events promoted in the advertisements.

2158.  Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Atlantis, as to the general quality of attendees and participants of Atlantis and in their events, as well as specifically whether Terrell worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities.

2159.   Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Terrell worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events and activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Atlantis, visit Atlantis, and participate in events at Atlantis and had a material effect and impact on the decision of members and prospective members and participants to join Atlantis, visit Atlantis and take part in the events at Atlantis.

2160.   Defendant's advertisements, promotions and marketing of Atlantis and events at Atlantis occur in and are targeted to interstate commerce. Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Atlantis events.

2161.   Defendant's unauthorized use of Terrell's image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Atlantis and their activities and attracting clientele to Atlantis.

2162.   Defendant knew or should have known that their unauthorized use of Terrell's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

2163.   Defendant's unauthorized use of Terrell's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

2164.   Defendant's wrongful conduct as described herein was willful.

2165. As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

2166. Defendant had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Terrell of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Terrell.

2167. The method and manner in which Defendant used the image of Terrell further evinces that Defendant were aware of or consciously disregarded the fact that Terrell did not consent to Defendant's use of the image to advertise Defendant's businesses.

2168. Defendant had caused irreparable harm to Terrell, her reputation and brand by attributing to Terrell the strip club lifestyle and activities at Atlantis.

2169. Defendant's unauthorized use of Terrell's image, likeness and/or identity directly and proximately caused and continue to cause damage to Terrell in an amount to be determined at trial.

**WHEREFORE**, Terrell respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

<u>**TERRELL COUNT II**</u>
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement**)

2170. Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Terrell from the conduct described herein.

2171. Defendant used Terrell's image in order to create the false impression with the public that Terrell either worked at Defendant's strip club, or endorsed Defendant's businesses.

This was done to promote and attract clientele to Atlantis, and thereby generate revenue for Defendant.

2172.   Thus, this was done in furtherance of Defendant's commercial benefit.

2173.   Terrell is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Terrell's images in magazines and online.

2174.   Both Terrell and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

2175.   As such, an unauthorized use of Terrell's image to promote a strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Terrell.

2176.   Defendant's use of Terrell's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Terrell's fans and present and prospective clients into believing that Atlantis's advertisements are endorsed by Terrell, or sponsored, approved or associated with Terrell.

2177.   Despite the fact that Defendant were at all times aware that Terrell neither worked at, nor endorsed their strip club, nevertheless, they used Terrell's image in order to mislead potential customers as to Terrell's employment at and/or affiliation with Atlantis.

2178.   Defendant knew that their use of Terrell's image would cause consumer confusion as to Terrell's sponsorship and/or employment at Atlantis.

2179.   Upon information and belief, Defendant's use of Terrell's image did in fact cause consumer confusion as to Terrell's employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

2180.   As a direct and proximate result of Defendant's actions, Terrell has no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisements depicting Terrell's image, likeness and/or identity, or how Terrell's image, likeness and/or identity is being depicted by Defendant.

2181.   Further, any failure, neglect or default by Defendant will reflect adversely on Terrell as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Terrell to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Terrell.

2182.   Due to Atlantis's unauthorized use of Terrell's image, Terrell has been damaged in an amount to be determined at trial.

**WHEREFORE**, Terrell respectfully requests that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## <u>TERRELL COUNT III</u>
(**Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10** *et seq. Right to Publicity*)

2183.   Terrell hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

2184.   Terrell has a right of publicity under IRPA, 765 ILCS 1075/10 *et seq. Right to Publicity*.

2185.   Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Terrell without express written or oral consent to such use.

2186.   As set forth herein, Defendant has violated Terrell's right to publicity by invading Terrell's privacy, misappropriating her likeness, and publishing on Atlantis social media outlets, the altered image, likeness and/or identity of Terrell which made it appear as though Terrell was employed at Atlantis, or endorsed Atlantis strip club, or any Atlantis events or activities.

2187.   Despite the clear language of IRPA and at all relevant times, Defendant published, printed, displayed and/or publicly used Terrell's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing Atlantis and/or Atlantis's events and activities.

2188.   The respective social media outlets were designed to attract business and generate revenue for Atlantis.

2189.   Upon information and belief, Defendant'ss use of Terrell's image, likeness and/or identity did in fact attract clientele and generate business for Atlantis.

2190.   At all relevant times and at no point, did Defendant ever receive permission or consent, be it written or otherwise, to use Terrell's image, likeness  and/or identity on the Atlantis social media outlets or for any other use or matter associated with Atlantis.

2191.   Defendant took these actions without Terrell's permission, consent or authority, be it written or otherwise. In fact, Defendant never sought permission nor authority to use

341

Terrell's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activities or for any other use.

2192.  Terrell never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activity.

2193.   Defendant was at all relevant times aware that they never received Terrell's permission or consent to use her Image on any website or social media account, or on any other medium, in order to promote Atlantis.

2194.  At no point did Defendant ever compensate Terrell for its use of her image, likeness, and/or identity.

2195.  No applicable privilege or authorization exists for Defendant'ss use of Terrell's Image.

2196.  Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Terrell's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

2197.  Defendant caused irreparable harm to Terrell, her reputation and brand by attributing to Terrell the strip club lifestyle and activities at Atlantis.

2198.  Defendant has also damaged Terrell as a direct and proximate result of their unauthorized use of Terrell's image, likeness and/or identity without compensating Terrell.

2199.  Due to Defendant'ss violation of Terrell's rights of privacy and publicity under IRPA, Terrell has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

2200. In addition, Terrell hereby requests an Order permanently enjoining Defendant from violating Terrell's right to privacy and publicity.

2201. In addition, Terrell hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendant knowing and intentional violation of her statutory rights to privacy and publicity.

**WHEREFORE**, Terrell respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

### TERRELL COUNT IV
### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)

2202. Terrell hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

177. Defendant published Terrell's image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Atlantis and Atlantis's events and activities, causing her to be placed in a false light as a stripper or as someone who was affiliated with Atlantis, or endorsed Atlantis strip club before the public as a result of that publication.

178. Without question, this "false light would be highly offensive to a reasonable person" and, by portraying Terrell in a false light Defendant did so with actual malice, with knowledge of or reckless disregard for the falsity of the statements.

179. Defendant published Terrell's image, likeness and/or identity on Atlantis social media outlets in order to create the false impression that Terrell was either a stripper working at

Atlantis, or endorsed Atlantis strip club.

180.    As such, Defendant'ss intent in publishing Terrell's image, likeness and/or identity was to mislead the public and cast her in a false light with respect to her affiliation with Atlantis.

181.    Defendant was at all times aware, Terrell never worked at any Atlantis strip club, never endorsed Atlantis, and never had any affiliation with Atlantis or any Atlantis events or activities.

182.    Defendant never sought permission or authority to use Terrell's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis events or activities.

183.    Terrell never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis event or activity.

184.    As a result of Defendant'ss unauthorized and misleading publication of Terrell's Image, Defendant has caused irreparable harm to Terrell, her reputation and brand by attributing to Terrell the strip club lifestyle and activities at Atlantis.

2203.   Defendant has also damaged Terrell as result of their unauthorized use of Terrell's image, likeness or identity without compensating Terrell.   Defendant's conduct has been despicable and taken in conscious disregard of Terrell's rights.

2204.   As a result of Defendant'ss unauthorized and misleading use of Terrell's image, likeness or identity, Terrell has been injured in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**WHEREFORE**, Terrell respectfully requests that the Court issue a judgment against Defendant for all remedies available under law, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## TERRELL COUNT V
### (Negligence and *Respondeat Superior*)

2205.   Terrell hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

2206.   Upon information and belief, Defendant was negligent in its failure to promulgate policies and procedures concerning the misappropriation of the Image of models that were used on the Atlantis Website and social media accounts.

2207.   Said failure was the proximate cause of the harm Terrell suffered when her Image was published without her authorization.

2208.   In the alternative, and upon information and belief, although Defendant promulgated policies and procedures concerning the misappropriation of images, Defendant nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated.

2209.   In addition, Defendant had a duty to refrain from appropriating the Image of those with whom it had not contracted, and had not paid.

2210.   Defendant violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

2211.   As a result of Defendant'ss negligence, Terrell have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand

dollars ($75,000), exclusive of punitive and exemplary damages.

**Plaintiff Rachel Koren a/k/a Rachel Koren Bernstein's Causes of Action
against Defendant AEG Ventures, LLC d/b/a Atlantis Gentlemen's Club**

**KOREN COUNT I**
(**Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising**)

2212.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and

protects Koren from the conduct described herein. Specifically, the Lanham Act prohibits a party

in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics,

qualities or geographic origin of his or her or another person's goods, services or commercial

activities . . .".  15 U.S.C. §1125(a)(1)(B).

2213.   Defendant used Koren's image, likeness and/or identity as described herein

without authority in order to create the perception that Koren worked at or was otherwise

affiliated with Atlantis, endorsed Defendant's businesses and activities, and/or consented to or

authorized Defendant to use her image in order to advertise, promote, and market Defendant's

businesses, Atlantis, and/or Atlantis's events and activities.

2214.   Defendant's use of Koren's image, likeness and/or identity to advertise, promote

and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities as described

in this Complaint was false and misleading.

2215.   Defendant's unauthorized use of Koren's image, likeness and/or identity as

described in this Complaint constitutes false advertising by suggesting or implying, among other

things, that Koren worked at or was otherwise affiliated with Atlantis, endorsed Defendant's

businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's

usage of her image in order to advertise, promote, and market Defendant's businesses or

Atlantis's events and activities and/or that Koren would participate in or appear at the specific events promoted in the advertisements.

2216.  Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Atlantis, as to the general quality of attendees and participants of Atlantis and in their events, as well as specifically whether Koren worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities.

2217.  Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Koren worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events and activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Atlantis, visit Atlantis, and participate in events at Atlantis and had a material effect and impact on the decision of members and prospective members and participants to join Atlantis, visit Atlantis and take part in the events at Atlantis.

2218.  Defendant's advertisements, promotions and marketing of Atlantis and events at Atlantis occur in and are targeted to interstate commerce. Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally use the World Wide Web,

social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Atlantis events.

2219.  Defendant's unauthorized use of Koren's image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Atlantis and their activities and attracting clientele to Atlantis.

2220.  Defendant knew or should have known that their unauthorized use of Koren's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

2221.  Defendant's unauthorized use of Koren's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

2222.  Defendant's wrongful conduct as described herein was willful.

2223.  As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

2224.  Defendant had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Koren of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Koren.

2225.  The method and manner in which Defendant used the image of Koren further evinces that Defendant were aware of or consciously disregarded the fact that Koren did not consent to Defendant's use of the image to advertise Defendant's businesses.

2226.  Defendant had caused irreparable harm to Koren, her reputation and brand by attributing to Koren the strip club lifestyle and activities at Atlantis.

2227.  Defendant's unauthorized use of Koren's image, likeness and/or identity directly and proximately caused and continue to cause damage to Koren in an amount to be determined at trial.

**WHEREFORE**, Koren respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## KOREN COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)

2228. Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Koren from the conduct described herein.

2229. Defendant used Koren's image in order to create the false impression with the public that Koren either worked at Defendant's strip club, or endorsed Defendant's businesses. This was done to promote and attract clientele to Atlantis, and thereby generate revenue for Defendant.

2230. Thus, this was done in furtherance of Defendant's commercial benefit.

2231. Koren is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Koren's images in magazines and online.

2232. Both Koren and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

2233. As such, an unauthorized use of Koren's image to promote a strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Koren.

2234. Defendant's use of Koren's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Koren's fans and present and prospective clients into believing that Atlantis's advertisements are endorsed by Koren, or sponsored, approved or associated with Koren.

2235. Despite the fact that Defendant were at all times aware that Koren neither worked at, nor endorsed their strip club, nevertheless, they used Koren's image in order to mislead potential customers as to Koren's employment at and/or affiliation with Atlantis.

2236. Defendant knew that their use of Koren's image would cause consumer confusion as to Koren's sponsorship and/or employment at Atlantis.

2237. Upon information and belief, Defendant's use of Koren's image did in fact cause consumer confusion as to Koren's employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

2238. As a direct and proximate result of Defendant's actions, Koren has no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisements depicting Koren's image, likeness and/or identity, or how Koren's image, likeness and/or identity is being depicted by Defendant.

2239. Further, any failure, neglect or default by Defendant will reflect adversely on Koren as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Koren to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Koren.

2240. Due to Atlantis's unauthorized use of Koren's image, Koren has been damaged in an amount to be determined at trial.

**WHEREFORE**, Koren respectfully requests that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## KOREN COUNT III
(**Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10 *et seq. Right to Publicity***)

2241.  Koren hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

2242.  Koren has a right of publicity under IRPA, 765 ILCS 1075/10 *et seq. Right to Publicity*.

2243.  Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Koren without express written or oral consent to such use.

2244.  As set forth herein, Defendant has violated Koren's right to publicity by invading Koren's privacy, misappropriating her likeness, and publishing on Atlantis social media outlets, the altered image, likeness and/or identity of Koren which made it appear as though Koren was employed at Atlantis, or endorsed Atlantis strip club, or any Atlantis events or activities.

2245. Despite the clear language of IRPA and at all relevant times, Defendant published, printed, displayed and/or publicly used Koren's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing Atlantis and/or Atlantis's events and activities.

2246.   The respective social media outlets were designed to attract business and generate revenue for Atlantis.

2247.   Upon information and belief, Defendant'ss use of Koren's image, likeness and/or identity did in fact attract clientele and generate business for Atlantis.

2248.   At all relevant times and at no point, did Defendant ever receive permission or consent, be it written or otherwise, to use Koren's image, likeness  and/or identity on the Atlantis social media outlets or for any other use or matter associated with Atlantis.

2249.   Defendant took these actions without Koren's permission, consent or authority, be it written or otherwise. In fact, Defendant never sought permission nor authority to use Koren's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activities or for any other use.

2250.   Koren never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activity.

2251.    Defendant was at all relevant times aware that they never received Koren's permission or consent to use her Image on any website or social media account, or on any other medium, in order to promote Atlantis.

2252.   At no point did Defendant ever compensate Koren for its use of her image, likeness, and/or identity.

2253.   No applicable privilege or authorization exists for Defendant'ss use of Koren's Image.

2254.   Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Koren's image, likeness or identity

without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

2255.   Defendant caused irreparable harm to Koren, her reputation and brand by attributing to Koren the strip club lifestyle and activities at Atlantis.

2256.   Defendant has also damaged Koren as a direct and proximate result of their unauthorized use of Koren's image, likeness and/or identity without compensating Koren.

2257.   Due to Defendant'ss violation of Koren's rights of privacy and publicity under IRPA, Koren has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

2258.   In addition, Koren hereby requests an Order permanently enjoining Defendant from violating Koren's right to privacy and publicity.

2259.   In addition, Koren hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendant knowing and intentional violation of her statutory rights to privacy and publicity.

**WHEREFORE**, Koren respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## <u>KOREN COUNT IV</u>
### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)

2260.   Koren hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

177.     Defendant published Koren's image, likeness and/or identity on social media

outlets, among others, in order to promote, advertise and market Atlantis and Atlantis's events and activities, causing her to be placed in a false light as a stripper or as someone who was affiliated with Atlantis, or endorsed Atlantis strip club before the public as a result of that publication.

178.    Without question, this "false light would be highly offensive to a reasonable person" and, by portraying Koren in a false light Defendant did so with actual malice, with knowledge of or reckless disregard for the falsity of the statements.

179.    Defendant published Koren's image, likeness and/or identity on Atlantis social media outlets in order to create the false impression that Koren was either a stripper working at Atlantis, or endorsed Atlantis strip club.

180.    As such, Defendant'ss intent in publishing Koren's image, likeness and/or identity was to mislead the public and cast her in a false light with respect to her affiliation with Atlantis.

181.    Defendant was at all times aware, Koren never worked at any Atlantis strip club, never endorsed Atlantis, and never had any affiliation with Atlantis or any Atlantis events or activities.

182.    Defendant never sought permission or authority to use Koren's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis events or activities.

183.    Koren never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis event or activity.

184.    As a result of Defendant'ss unauthorized and misleading publication of Koren's Image, Defendant has caused irreparable harm to Koren, her reputation and brand by attributing

to Koren the strip club lifestyle and activities at Atlantis.

2261.   Defendant has also damaged Koren as result of their unauthorized use of Koren's image, likeness or identity without compensating Koren.   Defendant's conduct has been despicable and taken in conscious disregard of Koren's rights.

2262.   As a result of Defendant'ss unauthorized and misleading use of Koren's image, likeness or identity, Koren has been injured in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**WHEREFORE**, Koren respectfully requests that the Court issue a judgment against Defendant for all remedies available under law, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

<u>**KOREN COUNT V**</u>
**(Negligence and *Respondeat Superior*)**

2263.   Koren hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

2264.   Upon information and belief, Defendant was negligent in its failure to promulgate policies and procedures concerning the misappropriation of the Image of models that were used on the Atlantis Website and social media accounts.

2265.   Said failure was the proximate cause of the harm Koren suffered when her Image was published without her authorization.

2266.   In the alternative, and upon information and belief, although Defendant promulgated policies and procedures concerning the misappropriation of images, Defendant nevertheless negligently failed to enforce those policies, communicate them to employees, and/or

supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated.

2267.   In addition, Defendant had a duty to refrain from appropriating the Image of those with whom it had not contracted, and had not paid.

2268.   Defendant violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

2269.   As a result of Defendant'ss negligence, Koren have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

### *Plaintiff Rosie Jones's Causes of Action*
### *against Defendant AEG Ventures, LLC d/b/a Atlantis Gentlemen's Club*

### <u>JONES COUNT I</u>
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)**

2270.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Jones from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . ." 15 U.S.C. §1125(a)(1)(B).

2271.   Defendant used Jones's image, likeness and/or identity as described herein without authority in order to create the perception that Jones worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her image in order to advertise, promote, and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities.

2272. Defendant's use of Jones's image, likeness and/or identity to advertise, promote and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities as described in this Complaint was false and misleading.

2273. Defendant's unauthorized use of Jones's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Jones worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities and/or that Jones would participate in or appear at the specific events promoted in the advertisements.

2274. Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Atlantis, as to the general quality of attendees and participants of Atlantis and in their events, as well as specifically whether Jones worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities.

2275. Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Jones worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events and activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice

consumers and prospective consumers to join Atlantis, visit Atlantis, and participate in events at Atlantis and had a material effect and impact on the decision of members and prospective members and participants to join Atlantis, visit Atlantis and take part in the events at Atlantis.

2276.  Defendant's advertisements, promotions and marketing of Atlantis and events at Atlantis occur in and are targeted to interstate commerce. Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Atlantis events.

2277.  Defendant's unauthorized use of Jones's image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Atlantis and their activities and attracting clientele to Atlantis.

2278.  Defendant knew or should have known that their unauthorized use of Jones's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

2279.  Defendant's unauthorized use of Jones's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

2280.  Defendant's wrongful conduct as described herein was willful.

2281.  As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

2282.  Defendant had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Jones of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Jones.

2283.   The method and manner in which Defendant used the image of Jones further evinces that Defendant were aware of or consciously disregarded the fact that Jones did not consent to Defendant's use of the image to advertise Defendant's businesses.

2284.   Defendant had caused irreparable harm to Jones, her reputation and brand by attributing to Jones the strip club lifestyle and activities at Atlantis.

2285.   Defendant's unauthorized use of Jones's image, likeness and/or identity directly and proximately caused and continue to cause damage to Jones in an amount to be determined at trial.

**WHEREFORE**, Jones respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## JONES COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)

2286.   Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Jones from the conduct described herein.

2287.   Defendant used Jones's image in order to create the false impression with the public that Jones either worked at Defendant's strip club, or endorsed Defendant's businesses. This was done to promote and attract clientele to Atlantis, and thereby generate revenue for Defendant.

2288.   Thus, this was done in furtherance of Defendant's commercial benefit.

2289.   Jones is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Jones's images in magazines and online.

2290.   Both Jones and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

2291.   As such, an unauthorized use of Jones's image to promote a strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Jones.

2292.   Defendant's use of Jones's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Jones's fans and present and prospective clients into believing that Atlantis's advertisements are endorsed by Jones, or sponsored, approved or associated with Jones.

2293.   Despite the fact that Defendant were at all times aware that Jones neither worked at, nor endorsed their strip club, nevertheless, they used Jones's image in order to mislead potential customers as to Jones's employment at and/or affiliation with Atlantis.

2294.   Defendant knew that their use of Jones's image would cause consumer confusion as to Jones's sponsorship and/or employment at Atlantis.

2295.   Upon information and belief, Defendant's use of Jones's image did in fact cause consumer confusion as to Jones's employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

2296.   As a direct and proximate result of Defendant's actions, Jones has no control over the nature and quality of the line of products or services provided by Defendant, the nature of the

advertisements depicting Jones's image, likeness and/or identity, or how Jones's image, likeness and/or identity is being depicted by Defendant.

2297.   Further, any failure, neglect or default by Defendant will reflect adversely on Jones as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Jones to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Jones.

2298.   Due to Atlantis's unauthorized use of Jones's image, Jones has been damaged in an amount to be determined at trial.

**WHEREFORE**, Jones respectfully requests that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## JONES COUNT III
### (**Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10** *et seq. Right to Publicity*)

2299.   Jones hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

2300.   Jones has a right of publicity under IRPA, 765 ILCS 1075/10 *et seq. Right to Publicity*.

2301.   Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Jones without express written or oral consent to such use.

2302.  As set forth herein, Defendant has violated Jones's right to publicity by invading Jones's privacy, misappropriating her likeness, and publishing on Atlantis social media outlets, the altered image, likeness and/or identity of Jones which made it appear as though Jones was employed at Atlantis, or endorsed Atlantis strip club, or any Atlantis events or activities.

2303.  Despite the clear language of IRPA and at all relevant times, Defendant published, printed, displayed and/or publicly used Jones's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing Atlantis and/or Atlantis's events and activities.

2304.  The respective social media outlets were designed to attract business and generate revenue for Atlantis.

2305.  Upon information and belief, Defendant'ss use of Jones's image, likeness and/or identity did in fact attract clientele and generate business for Atlantis.

2306.  At all relevant times and at no point, did Defendant ever receive permission or consent, be it written or otherwise, to use Jones's image, likeness  and/or identity on the Atlantis social media outlets or for any other use or matter associated with Atlantis.

2307.  Defendant took these actions without Jones's permission, consent or authority, be it written or otherwise. In fact, Defendant never sought permission nor authority to use Jones's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activities or for any other use.

2308.  Jones never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activity.

2309.   Defendant was at all relevant times aware that they never received Jones's permission or consent to use her Image on any website or social media account, or on any other medium, in order to promote Atlantis.

2310.   At no point did Defendant ever compensate Jones for its use of her image, likeness, and/or identity.

2311.   No applicable privilege or authorization exists for Defendant'ss use of Jones's Image.

2312.   Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Jones's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

2313.   Defendant caused irreparable harm to Jones, her reputation and brand by attributing to Jones the strip club lifestyle and activities at Atlantis.

2314.   Defendant has also damaged Jones as a direct and proximate result of their unauthorized use of Jones's image, likeness and/or identity without compensating Jones.

2315.   Due to Defendant'ss violation of Jones's rights of privacy and publicity under IRPA, Jones has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

2316.   In addition, Jones hereby requests an Order permanently enjoining Defendant from violating Jones's right to privacy and publicity.

2317.   In addition, Jones hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendant knowing and intentional violation of her statutory rights to privacy and publicity.

**WHEREFORE**, Jones respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

<u>**JONES COUNT IV**</u>
**(Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)**

2318.  Jones hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

177.  Defendant published Jones's image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Atlantis and Atlantis's events and activities, causing her to be placed in a false light as a stripper or as someone who was affiliated with Atlantis, or endorsed Atlantis strip club before the public as a result of that publication.

178.  Without question, this "false light would be highly offensive to a reasonable person" and, by portraying Jones in a false light Defendant did so with actual malice, with knowledge of or reckless disregard for the falsity of the statements.

179.  Defendant published Jones's image, likeness and/or identity on Atlantis social media outlets in order to create the false impression that Jones was either a stripper working at Atlantis, or endorsed Atlantis strip club.

180.  As such, Defendant'ss intent in publishing Jones's image, likeness and/or identity was to mislead the public and cast her in a false light with respect to her affiliation with Atlantis.

181.  Defendant was at all times aware, Jones never worked at any Atlantis strip club, never endorsed Atlantis, and never had any affiliation with Atlantis or any Atlantis events or

activities.

182.    Defendant never sought permission or authority to use Jones's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis events or activities.

183.    Jones never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis event or activity.

184.    As a result of Defendant'ss unauthorized and misleading publication of Jones's Image, Defendant has caused irreparable harm to Jones, her reputation and brand by attributing to Jones the strip club lifestyle and activities at Atlantis.

2319.    Defendant has also damaged Jones as result of their unauthorized use of Jones's image, likeness or identity without compensating Jones.    Defendant's conduct has been despicable and taken in conscious disregard of Jones's rights.

2320.    As a result of Defendant'ss unauthorized and misleading use of Jones's image, likeness or identity, Jones has been injured in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**WHEREFORE**, Jones respectfully requests that the Court issue a judgment against Defendant for all remedies available under law, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## JONES COUNT V
### (Negligence and *Respondeat Superior*)

2321.    Jones hereby repeats and re-alleges each and every allegation set forth in the

preceding paragraphs as if fully set forth herein.

2322.   Upon information and belief, Defendant was negligent in its failure to promulgate policies and procedures concerning the misappropriation of the Image of models that were used on the Atlantis Website and social media accounts.

2323.   Said failure was the proximate cause of the harm Jones suffered when her Image was published without her authorization.

2324.   In the alternative, and upon information and belief, although Defendant promulgated policies and procedures concerning the misappropriation of images, Defendant nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated.

2325.   In addition, Defendant had a duty to refrain from appropriating the Image of those with whom it had not contracted, and had not paid.

2326.   Defendant violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

2327.   As a result of Defendant'ss negligence, Jones have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

*Plaintiff Ursula Mayes's Causes of Action*
*against Defendant AEG Ventures, LLC d/b/a Atlantis Gentlemen's Club*

**MAYES COUNT I**
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)**

2328.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Mayes from the conduct described herein. Specifically, the Lanham Act prohibits a

party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

2329.  Defendant used Mayes's image, likeness and/or identity as described herein without authority in order to create the perception that Mayes worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her image in order to advertise, promote, and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities.

2330.  Defendant's use of Mayes's image, likeness and/or identity to advertise, promote and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities as described in this Complaint was false and misleading.

2331.  Defendant's unauthorized use of Mayes's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Mayes worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities and/or that Mayes would participate in or appear at the specific events promoted in the advertisements.

2332.  Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Atlantis, as to the general quality of attendees and participants of Atlantis and in their events, as well as specifically whether Mayes worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her

image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities.

2333.   Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Mayes worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events and activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Atlantis, visit Atlantis, and participate in events at Atlantis and had a material effect and impact on the decision of members and prospective members and participants to join Atlantis, visit Atlantis and take part in the events at Atlantis.

2334.   Defendant's advertisements, promotions and marketing of Atlantis and events at Atlantis occur in and are targeted to interstate commerce. Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Atlantis events.

2335.   Defendant's unauthorized use of Mayes's image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Atlantis and their activities and attracting clientele to Atlantis.

2336.   Defendant knew or should have known that their unauthorized use of Mayes's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

2337.   Defendant's unauthorized use of Mayes's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

2338.   Defendant's wrongful conduct as described herein was willful.

2339.   As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

2340.   Defendant had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Mayes of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Mayes.

2341.   The method and manner in which Defendant used the image of Mayes further evinces that Defendant were aware of or consciously disregarded the fact that Mayes did not consent to Defendant's use of the image to advertise Defendant's businesses.

2342.   Defendant had caused irreparable harm to Mayes, her reputation and brand by attributing to Mayes the strip club lifestyle and activities at Atlantis.

2343.   Defendant's unauthorized use of Mayes's image, likeness and/or identity directly and proximately caused and continue to cause damage to Mayes in an amount to be determined at trial.

**WHEREFORE**, Mayes respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## MAYES COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)

2344.   Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Mayes from the conduct described herein.

2345.   Defendant used Mayes's image in order to create the false impression with the public that Mayes either worked at Defendant's strip club, or endorsed Defendant's businesses. This was done to promote and attract clientele to Atlantis, and thereby generate revenue for Defendant.

2346.   Thus, this was done in furtherance of Defendant's commercial benefit.

2347.   Mayes is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Mayes's images in magazines and online.

2348.   Both Mayes and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

2349.   As such, an unauthorized use of Mayes's image to promote a strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Mayes.

2350.   Defendant's use of Mayes's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Mayes's fans and present and prospective clients into believing that Atlantis's advertisements are endorsed by Mayes, or sponsored, approved or associated with Mayes.

2351.   Despite the fact that Defendant were at all times aware that Mayes neither worked at, nor endorsed their strip club, nevertheless, they used Mayes's image in order to mislead potential customers as to Mayes's employment at and/or affiliation with Atlantis.

2352.   Defendant knew that their use of Mayes's image would cause consumer confusion as to Mayes's sponsorship and/or employment at Atlantis.

2353.   Upon information and belief, Defendant's use of Mayes's image did in fact cause consumer confusion as to Mayes's employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

2354.   As a direct and proximate result of Defendant's actions, Mayes has no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisements depicting Mayes's image, likeness and/or identity, or how Mayes's image, likeness and/or identity is being depicted by Defendant.

2355.   Further, any failure, neglect or default by Defendant will reflect adversely on Mayes as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Mayes to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Mayes.

2356.   Due to Atlantis's unauthorized use of Mayes's image, Mayes has been damaged in an amount to be determined at trial.

**WHEREFORE**, Mayes respectfully requests that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use,

attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## MAYES COUNT III
### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10 *et seq. Right to Publicity*)

2357.   Mayes hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

2358.   Mayes has a right of publicity under IRPA, 765 ILCS 1075/10 *et seq. Right to Publicity*.

2359.   Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Mayes without express written or oral consent to such use.

2360.   As set forth herein, Defendant has violated Mayes's right to publicity by invading Mayes's privacy, misappropriating her likeness, and publishing on Atlantis social media outlets, the altered image, likeness and/or identity of Mayes which made it appear as though Mayes was employed at Atlantis, or endorsed Atlantis strip club, or any Atlantis events or activities.

2361.   Despite the clear language of IRPA and at all relevant times, Defendant published, printed, displayed and/or publicly used Mayes's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing Atlantis and/or Atlantis's events and activities.

2362.   The respective social media outlets were designed to attract business and generate revenue for Atlantis.

2363.   Upon information and belief, Defendant'ss use of Mayes's image, likeness and/or identity did in fact attract clientele and generate business for Atlantis.

2364.   At all relevant times and at no point, did Defendant ever receive permission or consent, be it written or otherwise, to use Mayes's image, likeness  and/or identity on the Atlantis social media outlets or for any other use or matter associated with Atlantis.

2365.   Defendant took these actions without Mayes's permission, consent or authority, be it written or otherwise. In fact, Defendant never sought permission nor authority to use Mayes's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activities or for any other use.

2366.   Mayes never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activity.

2367.    Defendant was at all relevant times aware that they never received Mayes's permission or consent to use her Image on any website or social media account, or on any other medium, in order to promote Atlantis.

2368.   At no point did Defendant ever compensate Mayes for its use of her image, likeness, and/or identity.

2369.   No applicable privilege or authorization exists for Defendant'ss use of Mayes's Image.

2370.   Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Mayes's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

2371.   Defendant caused irreparable harm to Mayes, her reputation and brand by attributing to Mayes the strip club lifestyle and activities at Atlantis.

2372.   Defendant has also damaged Mayes as a direct and proximate result of their unauthorized use of Mayes's image, likeness and/or identity without compensating Mayes.

2373.   Due to Defendant'ss violation of Mayes's rights of privacy and publicity under IRPA, Mayes has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

2374.   In addition, Mayes hereby requests an Order permanently enjoining Defendant from violating Mayes's right to privacy and publicity.

2375.   In addition, Mayes hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendant knowing and intentional violation of her statutory rights to privacy and publicity.

**WHEREFORE**, Mayes respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## MAYES COUNT IV
### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)

2376.   Mayes hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

177.     Defendant published Mayes's image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Atlantis and Atlantis's events and activities, causing her to be placed in a false light as a stripper or as someone who was

affiliated with Atlantis, or endorsed Atlantis strip club before the public as a result of that publication.

178.    Without question, this "false light would be highly offensive to a reasonable person" and, by portraying Mayes in a false light Defendant did so with actual malice, with knowledge of or reckless disregard for the falsity of the statements.

179.    Defendant published Mayes's image, likeness and/or identity on Atlantis social media outlets in order to create the false impression that Mayes was either a stripper working at Atlantis, or endorsed Atlantis strip club.

180.    As such, Defendant'ss intent in publishing Mayes's image, likeness and/or identity was to mislead the public and cast her in a false light with respect to her affiliation with Atlantis.

181.    Defendant was at all times aware, Mayes never worked at any Atlantis strip club, never endorsed Atlantis, and never had any affiliation with Atlantis or any Atlantis events or activities.

182.    Defendant never sought permission or authority to use Mayes's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis events or activities.

183.    Mayes never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis event or activity.

184.    As a result of Defendant'ss unauthorized and misleading publication of Mayes's Image, Defendant has caused irreparable harm to Mayes, her reputation and brand by attributing to Mayes the strip club lifestyle and activities at Atlantis.

2377.   Defendant has also damaged Mayes as result of their unauthorized use of Mayes's image, likeness or identity without compensating Mayes.   Defendant's conduct has been despicable and taken in conscious disregard of Mayes's rights.

2378.   As a result of Defendant'ss unauthorized and misleading use of Mayes's image, likeness or identity, Mayes has been injured in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**WHEREFORE**, Mayes respectfully requests that the Court issue a judgment against Defendant for all remedies available under law, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## MAYES COUNT V
### (Negligence and *Respondeat Superior*)

2379.   Mayes hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

2380.   Upon information and belief, Defendant was negligent in its failure to promulgate policies and procedures concerning the misappropriation of the Image of models that were used on the Atlantis Website and social media accounts.

2381.   Said failure was the proximate cause of the harm Mayes suffered when her Image was published without her authorization.

2382.   In the alternative, and upon information and belief, although Defendant promulgated policies and procedures concerning the misappropriation of images, Defendant nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law,

were not violated.

2383.   In addition, Defendant had a duty to refrain from appropriating the Image of those with whom it had not contracted, and had not paid.

2384.   Defendant violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

2385.   As a result of Defendant'ss negligence, Mayes have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

*Plaintiff Vivian Kindle's Causes of Action*
*against Defendant AEG Ventures, LLC d/b/a Atlantis Gentlemen's Club*

**KINDLE COUNT I**
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)**

2386.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Kindle from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .".  15 U.S.C. §1125(a)(1)(B).

2387.   Defendant used Kindle's image, likeness and/or identity as described herein without authority in order to create the perception that Kindle worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her image in order to advertise, promote, and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities.

2388.   Defendant's use of Kindle's image, likeness and/or identity to advertise, promote and market Defendant's businesses, Atlantis, and/or Atlantis's events and activities as described in this Complaint was false and misleading.

2389.   Defendant's unauthorized use of Kindle's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Kindle worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities and/or that Kindle would participate in or appear at the specific events promoted in the advertisements.

2390.   Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Atlantis, as to the general quality of attendees and participants of Atlantis and in their events, as well as specifically whether Kindle worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities.

2391.   Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Kindle worked at or was otherwise affiliated with Atlantis, endorsed Defendant's businesses, Atlantis or Atlantis's events and activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Atlantis's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice

consumers and prospective consumers to join Atlantis, visit Atlantis, and participate in events at Atlantis and had a material effect and impact on the decision of members and prospective members and participants to join Atlantis, visit Atlantis and take part in the events at Atlantis.

2392.  Defendant's advertisements, promotions and marketing of Atlantis and events at Atlantis occur in and are targeted to interstate commerce. Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Atlantis events.

2393.  Defendant's unauthorized use of Kindle's image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Atlantis and their activities and attracting clientele to Atlantis.

2394.  Defendant knew or should have known that their unauthorized use of Kindle's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

2395.  Defendant's unauthorized use of Kindle's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

2396.  Defendant's wrongful conduct as described herein was willful.

2397.  As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

2398.  Defendant had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Kindle of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Kindle.

2399.  The method and manner in which Defendant used the image of Kindle further evinces that Defendant were aware of or consciously disregarded the fact that Kindle did not consent to Defendant's use of the image to advertise Defendant's businesses.

2400.  Defendant had caused irreparable harm to Kindle, her reputation and brand by attributing to Kindle the strip club lifestyle and activities at Atlantis.

2401.  Defendant's unauthorized use of Kindle's image, likeness and/or identity directly and proximately caused and continue to cause damage to Kindle in an amount to be determined at trial.

**WHEREFORE**, Kindle respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

### KINDLE COUNT II
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)**

2402.  Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Kindle from the conduct described herein.

2403.  Defendant used Kindle's image in order to create the false impression with the public that Kindle either worked at Defendant's strip club, or endorsed Defendant's businesses. This was done to promote and attract clientele to Atlantis, and thereby generate revenue for Defendant.

2404.  Thus, this was done in furtherance of Defendant's commercial benefit.

2405.   Kindle is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Kindle's images in magazines and online.

2406.   Both Kindle and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

2407.   As such, an unauthorized use of Kindle's image to promote a strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Kindle.

2408.   Defendant's use of Kindle's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Kindle's fans and present and prospective clients into believing that Atlantis's advertisements are endorsed by Kindle, or sponsored, approved or associated with Kindle.

2409.   Despite the fact that Defendant were at all times aware that Kindle neither worked at, nor endorsed their strip club, nevertheless, they used Kindle's image in order to mislead potential customers as to Kindle's employment at and/or affiliation with Atlantis.

2410.   Defendant knew that their use of Kindle's image would cause consumer confusion as to Kindle's sponsorship and/or employment at Atlantis.

2411.   Upon information and belief, Defendant's use of Kindle's image did in fact cause consumer confusion as to Kindle's employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

2412.   As a direct and proximate result of Defendant's actions, Kindle has no control over the nature and quality of the line of products or services provided by Defendant, the nature

of the advertisements depicting Kindle's image, likeness and/or identity, or how Kindle's image, likeness and/or identity is being depicted by Defendant.

2413. Further, any failure, neglect or default by Defendant will reflect adversely on Kindle as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Kindle to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Kindle.

2414. Due to Atlantis's unauthorized use of Kindle's image, Kindle has been damaged in an amount to be determined at trial.

**WHEREFORE**, Kindle respectfully requests that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## KINDLE COUNT III
### (**Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10** *et seq. Right to Publicity*)

2415. Kindle hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

2416. Kindle has a right of publicity under IRPA, 765 ILCS 1075/10 *et seq. Right to Publicity*.

2417. Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Kindle without express written or oral consent to such use.

2418.   As set forth herein, Defendant has violated Kindle's right to publicity by invading Kindle's privacy, misappropriating her likeness, and publishing on Atlantis social media outlets, the altered image, likeness and/or identity of Kindle which made it appear as though Kindle was employed at Atlantis, or endorsed Atlantis strip club, or any Atlantis events or activities.

2419.   Despite the clear language of IRPA and at all relevant times, Defendant published, printed, displayed and/or publicly used Kindle's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing Atlantis and/or Atlantis's events and activities.

2420.   The respective social media outlets were designed to attract business and generate revenue for Atlantis.

2421.   Upon information and belief, Defendant'ss use of Kindle's image, likeness and/or identity did in fact attract clientele and generate business for Atlantis.

2422.   At all relevant times and at no point, did Defendant ever receive permission or consent, be it written or otherwise, to use Kindle's image, likeness  and/or identity on the Atlantis social media outlets or for any other use or matter associated with Atlantis.

2423.   Defendant took these actions without Kindle's permission, consent or authority, be it written or otherwise. In fact, Defendant never sought permission nor authority to use Kindle's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activities or for any other use.

2424.   Kindle never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis's event or activity.

2425.   Defendant was at all relevant times aware that they never received Kindle's permission or consent to use her Image on any website or social media account, or on any other medium, in order to promote Atlantis.

2426.   At no point did Defendant ever compensate Kindle for its use of her image, likeness, and/or identity.

2427.   No applicable privilege or authorization exists for Defendant'ss use of Kindle's Image.

2428.   Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Kindle's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

2429.   Defendant caused irreparable harm to Kindle, her reputation and brand by attributing to Kindle the strip club lifestyle and activities at Atlantis.

2430.   Defendant has also damaged Kindle as a direct and proximate result of their unauthorized use of Kindle's image, likeness and/or identity without compensating Kindle.

2431.   Due to Defendant'ss violation of Kindle's rights of privacy and publicity under IRPA, Kindle has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

2432.   In addition, Kindle hereby requests an Order permanently enjoining Defendant from violating Kindle's right to privacy and publicity.

2433.   In addition, Kindle hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendant knowing and intentional violation of her statutory rights to privacy and publicity.

**WHEREFORE**, Kindle respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

<u>**KINDLE COUNT IV**</u>
**(Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)**

2434. Kindle hereby repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

177. Defendant published Kindle's image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Atlantis and Atlantis's events and activities, causing her to be placed in a false light as a stripper or as someone who was affiliated with Atlantis, or endorsed Atlantis strip club before the public as a result of that publication.

178. Without question, this "false light would be highly offensive to a reasonable person" and, by portraying Kindle in a false light Defendant did so with actual malice, with knowledge of or reckless disregard for the falsity of the statements.

179. Defendant published Kindle's image, likeness and/or identity on Atlantis social media outlets in order to create the false impression that Kindle was either a stripper working at Atlantis, or endorsed Atlantis strip club.

180. As such, Defendant'ss intent in publishing Kindle's image, likeness and/or identity was to mislead the public and cast her in a false light with respect to her affiliation with Atlantis.

181. Defendant was at all times aware, Kindle never worked at any Atlantis strip club, never endorsed Atlantis, and never had any affiliation with Atlantis or any Atlantis events or

activities.

182.    Defendant never sought permission or authority to use Kindle's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis events or activities.

183.    Kindle never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses, Atlantis or any Atlantis event or activity.

184.    As a result of Defendant'ss unauthorized and misleading publication of Kindle's Image, Defendant has caused irreparable harm to Kindle, her reputation and brand by attributing to Kindle the strip club lifestyle and activities at Atlantis.

2435.    Defendant has also damaged Kindle as result of their unauthorized use of Kindle's image, likeness or identity without compensating Kindle.    Defendant's conduct has been despicable and taken in conscious disregard of Kindle's rights.

2436.    As a result of Defendant'ss unauthorized and misleading use of Kindle's image, likeness or identity, Kindle has been injured in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**WHEREFORE**, Kindle respectfully requests that the Court issue a judgment against Defendant for all remedies available under law, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## KINDLE COUNT V
### (Negligence and *Respondeat Superior*)

2437.    Kindle hereby repeats and re-alleges each and every allegation set forth in the

preceding paragraphs as if fully set forth herein.

2438.   Upon information and belief, Defendant was negligent in its failure to promulgate policies and procedures concerning the misappropriation of the Image of models that were used on the Atlantis Website and social media accounts.

2439.   Said failure was the proximate cause of the harm Kindle suffered when her Image was published without her authorization.

2440.   In the alternative, and upon information and belief, although Defendant promulgated policies and procedures concerning the misappropriation of images, Defendant nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated.

2441.   In addition, Defendant had a duty to refrain from appropriating the Image of those with whom it had not contracted, and had not paid.

2442.   Defendant violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

2443.   As a result of Defendant'ss negligence, Kindle have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

## DEMAND FOR JURY TRIAL

2444.   Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, each Plaintiff individually respectfully prays that this Court grant Judgment to each Plaintiff, respectively, and against Defendant, jointly and severally, in an amount to be determined at trial aggregated across all Plaintiffs and as follows:

1.      For damages as provided in 15 U.S.C. § 1125(a);

2.      For attorneys' fees and costs of suit, as provided for in 15 U.S.C. § 1125(a);

3.      For an order permanently enjoining Defendant from using Plaintiff's Images to promote the Club;

4.      For actual damages according to proof;

5.      For general damages according to proof;

6.      For special damages according to proof;

7.      For consequential damages according to proof;

8.      For reasonable attorneys' fees and costs as permitted by law;

9.      For prejudgment interest and royalties at the legal rate;

6.      For such other relief as this Court deems just and proper; and

7.      For punitive damages, in an amount to be determined at trial.

Cook County, Illinois
Dated:  October 12, 2017

                                        Respectfully Submitted,

                                        THE CASAS LAW FIRM, P.C.

                                        By: */s/Joseph N. Casas*
                                        Illinois Bar No. 6274674
                                        California Bar No. 225800
                                         402 West Broadway, Suite 400
                                         San Diego, California 92101
                                         Email:Joseph@casaslawfirm.com

By: <u>/s/ Vincent J. Ward</u>

**FREEDMAN BOYD HOLLANDER**
**GOLDBERG URIAS & WARD PA.**

Vincent J. Ward (*pro hac vice forthcoming*)
Nicholas T. Hart (*pro hac vice forthcoming*)
20 First Plaza NW, Suite 700
Albuquerque, NM 87102
T: 505-842-9960
vjw@fbdlaw.com
NickH@fbdlaw.com

*Attorneys for Plaintiffs*