**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**ABIGAIL RATCHFORD, et al.**
**Plaintiffs,**

**v.** **Case No.: 1:17-cv-07368**

**AEG VENTURES, LLC d/b/a**
**ATLANTIS GENTLEMEN'S CLUB**

**Defendant.**

**_____________________________________/**

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

Pursuant to Rule 12(b), Federal Rules of Civil Procedure, the Defendant, AEG VENTURES, LLC d/b/a ATLANTIS GENTLEMEN'S CLUB ("Atlantis") by and through the undersigned counsel, files its Memorandum in support of Motion to Dismiss Complaint in this action (Doc. 1), and would state as follows:

## I. INTRODUCTION

This action involves a Complaint which asserts a variety of claims made against a "Gentlemen's Clubs" in Chicago, Illinois, brought on behalf of 30 Plaintiffs that are either models or have some connection with entertainment, promotion or social media (hereinafter "models" or "Plaintiffs"). The Complaint casts any number of aspersions on purported activities taking place at the Defendant's place of business (hereinafter "Club") and alleges that the Club violated the "rights" of Plaintiffs by using their "images" to promote the Club in a variety of media. The Complaint describes the Plaintiffs, describes their comparative success as "models" and/or actresses, and, based on their purported need to protect their

"brands," (*i.e.,* their "likeness and image"), claims that the Clubs' alleged unauthorized use of the Plaintiffs' images comprises the following transgressions, which sets out the identical "Counts" for all Plaintiffs: **Count I**- Violation of the Lanham Act, 15 U.S.C. Sec. 1125(a): False Advertising; **Count II**- Violation of the Lanham Act, 15 U.S.C. Sec. 1125(a): False Endorsement; **Count III**- Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10 et seq. Right to Publicity; **Count IV**- Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 et seq. False Light); **Count V**- Negligence and *Respondeat Superior*. Atlantis, the Defendant herein, respectfully moves this Court to dismiss all Counts, based on the points and authorities set forth below.

The only causes of action before this Court properly predicated on ***Federal*** jurisdiction are Count I, False Advertising, and Count II, False Endorsement, both asserted as violations of the Lanham Act, 15 U.S.C. Sec. 1125(a). The remainder of the Counts are all state or common law counts, all brought under 28 U.S.C., Sec. 1367, which gives this Court the discretion to exercise "supplemental jurisdiction" over related state court causes of action. A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis omitted).

Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need[] not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)). As will be shown below, the Federal jurisdiction upon which the Plaintiffs rely is tenuous, at best, and, based on the failure to join "indispensable parties," *i.e.* the ***copyright*** holders of the subject photographs, coupled with the failure to state a cause of action for which relief can be granted on any of the "state court" claims, this action should be dismissed.

There is also a major flaw in the entirety of Plaintiffs' claims: ***all*** Counts of the Complaint are based on the alleged use of a previously produced, professionally taken photograph of each of the Plaintiffs. No claim is made regarding the actual "photograph," the claims are made based upon the "image" contained in the photograph. Each cause of action is premised upon, and inseparable from, the allegations of some violation in connection with the actual subject photographs, even though ownership of the actual photograph is not alleged or set forth anywhere in the Complaint.

Despite the length of the Complaint, the same constant in every count is the purported unauthorized use of the professionally taken photographs of the Plaintiffs. Despite feigning offense at the use of the photographs, it is an inescapable fact that all of the Plaintiffs knew

(or "should have known") that they posed for the underlying photographs, all of which are clearly "risqué" in nature. No Plaintiff denies that the photographs are of themselves. All of the photographs bear the indicia of being taken as part of a professional "model shoot," and, upon information and belief, the general custom and practice of such "model shoots" in any professional photography or modeling campaign involves the Plaintiffs releasing all rights to those photos, giving ownership of the images to the photographer, and thus leaving Plaintiffs with no ownership rights or other rights to assert in connection with the photos, thus resulting in a lack of standing to bring any action for the "use" of these same photographs, under any theory. As explained below, this "disconnect" supports the dismissal of all of the Plaintiffs' claims.

## II. ARGUMENT AND AUTHORITY FOR GRANTING THE MOTION TO DISMISS

### A. The Plaintiffs' Assertion of the "Lanham Act" as the basis for Counts I and II is Inappropriate for Both the "False Advertising" and "False Endorsement" Theories, Justifying Dismissal of these Counts

Rule 12(b)(6), Federal Rules of Civil Procedure, provides that a defendant may file a motion to dismiss against a plaintiff's complaint for "failure to state a claim upon which relief can be granted." As will be shown below, the "causes of action" the Plaintiffs are actually pursuing under the Lanham Act are simply not the correct vehicle for Plaintiffs' claims, and this "disconnect" for a plaintiff seeking redress for the unauthorized use of his or her likeness is apparent from the face of the statute. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any … symbol, or device ... or any false designation of origin, false or misleading description of fact, or false or misleading misrepresentation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

Plaintiffs seek relief from this Court for the damages arising out of Defendants' alleged Violation of the "Lanham Act" – False Advertising (Count I). The Defendants move to dismiss Plaintiffs' Complaint as to Counts I and II because the Plaintiffs are seeking to expand the application of the Lanham Act to what should simply be, at best, a "misappropriation of likeness" case, for photographs the Plaintiffs do not allege they own, and for individuals (the Plaintiffs) that are simply not recognizable as "walking, talking trademarks." The Defendant, Atlantis, is absolutely not "falsely advertising" that any of the Plaintiffs will be present at Atlantis' Club, nor is there any identification of the name of any Plaintiff, or any actual language even remotely asserting that any Plaintiff "endorses" the Defendant's businesses. The purpose of any of the promotions identified in the exhibits to the Complaint (A through ) is not to "advertise" the Model, or to even remotely suggest that any Model "endorses" any Club, but to simply show a generic "pretty face" (and other Darwinistically attractive attributes, politely summarized herein as just a "pretty face") to simply gain attention to, and give notice of, the ***existence*** of the Club, urging patronage for the generic performers therein, not some specific female, and certainly not for the Plaintiffs.

The Plaintiffs have alleged, per individual, "that her image, likeness, and/or identity" (as depicted in Exhibits A through DD, attached to the Complaint) has been "misappropriated" and used by the Defendant in a manner to falsely and deceptively suggest an association with Defendant's "business activities and practices." The gist of the common Count I claims, paraphrased, bases "false advertising" under the Lanham Act on the theory

that the promotions depicted in the exhibits to the Complaint "falsely advertise" that the respective Plaintiffs performed at, or otherwise were affiliated with, the Defendant's Club, endorsed the events or activities at the Club, or consented to the use of their image to "advertise, promote, market" or "participate in" or "appear" at the specific events in which their images were utilized.

Such allegations are ridiculous, primarily because absolutely no statement is made in any such promotion to support such a claim, and also because no one would ever be naïve enough to think they would encounter any of the "pretty faces" in a visit to the Defendant's establishment any more than one would expect to see Colonel Sanders when picking up a bucket of fried chicken. No cause of action, under the Lanham Act or otherwise, could be based on the theory that one would expect to see, or be disappointed over not seeing, in person, the ubiquitous use of attractive females, at least in the American cultural experience, to advertise and promote every imaginable "good or service." The entire theme of the Plaintiffs' case presumes a level of consumer ignorance and speculative expectations of seeing the "pretty face" in the ad simply not embraced by any "reasonable person."

Critically, if the Plaintiffs gave up the rights to the photographs, which is standard in every commercial photo shoot context, the Plaintiffs absolutely gave up their "*privacy and publicity rights to their likenesses and persona*." How can one separate an "image" from a photograph? It is impossible! Unless the Plaintiffs can establish ownership of the photographs at issue, which they conveniently ignore in their allegations, they have no foundation for any of the causes of action set forth in their Complaint.

In the matter at hand, Plaintiffs contend that Defendants engaged in false advertising by misrepresenting to the public that Plaintiffs were "strippers," employees, or endorsers of

Defendant's Gentlemen's Club, and that the Defendant used Plaintiffs' images and likenesses in advertisements endorsing Defendant's "unwholesome" services and activities. Critically, there is nothing in any Exhibit (A through DD) to support Plaintiffs' assertion that any lewd, sexually explicit, and/or lascivious language was used, or that there is any direct statement or indirect implication that Plaintiffs are "strippers," employees, and/or endorsers of Defendant's Gentlemen's Club.

Contrary to these ridiculous assertions, the content of the Exhibits reveals Plaintiff's efforts to mischaracterize the Exhibits as lewd or somehow offensive is an exaggeration, there being nothing more than, at worst, some coarse humor and/or "double entendres." The Models' photographs are risqué, but not graphic, and the Plaintiffs apparently modeled for these photographs "as is." The photos at issue have not been "doctored" or manipulated, and, to the extent that they present a sexually suggestive theme, they are "sexy" because the Plaintiffs posed for sexually suggestive photographs! Simply stated, the Lanham Act is not a remedy for speculative discontent with the context in which one's image appears.

Absolutely no aspect of the Exhibits attached to the Complaint suggest anything about "endorsing lewd services," never say that any Plaintiff would be present or "appearing" at the Defendants' Clubs, or that any of these "pretty faces" endorsed any specific Club, the photographs simply call attention to a presumptively First Amendment protected and legal business. It is beyond hypocritical for the Plaintiffs to have posed for the subject photographs and now feign some type of "offense" with the use of photographs the Plaintiffs do not own, particularly for a lawful business! See *Redner v. Dean*, 29 F.3d 1495 (11th Cir, 1994):

> "At the outset, we reject Dean's argument that the activity regulated by the Ordinance is not protected by the First Amendment. We find it well settled that nude dancing is expressive conduct entitled to some degree of First

> Amendment protection." (Citing *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991)). *Id* at 1499.

Count II of the Complaint is brought under subsection (a)(1)(A) of Section 1125 of the Lanham Act for false association/false endorsement. There is simply nothing on the face of the Exhibits attached to the Complaint to support any claim for "false advertising" under § 1125(a)(1)(B), or "false endorsement" under § 1125(a)(1)(A).

When one looks at the actual ***language*** used in any of the Exhibits, which is the only thing that can be attributed to the Defendant (since "the Plaintiffs photos ***are*** the Plaintiffs photos"), it is impossible to reconcile the Exhibits with either "false advertising," or "false endorsement." It can only be concluded that the use of generic "pretty faces," without more, simply does not establish the applicability of the Lanham Act under any of the Plaintiffs' theories. This is explained in greater depth below.

The Lanham Act recognizes two distinct protectable interests: protection against unfair competition in the form of an action for false advertising and protection against false association. *Waits v. Frito–Lay, Inc.,* 978 F.2d 1093, at 1106-09 (9th Cir.1992), (*citing Smith v. Montoro,* 648 F.2d 602, 603 (9th Cir.1981)). Plaintiffs claim to be seeking recovery under both aspects of Section 43(a), as all Plaintiffs' claims have the label: "False Advertising against all Defendants" in Violation of 15 U.S.C. § 1125(a), along with claims that Defendant created a perception that Plaintiffs were affiliated with or endorsed the Defendant's Club. That being said, Plaintiffs failed to describe any actual false advertising, and have failed to plead any evidence of competitive injury, as the law requires.

Similar to the facts in the instant case, in *Kournikova v. General Media Communications Inc.*, 278 F. Supp. 2d 1111, 1117 (C.D. Cal. 2003), a celebrity tennis player brought a Lanham Act suit against an adult entertainment magazine publisher, alleging that display of falsely

identified photographs constituted false advertising and false endorsement. The court held that: (1) there was no evidence of competitive injury needed to make out any false advertising claim; (2) the publisher's conduct did not amount to a false endorsement; and (3) the false endorsement claim was barred by the First Amendment.

Applying these concepts to the instant case, first, false advertising cases generally involve some sort of misrepresentation in the marketplace that causes "a discernibly competitive injury." *Id.* To have standing to assert any claim under this line of cases requires a showing that: (1) the plaintiff competes with the defendant in some marketplace, *Halicki v. United Artists Communications, Inc.,* 812 F.2d 1213, 1214 (9th Cir.1987); (2) the plaintiff has alleged a discernibly competitive injury resulting from a misrepresentation in the marketplace (*Waits,* 978 F.2d at 1109); and (3) the misrepresentation implicates some purpose of the Lanham Act regarding the use of trademarks.

Plaintiffs have failed to make any assertions that: (1) the Plaintiffs "compete" with Defendant in the same marketplace, or (2) Plaintiffs have suffered some type of "competitive" injury. If anything, the Plaintiffs have asserted that they are insulted with the alleged "association" with Defendants' adult entertainment establishments, specifically stating that such association has purportedly ruined their reputations and brand. On their face, these assertions simply underscore the inapplicability of the Lanham Act to the facts alleged. Plaintiffs do not "vie for the same dollars from the same consumers," further evidencing the lack of any competition between the "models" and Defendant's adult establishment. Even if Plaintiffs could meet the first prong, they fail to articulate any competitive injury, simply because they cannot.

Although Plaintiffs alleged that the "false association" with Defendant's Club has caused "irreparable damage to [her] reputation and brand," they omit any claim of losses due to competitive injury, see *Kournikova*, 278 F. Supp. at 119 (stating plaintiff might have overcome the absence of any allegation regarding competitive injury by presenting evidence that she lost sales of videos, calendars, and the like as a result of the *Penthouse* photo spread).

In addition, Plaintiffs contend that the use of their likeness on the Defendant's social media is likely to cause "confusion" as to their association with and endorsement of Defendant's establishment. This is, respectfully, ridiculous. Consumer confusion exists when: (1) the defendant used the plaintiff's identity; and (2) the use suggests that plaintiff sponsored or approved the defendant's product. *See e.g., Waits,* 978 F.2d at 1110–11. When looking at the first prong, Plaintiffs assert that the exhibits are the Plaintiffs in question, but the Defendant ***never identified any of the photos by any Plaintiff's name, affiliations, status or distinction***. Plaintiffs' "identity" on the photographs is never established, and, the use of a "pretty face" does not a Lanham Act violation make.

As to the second prong, to determine if the "use" of the photo suggests any Plaintiff sponsored or approved Defendant's "product" requires an examination using the following factors: (a) the relatedness of Plaintiff's fame or success to Defendant's product; (b) the similarity of the likeness used by Defendant to Plaintiffs; (c) evidence of actual confusion; (d) marketing channels used; (e) likely degree of purchaser care; (f) Defendant's intent in selecting Plaintiff; and (g) likelihood of expansion of the product lines. *Kournikova*, 278 F. Supp. at 1120; *citing Downing v. Abercrombie & Fitch,* 265 F.3d 994, 1007–08 (9th Cir.2001) (restating the factors set forth in *AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341 (9th Cir.1979). Defendant urges the Court to focus on the two factors Plaintiffs fail to meet: "A mark with extensive

public recognition and renown, deserves and receives more legal protection than an obscure or weak mark." *YKK Corp. v. Jungwoo Zipper Co.,* 213 F.Supp.2d 1195, 1200 (C.D.Cal.2002) (quoting *Kenner Parker Toys, Inc. v. Rose Art Indus., Inc.,* 963 F.2d 350, 353 (Fed.Cir.1992)).

Although Plaintiffs contend that the females in the photos are "models" and the Complaint cites to their varying numbers of twitter and Instagram followers, for mot of the Plaintiffs, their public recognition is limited, at best, rendering a lowered legal protection. Plaintiffs also fail to state that a "reasonable consumer" would be ***likely*** to conclude that the Plaintiffs endorsed Defendant's Club. See *Waits,* 978 F.2d at 1110; 15 U.S.C. § 1125, (Normally, the likelihood of confusion centers on the probable reactions of prospective purchasers of the parties' goods. *American Int'l Group, Inc. v. London America Int'l Corp.,* 664 F.2d 348, 351 (2d Cir.1981); (Each case involved a specific arbitrary symbol that had been used over time and had become associated in the public mind with the plaintiffs finding it was likely that, the widely recognized Dallas Cowboy uniform used in an adult video would give the public confusion that Dallas Cowboys was affiliated with the video.) *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 205 (2d Cir.1979). In the instant action, there is no recognizable trademark, and the nebulous concept of an "image" is certainly not what the Defendant is selling.

In contrast to the authorities above, the Plaintiffs' photographs omit any "symbol" that has been extensively used, and, to the public, generic "pretty faces" are largely indistinguishable. Defendant, as previously stated, never alluded to or misrepresented any fact in any advertisement, promotion or social media that any Plaintiffs endorsed Defendant's Club. A reasonable person would not see an ad for an Adult Club that contained photos of females and be misled into thinking those same females would be present at the establishment

when the customers arrived, unless so stated. Such naïveté' shocks the conscience. Nothing in the advertisement, promotion or social media stated, "Come in on Tuesday and (insert Plaintiff's name) will be there 6-8pm." The subject "advertisements" were generic in nature, lacking any "associational" quality or any statement of "endorsement" and creating no "confusion" as to Plaintiffs' association, endorsement or affiliation with Defendant's business. The use of a "pretty face" in an advertisement, promotion or social media is simply not an endorsement. The models in the images were never used by the Defendant to beguile some potential customer into thinking they would be "present" at any Club, and even less likely to be used to influence potential customers by "endorsing" any Club.

In several past cases involving celebrity plaintiffs, courts have looked to the decision in *AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341 (9th Cir.1979), for the appropriate factors to consider in determining whether there exists a likelihood of confusion. The factors enumerated in *AMF* are, 1) strength of the plaintiff's mark; 2) relatedness of the goods; 3) similarity of the marks; 4) evidence of actual confusion; 5) marketing channels used; 6) likely degree of purchaser care; 7) defendant's intent in selecting the mark; and 8) likelihood of expansion of the product lines. See *AMF,* 599 F.2d at 348–49.

From even the most lenient view of the applicability of the above eight criteria to the instant facts, it is clear that none of these factors are even remotely relevant or applicable to the instant action. With all due respect, most of the Plaintiffs are not "recognizable," and there can simply be no "confusion" on the bare fact that photos of "pretty faces" were used to promote a Gentlemen's Club. None of these factors can be proven by the Plaintiffs, using even the most generous view of the "four corners of the Complaint."

In *Midler v. Ford Motor Co.* 849 F. 2d 460, 462 (9th Cir. 1988), celebrity Bette Midler sued Ford for using someone who "sounded" like her voice in an automobile commercial. Nothing like that has occurred in the instant action. In *Waits v. Frito-Lay*, 978 F. 2d 1093, 1100 (9th Cir. 1992), a case where a well-known celebrity complained his distinctive voice was used to promote corn chips (which also says copyright law does not pre-empt state court misappropriation claims), the instant action has no similar facts. A plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." It is simply not possible for the Plaintiffs to show they are "losing trade" to the Defendant.

Obviously, this underscores the Defendant's arguments that a "pretty face" posing for a professional photograph (that no Plaintiff alleges she "owns") simply can't show, under any circumstances, that the obscure use of her photo to promote any Gentlemen's Club (which, in this case, was always done in good taste, without language that could be described as offensive under any theory, as shown in Exhibit "1"), would deceive any consumer or result in any "loss of trade." Under *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 745 F. Supp. 2d 1359, 1376-78 (S.D. Fla. 2010), to state a claim for false advertising, a complaint must establish (1) that "the [advertisement] of the [defendant] w[as] false or misleading," (2) that "the [advertisement] deceived, or had the capacity to deceive, consumers," (3) that "the deception had a material effect on purchasing decisions," (4) that "the misrepresented product or service affects interstate commerce," and (5) that "the [plaintiff] has been — or is likely to be — injured as a result of the false advertising." (Citing *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1308 (11th Cir. 2010)). To be sure, there is simply nothing "false" or "misleading" in

using a "pretty face" to advertise a business, and there is no way that any consumer's "purchasing decisions" were diverted away from any Plaintiff and directed to any Club.

No statements exist in any of the Exhibits saying that the "pretty face" will be present at the Clubs or endorses the Clubs, and it is beyond speculative to even think that the "pretty face" will deceive some consumer into thinking the "pretty face" will be there, if there was even any way to connect the generic "pretty face" into a consumer decision to patronize the subject business. Nothing in this case can be reasonably perceived as (1) suggesting or implying that each Plaintiff worked at or was otherwise affiliated with Defendant or, (2) that the use caused irreparable harm to each Plaintiff, her reputation and "brand" by attributing some "connection" to the Defendants. A basic, common sense look at these factors all support the dismissal of this action.

**B. This Court Should Decline the Exercise of its Supplemental Jurisdiction as Other Courts Dealing with these Exact Same Types of Cases have Done**

The Lanham Act claims (Counts I and II), as stretched as they may be, are the only claims over which this Court has original jurisdiction. The remaining claims all plead causes of action under Illinois state law. Pursuant to 28 U.S.C. § 1367(c)(3), the Court has discretion to decline supplemental jurisdiction over state law claims where "the district court has dismissed all claims over which it has original jurisdiction[.]" The Court must weigh "considerations of judicial economy, convenience[,] fairness to litigants," and comity. *Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1569 (11th Cir. 1994) (citing *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 725-26 (1966)). Taking these considerations into account, "[s]tate courts, not federal courts, should be the final arbiters of state law." *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997). In weighing the relevant

considerations, the Court should find that judicial economy, fairness, convenience, and comity favor invoking the Court's discretion under 28 U.S.C. § 1367(c)(3) to decline exercising supplemental jurisdiction over the state law claims.

Two other District Courts dealing with virtually identical causes of action have dismissed all state counts under these theories: See *Canas v. S&J Crazy Lizards Entm't,* Case No. 16-80902-CivZloch, D.E. 6 (S.D. Fla. June 14, 2016) (*sua sponte* declining to exercise supplemental jurisdiction over state law claims that predominated over a Lanham Act claim), and *Edmondson, et al. v. Velvet Lifestyles, LLC, et al.*, Case No. 1:15-cv-24442-JAL, Doc. 77, U.S. District Court for the Southern District of Florida. Even though seeking the declination of this Court's supplemental jurisdiction, the Defendant will address the inherent flaws in the state court counts included in the Complaint.

**C. Plaintiffs' IRPA Claims Accruing Prior to 10-12-16 are Subject to Dismissal**

The Illinois Right of Publicity Act grants to each individual the "right to control and to choose whether and how to use [his or her] identity for commercial purposes," 765 ILCS 1075/10, by prohibiting the "use [of] an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent," 765 ILCS 1075/30. In *Martin v. Wendy's Int'l, Inc. Case No. 1:15-cv-6998* (N.D. Ill. April 28, 2017) this Court held that plaintiff's IRPA claim was time-barred because the one-year statute of limitations applicable to "[a]ctions for slander, libel or for publication of matter violating the right of privacy," 735 ILCS 5/13-201, also applies to IRPA claims such as Plaintiff's, and that plaintiff did not plausibly allege that defendants fraudulently concealed his claim from him. No such claim can be asserted in the instant action. That Court did not reach the substantive issue of whether plaintiff stated a claim for a violation of IRPA. This Court held that none of the factual allegations or assertions

in plaintiff's amended complaint or response brief changes the Court's analysis of the statute of limitations. Since this Court issued its May 2, 2016 Order, the above decision stated that the Seventh Circuit has taken pains to point out (albeit in an unpublished opinion) that it considers it an open question whether IRPA claims are subject to the one-year statute of limitations set forth in 735 ILCS 5/13-201 or to the five-year statute of limitations applicable to claims for "an injury done to property" and "all civil actions not otherwise provided for," 735 ILCS 5/13-205. See *Martin v. Living Essentials, LLC,* 653 F. App'x 482, 485-86 (7th Cir. 2016). This Court noted that neither the Seventh Circuit nor the Illinois Supreme Court has directly addressed the issue. *Id.* This Court also noted that the Seventh Circuit has twice sidestepped it, in each case explaining that it need not address the issue because, even assuming that the plaintiff had timely filed his complaint, he was unable to state a claim under IRPA. See *id., Berry v. Ford Models, Inc.*, 525 F. App'x 451, 454 (7th Cir. 2013).

This Court noted that, in view of the note of caution that the Seventh Circuit sounded in *Martin v. Living Essentials, LLC,* the Court "paused to reconsider the issue," stating:

> This Court based its prior decision in large part on *Blair v. Nevada Landing Partnership*, 859 N.E.2d 1188, 1195-96 (Ill. App. Ct. 2006), the only published decision by an Illinois state court to address the matter of the applicable statute of limitations under IRPA. In *Blair*, the Illinois Appellate Court concluded that the one-year statute of limitations applies to IRPA claims because, when IRPA became effective on January 1, 1999, it 'completely supplanted the common-law tort of appropriation of likeness,' one of the four invasion of privacy torts recognized by Illinois law. See *id.* at 1192; see also *Trannel v. Prairie Ridge Media, Inc.,* 987 N.E.2d 923, 928-29 (Ill. App. Ct. 2013) (tracing the history of the appropriation of likeness tort and IRPA). The one-year statute of limitations provided by 735 ILCS 5/13-201 applies to "[a]ctions for . . . publication of matter violating the right of privacy," which included actions for appropriation of likeness under the common law, as well as actions for the other common law invasion of privacy torts involving wrongful publication. See *Benitez v. KFC Nat'l Mgmt. Co.,* 714 N.E.2d 1002, 1007 (Ill. App. Ct. 1999) (735 ILCS 5/13-201 applied to actions for (1) public disclosure of private facts, (2) appropriation of likeness, and (3) false-light publicity).

In analyzing whether the same statute provides the applicable statute of limitations to

> IRPA claims, the appellate court in Blair cited the language of IRPA, which explains that "[t]he rights and remedies provided for in this Act are meant to supplant those available under the common law," particularly with respect to "the common law right of publicity," 765 ILCS 1075/60, the right that was the basis for the tort of appropriation of likeness. See Blair, 859 N.E.2d at 1191-92 ("The tort of appropriation of one's likeness is sometimes referred to as 'the right of publicity.'") The court recognized that the statutory tort is composed of the same three elements as the common law tort it replaced. Id. Further, IRPA provides that "[e]xcept for the common law right of publicity, the rights and remedies provided under [IRPA] are supplemental to any other rights and remedies provided by law including, but not limited to, the common law right of privacy." Id. (citing 765 ILCS 1075/60) (emphasis added). Based on this textual evidence that IRPA's aim was to codify the common law right of publicity tort (or appropriation of likeness tort) and generally to "supplement" the common law rather than substantially alter it, the court concluded that the same statute of limitations should apply to the right of publicity tort both before and after its codification.

Based on the foregoing, the date the instant Complaint was filed, 10-12-17, and the one year statute of limitations for IRPA claims, this would preclude 22 Plaintiffs from maintaining any claims under IRPA, since, under the plain language of the Complaint, the publications occurred before 10-12-16. This also supports the argument asserted in section B. above, that this Court should exercise its discretion under 28 U.S.C. § 1367(c)(3) to decline exercising supplemental jurisdiction over the state law claims.

**D. There is no Basis to Assert Either a Negligence Claim, nor A Respondeat Superior Claim in this Action**

The *respondeat superior* doctrine provides that, under certain circumstances, employers must answer to injured third persons for injuries caused by their employees. However, in this action, there is no basis to assert any such theory, since Plaintiffs and their failure to prevent broad dissemination of their photograph deprives them of standing to assert such claims. As stated above, based on "industry standards" and the fact that every photograph is clearly professionally taken, after limited discovery, it shall be shown that Plaintiffs' signed releases and gave up all rights in the subject photograph(s). It has become "industry standard" for

photographers to have the model sign over all rights in connection with the "shoot," including the right of publicity. Plaintiffs' claims rest entirely upon alleged ownership and asserted rights in and to the photographs at issue. Without alleging ownership of the rights to the photographs at issue, Plaintiffs do not have standing to bring these claims, and same are subject to dismissal, as well as being outside the jurisdiction of this Court since no valid Lanham Act claim exists for the exercise of Federal Jurisdiction. Plaintiffs allege that Defendants published the Plaintiffs' image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Defendant's Club. Plaintiffs have failed to state a claim upon which relief may be granted in Count "Republication of facts already publicized elsewhere cannot provide a basis for an invasion of privacy claim." *Heath v. Playboy Enterprises, Inc.*, 732 F. Supp. 1145, 1148 (S.D. Fla. 1990) citing to *Valentine v. C.B.S., Inc.*, 698 F.2d 430, 433 (11th Cir. 1983) (song lyrics did not disclose private facts but merely detailed events previously disclosed through public trial testimony); *Faloona v. Hustler Magazine, Inc.*, 799 F.2d 1000, 1006 (5th Cir. 1986), reh'g. denied, 802 F.2d 455 (5th Cir. 1986), cert. denied, 479 U.S. 1088, 107 S. Ct. 1295, 94 L. Ed. 2d 151 (1987) (since photographs printed in Hustler magazine had already been widely published elsewhere, Hustler revealed no private facts)(emphasis added); Jackson, 574 F. Supp. at 11 (citing Restatement (Second) of Torts, § 625D, Comment b); *Prosser & Keaton, The Law of Torts*, § 117 (5th Ed. 1984). "The prior publication of all facts published in the March 1988, issue of Playboy further evidences their public nature." *Heath v. Playboy,* at 1148. "Republication of these facts cannot be actionable as an invasion of privacy as a matter of law." *Id.*

Even if the Court accepts Plaintiffs' allegations that Defendant copied and republished Plaintiffs' photographs, the photographs were already widely published and, therefore,

republication is not actionable as an invasion of privacy, as a matter of law. All of the photographs alleged to have been used by Defendant were widely published, remain widely available online, and were available prior to the "republication," thus, their use simply cannot be asserted as the basis for any "invasion of privacy," as a matter of law. This Count is subject to dismissal, as well as being outside the jurisdiction of this Court, since no valid Lanham Act claims exists for the exercise of Federal Jurisdiction over this supplemental state law claim.

## Conclusion and Request for Relief

For the foregoing reasons, the Defendants respectfully move this Court for an Order dismissing the Complaint, as follows:

1. The Complaint should be dismissed for improperly asserting claims under the Lanham Act which simply do not exist,

2. This Court should ultimately dismiss this action for failure to maintain the Federal Jurisdiction necessary for the exercise of this Court's supplemental jurisdiction under 28 U.S.C. Sec. 1367.

3. The Complaint should be dismissed for failure to state a claim for violation of any of the State Court Counts, III and IV, for any image alleged to have been used outside the one year statute of limitations, or Count V, as specified above.

4. Award such other and further relief as this court deems just and appropriate.

Dated: November 15, 2017

Respectfully Submitted,

By: /s/ Wayne B. Giampietro

Wayne B. Giampietro
POLTROCK & GIAMPIETRO
123 W. Madison, #1300
Chicago, IL 60602
Telephone (312) 236-0606

/s/Luke Lirot
Luke Lirot, Esq.
Florida Bar Number 714836
LUKE CHARLES LIROT, P.A.
2240 Belleair Road, Suite 190
Clearwater, Florida 33764
Telephone: (727) 536-2100
Facsimile: (727) 536-2110
luke2@lirotlaw.com (primary e-mail)
jimmy@lirotlaw.com (secondary e-mail)
office@lirotlaw.com (secondary e-mail)

*Attorneys for the Defendant*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 15, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all parties in this case.

/s/Wayne B. Giampietro