**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ABIGAIL RATCHFORD, ANA CHERI
MORELAND, SARA UNDERWOOD,
ARIANNY CELESTE LOPEZ, CAMILA
DAVALOS, MARIANA DAVALOS,
CARMEN ELECTRA, CIELO JEAN "CJ"
GIBSON, CHANTEL ZALES, CLAUDIA
SAMPEDRO, CORA SKINNER, IRINA
VORONINA, EVA PEPAJ, IMOGEN
THOMAS, JESSICA HINTON a/k/a JESSA
HINTON, JESSICA BURCIAGA, MARTA
KRUPA, JOANNA KRUPA, INA
SCHNITZER a/k/a JORDAN CARVER,
KATARINA VAN DERHAM, LAURIE
YOUNG, LINA POSADA, LUCY PINDER,
MALU "MASHA" LUND, MEGAN VOGT
a/k/a MEGAN DANIELS, MERCEDES
TERRELL, RACHEL KOREN a/k/a
RACHEL BERNSTEIN, ROSIE JONES,
URSULA MAYES, VIVIAN KINDLE,

        Plaintiffs,

        vs.

AEG VENTURES, LLC d/b/a ATLANTIS
GENTLEMEN'S CLUB,

        Defendant.

Case No: 1:17-cv-07368

**PLAINTIFFS' RESPONSE IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS
PLAINTIFFS' COMPLAINT**

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................ 1

II. FACTS ............................................................................................................................. 2

III. STANDARD OF REVIEW FOR A MOTION TO DISMISS ................................................. 3

IV. ARGUMENT ................................................................................................................... 4

    A.    Plaintiffs have Stated Valid Claims for Violation of Lanham Act -
        Count I (False Advertising) and Count II (False Endorsement) ............................. 4

        1.    Plaintiffs have Standing to Bring a "False Advertising" Claim
            under  Subsection (a)(1)(B) Because They Fall under the Statutory
            Zone of Interest and Fulfill the Proximate Cause Requirement ................. 4

        2.    Plaintiffs have Plead Sufficient Facts to bring a "False
            Association/False Endorsement" Claim under Subsection
            1125(a)(1)(A) …………………………………………………...…………9

            i.    All of the Elements Necessary to Establish a Valid Mark
                 were Properly Pleaded……………………………. ............................ 10

            ii.    The Defendant's "Just a Pretty Face" Argument is
                 Equally Unavailing………………………………………. .............. 14

        3.    Defendant's Sole Rationale for Dismissing Counts I and II is
            Based on Allegations Outside the Four Corners of the Complaint ........... 19

    B.    This Court Should Exercise Supplemental Jurisdiction as It Previously
        Did in a Factually Similar Matter ....................................................................... 21

    C.    Plaintiffs have Stated a Valid Claim for Violation 765 ILCS 1075/10
        et seq. Unauthorized Publication of Plaintiffs' Images - Count III ....................... 22

    D.    Contrary To Defendant's Contentions, No Statute of Limitations
        Issue Exists as it Relates to Republication and Ongoing Harm as
        all Incidents Occurred within 12 Months of Filing Complaint ............................ 24

        1.    Continuing Harm ..................................................................................... 24

        2.    Defendant Fails to Identify the Specific Claims that
            are Time Barred ...................................................................................... 26

E.     Plaintiffs have Stated a Valid Claim for Negligence and Respondeat Superior under Count V ........................................................................................ 27

V. CONCLUSION ……………………………………….……………............................... 28

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Abercrombie & Fitch Co. v. Hunting World, Inc.*,
    537 F.2d 4 (2d Cir. 1976)...........................................................................................11

*Arnold v. Treadwell*,
    642 F. Supp.2d 723 (E.D. Mich. 2009).......................................................................14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................3, 25

*ATC Healthcare Services, Inc. v. RCM Technologies, Inc.*,
    -- F. Supp. 3d --, No. 15 C 08020, 2017 WL 4339786 (N.D. Ill.
    September 30, 2017) .....................................................................................................4

*Bd. of Regents of Univ. of Wisconsin Sys. v. Phoenix Int'l Software, Inc.*,
    653 F.3d 448 (7th Cir. 2011) .......................................................................................9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................................3, 25

*Burciaga v. Gold Club Tampa, Inc.*,
    No. 8:16-cv-790-T-27JSS, 2016 WL 9526567
    (M.D. Fla. Dec. 28, 2016) ..........................................................................................14

*Clay v. McEvers*,
    No. 99 C 1122, 2001 WL 914450 (N.D. Ill. August 14, 2001) ...................................26

In the matter of *Condit v. Star Editorial, Inc.*
    259 F.Supp.2d 1046 (E.D. Cal. 2003)........................................................................14

*Data Research & Handling, Inc. v. Vongphachanh*,
    -- F. Supp. 3d --, 2017 WL 4340197 (N.D. Ind. Sep. 30, 2017)...................................7

*Dent v. Renaissance Marketing Corp.*,
    No. 14 C 02999, 2015 WL 3484464 (N.D. Ill. Jun. 1, 2015) ......................................13

*Downing v. Abercrombie & Fitch*,
    265 F.3d 994, 1007 (9th Cir. 2001) ..............................................12, 13, 14, 19, 20

*Gulfstream Media Group, Inc. v. PD Strategic Media, Inc.*,
    No. 12-62056-CIV, 2013 WL 1891281 (S.D. Fla. May 6, 2013)............................4, 27

iii

*Heath v. Playboy Enterprises, Inc.*,
    732 F. Supp. 1145 (S.D. Fla. 1990) ...........................................................27

*L.S. Heath & Son, Inc. v. At & T Info. Sys.*,
    9 F.3d 561 (7th Cir. 1993) ...................................................................9, 27

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    134 S. Ct. 1377 (2014)........................................................................4, 5, 9

*MaClean Quality Composites, LLC v. Edge Composites, LLC*,
    No. 08 C 6367, 2009 WL 1010426 (N.D. Ill. April 14, 2009) ...................21

*Marmarchi v. Board of Trustees of the University of Illinois*,
    No. 17-1939, 2017 WL 5152156, at *3 (7th Cir. Nov. 7, 2017) ................23

*Martin v. Wendy's Int'l, Inc.*,
    183 F. Supp. 3d 925, 933 (N.D. Ill. 2016) ...................................7, 9, 24, 25

*Muzikowski v. Paramount Pictures Corp.*,
    477 F.3d 899 (7th Cir. 2001) ......................................................................7

*Planetary Motion, Inc. v. Techsplosion, Inc.*,
    261 F.3d 1188 (11th Cir. 2001) .................................................................15

*Rubio v. Barnes & Noble, Inc.*,
    No. 14-CV-6561 (JSR), 2014 WL 6769150
    (S.D.N.Y. November 12, 2014) .................................................................14

*Sorensen v. WD-40 Co.*,
    792 F.3d 712 (7th Cir. 2015) ......................................................................9

*Tally–Ho, Inc. v. Coast Cmty. Coll. Dist.*,
    889 F.2d 1018 (11th Cir. 1989) .................................................................15

*Tana v. Dantanna's*,
    611 F.3d 767 (11th Cir. 2010) ...................................................................10

*Toney v. L'Oreal USA, Inc.*,
    406 F.3d 905 (7th Cir. 2005) ...............................................................22, 28

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
    505 U.S. 763 (1992)............................................................................10, 11

*White v. Samsung Elec. Am., Inc.*,
    971 F.2d 1395 (9th Cir. 1992) ...................................................................13

*Woodard v. Victory Records, Inc.*,
    No. 11 C 7594, 2016 WL 1270423 (N.D. Ill. Mar. 31, 2016) ....................10

**State Cases**

*Battaglia v. Adams*,
    164 So.2d 195 (Fla. 1964)......................................................................19

*Blair v. Nevada Landing Partnership*,
    369 Ill. App. 3d 318 (2nd Dist. 2006)......................................................25

*Timed Out, LLC v. Youabian, Inc.*,
    229 Cal. App. 4th 1001 (Cal. Ct. App. 2014) ....................................20, 21

**Federal Statutes**

15 U.S.C. § 1125(a) ................................................................................ *passim*

28 U.S.C. § 1367(a) ........................................................................................21

28 USC § 1367(c) ...........................................................................................23

**State Statutes**

735 ILCS 5/13-201 .........................................................................................24

765 ILCS 1075/10 *et seq.*.........................................................................22, 27

Fla. Stat. § 540.08 ..........................................................................................21

**Rules**

F.R.C.P. 12(b)(6) ...............................................................................1, 3, 4, 28

**Other Authorities**

*Nimmer on Copyright § 1.01* (1999)...............................................................20

Plaintiffs, by and through the undersigned counsel, hereby file their collective response in opposition to Defendant AEG Ventures, LLC d/b/a Atlantis Gentlemen's Club's ("Atlantis" or "Defendant") F.R.C.P. 12(b)(6) Motion to Dismiss Plaintiffs' Complaint.

## I. INTRODUCTION

Plaintiffs seek relief from this Court for damages arising out of Defendant's unauthorized use and theft of Plaintiffs' images and likenesses for the purpose of advertising, solicitation, and promotion of its strip club, Atlantis. Doc. 1, at ¶¶ 1, 7, 34, 40. Defendant's Motion to Dismiss seeks to dismiss claims that Plaintiffs are not advancing and is replete with illogical arguments meant to confuse the issues and this Court. Each Plaintiff has sufficiently alleged that her image, likeness, and/or identity (as depicted in Exhibits "A" through "DD", inclusive, and attached to the Complaint) has been misappropriated and used by Defendant in a manner to falsely and deceptively suggest an association with Defendant's business activities and practices.

Defendant contends Plaintiffs are not the "owners" of purported "copyrights" of the images in question and thus, have somehow automatically given up their own privacy and publicity rights to their likenesses and persona. Doc. 25, at 2. As a matter of law, Defendant's contention is without merit, as it fails to distinguish between a photograph as a whole and the image of the *persona* (i.e. the Plaintiff's image and likeness) within the photograph, which has separate and distinct protections under the law. As explained below, the law is well-established that a model (or any person for that matter) has the right to protect her persona from the invasion of her privacy and publicity, misappropriation of her likeness or image, and other violations of her identity, as has

1

occurred in the instant case, irrespective of any separate and distinct claim for copyright infringement that someone else may or may not posses. To be certain, Plaintiffs' claim is for damages of intellectual property, but the property is not per se tangible (not a patent or photograph); rather, it is the idea or concept behind the photograph—the value associated with the actual image contained within the photograph—which Plaintiffs seek to protect.

Notably, since most of Defendant's arguments are based on extrinsic evidence that is not proper for a motion to dismiss, this Court must only examine the four corners of the Complaint, along with the Exhibits appended thereto, in order to conclude that each claim asserted by Plaintiffs survives Defendant's specious motion to dismiss.

## II. FACTS

Plaintiffs are highly successful and professional models who make a living by promoting their respective images and likenesses to various clients. They take great pride in their respective reputations in the modeling industry. At no time did any Plaintiff give Defendant permission to use their images for any marketing and promotional materials, nor did they consent to being associated with Defendant's strip club. Doc. 1 at ¶¶ 4, 38-42. As a direct and proximate result of Defendant's unauthorized publication of Plaintiffs' images, Defendant received benefits, including but not limited to monetary payments, increased promotional, advertising, marketing, and other public relations benefits, notoriety, and publicity, and accepted those benefits while Plaintiffs received nothing in return. *Id.* at ¶ 11. In short, Defendant used Plaintiffs' images without their permission, received significant monetary benefits, and did not compensate Plaintiffs for that use.

When Defendant used the photographs at issue in this matter, it knew, or should

have known, those images did not depict its employees. Nor did Defendant or any agent

acting under Defendant's direction seek consent from Plaintiffs, who were not employed

by Defendant, to use their images in the promotional materials. And none of the Plaintiffs

implicitly or explicitly gave Defendant permission to use the images. *Id*. at ¶ 11. Put

another way, Defendant knew or should have known full well who its employees and/or

contractors are, and accordingly was aware that Plaintiffs never worked for Atlantis. *Id*.

at ¶¶ 439 (Ratchford), 511 (Burciaga), 612 (Moreland), 678 (Underwood), 782 (Lopez),

869 (C. Davalos), 954 (M. Davalos), 1039 (Electra), 1124 (Gibson), 1190 (Zales), 1294

(Sampedro), 1379 (Skinner), 1445 (Voronina), p. 217 ¶ 181 (Pepaj), p. 228 ¶ 181

(Thomas), p. 238 ¶ 181 (Hinton), p. 249 ¶ 181 (M. Krupa), p. 260 ¶ 181 (J. Krupa), p.

271 ¶ 181 (Schnitzer), p. 281 ¶ 181 (Derham), p. 292 ¶ 181 (Young), p. 302 ¶ 181

(Posada), p. 312 ¶ 181 (Pinder), p. 323 ¶ 181 (Lund), p. 333 ¶ 181 (Vogt), p. 344 ¶ 181

(Terrell), p. 354 ¶ 181 (Koren), p. 364 ¶ 181 (Jones), p. 375 ¶ 181 (Mayes), p. 385 ¶ 181

(Kindle).

### III.  STANDARD OF REVIEW FOR A MOTION TO DISMISS

A complaint is only required to contain "a short statement of the claim showing

that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545,

(2007). Accordingly, to survive a motion to dismiss under Federal Rule of Civil

Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true,

to 'state a claim to relief that is plausible on its face.'" *Id*. (citing *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009)). A claim is facially plausible where the claimant pleads sufficient

factual content to permit the court to reasonably infer that a defendant is liable for the

conduct alleged. *Id*. Therefore, a motion to dismiss should be denied "where the pleading

asserts non-conclusory, factual allegations that, if true, would push the claim 'across the line from conceivable to plausible.'" *Id*. As such, a court can only consider what is contained within the four corners of the complaint – it must "limit its consideration to the pleadings and exhibits attached to the pleadings and, . . . accept the plaintiff's allegations as true and evaluate all plausible inferences from those facts in favor of the plaintiff." *Gulfstream Media Group, Inc. v. PD Strategic Media*, *Inc*., No. 12-62056-CIV, 2013 WL 1891281, at * 3 (S.D. Fla. May 6, 2013). *See also ATC Healthcare Servs., Inc. v. RCM Techs., Inc.*, -- F. Supp. 3d --, No. 15 C 08020, 2017 WL 4339786, at *3 (N.D. Ill. September 30, 2017) (holding that courts must accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiffs' favor).

## IV. ARGUMENT

**A**.  **Plaintiffs have Stated Valid Claims for Violation of Lanham Act - Count I (False Advertising) and Count II (False Endorsement)**

Section 1125(a) of the Lanham Act creates two distinct bases of liability: false association/false endorsement, § 1125(a)(1)(A) and false advertising, § 1125(a)(1)(B)." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1384 (2014). In this matter, Plaintiffs' Complaint contends Defendant violated Subsection (a)(1)(B) of the Lanham act by engaging in *false advertising* and misrepresenting to the public that Plaintiffs were strippers, employees, or endorsers of Defendant's strip club (Count I) and that Defendant used Plaintiffs' images to *falsely endorse* Defendant's strip club in violation of Subsection (a)(1)(A) (Count II).

> **1.  Plaintiffs have Standing to Bring a "False Advertising" Claim under Subsection (a)(1)(B) Because They Fall under the Statutory Zone of Interest and Fulfill the Proximate Cause Requirement.**

In evaluating a false advertising claim under Subsection (a)(1)(B), *Lexmark* is the

governing authority. In *Lexmark*, the Supreme Court squarely addressed the issue of standing. There, the plaintiff manufactured and sold laser printers and toner cartridges for its printers. Defendant, Static Control, a maker of component parts for refurbished Lexmark cartridges was sued by Lexmark for copyright infringement. *Id*. at 1383-84. Static Control, in turn, counterclaimed for false advertising in violation of § 1125(a)(1)(B), alleging that Lexmark had undertaken a mass lettering campaign advising its customers that it was illegal to purchase Static Control's refurbished cartridges. *Id*.

The Supreme Court held that "a direct application of the zone-of-interests test and the proximate cause requirement supplies the relevant limits on *who may sue*" under § 1125(a). *Id*. at 1391. In this regard, the Court held that plaintiffs fall within the statutory zone of interests for purposes of § 1125(a) when they "*allege an injury to a commercial interest in reputation or sales.*" *Id.* at 1390 (emphasis added). With respect to proximate cause, the Court held that a plaintiff "must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id*. at 1391. Because Static Control alleged a decrease in sales as a direct result of Lexmark's false representations to consumers, the Court concluded that Static Control fell within the class of persons and entities authorized to assert a Subsection (a)(1)(B) claim. *Id*.

Here, Plaintiffs have standing because they fall within the statutory zone of interests for purposes of Subsection (a)(1)(B) as each individual Plaintiff has alleged to suffer an injury to the commercial interest in their reputations and the ability to market their images and likeness. Specifically, Plaintiffs allege that "Defendant had caused irreparable harm to [Plaintiff], her reputation and brand by attributing to [Plaintiff] the

strip club lifestyle and activities at Atlantis." Doc. 1 at ¶¶ 398 (Ratchford), 469 (Burciaga), 536 (Moreland), 639 (Underwood), 705 (Lopez), 809 (C. Davalos), 898 (M. Davalos), 981 (Electra), 1066 (Gibson), 1151 (Zales), 1217 (Zampedro), 1321 (Skinner), 1406 (Veronino), 1472 (Pepaj), 1530 (Thomas), 1588 (Hinton), 1646 (M. Krupa), 1704 (J. Krupa), 1762 (Schnitzer), 1820 (Derham), 1878 (Young), 1936 (Posada), 1994 (Pinder), 2052 (Lund), 2110 (Vogt), 2168 (Terrell), 2226 (Koren), 2284 (Jones), 2342 (Mayes), 2400 (Kindle). Similarly, Plaintiffs also satisfy the proximate cause requirement as each Plaintiff alleged that her reputational injury flowed directly from Defendant's deception and misrepresentation in Defendant's advertisements, to wit, "Defendant's unauthorized use of [Plaintiffs'] image, likeness or identity directly and proximately caused and continues to cause damage to [them.]" *Id.* at ¶¶ 399 (Ratchford), 470 (Burciaga), 537 (Moreland), 640 (Underwood), 706 (Lopez), 810 (C. Davalos), 899 (M. Davalos), 982 (Electra), 1067 (Gibson), 1152 (Zales), 1218 (Zampedro), 1322 (Skinner), 1407 (Veronino), 1473 (Pepaj), 1531 (Thomas), 1589 (Hinton), 1647 (M. Krupa), 1705 (J. Krupa), 1763 (Schnitzer), 1821 (Derham), 1879 (Young), 1937 (Posada), 1995 (Pinder), 2053 (Lund), 2111 (Vogt), 2169 (Terrell), 2227 (Koren), 2285 (Jones), 2343 (Mayes), 2401 (Kindle).

Once standing has been established, a plaintiff must state a claim for false advertising in violation of Subsection, (a)(1)(B) by showing that:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived *or has the tendency to deceive* a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its

products.

*Martin v. Wendy's Int'l, Inc.*, 183 F. Supp. 3d 925, 933 (N.D. Ill. 2016) (emphasis added).[1]

Count I of Plaintiffs' Complaint specifically alleges that (1) Defendant's unauthorized use of each Plaintiff's image constitutes false statement of fact in its advertising by asserting that each Plaintiff worked at or was otherwise affiliated with Defendant[2] (Doc. 1 at ¶¶ 386-388 (Ratchford), 458-460 (Burciaga), 525-527 (Moreland), 626-628 (Underwood), 692-694 (Lopez), 798-800 (C. Davalos), 887-889 (M. Davalos), 970-972 (Electra), 1055-1057 (Gibson), 1140-1142 (Zales), 1206-1208 (Sampedro), 1310-1312 (Skinner), 1395-1397 (Voronina), 1461-1463 (Pepaj), 1519-1521 (Thomas), 1577-1579 (Hinton), 1635-1637 (M. Krupa), 1693-1695 (J. Krupa), 1751-1753 (Schnitzer), 1809-1811 (Derham), 1867-1869 (Young), 1925-1927 (Posada), 1983-1985 (Pinder), 2041-2043 (Lund), 2099-2101 (Vogt), 2157-2159 (Terrell), 2215-2217 (Koren), 2273-2275 (Jones), 2231-2233 (Mayes), 2389-2391 (Kindle)); (2) Defendant's advertisements using Plaintiffs' images had the capacity to deceive and confuse customers as to whether Plaintiffs were strippers, employees, or endorsers of Atlantis (*See* n. 2, *supra;* Doc. 1 at ¶¶ 387 (Ratchford), 459 (Burciaga), 525 (Moreland), 629 (Underwood), 695 (Lopez), 799 (C. Davalos), 888 (M. Davalos), 971 (Electra), 1056

---

[1] In *Muzikowski v. Paramount Pictures Corp.*, 477 F.3d 899, 907 (7th Cir. 2001), the court held, "In order to establish a claim of false or deceptive advertising under § 43(a) of the Lanham Act, a plaintiff must show that the defendant [1] made a material false statement of fact in a commercial advertisement and [2] that the false statement deceived or had the tendency to deceive a substantial segment of its audience...The district court held, and we have previously assumed without deciding, that this analysis also applies to Illinois false advertising claims...." Recently, in *Data Research & Handling, Inc. v. Vongphachanh*, -- F. Supp. 3d --, 2017 WL 4340197, *9 (N.D. Ind. Sep. 30, 2017), the district court held that this same requirement, specifically, is what is required to overcome a motion to dismiss.

[2] Many of the comments from the public at large indicate an approval of the advertising, and the specific model in question leading to confusion of the consumer. (See generally, Ex. "B", "C", "E", "F", "I", "K", "S", "U", "W", "Y", "AA", "BB", and "DD".

(Gibson), 1141 (Zales), 1207 (Sampedro), 1311 (Skinner), 1396 (Voronina), 1462 (Pepaj), 1520 (Thomas), 1578 (Hinton), 1636 (M. Krupa), 1694 (J. Krupa), 1752 (Schnitzer), 1810 (Derham), 1868 (Young), 1926 (Posada), 1984 (Pinder), 2042 (Lund), 2100 (Vogt), 2158 (Terrell), 2216 (Koren), 2274 (Jones), 2232 (Mayes), 2390 (Kindle)); (3) the unauthorized use was material and did influence the purchasing decision of the consumer to join or frequent Atlantis and participate in events at Atlantis (*See* n. 2, *supra*; *Id.* at 388 (Ratchord), 460 (Burciaga), 526 (Moreland), 630 (Underwood), 696 (Lopez), 800 (C. Davalos), 889 (M. Davalos), 972 (Electra), 1057 (Gibson), 1142 (Zales), 1208 (Sampedro), 1312 (Skinner), 1397 (Voronina), 1753 (Schnitzer), 1811 (Derham), 1869 (Young), 1927 (Posada), 1985 (Pinder), 2043 (Lund, 2101 (Vogt), 2158 (Terrell), 2217 (Koren), 2275 (Jones), 2233 (Mayes), 2391 (Kindle)); (4) Defendant's advertisements occur in and are targeted to interstate commerce and target persons from different states throughout the United States through the use of the internet, social media and other vehicles of interstate commerce (Doc. 1 at ¶¶ 389 (Ratchord), 461 (Burciaga), 527 (Moreland), 631 (Underwood), 697 (Lopez), 801 (C. Davalos), 890 (M. Davalos), 973 (Electra), 1058 (Gibson), 1143 (Zales), 1209 (Sampedro), 1313 (Skinner), 1398 (Voronina), 1754 (Schnitzer), 1812 (Derham), 1870 (Young), 1928 (Posada), 1986 (Pinder), 2044 (Lund), 2102 (Vogt), 2159 (Terrell), 2218 (Koren), 2276 (Jones), 2234 (Mayes), 2392 (Kindle)); and (5) Defendant caused irreparable harm to Plaintiffs, their reputation and brand by attributing to Plaintiffs the strip club lifestyle and activities at Atlantis (*Id.* at ¶¶ 398 (Ratchford), 469 and 504 (Burciaga), 536 (Moreland), 639 (Underwood), 705 (Lopez), 809 (C. Davalos), 898 (M. Davalos), 981 (Electra), 1066 (Gibson), 1151 (Zales), 1217 (Sampedro), 1321 (Skinner), 1406 (Voronina), 1472

(Pepaj), 1530 (Thomas), 1588 (Hinton), 1646 (M. Krupa), 1704 (J. Krupa), 1762 (Schnitzer), 1820 (Derham), 1878 (Young), 1936 (Posada), 1994 (Pinder), 2052 (Lund), 2110 (Vogt), 2168 (Terrell), 2226 (Koren), 2284 (Jones), 2342 (Mayes), 2400 (Kindle)). As such, all five elements of the claim have been properly pled, and Plaintiffs have standing to bring a False Advertising Claim under the Lanham Act.

2. **Plaintiffs have Plead Sufficient Facts to bring a "False Association/False Endorsement" Claim under Subsection 1125 (a)(1)(A).**

To establish a claim for false endorsement under Subsection (a)(1)(A) of the Lanham Act, a plaintiff must show "that the terms defendants used and the representations they made…likely caused consumers to believe that plaintiff endorsed defendants' products[.] The inquiry must focus on confusion by the customer." *Wendy's Int'l, Inc.,* 183 F. Supp. 3d at 935 (internal citations omitted). "In order to have standing to allege a false advertising claim, however, the plaintiff must assert a discernible competitive injury." *L.S. Heath & Son, Inc. v. At & T Info. Sys.*, 9 F.3d 561, 575 (7th Cir. 1993), *abrogated on unrelated grounds by Lexmark*, 134 S.Ct. at 1377.

Next, the Seventh Circuit has set forth seven factors used to determine whether there was a likelihood of confusion: "(1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any evidence of actual confusion; and (7) the intent of the defendant to 'palm off' his product as that of another." *Sorensen v. WD-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015). Importantly, the likelihood-of-confusion inquiry focuses on confusion by the customer. *See Bd. of Regents of Univ. of Wisconsin Sys. v. Phoenix Int'l Software,*

*Inc.*, 653 F.3d 448, 455 (7th Cir. 2011) ("To decide whether there is a likelihood of confusion between the two...products, a court must ask whether consumers, and specifically consumers who would use either product, would be likely to attribute them to a single source."); *Woodard v. Victory Records, Inc.*, No. 11 C 7594, 2016 WL 1270423, at *9 (N.D. Ill. Mar. 31, 2016) (same).

As shown below, all factors have been met and, most importantly, there was actual confusion by the consumer as evidenced in the Exhibits attached to the Complaint.

i. *All of the Elements Necessary to Establish a Valid Mark were Properly Pleaded.*

To show "proof of a valid trademark[,] a plaintiff need not have a registered mark." *Tana v. Dantanna's,* 611 F.3d 767, 773 (11th Cir. 2010). "[T]he use of another's unregistered, *i.e.,* common law, trademark can constitute a violation of [the Lanham Act] where the *alleged unregistered trademarks used by the plaintiff are so associated with its goods that the use of the same or similar marks by another company constitutes a false representation that its goods came from the same source.*" *Id.* (emphasis added.) And, "the general principles qualifying a mark for registration under the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection." *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 768 (1992). Marks that are "sufficiently 'distinctive,' are eligible for federal registration or protection as common law marks." *Id.* at 773. A mark is distinctive and eligible for protection if "it either (1) is inherently distinctive or (2) has acquired distinctiveness through secondary meaning." *Id.* at 769. The Seventh Circuit recognizes five categories of distinctiveness to determine if a mark is eligible for protection as a common law mark (in ascending order): generic, descriptive, suggestive, arbitrary, and fanciful. *See Id.* at

768; *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9-11 (2d Cir. 1976).

The allegations of the Complaint allege advertisements made or produced by Defendant show images of Plaintiffs acting, posing, or behaving in a manner consistent with the text of the advertisement. Doc. 1 at ¶¶ 401 (Ratchford), 472 (Burciaga), 539 (Moreland), 642 (Underwood), 708 (Lopez), 812 (C. Davalos), 901 (M. Davalos), 984 (Electra), 1069 (Gibson), 1154 (Zales), 1220 (Sampedro), 1324 (Skinner), 1409 (Voronina), 1475 (Pepaj), 1533 (Thomas), 1591 (Hinton), 1649 (M. Krupa), 1707 (J. Krupa), 1765 (Schnitzer), 1823 (Derham), 1881 (Young), 1939 (Posada), 1997 (Pinder), 2055 (Lund), 2113 (Vogt), 2171 (Terrell), 2229 (Koren), 2287 (Jones), 2245 (Mayes), 2403 (Kindle). Plaintiffs aver that these images have confused consumers to believe that the Plaintiff models were in fact associated with Defendant with consumers vocally expressing satisfaction and desire for the product or service that Defendant was selling. Taken a step further, the Plaintiffs all sell their image, an image based upon the subjective attractiveness of the face and figure. The attractiveness of the Plaintiff models is then used to sell a secondary product or service when properly endorsed by said model *Id*. at ¶¶ 81 (Ratchord), 92 (Moreland), 102 (Underwood), 112 (Lopez), 122 (C. Davalos), 132 (M. Davalos), 142 (Electra), 153 (Gibson), 163 (Zales), 173 (Sampedro), 183 (Skinner), 193 (Voronina), 203 (Pepaj), 213 (Thomas), 223 (Hinton), 223 (Burciaga), 243 (M. Krupa), 253 (J. Krupa), 263 (Schnitzer), 273 (Derham), 283 (Young), 293 (Posada), 303 (Pinder), 313 (Lund), 323 (Daniels), 333 (Terrell), 343 (Koren), 353 (Jones), 363 (Mayes), 373 (Kindle). The advertisements of the Defendants use the attractiveness of the Plaintiffs to lure consumers to their establishment and purchase secondary products and services (food, alcohol, intimate personal entertainment, etc.).

Following the requirements for the Seventh Circuit alone, the requirements for establishing a claim for false endorsement under the Lanham Act have been met. However, Plaintiffs can also establish a valid claim on the more restrictive Eleventh Circuit test. As stated throughout the Complaint, Plaintiffs' images (in this case their actual identities) are, by definition, inherently distinctive or, by virtue of the Plaintiffs using their images (identities) to build a brand around themselves, have acquired a distinctiveness through secondary meaning. Each Plaintiff's image either suggests the basic nature of the Plaintiff's product or service, identifies the characteristic of Plaintiff's product or service, or suggests the characteristics of Plaintiff's product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. Doc. 1 at ¶¶ 56-67. Each Plaintiff's brand – the reason her clients seek to hire her – is unique in that it is encompassed in her identity, *i.e.*, her persona.

Stated differently, it is because each Plaintiff's persona is inseparable from her brand that the use of the same or similar images and likeness by Defendant constitutes a false representation by Defendant that its good or services, i.e. strip club activities, come from the source of Plaintiff's brand. Defendant's use of each Plaintiff's persona is, on its face, a false statement that she has, in fact, endorsed Defendant's strip club. Simply put, Defendant's unauthorized use and alteration of each Plaintiffs' image, likeness and identity as described in Plaintiffs' Complaint violates Section 2 of the Lanham Act because each Plaintiff's rights to her persona rises to the level of common law trademark and therefore, each Plaintiff is entitled to protection under Section 2 of the Lanham Act.

In the factually similar matter of *Downing v. Abercrombie & Fitch*, the Ninth Circuit reasoned that the term "mark" applies to the celebrity's *persona* and the level of

recognition that the celebrity has among the segment of the public to whom the advertisement is directed. 265 F.3d 994, 1007 (9th Cir. 2001) (citing *White v. Samsung Elec. Am., Inc.*, 971 F.2d 1395, 1400–1401 (9th Cir. 1992)).[3] The *Downing* court then evaluated the following eight factors in determining the likelihood of confusion: (1) the strength of the plaintiff's mark; (2) the relatedness of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines. Each factor is specifically enumerated, but they are not necessarily of equal importance, nor do they all apply to each case. *Id.* at 1008.

In *Downing*, five surfers depicted in a photograph brought suit against a clothing retailer, which had used their photograph without permission in a surf-themed catalog. The surfers asserted statutory and common law commercial misappropriation claims under Subsection (a)(1)(A) of the Lanham Act. *Id.* The *Downing* decision is instrumental because the court applied each of the eight factors in reaching the conclusion that the surfers raised a genuine issue of material fact concerning a likelihood of confusion as to their endorsement. While the court found each factor was present in favor of the plaintiffs, it is noteworthy to highlight the court's determination that the similarity of likeness (the third factor) was clear because the photograph at issue was an actual photograph of the plaintiffs, and that a jury could reasonably find that defendant intended to indicate to consumers that the plaintiffs were endorsing defendant's merchandise. *Id.* at 1008.

---

[3] In this district court it has been held, the "right-of-publicity claims are not preempted by the Copyright Act when the alleged unauthorized use of the plaintiff's identity extends beyond the copyrighted work. In some of these cases, the copyrighted work is used to advertise another product or service." *Dent v. Renaissance Marketing Corp.*, No. 14 C 02999, 2015 WL 3484464, at *5 (N.D. Ill. Jun. 1, 2015). In *Dent*, the 7th Circuit upheld *Downing*. *Id.*

Moreover, even plaintiffs with little "fame" or "just a pretty face" (to use Defendant's pejorative characterization of Plaintiffs throughout its Motion to Dismiss) (Doc. 25, at 5-7, 12-13) have been able to bring a claim under Subsection (a)(1)(A) of the Lanham Act. In *Arnold v. Treadwell*, 642 F. Supp.2d 723 (E.D. Mich. 2009), the plaintiff, who was an aspiring model, was able to establish the eight *Downing* elements of false endorsement. The Defendant in *Arnold* claimed that as a general rule, the image and likeness of an average person, *i.e.,* a non-celebrity such as the plaintiff, cannot function as a trademark and cannot receive any protection from the Lanham Act. *Id*. at 733. The court disagreed and held that "the Lanham Act itself does not have a requirement that a plaintiff must be a celebrity." *Id*. at 735. *See also Rubio v. Barnes & Noble, Inc.,* No. 14-CV-6561 (JSR), 2014 WL 6769150 (S.D.N.Y. Nov. 12, 2014);

In the matter of *Condit v. Star Editorial, Inc.* 259 F.Supp.2d 1046 (E.D. Cal. 2003), the court found that "a majority of circuits require a commercial interest in a mark, that is, at a minimum, a present intent to commercialize a mark," and that in order to sustain her false association claim, the plaintiff must "at least allege an existing intent to commercialize an interest in identity." *Id*. at 1052. In *Arnold*, the plaintiff offered evidence that she sought modeling jobs and posted her image on a modeling website in hopes of generating modeling jobs. The court found that this evidence presented an intent to commercialize an interest in plaintiff's identity for purposes of stating a Lanham Act claim. *Id. See also Burciaga v. Gold Club Tampa, Inc.*, No. 8:16-cv-790-T-27JSS, 2016 WL 9526567 (M.D. Fla. Dec. 28, 2016).

In this case, Plaintiffs have alleged sufficient facts to show that they have rights in

their images and personas as common law marks and satisfied the factors necessary to establish "consumer confusion." Thus, applying all the necessary elements of false endorsement of the Lanham Act to the facts at hand, the first element of the strength or level of recognition of plaintiff's mark weighs in favor of Plaintiffs. The Complaint sufficiently pleads that each Plaintiff is a well-known and reputable model with wide recognition and large social media following. Doc. 1 at ¶¶ 404 (Ratchford), 474 (Burciaga), 541 (Moreland), 644 (Underwood), 710 (Lopez), 814 (C. Davalos), 903 (M. Davalos), 986 (Electra), 1071 (Gibson), 1156 (Zales), 1222 (Sampedro), 1326 (Skinner), 1411 (Voronina), 1477 (Pepaj), 1535 (Thomas, 1593 (Hinton), 1651 (M. Krupa), 1709 (J. Krupa), 1767 (Schnitzer), 1825 (Derham), 1883 (Young), 1941 (Posada), 1999 (Pinder), 2057 (Lund), 2115 (Daniels), 2173 (Terrell), 2231 (Koren), 2289 (Jones), 2347 (Mayes), 2405 (Kindle). Further, each Plaintiff is in the business of commercializing her identity and selling her images to reputable brands and companies who look to promote and sell their products or services with beautiful models for profit. *Id.* Next, common-law trademark rights are "appropriated only through actual prior use in commerce." *Planetary Motion, Inc. v. Techsplosion, Inc.,* 261 F.3d 1188, 1193–94 (11th Cir. 2001) (quoting *Tally–Ho, Inc. v. Coast Cmty. Coll. Dist.,* 889 F.2d 1018, 1022 (11th Cir. 1989)). "[T]he use of a mark in commerce . . . must be sufficient to establish *ownership rights* for a plaintiff to recover against subsequent users under section 43(a)." *Id.* at 1195 (emphasis in original). As such, it has been shown throughout Plaintiffs' Complaint that Plaintiffs' images have been used by respectable companies and commercial brands to promote their products and services. Each Plaintiff has actually previously sold her images that are the subject of this action to reputable brands and

companies for profit. Doc. 1 at ¶¶ 81 (Ratchord), 92 (Moreland), 102 (Underwood), 112 (Lopez), 122 (C. Davalos), 132 (M. Davalos), 142 (Electra), 153 (Gibson), 163 (Zales), 173 (Sampedro), 183 (Skinner), 193 (Voronina), 203 (Pepaj), 213 (Thomas), 223 (Hinton), 223 (Burciaga), 243 (M. Krupa), 253 (J. Krupa), 263 (Schnitzer), 273 (Derham), 283 (Young), 293 (Posada), 303 (Pinder), 313 (Lund), 323 (Daniels), 333 (Terrell), 343 (Koren), 353 (Jones), 363 (Mayes), 373 (Kindle).

Under the second element, Defendant's customers also fall within a subset of the demographic that is interested in beautiful women. Both Plaintiffs and Defendant vie for the same dollars from the same demographic consumer group, *to wit,* men who are interested in and attracted to beautiful women to (re-)sell a product or service. As such, Plaintiffs contend that an unauthorized use of their images to promote a strip club creates an undeniable confusion in Defendant consumers' minds, which leads to competitive injury to Plaintiffs. *Id.* at ¶¶ 406 (Ratchford), 476 (Burciaga), 543 (Moreland), 646 (Underwood), 712 (Lopez), 816 (C. Davalos), 905 (M. Davalos), 988 (Electra), 1073 (Gibson), 1158 (Zales), 1224 (Sampedro), 1328 (Skinner), 1413 (Voronina), 1479 (Pepaj), 1537 (Thomas), 1595 (Hinton), 1653 (M. Krupa), 1711 (J. Krupa), 1769 (Schnitzer), 1827 (Derham), 1885 (Young), 1943 (Posada), 2001 (Pinder), 2059 (Lund), 2117 (Vogt), 2175 (Terrell), 2233 (Koren), 2291 (Jones), 2349 (Mayes), 2407 (Kindle). Additionally, there is evidence of actual confusion by consumers who have commented in writing regarding the Plaintiffs and their association with Defendant. *See* footnote 2, *supra*. As such, the second element of relatedness of the goods or services of false endorsement is in favor of Plaintiffs.

The third element, similarity of likeness, falls squarely in favor of Plaintiffs since

the images in question *are the actual images* of Plaintiffs. The fourth element of actual confusion has been established via the writings of consumers on the websites and social media of Defendant. This confusion, specifically, occurred at least when the photo of Plaintiffs depicted a certain activity: workouts (Exhibit "I" and Exhibit "S"); bartender (Exhibit "K"); mood or theme (St. Patrick's Day, Exhibit "U"; Labor Day, Exhibit "S"), ethnicity (Latinas, Exhibit "W"), Events (Super Bowl, Exhibit "AA"), and potential promiscuity/fornication (Exhibit "DD").

The fifth element (marketing channels used) also weighs in Plaintiffs' favor. Specifically, the parties compete in the same markets and use similar marketing channels in those markets to sell their services, *e.g.* websites and social media such as Twitter and Facebook. If this were not enough, there are at least six separate instances where a particular Plaintiff was inserted into actual marketing materials of Defendant (instead of the use of a more generic photo to promote Defendant's business): Plaintiff Electra (Exhibit "G"), Plaintiff Gibson (Exhibit "H"), Plaintiff Voronina (Exhibit "L"), Plaintiff Van Derham (Exhibit "T"), Plaintiff Koren (Exhibit "AA"), and Plaintiff Mayes (Exhibit "CC").

The sixth element of likely degree of purchaser care also favors Plaintiffs. Atlantis is in the business of promoting beautiful women to sell products and services and it uses advertisements to entice the public to visit its strip club to watch these women perform and consume food and beverages. Any prudent consumer would be strongly influenced by an image of a beautiful woman on a strip club's advertising – albeit, only to find out that the beautiful woman does not actually work at Atlantis. Doc. 1 at ¶¶ 408-411 (Ratchord), 478-481 (Burciaga), 545-548 (Moreland), 648-651 (Underwood), 714-

717 (Lopez), 818-821 (C. Davalos), 907-910 (M. Davalos), 990-993 (Electra), 1075-1078 (Gibson), 1160-1163 (Zales), 1226-1229 (Sampedro), 1330-1333 (Skinner), 1415-1418 (Voronina), 1481-1484 (Pepaj), 1539-1542 (Thomas), 1597-1600 (Hinton), 1655-1658 (M. Krupa), 1713-1717 (J. Krupa), 1771-1774 (Schnitzer), 1829-1832 (Derham), 1887-1890 (Young), 1945-1948 (Posada), 2003-2006 (Pinder), 2061-2064 (Lund), 2119-2122 (Vogt), 2177-2180 (Terrell), 2235-2238 (Koren), 2293-2296 (Jones), 2351-2354 (Mayes), 2409-2412 (Kindle).

The seventh element of Defendant's intent in selecting the mark also favors Plaintiffs. Plaintiffs have alleged that Defendant intended to profit by creating confusion among consumers with respect to whether Plaintiffs had endorsed its products and services. *Id.* Moreover, Plaintiffs allege that Defendant knew full well that Plaintiffs did not work at its establishment; as such it had knowledge of the falsity of its marketing material. *Id.* at ¶ 8.

Lastly, the eighth element of likelihood of expansion of product lines also favors Plaintiffs. Because Plaintiffs are reputable models who endorse prestigious brands, an association with a strip club will certainly prevent them from being hired by any prominent company to promote a high-end product or service. *Id.* at ¶¶ 412 (Ratchford), 482 (Burciaga), 549 (Moreland), 652 (Underwood), 718 (Lopez), 822 (C. Davalos), 911 (M. Davalos), 994 (Electra), 1079 (Gibson), 1164 (Zales), 1230 (Sampendro), 1334 (Skinner), 1419 (Voronina), 1485 (Pepaj), 1543 (Thomas), 1601 (Hinton), 1659 (M. Krupa), 1717 (J. Krupa), 1775 (Schnitzer), 1833 (Derham), 1891 (Young), 1949 (Posada), 2007 (Pinder), 2065 (Lund), 2123 (Vogt), 2181 (Terrell), 2239 (Koren), 2297 (Jones), 2355 (Mayes), 2413 (Kindle). Conversely, the images of Plaintiffs are, or can

be, used and reused by Defendant to offer different services on different days, depending on the promotion that Defendant was running.

In conclusion, though not every element in *Downing* was required in the instant case, they have, nonetheless, been met. The Plaintiffs have a valid mark and the mark has been appropriated by Defendant causing harm to Plaintiffs.

### 3. Defendant's Sole Rationale for Dismissing Counts I and II is Based on Allegations Outside the Four Corners of the Complaint.

Defendant moves to dismiss Counts I and II on a legal impossibility, namely: "...if the Plaintiffs gave up the rights to the photographs, *which is standard in every commercial photo shoot context,* the Plaintiffs absolutely gave up their "*privacy and publicity rights to their likeness and persona.*"" Doc. 25 at 6 (emphasis added). This argument is inadmissible and calls for expert testimony as to what may or may not be the standard in the modeling industry. Moreover, putting aside the improper reference to extrinsic evidence of what is "standard in every commercial photo shoot" from a legal perspective, Defendants are wrong. "Nothing so exclusively belongs to a man or is so personal and valuable to him as his name, inasmuch as his reputation and the character he has built up are inseparably connected with it." *Battaglia v. Adams*, 164 So.2d 195 (Fla. 1964). Put another way, one would never be able to give up her privacy right to her persona, reputation, or likeness.

Defendant's other argument deals with failure to distinguish a photograph that might or might not be copyrighted and an image within that photograph. More specifically, "Plaintiffs are seeking to expand the application of the Lanham Act to what should simply be, at best, a 'misappropriation of likeness' case, for photographs the Plaintiffs do not allege they own, and for individuals (the Plaintiffs) that are simply not

recognizable as 'walking, talking trademarks.'" Doc. 25 at 5.    Defendant continues its

argument as thus, "How can one separate an 'image' from a photograph? It is impossible!

Unless the Plaintiffs can establish ownership of the photographs at issue, which they

conveniently ignore in their allegations, they have no foundation for any of the causes of

action set forth in their Complaint." *Id.* at 6.

Defendant argues Plaintiffs do not have standing to bring a Lanham Act claim as

they do not own their image as contained in the photographs that have allegedly been

used by Defendant. *Id.* at 18. However, the *Downing* court discussed this very issue.  In

so doing, the *Downing* court quoted the venerable *Nimmer on Copyright § 1.01(B)(1)(c)*

at 1-23 (1999):

> The "work" that is the subject matter of the right of publicity is *the persona*, i.e., the name and likeness of a celebrity or other individual. A persona can hardly be said to constitute a "writing" of an "author" within the meaning of the copyright clause of the Constitution. *A fortiori* it is not a "work of authorship" under the Act. Such name or likeness does not become a work of authorship simply because it is embodied in a copyrightable work such as a photograph.

*Downing*, 265 F.3d at 1003-1004.

Here, Plaintiffs respectfully reference an on point California state case, *Timed

Out, LLC v. Youabian, Inc.,* 229 Cal. App. 4th 1001 (Cal. Ct. App. 2014). There, the

*Timed Out* court differentiated publicity rights from copyright infringement claims (by

referencing federal court decisions).  Specifically, the *Youabian* court held:

> the photographs displayed on Defendant' website, as pictorial works of authorship, are protected by the Copyright Act. However, it is not the publication of the photographs themselves that is the basis for plaintiffs' claims. Rather, it is Defendant' use of models' likenesses pictured in the photographs to promote Defendant' business that constitutes the alleged misappropriation.

*Id.* at 1013.

For those reasons, Defendant's analogies here are completely nonsensical and should not be entertained by this Court.

**B.**     **This Court Should Exercise Supplemental Jurisdiction as It Previously Did in a Factually Similar Matter.**

Although the issue of exercising supplemental authority is discretionary, [a] district court has supplemental jurisdiction over any claim that is 'so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.'" *MaClean Quality Composites, LLC v. Edge Composites, LLC*, No. 08 C 6367, 2009 WL 1010426, *3 (N.D. Ill. Apr. 14, 2009) (quoting 28 U.S.C. § 1367(a)). Moreover, other district courts throughout the country have done so in similar matters. For example, in the sister-circuit matter of *Jaime Faith Edmondson, et al. v. Caliente Resorts, LLC d/b/a Caliente Resort, et al.*, Case No. 8:15-cv-2672-T-23TBM, the court specifically exercised its supplemental jurisdiction over the state-law claims by ruling on defendants' Motion to Dismiss. *See* Order attached hereto as Exhibit A.

The facts and claims in the *Edmondson* matter are almost identical to the facts and claims in the case at hand. In *Edmondson*, sixteen professional models brought suit against defendants, a nudist resort and their owner for using plaintiffs' images and likenesses without permission in various promotions of their swingers resort. Defendants argued that plaintiffs had failed to state a cause of action under the Lanham Act for false advertising, Fla. Stat. § 540.08 for unauthorized publication of name and likeness, civil theft, unjust enrichment, and negligence. This Court disagreed and denied defendants' motion as to all counts except negligence.

This Court should follow the ruling of its sister court in *Edmondson* and exercise supplemental jurisdiction over Plaintiffs' state law claims.

**C.**    **Plaintiffs have Stated a Valid Claim for Violation 765 ILCS 1075/10** *et seq.* **Unauthorized Publication of Plaintiffs' Images - Count III**.

Count III states a claim in favor of Plaintiffs and against Defendant for Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10 *et seq.*, which generally grants a plaintiff the right to control and to choose whether and how to use an individual's identity for commercial purposes is recognized as each individual's right of publicity.

As discussed above, Defendant erroneously contends that because Plaintiffs alleged no ownership rights in the respective "photographs," Plaintiffs now lack standing to pursue these claims. Doc. 25, at 15. However, the Lanham Act claims brought by Plaintiffs are claims for the infringement of their image and not for a copyright action. Defendant's Motion to Dismiss also attempts to insert facts outside the four corners of the Complaint with contentions that it has become an "industry standard" for photographers to have models sign releases relinquishing all rights to photographs during a shoot. *Id.* at 15. Regardless of what may or may not be the "standard" in the modeling industry, what matters is what Plaintiffs have alleged in their Complaint and the Court can only look at the four corners of that Complaint. Defendant's arguments are completely premature and are not appropriate at this stage of the litigation. The Seventh Circuit has consistently held that the use of a person's likeness to advertise one's business without authorization is a violation of section 765 ILCS 1075/10. *See e.g.*, *Toney v. L'Oreal USA, Inc.,* 406 F.3d 905 (7th Cir. 2005).

The next basis for attempting to have the Court dismiss the state claims is that the Lanham Act claims should be dismissed. Doc. 25 at 14. However, the federal claims survive scrutiny, and as such, the Court is not obligated to dismiss the state claims.

Rather, the Court is encouraged to hear the state claims, if for no reason other than judicial economy. In *Marmarchi v. Board of Trustees of the University of Illinois*, the court held:

> we review for abuse of discretion the judge's decision not to exercise supplemental jurisdiction over the state-law claims. The "usual practice in this circuit" is for district courts to dismiss state-law claims when all federal causes of actions have been dismissed.

No. 17-1939, 2017 WL 5152156, at *3 (7th Cir. Nov. 7, 2017).   As discussed at length above, the federal claims are properly pled. As such, the state claims should not be dismissed.

Third, it appears Defendant's Motion to Dismiss is a "cut and paste job" since it focuses substantially on Florida state law and/or law of the Eleventh Circuit. As is evidenced by each of the relevant claims for relief (counts), Illinois law is the basis for relief. As such, all of Defendant's specious arguments must be ignored. Finally, to be clear, 28 U.S.C. § 1367 indicates the bases for when a court may decline supplemental jurisdiction:

> (c)  The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
> (1)  the claim raises a novel or complex issue of State law,
> (2)  the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3)  the district court has dismissed all claims over which it has original jurisdiction, or
> (4)  in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Here, there is no novel or complex issue of state law, the state claims and the federal claims go hand-in-hand, and Defendant advances no argument to the contrary. Next, the state claims do not predominate any of the federal claims and Defendant advances no argument to the contrary. As of this instant opposition, the District Court has

not dismissed any claims, let alone Counts I or II (the federal claims). As such the third option is inapposite. Finally, for the fourth possibility, there are no exceptional circumstances or other compelling reasons for declining jurisdiction and Defendant has not advanced any argument to the contrary. As such, Defendant's argument that this Court should dismiss the state claims should be denied.

**D.**   **Contrary To Defendant's Contentions, No Statute of Limitations Issue Exists as it Relates to Republication and Ongoing Harm as all Incidents Occurred within 12 Months of Filing The Complaint.**

    **1.**   **Continuing Harm**

Defendant's specious argument that the Statute of Limitations has been implicated is wrong despite Defendant's reliance on *Martin v. Wendy's Int'l, Inc.*, 183 F. Supp. 3d 925 (N.D. Ill. 2017). In *Martin,* the Plaintiff was allegedly harmed after a photo of him appeared in an advertisement where his world record was referenced. The claim was brought more than 12 months after the first publication of the advertisement under 735 ILCS 5/13-201, the same claim as at bar.

In this case, there are allegations of continuing harm through use of the Internet and other social media:

> an exception to the general rule *exists when the tort at issue involves a continuing or repeated injury*. See *Feltmeier*, 207 Ill. 2d at 278; *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 345, 770 N.E.2d 177, 264 Ill. Dec. 283 (2002). Under the "continuing violation rule," where a tort involves a continuing or repeated injury, [****516] [**1193] the limitations period does not begin to run until the date of the last [*324] injury or the date the tortious acts cease. *Feltmeier*, 207 Ill. 2d at 278; *Belleville Toyota*, 199 Ill. 2d at 345. A continuing violation is occasioned by continuing unlawful acts and conduct, not by continual ill effects from an initial violation. *Feltmeier*, 207 Ill. 2d at 278. However, where there is a single overt act from which subsequent damages may flow, the statute begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury, and this is so despite the continuing nature of the injury. *Feltmeier*, 207 Ill. 2d at 279.

*Blair v. Nevada Landing Partnership*, 369 Ill. App. 3d 318, 323-24 (2nd Dist. 2006) (emphasis added).

The *Martin* case, which relied on, in part, *Blair* in reaching its decision, can be distinguished from the instant facts. First, in *Martin*, there were no allegations that the harm was continuing or that there were repeated publications of the same photos or advertisements.  To the contrary, of the twenty-one Plaintiffs, each has an allegation that the harm was continuing. Doc.1 at ¶¶ 399 (Ratchford), 470 (Burciaga), 537 (Moreland), 640 (Underwood), 706 (Lopez), 810 (C. Davalos), 899 (M. Davalos), 982 (Electra), 1067 (Gibson), 1152 (Zales), 1218 (Zampedro), 1322 (Skinner), 1407 (Veronino), 1473 (Pepaj), 1531 (Thomas), 1589 (Hinton), 1647 (M. Krupa), 1705 (J. Krupa), 1763 (Schnitzer), 1821 (Derham), 1879 (Young), 1937 (Posada), 1995 (Pinder), 2053 (Lund), 2111 (Vogt), 2169 (Terrell), 2227 (Koren), 2285 (Jones), 2343 (Mayes), 2401 (Kindle). Following the language in *Twombly* and *Iqbal,* as well as in Defendant's reference to *Martin*:

> [A] plaintiff's factual allegations must be enough to raise a right to relief above the speculative level. Stated differently, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Martin,* 183 F. Supp. 3d at 928-29.

Since the Court must accept as true the allegations of the Complaint, and *Blair* and *Martin* both stand for the proposition that republication constitutes continuing harm,

this Court must find that there are sufficient facts pled to overcome a challenge based on the statute of limitations.[4]

## 2. Defendant Fails to Identify the Specific Claims that are Time Barred.

Defendant alleges, "the date the instant Complaint was filed, October 12, 2017, and the one year statute of limitations for IRPA claims … preclude[s] twenty-one Plaintiffs from maintaining any claims under IRPA, since, under the plain language of the Complaint, the publications occurred before 10-12-16."(Doc. 25 at 17.  However, this is both wrong and intentionally misleading.

Contrary to Defendant's intentional misstatement of fact to this Court, there are allegations that establish the contrary for the following Plaintiffs.

a)   "...on October 15, 2016, Ratchford's image was posted to Atlantis's Facebook page..." Complaint, ¶ 83.

b)   "...on December 6, 2016, Underwood's image was uploaded to Atlantis's Facebook page..."  Complaint, ¶ 104.

c)   "...on February 22, 2017, Skinner's image was uploaded to Atlantis's Facebook page..."  Complaint, ¶ 185.

d)   "...on March 11, 2017, Pepaj's image was uploaded to Atlantis's Facebook page..."  Complaint, ¶ 205.

e)   "...on March 8, 2017, Young's image was uploaded to Atlantis's Facebook page..."  Complaint, ¶ 285.

f)   "...on January 28, 2017, Terrell's image was uploaded to Atlantis's Facebook page..."  Complaint, ¶ 335.

g)   "...Specifically, on March 29, 2017, Mayes' image was uploaded to Atlantis's Facebook page..."  Complaint, ¶ 365.

---

[4] In the alternative, if this Court finds that the complaint does not contain sufficient factual allegations to establish continuing harm through republication, Plaintiffs respectfully seek leave of the court to amend their complaint. "Leave to amend a complaint should be freely granted when justice so requires as long as there is no 'undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment.'" *See Clay v. McEvers*, No. 99 C 1122, 2001 WL 914450, at *4 (N.D. Ill. August 14, 2001) (internal citations omitted).

As can be seen, the Complaint includes specific allegations to establish a timely violation of 765 ILCS 1075/10 *et seq*. As such, Defendant's motion to dismiss should be denied.

**E.      Plaintiffs have Stated a Valid Claim for Negligence and Respondeat Superior under Count V.**

Defendant, again, has gone outside the four corners of the complaint to assert that Plaintiffs do not have standing to bring this suit. Without restating the entirety of the quote of *Gulfstream,* this Court is limited to what is contained in the complaint.  At the bottom of page 17 of its motion, Defendant avers that the photos in the Exhibits attached to the Complaint were "...[previously] broad[ly] disseminat[ed]..." or were based on "...industry standards..." or were "...clearly professionally taken[.]" These are irrelevant arguments designed to confuse this Court. Each of these averred facts, if true, is taken out of context, and if considered, require that the court look beyond the four corners of the complaint. Assuming for the sake of argument that these facts are true, they could only properly be pled before this court in a motion for summary judgment and not a motion to dismiss. Plaintiffs deny Defendant's contentions in that they are irrelevant to the Count V, as well as irrelevant to Counts I-IV in that prior publication of photographs is not a viable objection to the facts that were pled in the Complaint.

Next, Defendant relies on *Heath v. Playboy Enterprises, Inc.*, 732 F. Supp. 1145, 1147 (S.D. Fla. 1990), to direct this Court to dismiss the Complaint and/or Count V – the negligence and respondeat superior causes of action. First, the *Heath* case is a Florida state case that dealt with false light as the basis for the generic invasion of privacy. This case is neither in Florida nor does it involve false light; rather it is in federal court in Illinois and involves misappropriation of likeness coupled with the publication of an

altered image, likeness, and/or identity of each of the Plaintiffs. Moreover, no public or private "facts" about any Plaintiff (individually or collectively) form the basis of any cause of action ascribed to Defendant. This entire argument fails as a matter of law.

Defendant's final argument is, essentially, that the photographs that were allegedly re-published were in the public domain and were, therefore, allowed to be re-published. However, this is contrary to the entirety of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) and (B), as well as *Toney*, 406 F.3d at 905, which was also cited by Defendant in its moving papers.

Finally, it should be noted that Defendant has not actually proffered a viable objection to Count V – Negligence and Respondeat Superior. Again, as this is a motion to dismiss, the Court is limited to the four corners of the complaint. Defendant has not identified how this cause of action is deficient, if at all. Defendant uses misdirection to intentionally confuse the Court and encourage the Court to look beyond the complaint. This is improper, and therefore, the argument should be rejected.

## V.  CONCLUSION

For all the reasons detailed above, Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss and grant Plaintiffs such further relief as justice requires.

Respectfully submitted,

THE CASAS LAW FIRM, P.C.

*/s/   Joseph N. Casas*

Joseph N. Casas
402 West Broadway, Suite 400
San Diego, CA 92101

(619) 341-2110
joseph@casaslawfirm.com

**FREEDMAN BOYD HOLLANDER**
**GOLDBERG URIAS & WARD, P.A.**

Vincent J. Ward
David H. Urias
Nicholas T. Hart
20 First Plaza, Suite 700
Albuquerque, NM 87102
P: (505) 842-9960
F: (505) 842-0761
vjw@fbdlaw.com
dhu@fbdlaw.com
NickH@fbdlaw.com

## CERTIFICATE OF SERVICE

I CERTIFY that on the 14th day of December, 2017, I filed the foregoing electronically through the CM/ECF system, which caused the parties or counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing as follows:

**Wayne B. Giampietro**
Poltrock & Giampietro
123 W. Madison, Suite 1300
Chicago, IL 60602
P:  312-236-0606
wgiampietro@giampietrolaw.com

**Luke Charles Lirot**
Luke Charles Lirot PA
2240 Belleair Road, Suite 190
Clearwater, FL 33764
P:  727-536- 2100
luke2@lirotlaw.com


*/s/   Joseph N. Casas*
Joseph N. Casas