**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **ABIGAIL RATCHFORD, ANA CHERI MORELAND, SARA UNDERWOOD, ARIANNY CELESTE LOPEZ, CAMILA DAVALOS, MARIANA DAVALOS, CARMEN ELECTRA, CIELO JEAN "CJ" GIBSON, CHANTEL ZALES, CLAUDIA SAMPEDRO, CORA SKINNER, IRINA VORONINA, EVA PEPAJ, IMOGEN THOMAS, JESSICA HINTON a/k/a JESSA HINTON, JESSICA BURCIAGA, MARTA KRUPA, JOANNA KRUPA, INA SCHNITZER a/k/a JORDAN CARVER, KATARINA VAN DERHAM, LAURIE YOUNG, LINA POSADA, LUCY PINDER, MALU "MASHA" LUND, MEGAN VOGT a/k/a MEGAN DANIELS, MERCEDES TERRELL, RACHEL KOREN a/k/a RACHEL BERNSTEIN, ROSIE JONES, URSULA MAYES, VIVIAN KINDLE, EMILY SEARS, KHLOE TERAE, APRIL EVE, and RHIAN SUGDEN,** )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | 17 C 7368 |
| ) | |
| **AEG VENTURES, LLC d/b/a ATLANTIS GENTLEMEN'S CLUB,** ) | Judge John Z. Lee |
| ) | |
| **Defendant.** ) | |

<u>**ORDER**</u>

Plaintiffs, who are professional models, allege that AEG Ventures LLC ("AEG") has misappropriated their image and likeness to promote its strip club, Atlantis Gentlemen's Club ("Atlantis"). Plaintiffs have sued AEG under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) and (B), the Illinois Right of Publicity Act ("IRPA"), 765 Ill. Comp. Stat. 1075/30, and for negligence

under Illinois common law. Defendants has moved to dismiss the amended complaint, and, for the reasons provided below, the motion is denied.

## STATEMENT

### I. Facts[1]

Each Plaintiff is an extremely well-known professional model and earns a living by modeling and selling her image and likeness for the purpose of advertising, endorsing, or promoting reputable products and services. Am. Compl. ¶¶ 82, 93, 104, 115, 126, 137, 148, 160, 171, 182, 193, 204, 215, 226, 237, 248, 259, 270, 280, 290, 301, 312, 323, 334, 345, 356, 367, 378, 389, 400, 411, 422, 433, 444. In order to become a successful model, each Plaintiff has spent considerable effort to build her reputation and good will. *Id.* ¶ 64. Both reputation and good will are critical to establishing a model's individual brand, being selected for modeling contracts, and maximizing earnings. *Id.*

When vetting a professional engagement, each Plaintiff typically considers whether the individual or entity seeking a license and release of Plaintiff's image, likeness, or identity is reputable, whether the individual or entity has reputable products or services, and whether the affiliation will enhance the model's stature or reputation. *Id.* ¶ 69. Endorsing, promoting, advertising, or marketing the "wrong" product, service, or corporate venture, or working in, or being affiliated with, a disreputable industry, severely impacts a Plaintiff's career by limiting or foreclosing modeling or brand endorsement opportunities. *Id.* Likewise, any improper or unauthorized use of a Plaintiff's image, likeness, or identity also substantially injures her ability to make a living as a model. *Id.* ¶ 67.

---

[1]    Under Federal Rule of Civil Procedure 12(b)(6), the Court credits the allegations as true. *Tobey v. Chibucos*, 890 F.3d 634, 741 (7th Cir. 2018).

Without Plaintiffs' knowledge or authorization, AEG has pirated their images, likenesses, and identities for commercial purposes, that is, to advertise, promote, and market its Atlantis strip club on websites and social media accounts owned, operated, or controlled by AEG. *Id.* ¶¶ 3, 84–92, 95–103, 106–14, 117–25, 128–36, 139–47, 151–59, 162–81, 184–92, 195–203, 206–14, 217–25, 228–36, 239–47, 250–58, 261–69, 272–79, 282–89, 292–300, 303–11, 314–22, 325–33, 336–44, 347–55, 358–66, 369–77, 380–88, 391–98, 402–10, 413–21, 425–32, 436–443, 446–54. AEG's use of Plaintiffs' images, likenesses, and identities has deceived consumers by falsely representing that they are somehow affiliated with AEG's Atlantis strip club, that they have been hired to promote or endorse Atlantis's events, or that they are performers or participants in the events advertised. *Id.* ¶ 8. Moreover, AEG has created this false impression on a continuing basis in a manner that is unapologetic, chronic, and habitual. *Id.* ¶¶ 4, 86, 97, 108, 119, 130, 141, 153, 164, 186, 197, 208, 219, 230, 241, 252, 263, 273, 283, 294, 305, 316, 327, 338, 349, 360, 371, 382, 393, 404, 415, 426, 437, 448.

As a result of AEG's conduct, Plaintiffs have sustained injury to their reputations, images, brands, and marketability due to their false affiliation with a strip club. *Id.* ¶¶ 11, 61, 471, 545, 614, 682, 750, 818, 886, 954, 1022, 1090, 1158, 1226, 1294, 1362, 1430, 1498, 1566, 1634, 1702, 1770, 1838, 1906, 1974, 2042, 2110, 2178, 2246, 2314, 2382, 2450, 2518, 2586, 2654, 2722. AEG's misrepresentation has enabled it to gain an economic windfall at Plaintiffs' expense. *Id.* ¶ 12.

## II. Analysis

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, when considering motions to dismiss, the Court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff*." Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013) (citing *Luevano v. Wal–Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013)). At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### A. Lanham Act

#### 1. False Advertising (Count I)

AEG first argues that Plaintiffs lack prudential standing to bring false advertising claims. "[A] plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014). "[T]o come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id.* at 131–32. What is more, "a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Id.* at 140. "[W]hen a party claims reputational injury from disparagement, competition is not required for proximate cause." *Id.* at 138.

Here, each Plaintiff alleges she has a commercial interest in her reputation and the sale of her image, likeness, and identity. Am. Compl. ¶¶ 82, 93, 104, 115, 126, 137, 148, 160, 171, 182, 193, 204, 215, 226, 237, 248, 259, 270, 280, 290, 301, 312, 323, 334, 345, 356, 367, 378, 389, 400, 411, 422, 433, 444. Each Plaintiff also alleges that her reputation and marketability has been harmed by AEG's unauthorized use of her image, likeness, and identity to promote its Atlantis strip club and AEG's attributing the strip-club lifestyle to her. *Id.* ¶¶ 11, 61, 471, 545, 614, 682, 750, 818, 886, 954, 1022, 1090, 1158, 1226, 1294, 1362, 1430, 1498, 1566, 1634, 1702, 1770, 1838, 1906, 1974, 2042, 2110, 2178, 2246, 2314, 2382, 2450, 2518, 2586, 2654, 2722. These allegations are sufficient to plausibly allege prudential standing.

To the extent that AEG argues that Plaintiffs must plead additional facts in order to allege prudential standing, AEG is mistaken. *See Dennis v. Higgins*, 498 U.S. 439, 461 (1991) ("The plaintiff need only demonstrate a plausible relationship between his interest and the policies to be advanced by the relevant provision." (internal quotation marks omitted)). AEG also argues that Plaintiffs' Lanham Act claims fail because Plaintiffs are not competitors of AEG. But because Plaintiffs allege reputational injury flowing from AEG's disparaging representation of Plaintiffs as strip-club performers, competition is not required. *See Lexmark*, 572 U.S. at 138. Accordingly, the Court holds that Plaintiffs are entitled to a chance to prove their case.

Next, AEG argues that Plaintiffs have failed to plead the elements of a false advertising claim. To state a claim of false advertising under the Lanham Act, a plaintiff must allege that a defendant: "(1) made a false or misleading statement, (2) that actually deceives or is likely to deceive a substantial segment of the advertisement's audience, (3) on a subject material to the decision to purchase the goods, (4) touting goods entering interstate commerce, (5) and that results in actual or probable injury to the plaintiff." *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168

F.3d 967, 971 (7th Cir. 1999); *see* 15 U.S.C. § 1125(a)(1)(B). "Where the statement in question is actually false, then the plaintiff need not show that the statement either actually deceived consumers or was likely to do so." *B. Sanfield*, 168 F.3d at 971. "[W]here the statement is literally true or ambiguous, then the plaintiff is obliged to prove that the statement is misleading in context, as demonstrated by actual consumer confusion." *Id.* (internal quotation marks omitted).

First, Plaintiffs have alleged that AEG's unauthorized use of each Plaintiff's image in its advertisements constitutes a false or misleading statement of fact asserting that each Plaintiff works at, or is affiliated with, Atlantis. Am. Compl. ¶ 8. Each Plaintiff has provided at least one example of an advertisement that strongly suggests that she is an entertainer at Atlantis, as well as the date of each advertisement. *See id.*, Exs. A–HH. For example, AEG used an image of Camila and Mariana Davalos that stated: "Come get a Lapdance only $30 or indulge in ½ hour or hour suite with your favorite entertainer of choice! www.atlantischicago.com." *Id.*, Ex. E, 3/31/15 Atlantis Gentlemen's Club Facebook posting. Another example is an image of Carmen Electra made to look like she is actually on an Atlantis Gentlemen's Club stage. *Id.*, Ex. G, 1/22/13 Atlantis Gentlemen's Club Facebook posting. In another example, AEG used an image of Cora Skinner that stated: "Thigh-Hi Thursday *LIKE* if you want this on your LAP…… Join our Sexy Staff at ATLANTIS, doors OPEN at 3pm with our Stunning Bartender ♥ she has the cure for the midweek blues." *Id.*, Ex. K, 8/18/17 Atlantis Gentlemen's Club Facebook posting. By way of these examples, Plaintiffs have sufficiently alleged that AEG has falsely represented that Plaintiffs work or perform at Atlantis.

Second, Plaintiffs have alleged that the false advertising shown in Exhibits A through HH was likely to deceive consumers into believing that Plaintiffs performed at Atlantis. *See id.* ¶¶ 460–61, 535–36, 604–05, 672–73, 740–41, 808–09, 876–77, 944–45, 1012–13, 1080–81,

1148–49, 1216–17, 1284–85, 1352–53, 1420–21, 1488–89, 1556–57, 1624–25, 1692–93, 1760–61, 1828–29, 1896–97, 1964–65, 2032–33, 2100-01, 2168–69, 2236–37, 2304–05, 2372–73, 2440–41, 2508–09, 2576–77, 2644–45, 2712–13; *see also id.*, Exs. A–HH.  AEG argues that no one seeing these advertisements would believe that the models actually worked at Atlantis, just as no one seeing a Progressive ad would believe that Flo actually sells insurance.  But the language in the sample advertisements, highlighted above, suggests otherwise.  And, at this point in the litigation, the Court assumes all allegations in the complaint are true.  AEG's argument therefore does not provide a basis for dismissal.

Third, Plaintiffs have alleged that AEG's unauthorized use was material and influenced the decisions of consumers to patronize Atlantis.  *See id.* ¶¶ 462, 536, 605, 673, 741, 809, 877, 945, 1013, 1081, 1149, 1217, 1285, 1353, 1421, 1489, 1557, 1625, 1693, 1761, 1829, 1897, 1965, 2033, 2101, 2169, 2237, 2305, 2373, 2441, 2509, 2577, 2645, 2713.  AEG argues, without citing any case law, that, if there were a Lanham Act claim based on any such confusion, it would accrue to Atlantis's consumers, not Plaintiffs.  But the Supreme Court has clearly held that consumers do not have a cause of action under the Lanham Act.  *See POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 107 (2014).  Thus, AEG's argument provides no basis for dismissal.

Fourth, Plaintiffs assert, and AEG agrees, that AEG's advertisements of Atlantis on websites and social media occur in, and are targeted toward, interstate commerce.  *See TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 829 n.3 (9th Cir. 2011) (noting that meeting the interstate commerce element is "virtually automatic for websites").

Fifth, for the reasons discussed above, Plaintiffs have sufficiently alleged harm to their reputation and brand.

In short, Plaintiffs have pleaded the elements of a false advertising claim under the Lanham Act. Accordingly, the Court denies AEG's motion to dismiss Count I.

### 2. False Endorsement (Count II)

To state a claim for false endorsement under § 43(a) of the Lanham Act, Plaintiffs must show that the alleged infringement likely caused customers to believe that Plaintiffs endorsed AEG's Atlantis strip club. *See Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 522 (7th Cir. 2014). A false endorsement claim based on the unauthorized use of one's identity "alleges the misuse of a trademark, . . . such as a visual likeness, vocal imitation, or other uniquely distinguishing characteristic, which is likely to confuse consumers as to the plaintiff's sponsorship or approval of the product." *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1110 (9th Cir. 1992), *abrogated on other grounds by Lexmark*, 572 U.S. at 135–36. In such cases, "[t]he 'mark' at issue is the plaintiff's identity." *Stayart v. Yahoo! Inc.*, 651 F. Supp. 2d 873, 881 (E.D. Wis. 2009), *aff'd*, 623 F.3d 436 (7th Cir. 2010). "While many of these cases arise in the context of a popular celebrity, some cases hold that popularity or celebrity status is not a necessary prerequisite for a successful false endorsement claim under the Lanham Act." *Id.* (citing *Hauf v. Life Extension Found.*, 547 F. Supp. 2d 771, 777 (W.D. Mich. 2008); *Ji v. Bose Corp.*, 538 F. Supp. 2d 349, 351 (D. Mass. 2008); *Doe v. Friendfinder Network, Inc.*, 540 F. Supp. 2d 288, 306 (D.N.H. 2008)).

"Courts analyze a variety of factors to determine whether the use of a mark creates the likelihood of confusion, including the level of plaintiff's recognition among the segment of the society for whom defendant's product is intended, the relatedness of plaintiff's fame or success to defendant's product, and defendant's intent in selecting the plaintiff."[2] *Id.* at 883. "[T]he court's

---

[2]     The Seventh Circuit has set forth seven factors used to determine whether there was a likelihood of confusion: "(1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any evidence of actual confusion; and (7) the intent

role at the motion to dismiss stage is limited to assessing whether [a plaintiff] has pleaded facts that plausibly could result in a successful outcome on the likelihood of confusion element[.]" *Slep-Tone Entm't Corp. v. Coyne*, 41 F. Supp. 3d 707, 715 (N.D. Ill. 2014).

Here, Plaintiffs have alleged that AEG's use of their likenesses has caused actual consumer confusion regarding whether Plaintiffs endorse Atlantis. *See* Am. Compl. ¶¶ 460–61, 535–36, 604–05, 672–73, 740–41, 808–09, 876–77, 944–45, 1012–13, 1080–81, 1148–49, 1216–17, 1284–85, 1352–53, 1420–21, 1488–89, 1556–57, 1624–25, 1692–93, 1760–61, 1828–29, 1896–97, 1964–65, 2032–33, 2100-01, 2168–69, 2236–37, 2304–05, 2372–73, 2440–41, 2508–09, 2576–77, 2644–45, 2712–13; *see e.g.,* Exs. B, C, E, F, I, K, S U, W, Y, AA, BB, DD (displaying Facebook users' comments in reaction to Atlantis's advertisements featuring Plaintiffs). Plaintiffs also assert that they are well-known and successful female models, from which it may be reasonably inferred that their images, in and of themselves, have acquired distinctiveness, as well as a high level of recognition, among the segment of society for whom AEG's services are intended. *See* Am. Compl. ¶¶ 82, 93, 104, 115, 126, 137, 148, 160, 171, 182, 193, 204, 215, 226, 237, 248, 259, 270, 280, 290, 301, 312, 323, 334, 345, 356, 367, 378, 389, 400, 411, 422, 433, 444. Given that Plaintiffs have become well-known based on their physical attractiveness, there is a relatedness between Plaintiffs' fame or success to the services that AEG provides. Moreover, as discussed above, Plaintiffs assert that AEG intended to palm off Atlantis as having famous models as performers. *Id.* ¶ 8.

---

of the defendant to 'palm off' his product as that of another." *Sorensen v. WD-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015). "The likelihood of confusion test is an equitable balancing test." *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1044 (7th Cir. 2000). "No single factor is dispositive and courts may assign varying weights to each of the factors depending on the facts presented." *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 678 (7th Cir. 2001).

In support of its motion to dismiss the false endorsement claim, AEG disputes the factual allegations in the amended complaint. Specifically, AEG argues that Plaintiffs' identities are not recognizable, going so far as to describe Plaintiffs' images as generic. *See* Def.'s Am. Reply at 4. AEG also asserts that there is no likelihood of confusion. In so arguing, AEG misunderstands the standard of review on a motion to dismiss. Because the Court must accept all well-pleaded factual allegations as true and view them in the light most favorable to Plaintiffs at this stage, the Court finds AEG's arguments in support of dismissal unconvincing. AEG's motion to dismiss Count II is denied.

## B.    IRPA Claims (Counts III and IV)

The Court next addresses Plaintiffs' state law claims. Under the IRPA, a "person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person or persons." 765 Ill. Comp. Stat. 1075/30.

AEG argues that Plaintiffs' IRPA claims accruing prior to January 12, 2016, are time-barred. "Because complaints need not anticipate and attempt to plead around defenses, a motion to dismiss based on failure to comply with the statute of limitations should be granted only where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613–14 (7th Cir. 2014) (internal quotation marks and citations omitted). "In other words, the plaintiff must affirmatively plead himself out of court . . . ." *Id.* at 614.

Claims under the IRPA are subject to a one-year statute of limitations. *Blair v. Nev. Landing P'ship*, 859 N.E.2d 1188, 1192 (Ill. App. Ct. 2006); *see Yeager v. Innovus Pharm., Inc.*, No. 18-cv-397, 2019 WL 447743, at *4 (N.D. Ill. Feb. 5, 2019); *Martin v. Wendy's Int'l, Inc.*, 183

F. Supp. 3d 925, 930 (N.D. Ill. 2016). The general rule is that IRPA claims accrue "when the objectionable material was first published." *Blair*, 859 N.E.2d at 1192. An exception to this general precept is the continuing violation rule. *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 770 N.E.2d 177, 190 (Ill. 2002). "Under the 'continuing violation rule,' . . . where a tort involves a continuing or repeated injury, the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease." *Id.*

Plaintiffs allege that AEG has used their identities for commercial purposes without their consent on a continuing basis in a manner that is unapologetic, chronic, and habitual. Am. Compl. ¶¶ 4, 86, 97, 108, 119, 130, 141, 153, 164, 186, 197, 208, 219, 230, 241, 252, 263, 273, 283, 294, 305, 316, 327, 338, 349, 360, 371, 382, 393, 404, 415, 426, 437, 448. Accordingly, the Court holds that the allegations of the amended complaint do not set forth everything necessary to satisfy AEG's statute-of-limitations affirmative defense. The Court denies AEG's motion to dismiss Counts III and IV.

### C. Negligence and *Respondeat Superior* (Count V)

To succeed in a claim of negligence, "the plaintiff must plead and prove the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and injury proximately resulting from the breach." *Bruns v. City of Centralia*, 21 N.E.3d 684, 688–89 (Ill. 2014). "Under the doctrine of *respondeat superior*, a principal may be held liable for the tortious actions of an agent which cause a plaintiff's injury, even if the principal does not himself engage in any conduct in relation to the plaintiff." *Woods v. Cole*, 693 N.E.2d 333, 336 (Ill. 1998).

AEG does not argue that Plaintiffs have failed to allege the elements of a negligence or a *respondeat superior* claim. Rather, AEG launches a facial attack on jurisdiction, arguing that Plaintiffs lack standing to bring these claims because AEG will prove that Plaintiffs gave up any

rights to the use of their images. A facial attack on jurisdiction affords Plaintiffs the same safeguard as Rule 12(b)(6) in that the Court must consider the allegations of the amended complaint as true. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009). Because the Court looks to what the amended complaint alleges, and not what AEG might be able to prove after discovery, the Court denies the motion to dismiss on this basis.

AEG also asserts that republication of facts already publicized elsewhere cannot provide a basis for an invasion of privacy claim. Plaintiffs agree that they have not attempted to state an invasion of privacy claim. Accordingly, AEG's point is moot. AEG's motion to dismiss Count V is denied.

## III. Conclusion

For the above reasons, the Court denies AEG's motion to dismiss in its entirety.


Date: 3/11/19

_____
John Z. Lee
United States District Court Judge

12